COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
EMILY ABBEY (341762)
(eabbey@cooley.com)
JULIA THOMAS (353190)
(jthomas@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANNA BUCHHOLZ, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,

Defendants.

Case No. 5:26-cv-00846-EJD

**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: July 23, 2026
Time: 9:00 a.m.
Dept: Courtroom 4, 5th Floor
Judge: Hon. Edward J. Davila

Trial Date: Not Yet Set
Date Action Filed: January 26, 2026

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on July 23, 2026 at 9:00 a.m., before the Honorable Edward J. Davila, United States District Court, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California, Defendant Google LLC ("Google") will and hereby does move for an order dismissing Plaintiff Anna Buchholz ("Plaintiff")'s Class Action Complaint ("Compl.") (Dkt. No. 1) for failure to state a claim under Rule 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should dismiss the Class Action Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: March 31, 2026

Respectfully submitted,

COOLEY LLP

By: */s/ Joshua Anderson*

JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
EMILY ABBEY (341762)
(eabbey@cooley.com)
JULIA THOMAS (353190)
(jthomas@cooley.com)

Attorneys for Defendant
Google LLC

## TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 1
  A. Google Analytics ..... 1
  B. Allegations Related to Plaintiff ..... 3
III. LEGAL STANDARD ..... 3
IV. ARGUMENT ..... 3
  A. All of Plaintiff's Claims Fail for Lack of Intent. ..... 4
  B. One-Party Consent Bars Plaintiff's Federal Wiretap Act Claim. ..... 6
  C. Plaintiff's Claim Under CIPA § 631 Fails. ..... 8
    1. Google did not "read, attempt[] to read, learn[] from, and us[e]" while alleged communications were "in transit." ..... 8
    2. Google cannot be held liable under CIPA as it is not a "third-party eavesdropper." ..... 10
  D. Plaintiff's CIPA § 632(a) Claim Fails. ..... 13
  E. Plaintiff Cannot State a Claim Under CDAFA. ..... 16
  F. Plaintiff's Invasion of Privacy Claim Fails. ..... 17
    1. Plaintiff has not alleged a legally protected privacy interest that Google invaded. ..... 18
    2. Plaintiff has no reasonable expectation of privacy over website browsing information. ..... 19
    3. Plaintiff has not alleged highly offensive conduct, as opposed to routine commercial activity ..... 21
V. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 13

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*B.K. v. Desert Care Network*,
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) .......... 5

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (N.D. Cal. 2024) .......... 7, 21, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Borg-Warner Protective Servs. Corp. v. Super. Ct.*,
75 Cal. App. 4th 1203 (1999) .......... 12

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 4, 5

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 11

*Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*,
14 Cal. 4th 627 (1997) .......... 14

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 15

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 8

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. July 12, 2023) .......... 18, 22

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 20

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 4, 5, 6

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) .......... 16, 17

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 13

*Dole v. United Steelworkers of Am.*,
494 U.S. 26 (1990) .......... 14

*In re Facebook Consumer Privacy Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. Sept. 9, 2019) .......... 17

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 22

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 3

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) .......... 3

*In re Google Android Consumer Privacy Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .......... 16

*In re Google Assistant Privacy Lit.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 8

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... *passim*

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10, 11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 14

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 8, 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 19

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hauck v. Advanced Micro Devices, Inc.*,
2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) .......... 17

*Hayter v. PHH Mortg. Corp.*,
2016 WL 3902483 (N.D. Cal. July 19, 2016) .......... 4

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 20

*Heiting v. Taro Pharmaceuticals*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 16

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 18, 21

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 21, 22

*Javier v. Assurance IQ*,
LLC, 649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 12

*In re Jennings*,
34 Cal. 4th 254 (2004) .......... 14

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......... 11

*Jones v. Peloton Interactive, Inc.*,
2024 WL 1123237 (S.D. Cal. Mar. 12, 2024) .......... 18

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 11

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) .......... 8

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 6

*L.A. Cnty. Metro. Transp. Auth. v. Alameda Produce Mkt., LLC*,
52 Cal. 4th 1100 (2011) .......... 14

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 6

**TABLE OF AUTHORITIES**
**(continued)**


**Page(s)**

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 11

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) .......... 11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 18, 21

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 18, 20

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .......... 11

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 17

*Moreno v. S.F. Bay Area Rapid Transit District,*
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 13

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 10

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .......... 21

*Pena v. GameStop*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 8

*People v. Snook*,
16 Cal. 4th 1210 (1997) .......... 14

*People v. Superior Court of LA Cnty. (Smith)*,
70 Cal. 2d 123 (1969) .......... 4

*Revitch v. New Moosejaw, Inc.*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 15

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 6, 7, 8

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 20

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**


*Smith v. Google LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 6

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 10, 15

*Ticketmaster LLC v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. May 29, 2018) .......... 17

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 10

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 4

*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*,
4 Cal. 5th 1082 (2018) .......... 12

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 4, 6

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 10

*Westron v. Zoom Video Comm'ns*,
2023 WL 3149262 (N.D. Cal. Feb. 15, 2023) .......... 18

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 9

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 11

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. April 15, 2021) .......... 11

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .......... 22


**Statutes**


18 U.S.C.
§ 2511(2)(d) .......... 6
§ 2511 *et seq.* .......... 3

42 U.S.C. § 1320d-6 .......... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

California Civil Code
§ 1798.140(j)(1) ........ 12
§ 1798.140(j)(1)(ag) ........ 12
§ 1798.140(j)(1)(ai) ........ 12
§ 2330 ........ 12

California Penal Code
§ 502 ........ 3, 16
§ 502(b)(12) ........ 17
§ 502(c)(1) ........ 4
§ 502(c)(2) ........ 4
§ 502(c)(4) ........ 17
§ 502(c)(8) ........ 17
§ 502(e)(1) ........ 16
§ 631 ........ 1, 8, 10
§ 631(a) ........ *passim*
§ 632 ........ 1, 13, 14, 15
§ 632(a) ........ 3, 4, 13, 15
§ 632(b) ........ 15
§ 632(c) ........ 15
§ 637.7 ........ 13
§ 638.50(b) ........ 14
§ 638.51 ........ 14

## I. INTRODUCTION

This case is another iteration of the cookie-cutter pixel cases that have inundated this District. Plaintiff Anna Buchholz ("Plaintiff") attempts to turn routine online commercial conduct into actionable wiretapping and constitutional violations. But she has not offered sufficient factual allegations about her use of Defendant Lean Rx's website (the "SkinnyRx website") or Defendant Google LLC ("Google")'s use of her data to go with her bare-bones recitations of the elements of her claims. Indeed, the factual allegations that do appear in the complaint either have nothing to do with Plaintiff's health data or actually support dismissal.

