LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine Anne Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
Maria Huryn (Bar No. 353520)
*maria.huryn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ANNA BUCHHOLZ, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,

Defendants.

Case No. 5:26-cv-00846-EJD

**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing: July 23, 2026
Time: 9:00 a.m.
Location: Courtroom 4—5th Floor
Judge: Hon. Edward J. Davila

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on July 23, 2026 at 9:00 a.m., before the Honorable Edward J. Davila, United States District Court, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move for an order dismissing Plaintiff Anna Buchholz's ("Plaintiff") Class Action Complaint ("Compl.") (Dkt. 1) for failure to state a claim under Rule 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss the Class Action Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: March 31, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine Anne Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
Maria Huryn (Bar No. 353520)
*maria.huryn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Meta Pixel Code ..... 3

B. Meta's Terms And Policies ..... 3

1. Meta's Disclosures Regarding Receipt Of User Data ..... 3

2. Meta's Business Tools Terms ..... 4

C. The SkinnyRx Website ..... 5

D. This Lawsuit ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 6

A. All Of Plaintiff's Claims Fail Because She Consented To Meta's Receipt Of Information About Her Interactions With Third-Party Websites ..... 7

B. Plaintiff's Wiretap Act And CIPA Claims Fail Because She Does Not Allege That Meta Acted With The Requisite Intent ..... 10

C. Plaintiff's Claims All Fail For Additional Reasons ..... 13

1. Plaintiff's Wiretap Act Claim Against Meta Should Be Dismissed ..... 13

2. Plaintiff's CIPA Section 631 Claim Against Meta Should Be Dismissed ..... 17

3. Plaintiff's CIPA Section 632 Claim Against Meta Should Be Dismissed ..... 18

4. Plaintiff's CDAFA Claim Against Meta Should Be Dismissed ..... 21

D. Under Plaintiff's Erroneous Interpretations Of The Wiretap Act, CIPA, And CDAFA, Those Statutes Are So Capacious They Fail To Give Fair Notice ..... 24

V. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Pages**

### CASES

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).... 6, 12

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024).... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).... 6

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .... 19, 20

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .... 22

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .... 23

*Canyon Ferry Rd. Baptist Church, Inc. v. Unsworth*,
556 F.3d 1021 (9th Cir. 2009) .... 25

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .... 24

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .... 17

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .... 22

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
2026 WL 815823 (U.S. Mar. 25, 2026).... 11

*Davis v. Fresno Unified Sch. Dist.*,
14 Cal. 5th 671 (2023) .... 20

*Doe v. County of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024).... 22

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .... passim

*Doe v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ... 11

*Doe v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ... 12, 17, 22, 24

*F.B.T. Prods., LLC v. Aftermath Recs.*,
621 F.3d 958 (9th Cir. 2010) ... 9

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ... 22

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ... 25

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ... 9, 10

*Hauck v. Advanced Micro Devices, Inc.*,
2019 WL 1493356 (N.D. Cal. Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020) ... 10, 24

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ... 21, 22

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ... 17

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ... 16, 17, 20

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ... 13, 14, 16

*Konop v. Haw. Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ... 15

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ... passim

*Libman v. Apple Inc.*,
2024 WL 4314791 (N.D. Cal. Sep. 26, 2024) ... 17

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) ... 9

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ........................................................................................ 11

*Meta Platforms, Inc. v. Nguyen*,
2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) ................................................................ 8

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ........................................................................................ 7

*Moreno v. S.F. BART Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)................................................................ 16, 17

*Moss v. ResortPass, Inc.*,
2025 WL 3452360 (Cal. Super. Ct. Oct. 30, 2025) ........................................................ 20

*People v. Braden*,
14 Cal. 5th 791 (2023) ................................................................................................... 20

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ........................................................................................ 19

*People v. Hyatt*,
109 Cal. App. 5th 735 (2025) ........................................................................................ 7

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) ........................................................................................ 19

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........................................................................................ 13, 14

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023)................................................................. 21

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)................................................................. 18

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021)................................................. 13, 14, 16, 19

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023) .......................................................................................... 7

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ......................................................................... 22

*Skilling v. United States*,
561 U.S. 358 (2010)....................................................................................................... 7, 25

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ...................................................................................... 8, 9

*Smith v. Google LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 12

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 19

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) ........ 21

*Sussman v. ABC, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 13

*Taniguchi v. Kan Pac. Saipan Ltd.*,
566 U.S. 560 (2012) ........ 16, 20

*Ticketmaster LLC v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. May 29, 2018) ........ 24

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 16, 22

*Turner v. Apple Inc.*,
2025 WL 1953697 (N.D. Cal. July 16, 2025) ........ 7

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 10

*United States v. Millis*,
621 F.3d 914 (9th Cir. 2010) ........ 25

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 15, 18

*Vita v. New Eng. Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) ........ 25

*Weston v. Lefiti*,
2024 WL 4579237 (9th Cir. Oct. 25, 2024) ........ 7, 14

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) ........ 17

## STATUTES

18 U.S.C. § 2510(4) ........ 14, 15

18 U.S.C. § 2511(1) ........ passim

18 U.S.C. § 2511(1)(a) ........ 14

18 U.S.C. § 2511(1)(d) .......... 15
18 U.S.C. § 2511(2)(d) .......... 7, 13, 16
18 U.S.C. § 2511(b) .......... 16
Cal. Civ. Code § 56.05 .......... 14
Cal. Civ. Code § 56.06 .......... 14
Cal. Penal Code § 502 .......... 2
Cal. Penal Code § 502(b)(12) .......... 22, 24
Cal. Penal Code § 502(c)(2) .......... 21, 22, 23, 25
Cal. Penal Code § 502(c)(3) .......... 21, 23
Cal. Penal Code § 502(c)(4) .......... passim
Cal. Penal Code § 502(c)(6) .......... 21, 22, 24
Cal. Penal Code § 502(c)(7) .......... 22, 23, 25
Cal. Penal Code § 502(c)(8) .......... 22, 23, 24
Cal. Penal Code § 502(e)(1) .......... 21
Cal. Penal Code § 631 .......... passim
Cal. Penal Code § 631(a) .......... 17, 18
Cal. Penal Code § 632 .......... passim
Cal. Penal Code § 632(a) .......... 20
Cal. Penal Code § 632(c) .......... 19

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 6

## I. INTRODUCTION

Plaintiff Anna Buchholz seeks to hold Meta responsible for a third-party website's decision to send data associated with visitors' purchase orders to Meta. To do so, Plaintiff relies on decades-old criminal statutes designed to address wiretapping, eavesdropping, and computer hacking. This Court should not "contort [itself] to fit" Meta's alleged receipt of information from a third party—through common analytics technology—into statutes that were drafted to address starkly different conduct. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025).

Meta makes "Pixel" computer code publicly available to web developers so they can improve their services and better understand and reach their users, including through advertising. Web developers alone choose whether and how to incorporate Pixel code into their websites. And in order to use the code, developers must agree to Meta's Business Tools Terms, which require them to provide users with "robust and sufficiently prominent notice" that Meta may receive information from the website and to obtain all rights and permissions to disclose the data they send to Meta. Ex. 9 at 1-2. Developers also "represent and warrant" that they will not share "sensitive" or "health" information with Meta. *Id.* at 1. And Meta discloses clearly and directly to Facebook and Instagram users (including Plaintiff) that third-party websites may use Pixel code to send Meta information about users' online activities, specifically including "[p]urchases and transactions," and that this information may be used for advertising. Ex. 7 at 5-6.

Despite these disclosures and Meta's restrictions on developers, Plaintiff now alleges that Meta violated the federal Wiretap Act, the California Invasion of Privacy Act (CIPA), and the California Comprehensive Computer Data Access and Fraud Act (CDAFA) because Defendant *LeanRx* allegedly incorporated Pixel code onto its website, SkinnyRx.com, and sent Meta information about Plaintiff's purchase of weight-loss medication. Plaintiff's complaint suffers from numerous defects and should be dismissed.