Each of Plaintiff's causes of action suffers from fundamental flaws and should be dismissed. As an initial matter, intent must be proven for each of Plaintiff's five causes of action. But her allegations fail to support intent; if anything, Google intended that Lean Rx would ***not*** share personally identifiable or health information. Next, Plaintiff's Federal Wiretap Act claim fails because Lean Rx consented to the alleged interception, and no independent tortious conduct supports the crime-tort exception to that rule. Plaintiff's claim under CIPA section 631 also fails for lack of allegations that Google read Plaintiff's communications while they were in transit or that Google is a third-party eavesdropper, rather than a mere service provider to Lean Rx. She also fails to state a claim under CIPA section 632 because Google Analytics is not considered an "amplifying device," nor has Plaintiff alleged that her communications with Lean Rx were "confidential" within the meaning of that statute. Her CDAFA claim fails because she has not sufficiently alleged cognizable damages or loss. Finally, she fails to allege a legally protected privacy interest, a reasonable expectation of privacy, or highly offensive conduct sufficient to support her invasion of privacy claim.

The Court should dismiss all four of Plaintiff's causes of action.

## II. FACTUAL BACKGROUND

### A. Google Analytics

Google Analytics is one of many products on the market that allows businesses to collect information on how website users interact with a business's website. (*See* Compl. ¶¶ 19, 54.) For example, an online newspaper could use Google Analytics to determine what type of articles are

most frequently viewed. To use Google Analytics, developers voluntarily install a piece of code on their website. (*Id.* ¶¶ 54, 56.) That code collects pseudonymous data from the website, and the data is aggregated into reports that provide the developer with insights about user interactions with the website. (*Id.* ¶ 54 n.35.) Developers can customize what data is collected and how data is processed when they use Google Analytics. (*Id.*)[1]

Developers like Lean Rx must consent to and abide by the Google Analytics Terms of Service ("TOS"). (*See* RJN Ex. A ("This Agreement governs your use of the standard Google Analytics[.]").)[2] The TOS expressly prohibit developers from sending Google Analytics any data that contains personally identifiable information and require developers to "disclose the use of Google Analytics, and how it collects and processes data" to their users. (*Id.* at § 7.) The Google Analytics TOS also instructs developers: "You will not and will not assist or permit any third-party to pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information." (*Id.*)

Plaintiff alleges that when websites use Google Analytics, Google receives "electronic communications of website visitors," like information typed into search bars. (Compl. ¶ 57.) Plaintiff alleges that Lean Rx allowed Google to intercept information about "(1) the medication the user is attempting to buy; (2) the user's date of birth, name, and shipping address; and (3) user's IP address and device identifiers that could be used for digital fingerprinting purposes." (*Id.* ¶ 84.) There are no allegations, however, that sensitive health information *about Plaintiff herself* was collected or transmitted to Google.

Plaintiff also alleges that Google "has the capability to use website communications" for its own purposes, including to: "(i.) improve its own products and services; (ii.) develop new Google for Business and Google Analytics products and services; and (iii.) analyze website visitors' communications to assist with data analytics and targeted advertising." (*Id.* ¶¶ 59, 62.) Plaintiff does not allege, however, that Google used or uses data transmitted from the SkinnyRx website for any of those purposes.

---

[1] Certain paragraph numbers in the complaint repeat, so Google has included page numbers where necessary to avoid confusion. The page numbers refer to the Complaint's internal pagination.
[2] Citations to "RJN" refer to Google's concurrently filed Request for Judicial Notice.

### B. Allegations Related to Plaintiff

Plaintiff alleges that she has used the SkinnyRx website since 2025. (Compl. ¶ 11.) She used the website "to learn about obesity medications and to purchase obesity medications." (*Id.* ¶ 86.) Plaintiff first accessed the SkinnyRx website in early September 2025 to research weight loss medications. (*Id.* ¶ 11.) On September 10, 2025 and October 1, 2025, Plaintiff ordered weight loss medications, specifically Semaglutide and Semaglutide tablets, from the SkinnyRx website. (*Id.*) Plaintiff alleges that Defendants "intercepted information about the prescription medications Plaintiff ordered through the Website" and "intercept[ed] Plaintiff's communications, including those that contained personally identifiable information, protected health information, and related confidential information. (*Id.* a¶¶ 11, 13.) She also alleges that after ordering prescriptions for Semaglutide, she "received advertisements" relating to weight loss medications and hormone treatments, but she does not allege where she saw those advertisements or whether it was Google that served any of them. (*Id.* ¶ 11.) Plaintiff alleges that she has active Facebook, Instagram, and TikTok accounts but does not allege that she has a Google account. (*Id.* ¶ 12.)

## III. Legal Standard

To survive a motion to dismiss, a plaintiff must plead facts showing that his right to relief rises above "the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Nor must a court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citations omitted).

## IV. Argument

Plaintiff brings four causes of action under the federal Wiretap Act, 18 U.S.C. § 2511 *et seq.* (Count I), CIPA § 631(a) (Count II), CIPA § 632(a) (Count III), CDAFA § 502 *et seq.* (Count

IV), and for constitutional invasion of privacy (Count V). These causes of action should be dismissed because the complaint does not and cannot allege the requisite elements to support them.