*First*, consent bars all of Plaintiff's claims. As a Facebook user, Plaintiff agreed to Meta's Privacy and Cookies Policies, which clearly disclose that Meta may receive information about users' activities on third-party websites. In fact, those policies state that websites may transmit information about visitors' "[p]urchases and transactions" to Meta through Pixel code, and that

Meta may use the information it receives to "serve and measure ads." Ex. 7 at 5-6; Ex. 8 at 3. That is precisely the conduct challenged here, and Plaintiff's consent to it forecloses her claims.

*Second*, Plaintiff's Wiretap Act and CIPA claims fail because Plaintiff does not allege that Meta acted with the requisite *intent* to "intercept" her allegedly sensitive communications, "read" or "learn" their contents while they were "in transit," or "use" a device to record them, as the statutes require. Instead, Plaintiff alleges that the *web developer*—LeanRx—chose to incorporate Pixel code and determined what information to send to Meta. And Meta's policies prohibiting transmission of sensitive data confirm that Meta did *not* intend even to receive such information—let alone intercept or record it.

*Third*, Plaintiff's claims fail for a host of other reasons that reflect a fundamental disconnect between the criminal statutes Plaintiff invokes and the conduct she alleges. As one example, each of Plaintiff's claims requires specific, affirmative conduct—like reading or learning the contents of communications in transit, using a device to record a communication, or knowingly "accessing" a computer. *See* Cal. Penal Code §§ 631, 632, 502; 18 U.S.C. § 2511(1). But Plaintiff alleges that Meta engaged in *different* conduct—specifically, that Meta made Pixel code generally available for *third parties* to use and that Meta *received* information that third parties chose to send. None of the statutes at issue prohibits Meta's alleged conduct. As another example, Plaintiff's Wiretap Act and CIPA Section 632 claims require use of a "device," *see* Cal. Penal Code § 632; 18 U.S.C. § 2511(1); *id.* § 2510(4)-(5)—a term that does not encompass intangible source code like the Pixel. And each claim suffers from numerous additional defects.

*Finally*, to the extent there is any ambiguity, the criminal statutes Plaintiff relies on must be narrowly construed in Meta's favor. Plaintiff seeks to hold Meta liable for receiving data a third party chose to send. That makes Meta's liability turn not on any affirmative conduct taken by Meta, but instead on the conduct of a third party. Applying the statutes as broadly as Plaintiff urges would not afford Meta fair notice of the conduct they prohibit, and they would therefore be unconstitutionally vague. As another court in this district recognized in rejecting similar claims, using a legitimate technology to "perform data analytics for web traffic is worlds different from wiretapping and eavesdropping." *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1119. And here, Meta

is a step *further* removed because it was LeanRx, not Meta, that chose to incorporate and configure Pixel code to send allegedly sensitive data in the first place. This Court should reject Plaintiff's attempts to inflate the scope of the statutes she relies on and dismiss her claims with prejudice.

## II. BACKGROUND[1]

### A. Meta Pixel Code

Meta Pixel code is publicly available computer code that many businesses choose to integrate into their websites. Compl. ¶¶ 30, 41, 43. Web developers can use Pixel code to better understand how users interact with their websites by configuring it to send data associated with certain user actions, called "events," to Meta. *Id.* ¶¶ 41-43. Web developers can then view and analyze that data in order to improve their products and advertising. *Id.* ¶¶ 41-43, 93; Ex. 1 at 1.

Web developers, not Meta, decide whether to incorporate Pixel code and where to place it on their websites. Compl. ¶¶ 43-44; Ex. 3 at 3 (developers need to add Pixel code "for every page [they] want to track"). And web developers decide what user actions they would like to measure. *See* Compl. ¶¶ 42-43. They may choose from "a menu of 'standard events,'" which reflect common user actions, or they may "create their own tracking parameters" by measuring "custom event[s]" more tailored to their business needs. *Id.* ¶ 42. The guidance that Meta provides to developers describes how to configure Pixel code "to restrict the data sent" and "to not send" certain information. Ex. 4 at 8-10.

### B. Meta's Terms And Policies

Meta publishes terms and policies to which all Facebook users, like Plaintiff, must agree. *See* Compl. ¶ 12. Those policies disclose Meta's receipt of information from third-party websites. Meta separately publishes terms that restrict web developers from using Pixel code to send health or sensitive data to Meta.

#### 1. Meta's Disclosures Regarding Receipt Of User Data

***Terms of Service.*** Meta's Terms of Service govern its relationship with Facebook users

---

[1] Unless otherwise noted, internal citations are omitted and emphasis is added. The facts recited here are based on the complaint's allegations and accepted as true only for purposes of this motion.

like Plaintiff. *See* Compl. ¶ 12; Ex. 5. The Terms explain that Meta does not charge users for its services. Ex. 6 at 1.[2] Instead, "businesses . . . pay us to show you ads for their products and services." *Id.* The Terms state that "[b]y using our Products, you agree that we can show you ads that we think may be relevant to you." *Id.* The Terms also incorporate Meta's Privacy Policy, noting that it "explains how we collect and use your personal data to determine some of the ads you see." *Id.*

***Privacy Policy.*** Meta's Privacy Policy explains that third-party businesses send data to Meta, including information about the "[w]ebsites you visit" and "[p]urchases and transactions you make off of our Products." Ex. 7 at 5-6. It notes that businesses may send this information using "Meta Pixel" code. *Id.* And it states that Meta uses the information it receives and "cookies" to "match your activities with your account." *Id.* at 6. The policy also makes clear that Meta uses data related to user "activity on and off our Products, including information we receive through cookies and similar technologies," to deliver personalized advertising. *Id.* at 16. The Privacy Policy incorporates Meta's Cookies Policy. *E.g.*, *id.* at 13, 60.

***Cookies Policy.*** Meta's Cookies Policy reiterates that businesses may use "Meta Pixel" code to send Meta information about "your interactions with them." Ex. 8 at 9. It explains that cookies allow Meta to "understand the information that we receive about you, including information about your use of other websites and apps." *Id.* at 1. It also discloses that Meta uses cookies "to help us show ads." *Id.* at 2; *see also id.* at 1-4, 9.

### 2. Meta's Business Tools Terms

Meta separately maintains Business Tools Terms that bind the web developers that use Pixel code. *See* Ex. 9 at 1. The Business Tools Terms require developers to "represent and warrant" that they have "provided robust and sufficiently prominent notice to users" regarding their use of

---

[2] References to Meta's terms and policies are to the versions in effect in fall 2025, when Plaintiff alleges she accessed the SkinnyRx website. Compl. ¶ 11; *see* Ex. 6 at 8 ("Once any updated Terms are in effect, you will be bound by them if you continue to access or use our Products."); Compl. ¶ 12 (Plaintiff "routinely logged onto" her "active Facebook and Instagram accounts").

Pixel code, including "a clear and prominent notice on each web page where [Meta's] pixels are used." *Id.* at 2. The Business Tools Terms also require businesses to affirm that they have all "necessary rights and permissions and a lawful basis" to send data using Pixel code. *Id.* at 1. And they expressly prohibit developers from configuring Pixel code to send "health," "financial," or "sensitive" information. *Id.*

### C. The SkinnyRx Website

Defendant LeanRx operates the SkinnyRx website, which allows visitors to place purchase orders for weight-loss medications. Compl. ¶¶ 2, 16, 29. After a visitor places an order, a medical provider reviews the information the visitor submitted and determines whether to issue a prescription. *Id.* ¶¶ 16, 29. If approved, LeanRx ships the medication to the website visitor. *See id.*

The SkinnyRx website publishes disclosures about its use of analytics technologies like Pixel code. The footer of each page of the website states that LeanRx uses data associated with visits to the website "for third-party advertising purposes, including but not limited to targeted advertising on platforms such as Facebook, Google, and other similar sites." *E.g.*, Ex. 10 at 9. The SkinnyRx Privacy Policy in effect when Plaintiff used the website similarly states that the website uses "cookies and tracking technologies," including "pixels," to "provide analytical information about the user experience and help us customize our marketing activities." Ex. 11 at 3-4. It further explains that LeanRx "may disclose information to third parties or allow third parties to directly collect information using these technologies on our Website," including "social media companies" and "companies that provide analytics including ad tracking and reporting." *Id.* at 4.