**A. All of Plaintiff's Claims Fail for Lack of Intent.**

To state a claim for each cause of action Plaintiff alleges in the complaint, she must allege intent; that is, that ***Google*** (not just Lean Rx) acted "purposefully and deliberately and not as a result of accident or mistake," in receiving Plaintiff's health information from SkinnyRx. *See United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (CIPA § 631(a) requires allegations that defendant acted "consciously and deliberately with the goal of intercepting" plaintiff's private information); Cal. Penal Code § 502(c)(1)–(c)(2) (CDAFA) (requiring that defendant act "knowingly"); *Hayter v. PHH Mortg. Corp.*, 2016 WL 3902483, at *2 (N.D. Cal. July 19, 2016) ("[I]ntrusion [on a protected privacy right] must be intentional."); *People v. Superior Court of LA Cnty. (Smith)*, 70 Cal. 2d 123, 134 (1969) ("Section 632(a)'s intent requirement is satisfied only if "the person using the recording equipment [did] so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation"); *Briskin v. Shopify Inc.*, 2026 WL 161441, at *5–6 (N.D. Cal. Jan. 21, 2026) (explaining the CIPA § 631(a), invasion of privacy, and CDAFA claims require plausible allegations of intent); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840–42 (N.D. Cal. 2024) (Wiretap Act and CIPA § 632(a) claims require allegations of intent); *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) (dismissing CDAFA claim because plaintiffs did not plead that Meta knew it lacked permission to access data).

The Complaint, however, alleges no facts plausibly supporting ***Google's*** intent to (1) capture health data, or (2) capture any data without individuals' consent. Rather, the Complaint simply explains (in conclusory fashion) that because Google is "one of the largest advertisers and data analytics companies in the country" it must have known that the "data it received from Lean Rx through Google Analytics, Google Tag Manager, and DoubleClick" contained health data. (Compl. ¶ 20; *see also id.* ¶¶ 35, 60–63.) This allegation is not enough to plausibly allege intent. *See Doe I*, 741 F. Supp. 3d at 840 (plaintiff "argue[s] that intent only requires awareness that

information is likely being transmitted … [b]ut this is not the right way to think about intent"). And conclusory allegations that ***Lean Rx*** intentionally collected health data without Plaintiff's consent cannot be imputed to *Google*. *See Briskin*, 2026 WL 161441, at *5 (noting that regardless of whether the defendant-websites obtained consent, Shopify's state of mind remained the same).

The surrounding judicially noticeable facts further demonstrate that Google did not want or intend to receive health-related data, and especially did not want to receive that data without individuals' consent. ***First***, since May 15, 2023, Google has required all businesses using Google Analytics through its publicly available TOS to "disclose the use of Google Analytics, and how it collects and processes data" and "use commercially reasonable efforts to ensure that a User is provided with clear and comprehensive information about, and consents to, the storing and accessing of cookies or other information on the User's device . . . where providing such information and obtaining such consent is required by law." (RJN, Ex. A § 7.)

***Second***, Google's Terms of Service incorporates its HIPAA and Google Analytics Policy ("HIPAA Policy") which specifically instructs website developers not to send personally identifiable information ("PII") and HIPAA-covered information to Google. (RJN, Ex. B at 1 ("HIPAA-regulated entities using Google Analytics must refrain from exposing to Google any data that may be considered Protected Health Information (PHI), even if not expressly described as PII in Google's contracts and policies.").)

***And finally***, Google prohibits advertisers from targeting ads based on health information. (*See* RJN, Ex. C.) Far from trying or intending to gather health-related information from Plaintiff without her consent, Google instructs businesses using Google Analytics to (1) refrain from sending health-related data and (2) obtain consent from their users before collecting any data. In other words, Google "purposefully acted so as ***not*** to receive any personal health information." *Doe I*, 741 F. Supp. 3d at 840; *see also Briskin*, 2026 WL 161441, at *4–5.

Assuming SkinnyRx had failed to comply with these terms, Plaintiff does not allege that Google condoned or encouraged it or was even aware of this failure. And a bare-bones conclusion that a defendant must have known about a client's failure to disclose is not enough—particularly in the face of allegations and judicially noticeable facts to the contrary. *See, e.g.*, *B.K. v. Desert*

*Care Network*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (dismissing CIPA claim alleging Meta knowingly received data from hospital websites because the complaint alleged no facts showing that Meta knew or intended the data to have been collected without consent); *Doe I*, 741 F. Supp. 3d at 841 (defendant's failure to prevent healthcare providers from using "tracking technologies" would not support intent against the backdrop of defendant's admonitions not to transmit sensitive data). Intent requires "more than mere awareness that an interception might occur due to the failure of the [website] to follow instructions." *Id.* at 840 (mere awareness "set[s] the legal bar too low"). Rather, some "purposeful[] and deliberate[]" misconduct is required—something that Plaintiff has not, and cannot, allege here. *Id.* (quoting *Christensen*, 828 F.3d at 790). In fact, the truth points the opposite direction: Google purposefully and deliberately tried to prevent any misconduct.[3]

### B. One-Party Consent Bars Plaintiff's Federal Wiretap Act Claim.

Aside from Plaintiff's failure to allege the requisite intent, her Wiretap Act claim fails because Lean Rx plainly consented to the use of Google Analytics on the SkinnyRx website.

The Wiretap Act is a one-party consent statute; only one party to the communication must consent to the alleged interception. 18 U.S.C. § 2511(2)(d); *Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *8 (N.D. Cal. Jan. 27, 2026) ("Where 'one of the parties to the communication has given prior consent to such interception,' there can be no violation of ECPA."); *see also Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021). Where, as here, the website developer voluntarily uses analytics software, one-party consent is established. *Doe I*, 741 F. Supp. 3d at 842 (dismissing Wiretap Act claim based on one-party consent where interception "only

[3] To the extent Plaintiff relies on *L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) and *Smith v. Google LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024) to argue that "knowledge" of confidential data collection is enough to allege intent, that argument should be rejected as Plaintiff has not, and cannot, allege that the "purpose" of the technology at issue was to "collect *confidential data*." 2025 WL 2899514, at *13. Website developers—not Google—are tasked with configuring Google Analytics on their websites, and, as explained *supra* at Section IV(A), Google expressly directs developers to not send it health data. "Knowledge" that some web developers fail to follow these instructions, does not support an inference that Google designed its products to purposefully collect confidential data. *Doe I*, 741 F. Supp. 3d at 840 (Plaintiffs "set the legal bar too low" by arguing that "intent only requires awareness that information is likely being transmitted").

occurs because the health care providers choose to install Google source code on their web properties”). Plaintiff makes clear that Lean Rx consented to and voluntarily installed and configured Google Analytics on its website for the very purpose of obtaining insights about user interactions. (Compl. ¶¶ 30, 33, 34, 56.) Indeed, she states directly that Lean Rx “agreed with” Google to collect the data. (*Id.* at 50, ¶¶ 163–165.) This is a complete defense under the ECPA.