### D. This Lawsuit

Plaintiff Buchholz alleges that LeanRx "chose to include" Pixel code on the SkinnyRx website and configured it to send information to Meta. Compl. ¶¶ 44, 72. Specifically, Plaintiff alleges that LeanRx sent Meta a "description of the type of medication [a SkinnyRx visitor] is seeking" through a URL that included the medication's name. *Id.* ¶¶ 72, 83. She asserts that LeanRx also sent contact information that visitors entered before placing an order and the visitor's Facebook ID—an "identifier that Facebook assigns to each user." *Id.* ¶¶ 73, 83, 90-91. Plaintiff alleges that Meta "receive[d], analyze[d], and use[d]" that information for "marketing and data

analytics," *id.* ¶ 18, including by "match[ing]" the information with the visitor who placed the order and delivering targeted ads for weight-loss treatments on Facebook and Instagram, *id.* ¶¶ 102-03. Although the complaint includes several conclusory references to information associated with booking a medical appointment or "health intake" information, it does not allege what information this would have included, how it would have been sent to Meta, or whether any such information was sent *about Plaintiff*. *See id.* ¶¶ 68-69, 109, Count I ¶ 154.d, Count II ¶ 168.[3]

Plaintiff alleges that she accessed the SkinnyRx website in fall 2025 and that LeanRx "sent" Meta "event data" reflecting her purchase order for semaglutide, a weight-loss drug. *See id.* ¶¶ 11, 72, 83. She alleges that she did not consent to and was "never provided with any written notice" of data transmission from the SkinnyRx website. *Id.* ¶ 86. And she asserts that she received "advertisements relating to weight loss medications and hormone treatments" after she placed her order. *Id.* ¶ 11. Plaintiff alleges that she is an "active" Facebook and Instagram user. *Id.* ¶ 12.

Plaintiff brings claims against Meta under the federal Wiretap Act (Count I), CIPA Sections 631 and 632 (Counts II and III), and CDAFA (Count IV).[4]

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff may not rely on "conclusory allegations of law," *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004), and a court must "draw on its judicial experience and common sense" when evaluating the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. ARGUMENT

Plaintiff's claims suffer from numerous defects and should be dismissed. All of Plaintiff's claims fail because Plaintiff consented to Meta's receipt of information about her online activity, expressly including purchase information, by agreeing to Meta's policies. Plaintiff's Wiretap Act

---

[3] The complaint includes certain paragraph numbers more than once. For clarity, Meta specifies the relevant Count in those circumstances.

[4] Plaintiff also brings a claim for invasion of privacy against LeanRx alone (Count V).

and CIPA claims fail because she cannot plausibly allege that Meta acted with the requisite mens rea to engage in the conduct those statutes prohibit—namely, that Meta acted *intentionally* to "intercept," "read" or "learn" in transit, or "use" a device to record any sensitive data. And each of Plaintiff's claims suffers from other defects that independently require dismissal. To the extent there is any ambiguity in the statutes Plaintiff invokes, both principles of lenity and constitutional avoidance require a narrow construction. *See People v. Hyatt*, 109 Cal. App. 5th 735, 793-94 (2025) (lenity); *Skilling v. United States*, 561 U.S. 358, 405-06 (2010) (constitutional avoidance); *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118 & n.9 (recognizing both sets of principles may apply to CIPA in this context).

### A. All Of Plaintiff's Claims Fail Because She Consented To Meta's Receipt Of Information About Her Interactions With Third-Party Websites

Consent defeats liability under each of the statutes Plaintiff invokes, and Plaintiff bears the burden to allege *facts* showing that she did not consent to the data transmission she challenges. *See* Cal. Penal Code §§ 631, 632 (prohibiting certain acts "without the consent of all parties"); *id.* § 502(b)(12), (c) (prohibiting certain acts "without permission"); 18 U.S.C. § 2511(2)(d) (no Wiretap Act violation "where one of the parties to the communication has given prior consent"); *see also Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 889 (2023) (CIPA Section 632); *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *3-4, *11 & n.9 (N.D. Cal. Oct. 10, 2025) (Davila, J.) (Wiretap Act and CIPA Sections 631 and 632); *Turner v. Apple Inc.*, 2025 WL 1953697, at *3 (N.D. Cal. July 16, 2025) (Davila, J.) (CDAFA). Further, even where consent is an affirmative defense, dismissal is appropriate where a plaintiff's consent is "obvious on the face of a complaint" or from judicially noticeable materials. *Weston v. Lefiti*, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024); *see Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

Plaintiff's allegations demonstrate that she consented to Meta's receipt of information about her purchase activity on the SkinnyRx website. Plaintiff alleges that she is an active Facebook user. Compl. ¶ 12. And, as the Facebook sign-up page referenced in the complaint shows, Facebook users like Plaintiff must agree to Meta's Terms of Service, Privacy Policy, and Cookies Policy. Ex. 5 (cited at Compl. ¶ 37 n.13) ("By clicking Sign Up, you agree to our Terms,

Privacy Policy and Cookies Policy."); *see also, e.g.*, *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21, 2023) ("All Facebook users must agree to its Terms of Service . . . and other rules that govern access to, and use of Facebook.").[5]

These policies clearly and specifically disclose the conduct Plaintiff challenges. Plaintiff alleges that Meta received information about the products she purchased on the SkinnyRx website, along with identifiers; that the information was "match[ed]" to Facebook profiles; and that LeanRx and Meta used that information for "analytics" and "advertisements." Compl. ¶¶ 72-83, 93. Meta's policies disclose that exact conduct. Meta's Privacy Policy explains that Meta receives information "about things you do" on "other websites you visit," including about "[p]urchases and transactions you make off of our Products." Ex. 7 at 2-3, 5-6. The Privacy Policy further discloses that Meta receives this data through "Meta Pixel" code and that cookies allow Meta to "match [a user's] activities with [their] account." *Id.* at 5-6. And the Privacy Policy explains that Meta uses the data it receives to provide "measurement and analytics services" to its partners, as well as "to show [users] ads." *Id.* at 16, 18-19; *see also id.* at 59-60 ("We'll use information that advertisers, businesses and other partners provide us about activity off Meta Company Products that we have associated with you to personalize ads . . . ."). Meta's Privacy Policy also directs users to Meta's Cookies Policy, *e.g.*, *id.* at 60, which explains that Meta "uses cookies and receives information" from third-party websites "that incorporate Meta technologies," including "information about your use of other websites and apps." Ex. 8 at 1, 5. Like the Privacy Policy, the Cookies Policy makes clear that cookies are used for targeted advertising. *Id.* at 2-3, 9. In fact, Plaintiff herself cites the Cookies Policy to describe this technology. *See* Compl. ¶¶ 76-81; Ex. 8 at 4-5 (describing cookies used for advertising). These disclosures map directly onto the conduct Plaintiff challenges and foreclose her claims.

The Ninth Circuit has twice recognized that Meta's disclosures establish Facebook users' consent to Meta's receipt of data associated with their online activity. In *Smith v. Facebook, Inc.*,

---

[5] Plaintiff also alleges she is an Instagram user, Compl. ¶ 12, so she also agreed to Instagram's Terms of Use incorporating the same Privacy Policy. *See* https://help.instagram.com/termsofuse.