Plaintiff may claim that the crime-tort exception to the one-party consent rule applies, but that exception requires allegations that the interception was for a criminal or tortious purpose independent of the alleged interception itself. *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (N.D. Cal. 2024). Plaintiff identifies no such criminal or tortious purpose here. Her allegations that Google violated other state laws are irrelevant as they are not independent of the alleged interception. *See id.*[4] But these allegations center on the same conduct as her other claims, namely, the alleged unauthorized interception of personal information from the SkinnyRx website via pixels. (Compl. at 45–47, ¶¶ 150–154.) Plaintiff alleges that Defendants violated the Confidentiality of Medical Information Act by “plac[ing] cookies as well as us[ing] the Trackers which commanded Plaintiff’s and Class Members’ computing devices to send identifiers and the content of communications with Lean Rx simultaneously to [Meta and Google].” (*Id.* at 46, ¶¶ 150a–c.) She also alleges that Defendants violated CDAFA by using cookies that “redirect their data and the content of their communications with Lean Rx simultaneously to [Meta and Google].” (*Id.* at 47, ¶¶ 152–153.) And she alleges that Plaintiff and class members “did not authorize Defendants to acquire the content of their communications for purposes of invading Plaintiff’s and class Members’ privacy.” (*Id.* at 48, ¶ 157.) Therefore, she has not pled any unlawful purpose that is distinct from the same alleged interception.

The closest she gets to alleging independent purpose is her assertion that Google intercepted the communications for advertising and product improvement purposes, and to provide analytics services. (Compl. ¶¶ 58, 60–62.) Such purposes are insufficient to trigger the crime-tort exception,

[4] Plaintiff does not allege that Google violated HIPAA, 42 U.S.C. § 1320d-6. The paragraphs that allege conduct that violates HIPAA are directed to Lean Rx, not to Google. (Compl. ¶¶ 104–114; *id.* at 45–46, ¶¶ 147–149.)

as allegations that a defendant acted for the purpose of "generat[ing] revenue" through advertising is not criminal or tortious. *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) (dismissing Wiretap Act claim); *see Rodriguez*, 2021 WL 2026726, at *6 n.8 (same). *Pena v. GameStop*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (alleged interception for purpose of advertising did not trigger crime-tort exception since it was not independently actionable or illegal). Accordingly, Lean Rx's consent to the interception by voluntarily installing Google Analytics on its website is a complete defense to the Wiretap Act claim.

### C. Plaintiff's Claim Under CIPA § 631 Fails.

Plaintiff alleges two theories of liability under 631(a): (1) that "Lean Rx aided, agreed with, and conspired with … Google, to track and intercept [her] and Class Members' internet communications while accessing [SkinnyRx] ," (Compl. at 50, ¶ 165), and (2) that Google "use" certain protected information in violation of CIPA (*Id.* at ¶ 103.) Both of these theories require an "underlying third-party violation" under "the first and second clauses of Section 631(a)." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024); *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (unpublished) (Plaintiff's "fourth clause claim fails because she has not established an underlying violation of section 631(a)'s first or second clause"); *In re Google Assistant Privacy Lit.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because Plaintiffs have not done so, they also have failed to plead a violation of the third clause."). As explained further below, Plaintiff has not plausibly alleged a violation under either the first or second clause.

#### 1. Google did not "read, attempt[] to read, learn[] from, and us[e]" while alleged communications were "in transit."

Plaintiff cannot make out a claim under the second clause of section 631(a) because she has not established that Google "read" the "contents" of her communication while the same were in transit.

CIPA does not use the word "intercept," and it is not enough merely to claim that communications were "intercepted." Rather, CIPA section 631 covers "reading" the "contents" of

communication "while it is in transit or passing over any wire" in the State of California. The contents are the substantive import of the communication, while reading refers to efforts to discern that substantive meaning. Taken together, it is insufficient to allege that a defendant merely "obtained" a "communication," the plaintiff must demonstrate that the defendant sought to understand the substantive meaning of those communications while the communications were passing over a wire in this State. Cal. Penal Code § 631(a); *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) (no liability under CIPA where no allegations showed efforts to understand substantive meaning while in transit).

Plaintiff's allegations on this point are lacking. The Complaint offers rote allegations regarding this "in transit" requirement, explaining that the Google Tracking Pixels "read, or, at the very least, attempt to read the user's interactions on the website" "instantaneously and in real time." (Compl. ¶ 87 (emphasis omitted).) Notice the sleight of hand: the allegations relate to Google's Tracking Pixels and what they can purportedly do. The problem is that "Google Tracking Pixels" are not Google—they are a freely available technology allegedly incorporated into the SkinnyRx website—the entity Plaintiff claims she was communicating with. Whether this integrated technology "classified" or "organized" the user's activity is irrelevant. It says nothing about whether and when ***Google*** might have obtained the information.

On the relevant point—Google's actions—the Complaint's allegations expressly contradict any inference that Google reads her communications in transit. To start, she characterizes the transmissions as occurring between SkinnyRx and Google, not between Plaintiff and SkinnyRx. (*Id.* ¶ 88). Further, the allegations make clear that to the extent any reading occurs, it is done after the data reaches Google. Specifically, Plaintiff alleges that "***[o]nce*** Google intercepts website communications, it has the capability to use such information for its own purposes" and that Google "collect[s] visitor information from thousands of websites and then analyz[es] that information[.]" (*Id.* ¶¶ 59–60.) This concession comports with common sense. How could Google "stitch together multiple interactions from multiple webpages" if it did not first receive the data from SkinnyRx and have time to "stitch" those things together? If the allegations amount to magic, they are definitionally implausible.

Judge Chhabria recently evaluated similar allegations concerning the Meta Pixel and, on this basis, concluded that any "reading" of data "indisputably takes place after the communication has already traveled from the website visitor to the website operator." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025). Because "the only commonsense meaning of transit, at least in the context of this statute, is the transit from the person sending the communication to its intended recipient," the plaintiff failed to allege any reading while in transit. *Id.*; *see also*, *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing section 631 claim with prejudice where "there is no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received"); *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025) (dismissing CIPA claim because "Plaintiffs have not shown that [the defendant] attempted to understand . . . the contents of Plaintiffs' communications . . . while [they] were in transit"). Accordingly, the Court should dismiss this claim for this reason as well.[5]

### 2. Google cannot be held liable under CIPA as it is not a "third-party eavesdropper."

Plaintiff also fails to state a claim under the second[6] clause because Google is not a "third-party eavesdropper." Rather, Google is a vendor that Lean Rx contracted with to provide advertising services. Thus, Google is a "party" to Plaintiff's alleged communications with SkinnyRx, not a third-party "eavesdropper," and there can be no CIPA violation. *See Graham v. Noom*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021).