745 F. App'x 8 (9th Cir. 2018), the Ninth Circuit specifically considered transmission of health-related browsing data and held that Facebook users consented to Meta's receipt of this information based on Meta's broad disclosures. *Id.* at 8-9. And in *Lloyd v. Facebook, Inc.*, 2024 WL 3325389 (9th Cir. July 8, 2024), the Ninth Circuit similarly held that "Facebook's data policy gives clear notice that third party partners may share data with Facebook," defeating any expectation of privacy in that information. *Id.* at *2. The same result follows here. And that is true even though Plaintiff alleges that this data may reflect information about her health. Whatever Plaintiff's subjective expectations about data transmission to Meta, she cannot overcome her assent to Meta's clear disclosure that it receives information related to online purchases. *See* Ex. 7 at 5-6; *see Hammerling v. Google, LLC*, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024) (a court "cannot reject [contractual language] simply because it may deviate from [the court's] expectations"); *see also F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 964 (9th Cir. 2010) ("A contractual term is not ambiguous just because it is broad.").

Meta's specific disclosure that it receives purchase information from third-party websites also differentiates this case from *L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) (Davila, J.), in which this Court considered a general disclosure that a defendant might receive certain unspecified "data from third-party websites." *Id.* at *5. *L.B.* also concerned far more extensive information than that at issue here. The weight-loss website in *L.B.* allegedly transmitted information about website visitors' "gender at birth, height, weight, and how many pounds they would like to lose," as well as detailed information about their weight-loss "goals" (*e.g.*, "look better," "improve confidence," "increase energy," or "better sex") and the weight-loss methods that they had used in the past (*e.g.*, "weight loss supplements" or "intermittent fasting"). *Id.* at *6. This Court reasoned that the "combination of these details and the fact that they were provided in the context of seeking medical services could place the data" outside of the scope of consent provided by the defendant's generalized disclosure of receipt of data from third-party websites. *See id.* at *7.

Plaintiff's allegations in this case are far more circumscribed, and the data at issue is clearly encompassed within Meta's disclosures. In contrast to the suite of information transmitted in *L.B.*,

Plaintiff alleges only that Meta received a single data point for SkinnyRx website visitors: the medication they purchased. *See* Compl. ¶ 72.[6] In other words, LeanRx sent Meta information about "[p]urchases and transactions you make," which the Privacy Policy expressly discloses Meta receives. Ex. 7 at 5-6. This limited purchase data falls squarely within Meta's disclosures, establishing Plaintiff's consent. *See Hammerling*, 2024 WL 937247, at *2.

### B. Plaintiff's Wiretap Act And CIPA Claims Fail Because She Does Not Allege That Meta Acted With The Requisite Intent

Plaintiff also fails to plausibly allege that Meta acted with the intent required for liability on her Wiretap Act and CIPA claims. Each of those claims requires intent to engage in the particular conduct proscribed—that is, "intentionally intercept[ing]" a communication, 18 U.S.C. § 2511(1); "willfully . . . read[ing]" or "learn[ing]" the contents of a communication "in transit," Cal. Penal Code § 631; or "intentionally . . . us[ing]" a device to eavesdrop on or record a confidential communication, *id.* § 632. The "intent" mens rea requires a showing that Meta "acted consciously and deliberately with the goal of" engaging in that prohibited act. *United States v. Christensen*, 828 F.3d 763, 791 (9th Cir. 2015) (Wiretap Act); *see L.B.*, 2025 WL 2899514, at *11 (applying *Christensen* intent standard to CIPA Sections 631 and 632 claims).

Plaintiff does not even try to allege facts that would satisfy that standard. Plaintiff alleges only that Meta "offers" Pixel code for third-party advertisers to "integrate into [their] website[s]," Compl. ¶ 43, and that Meta "*receive[d]*" data that those third parties chose to send, *id.* ¶ 18, Count II ¶ 169. And she makes a conclusory allegation that Meta knew it was receiving health-related data from LeanRx. *See id.* ¶ 18. But the Wiretap Act and CIPA's wiretapping and eavesdropping

---

[6] Plaintiff's conclusory references to data associated with booking an appointment or "health intake" information, *see, e.g.*, Compl. ¶¶ 68-69, 109, should be disregarded because Plaintiff does not allege what information this would have included, how it was transmitted to Meta, or that such information was sent *about her*. *See Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *18 (N.D. Cal. Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020) (courts may disregard "entirely conclusory" allegations).

provisions do not prohibit making code generally available to third parties and receiving the data they choose to send. *See infra* at 14-19. Plaintiff thus cannot allege the intent the statutes require by alleging that Meta intended to receive data, because *receiving* data is not prohibited by any of those statutes.

Even as to Meta's alleged receipt of data, Plaintiff's allegations fall short because Plaintiff cannot allege that Meta intended to receive the purportedly sensitive data at issue here. *See Doe v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ("[T]he question is not whether [the defendant] intended to collect any old communication. The question is whether [the defendant] intended to collect the kinds of communications at issue in this lawsuit."). To the contrary, Meta's Business Tools Terms expressly prohibit web developers from sending any "health" or "sensitive" information to Meta, and they require developers to have all "necessary rights and permissions and a lawful basis" to transmit data using Pixel code. *See supra* at 4-5; Ex. 9 at 1. Meta also provides guidance on how to configure Pixel code to *avoid* sending certain data. *See* Ex. 4 at 8-10. By taking steps to prevent developers from sending sensitive information, Meta "purposefully acted so as *not* to receive any personal health information." *Doe v. Google LLC*, 741 F. Supp. 3d 828, 840-41 (N.D. Cal. 2024) (dismissing Wiretap Act claim based on the defendant's "admonitions" against transmission of health-related data); *see also B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) (Meta's policies prohibiting transmission of sensitive data suggested that Meta "had no intention of receiving the data at issue").

Plaintiff alleges no facts showing otherwise. She simply asserts that Meta knew it was receiving health data. *See* Compl. ¶ 18. That is not the same as alleging *intent* to receive that data. *See Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727-28 (2022) (party did not act with intent to record where it was merely "*aware* that equipping police cars with recording devices could record [sensitive information]"); *cf. Cox Commc'ns, Inc. v. Sony Music Ent.*, 2026 WL 815823, at *6 (U.S. Mar. 25, 2026) (explaining, in copyright context, that "mere knowledge that a service will be used to infringe is insufficient to establish the required *intent* to infringe"). And that is especially clear here, where Meta specifically stated that it does *not* want such data.

In short, Plaintiff fails to plausibly allege anything more than Meta's intent to *receive non-*

sensitive data from third parties that integrate Pixel code into their websites. That is legally insufficient to state her claims. And it supports a different result than the one this Court reached in *L.B. v. LinkedIn*. In *L.B.*, this Court held that the plaintiffs adequately pled intent where their allegations could support a "relatively weak" inference that "the purpose of the [technology at issue] is for [the defendant] to collect confidential data from users in violation of their privacy rights." 2025 WL 2899514, at *13. That analysis does not apply here. First, in *L.B.*, the defendant essentially conceded that intent to "receive sensitive data" could support CIPA and Wiretap Act claims. *See id.* at *12. This Court thus relied on *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), and *Smith v. Google LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024), both of which focused on the defendant's alleged intent to *receive* data. *See L.B.*, 2025 WL 2899514, at *12; *Smith v. Google*, 735 F. Supp. at 1198; *Doe v. Meta*, 690 F. Supp. 3d at 1076. But again, the Wiretap Act and CIPA require more than intent to *receive* data—they require intent to affirmatively intercept, read or learn in transit, or use a device to record a plaintiff's communications. Because *L.B.*, *Doe v. Meta*, and *Smith v. Google* did not analyze intent to engage in the conduct actually prohibited by the statutes, they do not support Plaintiff's claims.