[5] Since Plaintiff does not sufficiently allege for a claim under CIPA that the "in transit" requirement is met with respect to the alleged communications with Google, Plaintiff's Wiretap Act claim also fails on that basis, independent of the one-party consent defense. Courts apply the same analysis under both statutes. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) ("Because [Plaintiff] is unable to allege that [Defendant] intercepted the communications in transit under the CIPA, he is also unable to allege a violation of the Wiretap Act."); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) (applying federal wiretap in transit analysis to CIPA claim).

[6] To the extent Plaintiff contends that its claims are based on the first clause of § 631(a), courts are nearly unanimous that this clause does not apply to internet communications. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756 (N.D. Cal. 2023) (dismissing CIPA 631(a) first clause claim where "Plaintiff accessed Defendant's website using the smartphone's internet capabilities, not the smartphone's telephonic capabilities").

Courts in this district widely recognize that the party exception, which allows a "party to a communication" to record its own communications, to apply to third-party vendors like Google that merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself." *Id.* at 832; *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (finding *Graham* analysis dispositive of CIPA claims where "Plaintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (applying *Graham* to dismiss wiretapping claims against third-party vendor).[7]

Here, Plaintiff has not pled that Google acted as anything more than an extension of Lean Rx. Indeed, her pleading establishes that Google Analytics is ***embedded by website owners*** "[w]hen companies build their websites[.]" (Compl. ¶ 30; *see also id*. ¶ 2 (Lean Rx "installed various tracking technologies on the Website"); *id.* ¶¶ 3, 33; *id.* at 50, ¶¶ 165–66.) Further, her Complaint focuses on the benefits that this tool provides to website owners such as Lean Rx—*i.e.*, that "Google Analytics is a platform that collects data from websites and apps to create reports that provide insights for businesses" and that the Google Analytics Pixel "collects information on how website users interact with a business's website, such as how many users bought an item[.]" (Compl. ¶ 54 (citation modified); *see also id*. ¶¶ 55–58.) None of Plaintiff's allegations suggest that Google acts as anything but a service provider for Lean Rx. Indeed, documents subject to judicial notice confirm that Lean Rx "use[s] Google Analytics to help [it] improve the user experience." (RJN, Ex. D at 6.)

Though Plaintiff alleges, in a generic manner, that Google "has the ***capability*** to use website

[7] *See also Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 946 (S.D. Cal. 2024) (dismissing CIPA claim where third-party vendor "acts as an extension of Peloton, providing a tool that allows Peloton to 'record and analyze its own data in aid of [Peloton's] business'"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023) (third-party software provider was subject to party exception because software functioned more like a tape recorder, given it was not alleged to have harvested data for its own use); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. April 15, 2021) (vendor providing "Event-Triggered Recorder" software was not a thirdparty eavesdropper since it "allows its clients to monitor their website traffic"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (similar); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (vendor not a third-party eavesdropper because it acted "as an extension of the company"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (similar).

communications to: (i) improve its own products and services; (ii) develop new . . . products and services; and (iii) analyze website visitor's communications" (Compl. ¶ 62 (emphasis added)), capability is not enough. While some courts hold that allegations of a vendor's mere "capacity" to use data for its own benefit suffices at the pleading stage, these cases err by failing to consider ordinary agency principles implicit in every California statute. *See Borg-Warner Protective Servs. Corp. v. Super. Ct.*, 75 Cal. App. 4th 1203, 1207–08 (1999). As background, the "capacity" standard arose as a response to defendants' post-*Graham* argument that they must be treated as mere service providers absent allegations of independent data use. *See, e.g., Javier v. Assurance IQ*, LLC, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Courts noted that requiring a use showing would render the Section 631(a)'s third clause—forbidding use of improperly obtained data—superfluous, thus, capacity or "capability" allegations are all that is needed. *Id*. This interpretive problem, however, dissolves under an agency framework: when a vendor acts within the scope of its contractually delegated authority, its conduct is legally the website's own—and a party cannot eavesdrop on its own communications. *See* Cal. Civ. Code § 2330. A service provider like Google exceeds its delegated authority—and may violate CIPA's third clause—only where it acts in ways that were not authorized by the website owner: for example, by making unauthorized connections or improperly reading communications in transit, thus violating clauses 1 or 2 without using any data at all. Under this framework, the interpretive problem that drove *Javier*—that reading a use requirement into the second prong would add requirements not present in the statute and "swallow the third prong in the process"—becomes illusory. *Javier*, 649 F. Supp. 3d at 900.

This agency analysis also harmonizes CIPA with the CCPA, which, unlike CIPA, was specifically crafted by the Legislature to govern online data collection. *See Gutierrez*, 2025 WL 1895315, at *2–3. The CCPA excludes service providers acting within contractual limits from the definition of "third party," *see* Cal. Civ. Code §§ 1798.140(j)(1), (ag), (ai), presupposing that providers could use data independently, but declining to treat them as third parties so long as they stay within those contractual bounds. Reading CIPA to treat such providers as eavesdroppers based solely on "capacity" creates a direct conflict with the CCPA, which must be avoided. *See United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*, 4 Cal. 5th 1082, 1090 (2018).

Therefore, as Plaintiff fails to allege specific facts showing that Google was a third-party eavesdropper that has used Lean Rx data in an unauthorized manner for Google's own purposes, her 631(a) claim must fail.

**D. Plaintiff's CIPA § 632(a) Claim Fails.**

To state a claim under § 632, Plaintiff must show, inter alia, that Google intentionally recorded a "confidential" communication by means of an "amplifying or recording device." *See* Cal. Penal Code § 632. Plaintiff has not satisfied these elements. Google Analytics—a piece of software code—is not a "device" within the meaning of section 632. Further, Plaintiff fails to adequately allege that Google "intentionally" recorded a "confidential" communication.