Second, even with respect to intent to receive allegedly sensitive data, this case differs from *L.B.* There, this Court concluded that the plaintiffs had sufficiently alleged that the "purpose" of the technology at issue was to "collect *confidential data*." 2025 WL 2899514, at *13. But here, Plaintiff appears to recognize that technologies like Pixel code have lawful, beneficial applications. *See, e.g.*, Compl. ¶¶ 41, 112. And she refers to a source that shows Meta instructs developers on how to configure Pixel code to prevent transmission of unwanted data, *see* Ex. 4 at 8-10 (cited at Compl. ¶ 42 n.25)—confirming that Meta tasks developers with properly using the code, as required by the Business Tools Terms, *see* Ex. 9 at 1-2. Given that backdrop, Plaintiff's allegations do not support an inference that Meta *designed* Pixel code to collect "confidential data" in violation of website visitors' "privacy rights." *See L.B.*, 2025 WL 2899514, at *13; *see also Iqbal*, 556 U.S. at 681-82 (rejecting allegations of a wrongful purpose, "given more likely explanations" for a defendant's conduct).

Because Plaintiff does not allege that Meta intentionally intercepted, read or learned in

transit, or used a device to record her communications, her Wiretap Act and CIPA claims fail.

### C. Plaintiff's Claims All Fail For Additional Reasons

#### 1. Plaintiff's Wiretap Act Claim Against Meta Should Be Dismissed

Plaintiff's Wiretap Act claim suffers from several independent, fatal flaws: LeanRx's consent to the alleged "interception" forecloses her claim. *See* 18 U.S.C. § 2511(2)(d). Plaintiff fails to allege that Meta actually "intercept[ed]" her communications or that Meta had reason to know that the data LeanRx sent was "intercept[ed]." *See id.* §§ 2510(4), 2511(1). And Plaintiff cannot plausibly allege that Pixel code constitutes a "device." *See id.* § 2511(1).

***LeanRx's consent.*** Plaintiff alleges that LeanRx "chose" to implement Pixel code on the SkinnyRx website and send data to Meta. *See* Compl. ¶¶ 44, 72, 83, 93. That means that LeanRx necessarily consented to the transmission of its communications with website visitors. And that consent dooms Plaintiff's Wiretap Act claim, because the Wiretap Act does not apply where "one of the parties to the communication has given prior consent" to an alleged interception. 18 U.S.C. § 2511(2)(d); *see Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021).

Plaintiff tries to invoke the Wiretap Act's crime-tort exception to get around this clear barrier to her claim. *See* Compl. Count I ¶¶ 142-57. The crime-tort exception recognizes that a party's consent does not defeat liability in one limited circumstance—where a communication was "intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). This exception is focused on the "purpose for the interception," not the "means" of interception. *See Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999). Therefore, a plaintiff seeking to rely on it must do more than simply suggest that a defendant acted unlawfully in intercepting a communication—the plaintiff must plausibly allege that the interceptor intended to use the intercepted communication "for the purpose of facilitating some *further* impropriety, such as blackmail." *Id.*; *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (purportedly wrongful purpose must be "separate and independent from the act of recording"). Allegations that a defendant acted for the purpose of "generat[ing] revenue" through advertising are not enough, because advertising is not criminal or tortious. *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) (dismissing Wiretap Act claim); *see*

*Rodriguez*, 2021 WL 2026726, at *6 n.8 (same).

In this case, Plaintiff tries to manufacture a criminal purpose through conclusory allegations that the alleged data transmission violates various laws, including the Health Insurance Portability and Accountability Act (HIPAA), the California Confidentiality of Medical Information Act (CMIA), CIPA, CDAFA, and the California Constitution. *See* Compl. Count I ¶¶ 142-43, Count I ¶¶ 150-51. Such "bare conclusory allegations" of a wrongful purpose do not suffice. *See Weston*, 2024 WL 4579237, at *2. And these allegations suggest, at most, that the initial "interception" itself was unlawful; they do not show a "separate and independent" wrongful purpose. *Newman*, 51 F.4th at 1136. To the contrary, Plaintiff alleges that Meta's motivation for making Pixel code available to web developers is financial—specifically, that Meta uses the data it receives to support its analytics and advertising business. *See* Compl. ¶¶ 17-18, 38-50. These allegations do not show a purpose to "perpetuate torts on millions of Internet users," *Rodriguez*, 2021 WL 2026726, at *6 n.8, especially given that Meta *prohibits* developers from sending sensitive information or any information at all without securing permission to do so, Ex. 9 at 1.

Plaintiff's bare references to HIPAA and the CMIA do not change the analysis. For HIPAA, Plaintiff relies on quotations from guidance documents from the Department of Health & Human Services and related reporting that suggest that certain data transmission from healthcare providers' websites "*may* violate" HIPAA. *See* Compl. ¶¶ 106-13. But she never explains how HIPAA applies to the actual data allegedly sent here, nor does she allege that Meta (as opposed to LeanRx) violated the statute. *See id.* Count I ¶¶ 145-49. And although Plaintiff vaguely mentions the CMIA, *see id.* Count I ¶ 150, that statute also cannot apply to Meta, because Meta is not a healthcare provider. *See* Cal. Civ. Code §§ 56.05-56.06 (defining "provider of health care"). The crime-tort exception thus does not apply. *See Katz-Lacabe*, 2024 WL 1471299, at *3.

***No knowing "interception" through "use" of a device.*** Plaintiff alleges that Meta violated the Wiretap Act by "intercept[ing]" a communication under 18 U.S.C. § 2511(1)(a). *See, e.g.*, Compl. ¶¶ 41, 52, 72-73, Count I ¶¶ 138-39, Count I ¶ 142. But that claim fails because Plaintiff does not allege that Meta acted to "acquire" data from the SkinnyRx website "through use of" a device, as required for "interception" under the Wiretap Act. *See* 18 U.S.C. § 2510(4) (defining

"intercept" as "acquisition of the contents of [a] . . . communication through the use of [a] . . . device"). Her allegations make clear that Meta's purported liability turns on LeanRx, not Meta, "cho[o]s[ing] to include the Facebook Pixel on its Website." Compl. ¶ 44; *see also id.* ¶ 2 ("Defendant [LeanRx] installed various tracking technologies on the Website . . . ."); *id.* ¶ 33 ("LeanRx has incorporated the Defendants Facebook and Google Trackers' code into the code of its Website."). And Plaintiff explains that it was LeanRx, not Meta, that "programmed" Pixel code to send certain data to Meta "when a user visits the [SkinnyRx] Website." *Id.* ¶ 34; *see also id.* ¶ 42 (noting that "[a]dvertisers can . . . create their own tracking parameters"); *id.* ¶ 83 ("LeanRx sent . . . identifiers alongside the event data."). Meta's alleged *receipt* of information that LeanRx chose to send does not equate to Meta's "use" of a device to "acquire" data from the website.

Plaintiff also fails to plausibly allege that Meta intercepted her communications because she alleges, at most, that LeanRx sent Meta "a *separate* message." *Id.* ¶ 43. Her allegations make clear that this separate message was different from her communications with the SkinnyRx website, as it included "event data" as well as "additional data that the Facebook Pixel is configured to collect." *See id.* ¶¶ 43, 51, 83. Accordingly, because Meta never "acquired" the actual communications between Plaintiff and LeanRx, it did not intercept them. *See* 18 U.S.C. § 2510(4); *see id.* § 2520(a) (private cause of action only for a "person whose . . . communication is intercepted"). Plaintiff likewise fails to allege that Meta "acquired" her communications "during transmission" from Plaintiff to LeanRx, as the statute requires. *See Konop v. Haw. Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiff asserts that Meta received data "instantaneously" or "in real time," Compl. ¶ 99, Count I ¶ 138, but those conclusory allegations merely "restate the pleading requirement of real time interception." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023).