***Device.*** Plaintiff's section 632 claim fails because she does not allege that Google used an "electronic amplifying or recording ***device***" to allegedly eavesdrop on her communications. (Pen. Code § 632 (emphasis added).) The Complaint alleges that "Trackers are [] 'electronic amplifying or recording device[s].'" (Compl. at 52, ¶ 144.) But software—which is what Google's technology is and how it is described throughout the Complaint— is not a "device" under CIPA.

Courts have repeatedly endorsed this rule. For example, in *In re Google Location History Litigation*, this Court held that Google Chrome is not a "device" under section 637.7 of CIPA because it is software, not physical "equipment." 428 F. Supp. 3d 185, 193–194 (N.D. Cal. 2019); *see also A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *11 (S.D. Cal. Aug. 19, 2024) (dismissing § 632 claim based on recording by software); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) ("Because software does not constitute a 'device' under the CIPA, Plaintiff's § 632 claim against Microsoft is deficient."). That ruling relied on *Moreno v. S.F. Bay Area Rapid Transit District*, which concluded that a mobile application was not a "device" because the term refers to a physical object, within the meaning of section 637.7. The *Moreno* court similarly observed that a device is a "thing," "a piece of mechanical or electronic equipment." 2017 WL 6387764, at *5–6 (N.D. Cal. Dec. 14, 2017); *see also Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (finding software not a "device" under CIPA). The rationale of these decisions applies here, given Plaintiff's allegation that Lean Rx "integrate[s] various third-party scripts [including Google's] into the code of [its] website[.]"

(Compl. ¶ 30.)

This reasoning is also consistent with canons of statutory construction and CIPA's legislative history. ***First***, when interpreting California law, courts look to the "actual words of the statute" and "giv[e] them a plain and commonsense meaning." *In re Google Location Hist. Litig.,* 428 F. Supp. 3d at 193 (quoting *Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*, 14 Cal. 4th 627, 633 (1997)). "If there is no ambiguity in the language, [courts] presume the Legislature meant what it said and the plain meaning of the statute governs." *People v. Snook*, 16 Cal. 4th 1210, 1215 (1997). The plain meaning of "device" refers to a tangible object or machine—something which Google Analytics is not, regardless of the number of times Plaintiff used the word "tracker" in her Complaint. *See In re Google Location Hist. Litig.,* 428 F. Supp. 3d at 193; *see also Device*, Dictionary.Cambridge.org, https://dictionary.cambridge.org/dictionary/English/device (last visited March 31, 2026) (defining "device" as "an object or machine that has been invented for a particular purpose" or "a machine, for example a phone or computer, that can be used to connect to the internet").

***Second***, statutes must be construed in light of the entire statutory scheme, not in isolation. *L.A. Cnty. Metro. Transp. Auth. v. Alameda Produce Mkt., LLC,* 52 Cal. 4th 1100, 1106–07 (2011). In 2015, the Legislature enacted a different CIPA provision, section 638.51, to encompass a "device or ***process***." Pen. Code §§ 638.50(b) (defining a pen register and trap and trace device as a "device or process") (emphasis added), 638.51. Courts applying this provision have held that software qualifies as a "process," rather than a "device." *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024) (same). That the Legislature added "process" to the definitions behind section 638.51 but declined to do so when it amended section 632 a year later (*see* 2016 Cal AB 1671) shows it did not intend for section 632 to apply to software. *See In re Jennings*, 34 Cal. 4th 254, 273 (2004) (omission of a provision from a similar statute is significant evidence of different legislative intent).

***Third***, the Legislature's intent is further clarified by "the traditional canon of construction, noscitur a sociis," which "dictates that 'words grouped in a list should be given related meaning.'" *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (citations omitted). Section 632

prohibits recording of communications "carried on . . . by means of a telegraph, telephone, or other device, except a radio[.]" Penal Code § 632(a). The list that precedes device describes only physical things, further confirming that the Legislature intended the term "device" to refer only to physical equipment.

***Confidential.*** Lastly, Plaintiff does not plausibly allege that her online communications with Lean Rx were "confidential" within the meaning of the statute. Section 632 states that a communication is not "confidential" if it is carried on "in any circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c). Further underscoring this point, any entity known to the parties to be overhearing the conversation is specifically excluded from the definition of "persons" subject to liability under the statute—whether or not that individual obtained consent. *See id.* § 632(b). Plaintiffs' allegations do not meet the specific standard of "confidentiality" because she could reasonably expect her communications to be overheard or recorded. Specifically, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632." *Swarts*, 689 F. Supp. 3d at 746–47 (quoting *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)) (collecting cases). Indeed, there is a "presumption' that such communications do not give rise to the requisite expectation." *Id.* at 747 (quoting *Revitch v. New Moosejaw, Inc.*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019)).

Plaintiff does not rebut that presumption. Instead, she generally points to an image purporting HIPAA compliance at the bottom of the SkinnyRx webpage. (Compl. ¶ 104.) Even assuming Plaintiff scrolled to the bottom of the webpage and saw this image, vaguely referring to HIPAA does not show an expectation that health-related communications will never be overheard or recorded. HIPAA exists *precisely because* health-related communications are often recorded and shared with a variety of third parties involved in the provision of healthcare and related services.[8] While HIPAA violations may give rise to a host of causes of action, a healthcare provider's

[8] *See* Summary of the HIPAA Privacy Rule, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html#who (detailing circumstances in which medical information may be shared without consent).

disclosure of health information to a third-party (against that third-party's instructions) does not turn that third-party into an "eavesdropper" under CIPA.

### E. Plaintiff Cannot State a Claim Under CDAFA.

CDAFA prohibits "knowingly accessing, and without permission, using any data, computer, computer systems, or computer network" in certain prohibited ways. Cal. Pen. Code § 502. Plaintiff fails to state a claim under any of the CDAFA subsections she invokes for two reasons. ***First***, to have standing under CDAFA as a private plaintiff, the complaint must plausibly allege "damage or loss" "by reason of" conduct that violates CDAFA. Cal. Penal Code § 502(e)(1). The complaint fails to allege this crucial element. ***Second***, she has failed to allege all of the necessary elements of the multiple CDAFA subsections she invokes.