Plaintiff also makes passing reference to a separate Wiretap Act provision, 18 U.S.C. § 2511(1)(d), which would require interception *by LeanRx*. *See* Compl. Count I ¶ 141. This provision penalizes a defendant who "uses" a communication, "knowing or having reason to know that the information was obtained through . . . interception . . . in violation of this subsection." 18 U.S.C. § 2511(1)(d). To support that theory, Plaintiff would have to plausibly allege that Meta had

a "reason to know" that LeanRx was intercepting its own communications with SkinnyRx website visitors in violation of the Wiretap Act. *See id.*; Compl. ¶ 2. She cannot do so. First, a party's alleged interception of its own communication violates the Wiretap Act only if the interception was carried out for a criminal or tortious purpose. *See* 18 U.S.C. § 2511(2)(d). But Plaintiff's own allegations establish that LeanRx chose to incorporate Pixel code "for the purpose [of] improving its own targeted advertising efforts." Compl. ¶ 3; *see also id.* ¶ 93. Because improving advertising is not criminal or tortious, LeanRx did not "intercept" its own communications in violation of the Wiretap Act, and Meta certainly had no reason to think LeanRx was acting *with a wrongful purpose*. *See Katz-Lacabe*, 2024 WL 1471299, at *3; *Rodriguez*, 2021 WL 2026726, at *6 n.8.

Second, Plaintiff does not allege that Meta had any reason to *know* that LeanRx failed to secure consent from SkinnyRx website visitors. Meta contractually requires web developers to secure "all necessary rights and permissions" before sending any information to Meta. Ex. 9 at 1. And both LeanRx and Meta provided clear disclosures related to Meta's receipt of data. *Supra* at 3-5, 7-10. Meta would therefore have no reason to know that LeanRx sent any data without consent in violation of the Wiretap Act. *Cf. Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) (dismissing CDAFA claim because plaintiffs did not plead that Meta knew it lacked permission to access data).

***No "device."*** The Wiretap Act applies only to interception using a "device or apparatus." 18 U.S.C. § 2511(1); *id.* § 2510(4)-(5). By their plain meaning, the words "device" and "apparatus" encompass tangible objects, not a "piece of code" like the Pixel, Compl. ¶ 43. *See Moreno v. S.F. BART Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (invoking dictionary definitions to interpret "device" as "a piece of equipment" in analogous CIPA provision). The Wiretap Act's other references to the term "device" confirm as much. In neighboring provisions, the statute refers to "affix[ing]" a device to a wire and "sen[ding]" it "through the mail." 18 U.S.C. § 2511(b). Software code cannot be "affixed" to anything or "sent through the mail," *see id.*, which confirms it is not a "device." *See Taniguchi v. Kan Pac. Saipan Ltd.*, 566 U.S. 560, 571 (2012) ("[I]dentical words used in different parts of the same act are intended to have the same meaning.").

In *In re Google Location History Litigation*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) (Davila,

J.), this Court held based on similar textual indicators that software does not constitute a "device" under an analogous CIPA provision. *Id.* at 193. As the Court explained, software programs "are not 'devices' . . . because they are not 'equipment.'" *See id.* (citing *Moreno*, 2017 WL 6387764, at *5). The same is true here. And although this Court previously departed from that holding when analyzing CIPA Section 632, the Court did so based on decisions that mistakenly relied on *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), for this point. *See L.B.*, 2025 WL 2899514, at *17-18 (citing *Doe v. Meta*, 690 F. Supp. 3d 1064, and *Yockey v. Salesforce, Inc.*, 2024 WL 3875785 (N.D. Cal. Aug. 16, 2024)); *Libman v. Apple Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sep. 26, 2024) (Davila, J.) (same). But *In re Carrier* never addressed whether software qualifies as a "device" under the Wiretap Act. *See* 78 F. Supp. 3d at 1084-87. It simply rejected the defendant's distinct argument based on a Wiretap Act exception not at issue in this case (related to "components" of a device). *See id. In re Carrier* thus has no bearing on the question here. And the Wiretap Act's plain text requires interception using a tangible object. By urging this Court to accept an interpretation of the term "device" that would criminalize routine uses of data analytics technology, Plaintiff seeks to push the statute "beyond its plain meaning and transform [it] into something unrecognizable." *See In re Google Location Hist.*, 428 F. Supp. 3d at 193-94.

#### 2. Plaintiff's CIPA Section 631 Claim Against Meta Should Be Dismissed

Plaintiff's CIPA Section 631 claim is equally flawed. To the extent Plaintiff relies on the first clause of Section 631, her claim should be dismissed because that provision "prohibits telephonic wiretapping, which does not apply to the internet." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024). And Plaintiff cannot rest her claim on the third or fourth clauses without first establishing a predicate Section 631 violation. *See L.B.*, 2025 WL 2899514, at *17; Cal. Penal Code § 631(a). That leaves only the second clause, which prohibits willfully "read[ing], or attempt[ing] to read, or to learn" the contents of a communication without consent "while the same is in transit." Cal. Penal Code § 631(a). Plaintiff fails to allege that Meta engaged in that conduct.

***Meta did not read or learn contents of a communication while "in transit."*** Plaintiff must allege that Meta "read" or "learn[ed]" the contents of her communications with the SkinnyRx

website "during their transmission, as opposed to once the communications were placed in electronic storage." *L.B.*, 2025 WL 2899514, at *16; *see R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (dismissing Section 631 claim where allegations suggested that the defendant analyzed data only after it was received); *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118 (Section 631 requires a defendant to "do something more than just intercept the communication while it is in transit to be held liable"). She fails to do so. Plaintiff asserts that Meta matches the data it receives to website visitors, Compl. ¶¶ 94, 102, and suggests that Meta uses that information to try to "profile" those visitors, *id.* ¶ 87. But Plaintiff makes only conclusory assertions as to *when* Meta purportedly takes these actions, suggesting that Meta analyzes the data "contemporaneously," "instantaneously," or "in real time." *Id.* ¶¶ 52, 87, 99 (emphasis omitted). Those assertions are not sufficient to state her claim. *See Valenzuela*, 674 F. Supp. 3d at 758-59; *L.B.*, 2025 WL 2899514, at *16. And as noted above, Plaintiff alleges no facts suggesting Meta intercepted a SkinnyRx website visitor's communication before LeanRx received it. *Supra* at 15.

***Not "the same" communication.*** Plaintiff also fails to plausibly allege that Meta read or learned the contents of her communications with LeanRx "while *the same* [were] in transit," Cal. Penal Code § 631(a), because her allegations make clear that the data LeanRx sent to Meta was "a separate message." Compl. ¶ 43; *see supra* at 15. That is, Meta at most receives a *separate*, *different message* directly from LeanRx that contains certain information about a visitor's interactions on the website—not the actual communication between a website visitor and LeanRx.

### 3. Plaintiff's CIPA Section 632 Claim Against Meta Should Be Dismissed

Plaintiff cannot state her CIPA Section 632 claim against Meta either. Section 632 penalizes a person who intentionally "uses" an "electronic amplifying or recording device" to "eavesdrop upon or record" a "confidential communication" without consent. *See* Cal. Penal Code § 632. Plaintiff's allegations make clear that she cannot establish several of these key elements.

***No "use" of a device to record.*** Plaintiff fails to plausibly allege that *Meta* "used" the alleged "device"—Pixel code—to record her communications with the SkinnyRx website. Meta makes Pixel code publicly available for *third parties* to use. *See* Compl. ¶ 43. Here, Plaintiff's

allegations make clear that it is *LeanRx* that used Pixel code: It was LeanRx that "chose to include" Pixel code on the SkinnyRx website, *id.* ¶ 44, and that "programmed" the code to send certain information to Meta, *id.* ¶ 34. *See also id.* ¶¶ 2, 33, 83; *supra* at 14-15. Plaintiff's Section 632 claim against Meta should therefore be dismissed.