***Damage.*** Plaintiff does not allege a cognizable "damage or loss" that gives her standing to recover damages under the statute. Cal. Penal Code § 502(e)(1). Allegations of an invasion of statutory rights are not sufficient, nor are allegations of mere loss of control or diminution in value of personal data. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081–82 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (affirming rejection of CDAFA claim based on "loss of the right to control their own data, the loss of the value of their data"); *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236 , at *6 (N.D. Cal. Mar. 26, 2013) (CDAFA claim requires "damage or loss, beyond the mere invasion of statutory rights."); *Heiting v. Taro Pharmaceuticals*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) ("[T]he Court agrees with the majority of courts to consider the issue, and finds that the CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website."). This is precisely the type of harm alleged. (Compl. at 47, ¶¶ 151–154, *id.* at 53, ¶ 151.) (alleging loss due to diminution in value of protected health information and loss of privacy and control over communications with healthcare providers).

Plaintiff also alleges that Defendants use Plaintiff's and the class's data for advertising and profit from it, but this does not state a claim under CDAFA either. (Compl. at 56, ¶¶ 167–170.) Merely alleging that Defendants have profited from Plaintiff's data does not equate to Plaintiff

having "lost money or property" as a result of conduct violating CDAFA for the purpose of statutory standing. *See McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) ("The Court continues to be skeptical of the plaintiffs' theory that California's statutory standing requirement for these claims can be satisfied simply by alleging that the defendant was unjustly enriched by the misappropriation of personal information."); *In re Facebook Consumer Privacy Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. Sept. 9, 2019) ("[A]lthough it's true that each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information, when not disclosed, has independent economic value to an individual user."). Plaintiff makes no allegations that bridge the gap.

***Other pleading deficiencies.*** Plaintiff broadly invokes every subsection of CDAFA, however, she fails to allege facts supporting each of their elements. As to CDAFA subsection 502(c)(4), Plaintiff alleges no *facts* showing that Google "add[ed], alter[ed], damage[d], delete[d], or destroy[ed]" any data or computer program. *See* Compl. at 56, ¶ 166; *Ticketmaster LLC v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. May 29, 2018) (dismissing subsection 502(c)(4) claim where allegation "merely track[ed] the language of the statute itself, without providing facts"). And, as to CDAFA subsection 502(c)(8), Plaintiff's conclusory allegations do nothing more than mirror the statutory definition, which prohibits introduction of a "computer contaminant," *Compare* Compl. at 55–56, ¶ 165 *with* Cal. Penal Code § 502(b)(12); *see Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *18 (N.D. Cal. Apr. 4, 2019) (rejecting "conclusory, element-mirroring allegation"); *Ticketmaster*, 315 F. Supp. 3d at 1175. Plaintiff does not explain how Google Anlaytics "self-propagate[s]," (Compl. at 55, ¶ 165), especially given her allegations that it was Lean Rx that chose to incorporate it on the SkinnyRx website (*see id.* ¶¶ 33–34). Nor does Plaintiff present any allegations that plausibly establish that Google Analytics is comparable to the "viruses," "worms," and "other malware" that subsection 502(c)(8) is designed to address. *See* Cal. Penal Code § 502(b)(12); *Meta Platforms, Inc.*, 690 F. Supp. 3d at 1083. Plaintiff's CDAFA claim should be dismissed.

**F. Plaintiff's Invasion of Privacy Claim Fails.**

Plaintiff has not come anywhere close to meeting the "high bar" for an invasion of privacy

claim. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). To state a claim for invasion of privacy, a plaintiff must allege (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) highly offensive conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994). Plaintiff's allegations do not support these elements. This claim should be dismissed.

**1. Plaintiff has not alleged a legally protected privacy interest that Google invaded.**

Plaintiff's invasion of privacy claim is premised on sweeping, general allegations untethered to any assertion that her own medical or health information was actually shared with Google. But "[a] privacy interest needs to be pled with particularity" and "[i]t is not enough to say that a defendant had the ability to invade someone's privacy; a plaintiff needs to demonstrate that a defendant invaded their interests[.]" *Westron v. Zoom Video Comm'ns*, 2023 WL 3149262, at *2 (N.D. Cal. Feb. 15, 2023) (emphasis added). Where a plaintiff "makes vague allegations that [her communications] *could* include private information and that users 'often' share sensitive information," this is insufficient to allege a legally protected privacy interest. *Jones v. Peloton Interactive, Inc.*, 2024 WL 1123237, at *7 (S.D. Cal. Mar. 12, 2024) (emphasis added) (citations omitted). Bare allegations that personal or sensitive medical data was shared do not necessarily mean that a plaintiff has pleaded a legally protected privacy interest, if the plaintiff otherwise fails to include sufficient factual support. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123–24 (S.D. Cal. July 12, 2023) ("Plaintiffs' overarching theory of their case, underlying all claims, is that Defendant collected patients' personal and sensitive medical information on Sharp's website and that this information was then improperly shared with Meta without patients' consent. However, Plaintiffs fail to factually explain their personal participation in any of this."); *see also Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) (plaintiff lacked a legally protectable privacy interest for standing purposes where plaintiff alleged only searches of health-related terms on the defendant's website).

Plaintiff's allegations about her own use of the website are not sufficient to state an invasion

of privacy claim because she does not allege facts supporting an invasion of her legally protected privacy interest. Plaintiff broadly alleges that Defendants have intercepted unspecified "private and personally identifiable information, including information regarding her medical condition, history, or treatment," and that Google "intercepted information about the prescription medications Plaintiff ordered through the Website[.]" (Compl. ¶ 11.) But she does not allege that any particular medical diagnosis or medical history information she shared with Lean Rx was transmitted to Google, or what "information" about the prescription medications she ordered was allegedly shared. At most, she alleges that Google Analytics received (1) shipping and contact information related to the checkout process, and (2) that an individual began or went through the checkout process. (*Id.* ¶¶ 90–102.) But she fails to allege that actual health information was transmitted, because it is not until after the checkout process has been completed that a prescription is issued. (*Id.* ¶ 16 ("[O]nce a 'SkinnyRx licensed medical provider' has reviewed consumers' 'intake form[s] *after checkout* to confirm [their] eligibility,' the prescribed medication is shipped overnight directly to consumers.") (emphasis added).) Plaintiff does not allege that Google received this post-checkout information about her, that is, information showing that she was, in fact, *prescribed* Semaglutide. Without allegations that her sensitive health information has been disclosed, Plaintiff's allegation that she has a legally protected privacy interest fails.