***No eavesdropping or recording.*** Section 632 penalizes recording a communication between a plaintiff and the intended recipient *as it is happening*. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021); *People v. Drennan*, 84 Cal. App. 4th 1349, 1356 (2000) (Section 632 prohibits "'real time' interception" or "mechanical recording"). Simply receiving a separate message with information *about* the communication is not enough, because CIPA does not reach the "secondhand repetition of the contents of a conversation." *Smith*, 11 Cal. 5th at 200. Therefore, Plaintiff's allegations that Meta received "a separate message" in the form of "event data" and identifiers, not Plaintiff's actual communication with the SkinnyRx website, Compl. ¶¶ 43, 51, 83, doom Plaintiff's Section 632 claim, just as they doom her Wiretap Act and Section 631 claims.

***No "confidential communication."*** Plaintiff's claim also falters because she does not allege that her purchase order on the SkinnyRx website was a "confidential communication" within the statutory definition. Section 632 defines a "confidential communication" to *exclude* communications where the parties should "reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c). A Section 632 plaintiff must therefore establish that the parties to the communication at issue reasonably expected that it would not be recorded *at all*—not even by the entity they were communicating with. *See Rodriguez*, 2021 WL 2026726, at *7 (dismissing Section 632 claim based on data shared with apps because the circumstances did not "reasonably give rise to the expectation that *nobody* (including the apps' developers) would record the communications"); *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (a person "could reasonably expect" online chat messages to be "recorded" in part because the chat platform developer "could have easily . . . shared or viewed" the communications); *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (affirming dismissal of Section 632 claim based on text messages because texts are "by nature" recorded).

Section 632's definition of "confidential communication" forecloses Plaintiff's claim. Both

LeanRx's and Meta's disclosures demonstrate that visitors would reasonably expect data associated with their purchases to be recorded. *Supra* at 3-5, 7-10. But even aside from those disclosures, the purchase information at issue here is precisely the kind of online data a person *does* expect to be recorded, because recording purchase data is essential to fulfilling a purchase order. In fact, Plaintiff's allegations make clear that for a website visitor to receive the medication they ordered, a medical provider would first need to review and approve the order. *See* Compl. ¶ 16. And of course, once approved, the order would have to be delivered to the visitor. *See id.* Those processes would be impossible without recording the purchase information the user entered. *Cf. L.B.*, 2025 WL 2899514, at *18 (noting a presumption that online communications are not "confidential" under Section 632 because they could "easily be shared by . . . the recipient(s) of the communications"). Because the purchase information in this case is "by nature recorded," it cannot constitute a "confidential communication." *See Boulton*, 2025 WL 314813, at *2.

***No "device."*** Section 632 applies only to use of an "electronic amplifying or recording device." Cal. Penal Code § 632(a). As with the Wiretap Act, the term "device" does not include computer code. *See Moss v. ResortPass, Inc.*, 2025 WL 3452360, at *2 (Cal. Super. Ct. Oct. 30, 2025) (rejecting assertion that "software code" is a "device" under Section 632). Section 632's other uses of the term "device" confirm that reading. In the same paragraph that requires use of an "electronic amplifying or recording device," the statute discusses a communication carried on "by means of a telegraph, telephone, *or other device*." Cal. Penal Code § 632(a). That indicates that the legislature intended "device" to mean a tangible, physical object like a telegraph or telephone. *See Davis v. Fresno Unified Sch. Dist.*, 14 Cal. 5th 671, 689 (2023) (meaning of a term in a list is "qualified by" the terms that it appears alongside). This Court's holding that software does not constitute a "device" under a neighboring CIPA provision, *In re Google Location Hist.*, 428 F. Supp. 3d at 193, applies here too given the plain text and context of Section 632. And a consistent holding would respect the "well-established canon[] of statutory construction" that a statutory term that "appears in different places within a statutory scheme" should "have the same meaning each time it is used." *People v. Braden*, 14 Cal. 5th 791, 806 (2023); *see also Taniguchi*, 566 U.S. at 571. Although this Court held otherwise in *L.B.* and *Libman*, Meta urges this Court to reconsider

those holdings for these reasons, and because those decisions ultimately rely on *In re Carrier*, which did not address the relevant question here. *Supra* at 17.

**4. Plaintiff's CDAFA Claim Against Meta Should Be Dismissed**

Finally, Plaintiff's CDAFA claim fails as well. CDAFA was "enacted to combat 'computer crime' and hacking." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023); *see Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014) (CDAFA is "an anti-hacking statute"). Plaintiff broadly invokes CDAFA subsections 502(c)(2), (3), (4), (6), (7), and (8), without clearly alleging whether she asserts a claim under each subsection against Meta or LeanRx. *See* Compl. Count IV; *see, e.g.*, *id.* ¶ 164 (alleging only that LeanRx, not Meta, violated subsection 502(c)(2)). Regardless, she cannot plead Meta's liability under any of these subsections for several independent reasons.

***No "damage or loss."*** To bring a claim under CDAFA, Plaintiff must allege that she suffered "damage or loss," Cal. Penal Code § 502(e)(1), meaning an economic injury associated with "an interruption of computer services." *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023). Other language in the statute demonstrates as much—the "damage or loss" provision, for example, states that compensatory damages include costs "incurred . . . to verify that a *computer system, computer network, computer program, or data* was or was not altered, damaged, or deleted by [a wrongful] access." Cal. Penal Code § 502(e)(1). Accordingly, the "majority of courts to consider the issue" have determined that CDAFA's "damage or loss" requirement "contemplates some damage to [a] computer system, network, program, or data contained on that computer." *Heiting*, 709 F. Supp. 3d at 1021.

Plaintiff does not allege that Pixel code caused any damage to her devices or data. Instead, she asserts that "cookies" prevented her from communicating with healthcare providers through the SkinnyRx website, but never explains how. *See* Compl. Count I ¶ 154.a, c. She also points to a "loss of privacy," *id.* Count I ¶ 154.d, and claims a "diminution in value" of her health information, *id.* Count I ¶ 154.b. And she suggests that Meta profited from her data, causing her "economic injury." *Id.* Count IV ¶ 169. But each of these theories has been squarely rejected by well-reasoned decisions from courts in this district. An alleged "'inability' to use . . . computer

devices to communicate with . . . healthcare providers" does not support a CDAFA claim. *See Doe v. Meta*, 690 F. Supp. 3d at 1082. Neither do allegations of an inchoate loss of privacy, *see Doe v. County of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024), or a "loss of the value of . . . data," *see Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025); *Heiting*, 709 F. Supp. 3d at 1021. And Meta's alleged *profit* from Plaintiff's data similarly cannot establish *damage* to Plaintiff, much less damage to her data or devices. *See Shah*, 768 F. Supp. 3d at 1048 (collecting cases). Because Plaintiff has not pled any damage to a computer or data, her CDAFA claim cannot survive.

***No allegations that Meta knew it lacked permission.*** As discussed above, Meta had permission to receive purchase data from LeanRx. *Supra* at 3-4, 7-10. But even if Meta had not secured consent through its own policies, Plaintiff's CDAFA claim fails because Plaintiff cannot allege that Meta *knew* that it lacked permission to access Plaintiff's computer or data.

Each of the CDAFA subsections that Plaintiff relies on requires the defendant to act both "knowingly" and "without permission." *See* Cal. Penal Code § 502(c)(2)-(4), (6)-(7); *id.* § 502(c)(8) (prohibiting "knowingly" introducing a "computer contaminant"); *id.* § 502(b)(12) (defining "[c]omputer contaminant" as "computer instructions" that are "designed" to act "without . . . permission"). Courts in this district have recognized that CDAFA does not impose liability where a defendant acts "under the reasonable but mistaken belief that they had permission" to access a plaintiff's device or data. *Tsering*, 2026 WL 89320, at *4; *see also Briskin v. Shopify Inc.*, 2026 WL 161441, at *6 (N.D. Cal. Jan. 21, 2026) (CDAFA "require[s] an intent to access without consent"); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) (defendant violated subsection 502(c)(2) only after it "knew that it no longer had permission to access" computers). In *Tsering*, for example, the court dismissed a CDAFA claim because third-party websites' disclosures related to data transmission "render[ed] it implausible" that Meta *knew* that it accessed data from those websites without visitors' "permission." 2026 WL 89320 at *4-5.