#### 2. Plaintiff has no reasonable expectation of privacy over website browsing information.

Plaintiff's invasion of privacy claim also fails because she does not allege a reasonable expectation of privacy under the circumstances. To analyze the reasonable expectation of privacy in cases challenging data collection practices, courts consider factors including "the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Courts have recognized that not all of the information transmitted over the internet or records of internet activity are subject to a reasonable expectation of privacy. Generally speaking, "consumers do not have a reasonable expectation of privacy over their activity" on public commercial websites, because we "understand that what we do on the Internet is not completely

private." *Id.* at *2 (internal quotations omitted); *see D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10-*11 (S.D. Cal. Oct. 24, 2023) (stating "accepted community norms around conversations [on] . . . (a commercial website for selling merchandise) point away from a reasonable expectation of privacy"); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) ("URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities" are not the types of information in which plaintiffs could have "a reasonable expectation of privacy."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (no reasonable expectation of privacy in IP addresses); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (no reasonable expectation of privacy for basic contact information such as phone number and email).

Again, the allegation that Google receives some unspecified "information about the prescription medications Plaintiff ordered," without more, does not show that she had a reasonable expectation of privacy over that information. (Compl. ¶ 11.) Information "about the prescription medications that Plaintiff ordered" could include simply that Plaintiff clicked on an article about the medication, clicked on or viewed the product page, or searched for it on the website. Such website interactions do not come with a reasonable expectation of privacy. *Saeedy*, 2023 WL 8828852, at *4. And she does not allege that Google intercepted a communication that she was ultimately prescribed Semaglutide after going through the checkout process, because none of her allegations about how the website works extend past that point. (*See* Compl. ¶¶ 16, 25–34, 90–102.) To the extent that Plaintiff's allegation is that Google Analytics enables Google to collect information like device identifiers; IP addresses; URLs; the user's date of birth, name, and shipping address; and medication the user is attempting to buy (as opposed to medication they were actually prescribed), this does not support a reasonable expectation of privacy. (*Id.* ¶¶ 63, 72, 84.)

Moreover, a reasonable expectation of privacy is lacking where "Plaintiffs do not allege that Defendant set out an expectation that it would not collect" the challenged data. *D'Angelo*, 2023 WL 7006793, at *17. Plaintiff's allegations show the opposite, that is, that Google discloses the exact data collection practices at issue, including that data may be used for advertising purposes:

"Google uses the information shared by sites and apps to deliver [] services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on [] partners' sites and apps." (Compl. ¶ 59, n.38 (citing Google's Privacy and Terms, https://policies.google.com/technologies/partner-sites).) Even more information is disclosed at the link at footnote 38: "Many websites and apps use Google services to improve their content and keep it free. When they integrate our services, these sites and apps share information with Google. For example, when you visit a website that uses advertising services like AdSense, including analytics tools like Google Analytics . . . your web browser automatically sends certain information to Google. This includes the URL of the page you're visiting and your IP address." Thus, Google's disclosure of the challenged data collection and subsequent use for advertising as pleaded in the complaint further diminishes Plaintiff's reasonable expectation of privacy.

**3. Plaintiff has not alleged highly offensive conduct, as opposed to routine commercial activity.**

"Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. To count as "highly offensive," an intrusion must constitute an "egregious breach of the social norms underlying the privacy right." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill*, 7 Cal. 4th at 26, 37). This high standard requires more than mere "disclosure of personal information," even if sensitive information like social security numbers was allegedly disclosed. *Low*, 900 F. Supp. 2d at 1025. Indeed, merely alleging that "private medical information" was disclosed is not enough on its own to survive a motion to dismiss. *Ojeda v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022) (disclosure of Covid vaccination status was not highly offensive without additional factual allegations about the circumstances of the disclosure); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (dismissing privacy claims with insufficient allegations about what specific medical information was disclosed).

Courts consistently recognize that "routine commercial behavior" is not highly offensive

for the purpose of an invasion of privacy claim. *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011). For example, in *Fogelstrom*, the plaintiff alleged non-consented collection of personal information, which was then used to generate a mailing list for defendant to use to send marketing materials. *Id.* The *Fogelstrom* court found that this was not "an egregious breach of social norms underlying the privacy right"; rather, it was "routine commercial behavior." *Id.* Similarly, in *Yunker v. Pandora Media, Inc.*, the court found allegations that defendant "Pandora obtained the plaintiff's PII and provided that information to advertising libraries for marketing purposes" to be "similar to the allegations in . . . *Fogelstrom.*" 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013).

As described above, *supra* at Subsection IV(F)(1), Plaintiff fails to allege what specific medical information of hers was disclosed to Google that constituted an "egregious breach" of social norms, as opposed to non-highly-offensive "routine medical searches and inquiries," *Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1067, or internet browsing and device activity. *In re iPhone Application Litig.,* 844 F. Supp. 2d at 1063 (holding that the disclosure to third parties of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy sufficient to prove a serious invasion of a privacy interest). The conduct alleged here is the same "routine commercial behavior" that the *Fogelstrom* and *Yunker* courts did not consider to be highly offensive. Like in *Fogelstrom*, Plaintiff's allegations concern Google's collection of personal information, allegedly without consent, which was then used by the defendant to target advertisements. (Compl. ¶¶ 34, 60, 61, 84, 103.) Therefore, the same finding of non-offensiveness is dictated here.

Finally, when assessing highly offensive conduct courts take into account the "intruder's motives and objectives," among other factors. *Cousin*, 681 F. Supp. 3d at 1126. As discussed *supra* at Section IV(A), Plaintiffs allegations do not come close to plausibly alleging that Google intentionally intercepted, read, used, or received sensitive health information. Indeed, the Google Analytics terms and conditions *prohibit* web developers from sending that type of information. (*Id.*; *see* RJN Ex. B.) Google's alleged conduct is therefore not highly offensive on the face of the pleadings and materials of which the court can take judicial notice.

Accordingly, Plaintiff's invasion of privacy claim fails on all three elements and must be dismissed.

## V. CONCLUSION

For the foregoing reasons, Plaintiff has failed to plausibly allege each and every element of her Wiretap Act, CIPA, CDAFA, and invasion of privacy claims. All of them should be dismissed.

Dated: March 31, 2026

COOLEY LLP

By: */s/ Joshua Anderson*
Joshua Anderson

Attorneys for Defendant
Google LLC

333827199