The same is true here. Even assuming Meta's *receipt* of data equates to "accessing" a computer or data (it does not, *see infra*), Plaintiff does not plausibly allege that Meta *knew* that it lacked permission to access the data it received from LeanRx. Meta's Privacy Policy discloses that

it receives purchase data from third-party websites, *supra* at 3-4, 7-10, and the SkinnyRx website includes similar disclosures, *supra* at 5. Meta also contractually *required* web developers like LeanRx to secure permission before sending data. *See* Ex. 9 at 1. Meta thus had every reason to believe it *did* have permission to receive data from LeanRx, foreclosing Plaintiff's CDAFA claim.

***No affirmative wrongful action.*** Plaintiff also fails to allege that Meta engaged in the specific conduct prohibited by the CDAFA subsections she raises. Subsections 502(c)(2), (4), and (7) prohibit knowingly "access[ing]" a computer or data. Subsection 502(c)(3) covers knowingly "us[ing]" "computer services." And subsection 502(c)(8) requires knowingly "introduc[ing]" a "computer contaminant." But Plaintiff does not allege that Meta ever took any action to "access" her device or data, "use" her "computer services," or "introduce" any contaminant into her device. Again, Plaintiff's allegations show that Meta never took any action at all to obtain data from the SkinnyRx website. LeanRx, not Meta, chose to implement Pixel code and to configure it to send purchase data to Meta. *See supra* at 14-15. If anyone "accessed" Plaintiff's device or data, it was LeanRx. And even assuming Plaintiff could establish that Pixel code qualifies as a "computer contaminant" (she cannot, *see infra*), her allegations make clear that it is LeanRx, not Meta, that "incorporated" Pixel code onto its website and purportedly "caused" it "to be installed" on Plaintiff's "browsers." *See* Compl. ¶¶ 33-34. Plaintiff's theories under these subsections thus fail.

***No circumvention of a technical barrier to Plaintiff's device.*** Plaintiff also cannot state a claim under CDAFA subsections 502(c)(3) or (7), because she does not plead that Meta "overcame any technical or code-based barriers to access" her computer. *See Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024). Unlike other CDAFA subsections, which do not require the initial *access* of a computer to be "without permission," *see, e.g.*, Cal. Penal Code § 502(c)(4), these subsections require that a defendant "without permission access[]" or "without permission use[]" a computer or computer services. *See id.* § 502(c)(3), (7). Courts have recognized that this language requires a defendant to circumvent a technological barrier to a plaintiff's device to be liable. *See Bui-Ford*, 2024 WL 694485, at *5 (collecting cases). Plaintiff fails to allege any such circumvention here.

***Other pleading deficiencies.*** Plaintiff cannot state a claim under several CDAFA

subsections for additional reasons. Plaintiff mentions subsection 502(c)(4) only once, *see* Compl. Count IV ¶ 162, and alleges no *facts* showing that Meta "add[ed], alter[ed], damage[d], delete[d], or destroy[ed]" any data or computer program. *See Ticketmaster LLC v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. May 29, 2018) (dismissing subsection 502(c)(4) claim where allegation "merely track[ed] the language of the statute itself, without providing facts").

Subsection 502(c)(6) prohibits "[k]nowingly and without permission provid[ing] . . . a means of accessing a computer, computer system, or computer network *in violation of this section*." It thus requires an underlying CDAFA violation, which Plaintiff cannot allege. In any event, Meta did not knowingly provide a "means" of accessing a computer "in violation of" CDAFA—it made code publicly available for third parties to use, subject to contractual requirements to provide prominent notice and secure permission, Ex. 9 at 1-2. *See Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011) (dismissing subsection 502(c)(6) claim where plaintiff's theory turned on actions by third parties and the defendant "took no active role").

Finally, Plaintiff's conclusory allegations related to subsection 502(c)(8), which prohibits introduction of a "computer contaminant," do nothing more than mirror the statutory definition. *Compare* Compl. Count IV ¶ 165, *with* Cal. Penal Code § 502(b)(12); *see Hauck*, 2019 WL 1493356, at *18 (rejecting "conclusory, element-mirroring allegation"); *Ticketmaster*, 315 F. Supp. 3d at 1175. Plaintiff does not explain how Pixel code "self-propagate[s]," *see* Compl. Count IV ¶ 165, especially given her allegations that it was LeanRx that chose to incorporate it on the SkinnyRx website, *see id.* ¶¶ 33-34. Nor does Plaintiff present any allegations that plausibly establish that Pixel code is comparable to the "viruses," "worms," and "other malware" that subsection 502(c)(8) was designed to address. *See* Cal. Penal Code § 502(b)(12); *Doe v. Meta*, 690 F. Supp. 3d at 1083. Plaintiff's CDAFA claim should be dismissed.

### D. Under Plaintiff's Erroneous Interpretations Of The Wiretap Act, CIPA, And CDAFA, Those Statutes Are So Capacious They Fail To Give Fair Notice

As detailed above, Plaintiff seeks to stretch the criminal statutes she invokes far beyond their plain terms to capture Meta's alleged *receipt* of information from a third-party website. That conduct does not fit the statutory prohibitions. Meta could not reasonably have anticipated that

simply "offer[ing]" technology to developers, Compl. ¶ 43, and allegedly failing to prevent receipt of certain data, *id.* ¶ 18, could render Meta liable under criminal statutes for, say, intentionally "us[ing]" a "device" to "record" a confidential communication without consent, Cal. Penal Code § 632, intentionally "intercept[ing]" a communication without consent, 18 U.S.C. § 2511(1), or "[k]nowingly access[ing]" a third-party website visitor's device without permission, Cal. Penal Code § 502(c)(2), (4); *see id.* § 502(c)(7). If the Wiretap Act, CIPA, and CDAFA actually criminalized Meta's alleged conduct here, they would impose liability for conduct that is not clearly prohibited under the statutes—namely, receiving allegedly sensitive data, rather than affirmatively intercepting or recording it. They also would impose liability on Meta for the conduct of third parties—because without the third-party developer's use of Pixel code to send Meta allegedly sensitive data, Plaintiff would not have any claim against Meta under her own theories. The criminal statutes Plaintiff invokes cannot be stretched so far because Meta was not on "fair notice" that receiving data sent by a third party fell within the statutes' reach. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Canyon Ferry Rd. Baptist Church, Inc. v. Unsworth*, 556 F.3d 1021, 1029 (9th Cir. 2009) (sustaining as-applied vagueness challenge where liability turned on factors beyond a party's control); *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1112 (noting that "companies have no way of telling whether their online business activities will subject them to liability" under CIPA).

Courts must adopt a narrower interpretation to avoid such constitutional concerns. *See Skilling*, 561 U.S. at 405-06. And lenity principles likewise require that any ambiguity in these penal statutes be read in favor of the defendant. *United States v. Millis*, 621 F.3d 914, 916-17 (9th Cir. 2010); *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118; *Vita v. New Eng. Baptist Hosp.*, 243 N.E.3d 1185, 1204-05 (Mass. 2024) (applying rule of lenity to Massachusetts wiretapping statute and holding that claim based on use of Pixel code should be dismissed). This Court should therefore reject Plaintiff's attempt to read the wiretapping, eavesdropping, and hacking statutes she invokes to cover Meta's alleged receipt of data others chose to send.

## V. CONCLUSION

Meta respectfully requests that the Court dismiss the complaint with prejudice.

Dated: March 31, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Melanie M. Blunschi*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine Anne Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
Maria Huryn (Bar No. 353520)
*maria.huryn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*