LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine Anne Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
Maria Huryn (Bar No. 353520)
*maria.huryn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ANNA BUCHHOLZ, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 5:26-cv-00846-EJD<br><br>**DEFENDANT META PLATFORMS, INC.'S REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hearing: July 23, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 4—5th Floor<br>Judge: Hon. Edward J. Davila |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 23, 2026 at 9:00 a.m., before the Honorable Edward J. Davila, United States District Court, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does respectfully request that in connection with its Motion to Dismiss the Class Action Complaint, the Court consider the documents attached as Exhibits 1 through 11 to the accompanying Declaration of Melanie M. Blunschi in Support of Meta's Motion to Dismiss the Class Action Complaint, filed concurrently herewith. The documents are properly considered by the Court on Meta's motion because they are subject to judicial notice under Federal Rule of Evidence 201 and/or incorporated by reference into the complaint.

Dated: March 31, 2026

Respectfully submitted,

LATHAM & WATKINS LLP
By: /s/ *Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine Anne Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
Maria Huryn (Bar No. 353520)
*maria.huryn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

**MEMORANDUM OF POINTS & AUTHORITIES**

Defendant Meta Platforms, Inc. ("Meta") respectfully requests that the Court consider certain documents submitted in connection with Meta's Motion to Dismiss the Class Action Complaint, as described below and attached to the concurrently filed Declaration of Melanie M. Blunschi ("Blunschi Declaration"). The documents include: (1) publicly available, informational webpages from Meta's website regarding Meta Pixel code (Exhibits 1 through 4); (2) the publicly available Facebook sign-up page (Exhibit 5); (3) publicly available Meta terms and policies (Exhibits 6 through 9); and (4) the publicly available SkinnyRx homepage and SkinnyRx Privacy Policy (Exhibits 10 and 11). These documents are properly considered because they are incorporated by reference into and integral to the complaint and/or subject to judicial notice under Federal Rule of Evidence 201.

## I. LEGAL STANDARD

In deciding a motion to dismiss, a court may consider "materials incorporated into the complaint by reference" and "matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

The doctrine of incorporation by reference "treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). It "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* A document is incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* The doctrine applies even to documents "that are not expressly referenced in the complaint if the claims depend on [the] documents' contents." *Narayanan v. Apple Inc.*, 2026 WL 323416, at *3 (N.D. Cal. Feb. 6, 2026) (Davila, J.); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that incorporation by reference may apply even where the plaintiff "does not explicitly allege the contents of th[e] document in the complaint"). And incorporation by reference "applies with equal force to internet pages as it does to printed material." *Knievel*, 393 F.3d at 1076. When a document is incorporated

by reference, the Court "may assume the entire document is true for purposes of a motion to dismiss." *Narayanan*, 2026 WL 323416, at *3; *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Courts may also take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *In re PG&E Corp. Sec. Litig.*, 806 F. Supp. 3d 962, 984 (N.D. Cal. 2025) (Davila, J.) (quoting Fed. R. Evid. 201(b)).

## II. ARGUMENT

### A. Exhibits 1 Through 11 Are Incorporated By Reference Into The Complaint

Throughout the complaint, Plaintiff cites various Meta and SkinnyRx policies and webpages to support her claims. But Plaintiff ignores critical context that appears in those documents and other policies referenced within them. The incorporation-by-reference doctrine exists precisely to prevent such "artful pleading" by ensuring that the Court can assess a motion to dismiss based on a full and fair understanding of the documents integral to a plaintiff's claims. *See Khoja*, 899 F.3d at 1002-03 (recognizing that the "policy concern underlying" incorporation by reference is "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").

***Meta webpages.*** The complaint cites to several informational webpages related to Pixel code (Exhibits 1 through 4). *See* Compl. ¶¶ 39 n.17, 50 n.33 (citing Exhibit 1, "About Meta Pixel"); *id.* ¶¶ 45 n.29, 46 n.30 (citing Exhibit 2, "About Meta Pixel" as it appeared in December 2023) ; *id.* ¶ 42 n.26 (citing Exhibit 3, "Specifications for Meta Pixel standard events"); *id.* ¶ 42 n.25 (citing Exhibit 4, "Meta Pixel – Guides – Advanced"). Because Plaintiff "explicitly" refers to these documents to support the complaint, they are incorporated by reference. *See In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (Davila, J.); *Shang v. Twitch Interactive, Inc.*, 2025 WL 56415, at *2 (N.D. Cal. Jan. 9, 2025) (finding document incorporated by reference when the "complaint contains multiple references" to it).

And incorporation by reference is particularly appropriate for these documents because Plaintiff ignores the portions of these webpages that undercut her claims. For example, Plaintiff relies on Exhibits 3 and 4 to support her allegations that Pixel code is "automatically configured

to capture certain data." *See* Compl. ¶ 42. But she omits that both of these webpages make clear that Meta offers guidance to developers on how to *prevent* unwanted data transmission. *See* Ex. 3 at 3 (explaining that developers must add Pixel code to "every page [they] want to track" to enable its functionality); Ex. 4 at 8-9 (explaining how to configure Pixel code to "restrict the data sent"). Similarly, as explained below, Plaintiff selectively quotes from Exhibits 1 and 2 while ignoring their reference to Meta's Business Tools Terms (Exhibit 9), which set forth Meta's requirements for developers that use Pixel code. *See* Ex. 1 at 2; Ex. 2 at 2; Ex. 9 at 1-2; *infra* at 6-7. Incorporation by reference is therefore appropriate to "prevent [Plaintiff] from surviving a motion to dismiss using selective citation." *In re PG&E*, 806 F. Supp. 3d at 986; *see also Khoja*, 899 F.3d at 1002.

***Facebook sign-up page.*** The Facebook sign-up page (Exhibit 5)[1] is incorporated by reference for the same reasons. Plaintiff cites the sign-up page to support her allegation that Facebook users provide their name, birthdate, and gender when creating an account. Compl. ¶ 37.[2] That direct citation supports incorporation by reference. *See, e.g.*, *In re Eventbrite*, 2020 WL 2042078, at *7. Moreover, Plaintiff again selectively relies only on the portions of the webpage that support her claims. Directly below the sign-up page's name, gender, and birthdate fields is language stating that Facebook users assent to Meta's Terms of Service, Privacy Policy, and Cookies Policy, *see* Ex. 5 ("By clicking Sign Up, you agree to our Terms, Privacy Policy and Cookies Policy."), which include clear disclosures related to Meta's receipt of data from third-party websites, *see generally* Exs. 6-8. As Meta explains in its motion to dismiss, those policies establish Plaintiff's consent to the conduct she challenges. Plaintiff cannot ignore the sign-up page's references to these policies while citing other parts of it to support her claims. *See In re*

---

[1] Meta attaches the publicly available version of the Facebook sign-up page (Exhibit 5) as it appeared on January 26, 2026, when Plaintiff filed the complaint. *See* Dkt. 1.

[2] Plaintiff cites to the webpage https://www.facebook.com/ to support that allegation. *See* Compl. ¶ 37 & n.13. However, the fields to provide name, birthdate, and gender information are available only on the next screen, which becomes visible after a user clicks "Create new account." Meta submits that screen as Exhibit 5, because that is the webpage Plaintiff relies upon.

*PG&E*, 806 F. Supp. 3d at 986; *Khoja*, 899 F.3d at 1002; *Libman v. Apple Inc.*, 2024 WL 4314791, at *4 (N.D. Cal. Sep. 26, 2024) (Davila, J.) (finding app "welcome screens" incorporated by reference where they established whether the defendant "disclosed its [data] collection practices and whether Plaintiffs consented to those collection practices").

***Meta's Terms of Service, Privacy Policy, and Cookies Policy.*** Meta's Terms of Service, Privacy Policy, and Cookies Policy (Exhibits 6 through 8)[3], which are linked in the Facebook sign-up page (Exhibit 5), are also incorporated by reference into the complaint because they "form[] the basis" of Plaintiff's claims. *See Khoja*, 899 F.3d at 1002. As Meta explains in its motion to dismiss, each of Plaintiff's claims depends on her ability to establish her lack of consent to Meta's receipt of data associated with her purchases on the SkinnyRx website. But Meta's policies contain clear disclosures related to its receipt of data from third-party websites, which establish Plaintiff's consent to the conduct she now challenges. Where a plaintiff's claims are "dependent upon the extent and sufficiency of [the defendant's] disclosures," as in this case, the terms that contain those disclosures are incorporated by reference. *See Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023). Therefore, Meta's Terms of Service, Privacy Policy, and Cookies Policy "may appropriately be considered on a motion to dismiss" because Plaintiff's claims "necessarily depend[] on the application of [those] policies—which relate directly to the issue of consent." *See Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136-37 (N.D. Cal. 2015).

Incorporation by reference is particularly appropriate for Meta's Cookies Policy (Exhibit 8), because Plaintiff directly cites this policy at several points in the complaint. *See* Compl. ¶¶ 76 n.45, 78 n.46, 81 n.51. Those repeated citations further support incorporation by reference. *See In*

---

[3] Meta attaches the publicly available versions of these terms and policies (Exhibits 6 through 8) that were in effect in September and October 2025, when Plaintiff alleges that she used the SkinnyRx website. Compl. ¶ 11; *see id.* ¶ 12 (alleging that Plaintiff "has active Facebook and Instagram accounts"); Meta Terms of Service, Ex. 6 at 8 ("Once any updated Terms are in effect, you will be bound by them if you continue to access or use our Products.").

*re Eventbrite*, 2020 WL 2042078, at *7; *Moates v. Facebook, Inc.*, 2024 WL 2853976, at *1 n.1 (N.D. Cal. Apr. 3, 2024) (finding Meta policy incorporated by reference where it was "directly referenced" in the complaint). And Plaintiff's selective reliance on this document does as well. *See In re PG&E*, 806 F. Supp. 3d at 986; *Khoja*, 899 F.3d at 1002. Plaintiff cites the Cookies Policy to describe the functionality of Meta's cookies technology, *see* Compl. ¶¶ 76, 78, 81, while ignoring its clear disclosures that Meta "uses cookies and receives information" from third-party websites and employs cookie technology to "serve and measure ads" across a person's devices, *see* Ex. 8 at 3, 5. Plaintiff cannot avoid those disclosures, which address the exact conduct she challenges, by citing this document but omitting the key language from the complaint. *See In re PG&E*, 806 F. Supp. 3d at 986; *Khoja*, 899 F.3d at 1002.

***Meta's Business Tools Terms.*** Meta's Business Tools Terms (Exhibit 9)[4] are also incorporated by reference. The Business Tools Terms are linked in Exhibits 1 and 2, *see* Ex. 1 at 2; Ex. 2 at 2, two versions of a Meta webpage about Pixel code that Plaintiff cites repeatedly in the complaint. *See* Compl. ¶¶ 39 n.17, 50 n.33 (citing Exhibit 1); *id.* ¶¶ 45 n.29, 46 n.30 (citing Exhibit 2).[5] That webpage includes a "reminder" for developers that their use of Pixel code is governed by the Business Tools Terms. Ex. 1 at 2; Ex. 2 at 2. The Business Tools Terms require developers to have "all of the necessary rights and permissions and a lawful basis" to collect and use the data they send to Meta and to represent that they will not use Pixel code to transmit "health," "financial," or "sensitive" information. Ex. 9 at 1.

---

[4] Meta attaches the publicly available version of the Meta Business Tools Terms (Exhibit 9) that was in effect in September and October 2025, when Plaintiff alleges that she used the SkinnyRx website. Compl. ¶ 11.

[5] The Business Tools Terms are also discussed in other Meta webpages Plaintiff cites. *See* Compl. ¶¶ 42 n.27, 49 n.31 ("About standard and custom website events," https://www.facebook.com/business/help/964258670337005?id=1205376682832142); *id.* ¶ 41 n.24 ("The Meta Business Tools," https://www.facebook.com/help/331509497253087).

Plaintiff selectively omits direct reference to the Business Tools Terms, while cherry-picking other quotes from Exhibit 2 to purportedly show what "Facebook instructs [its] business customers," Compl. ¶ 46, and alleging in conclusory fashion that Meta "knew" that LeanRx was sending "intimate health data" through Pixel code, *id.* ¶ 18. In order to meaningfully assess Plaintiff's allegations, this Court should have the benefit of the Terms that actually govern use of Meta Pixel code. Allowing Plaintiff to selectively quote from a Meta webpage while ignoring the reference to the Business Tools Terms linked on that very page would permit the kind of "artful pleading" that incorporation by reference is "designed to prevent." *Khoja*, 899 F.3d at 1002-03; *see also In re PG&E*, 806 F. Supp. 3d at 986.

***SkinnyRx Privacy Policy and homepage.*** Finally, the SkinnyRx Privacy Policy and homepage (Exhibits 10 and 11)[6] are also incorporated by reference. Plaintiff refers to the SkinnyRx homepage directly in the complaint, Compl. ¶¶ 29 & n.7, 70, and includes multiple screenshots from the website, *id.* Figs. 1-2, 4, 10-13, 17. That repeated reliance establishes incorporation by reference. *See, e.g.*, *In re Eventbrite*, 2020 WL 2042078, at *7.

Incorporation by reference is also appropriate because the SkinnyRx homepage and Privacy Policy "form[] the basis" of Plaintiff's claims that she did not consent to transmission of data from the SkinnyRx website. *See Khoja*, 899 F.3d at 1002. The SkinnyRx homepage links to the SkinnyRx Privacy Policy, Ex. 10 at 9, as do SkinnyRx's Terms and Conditions, which Plaintiff also cites, Compl. ¶ 16 n.1 (https://skinnyrx.com/terms). And both the SkinnyRx homepage and the Privacy Policy contain clear disclosures related to data transmission from the SkinnyRx website. Ex. 10 at 9; Ex. 11 at 3-4. While Plaintiff relies heavily on screenshots from the SkinnyRx website, she ignores these disclosures, which govern use of the website and undercut her claims. Therefore, as with Meta's policies, the SkinnyRx homepage and Privacy Policy are incorporated by reference because the disclosures on these webpages go to the heart of Plaintiff's claims. *See*

---

[6] Meta attaches the publicly available version of the SkinnyRx Privacy Policy (Exhibit 11) that was in effect in September and October 2025, when Plaintiff alleges that she used the SkinnyRx website. Compl. ¶ 11.

*In re PG&E*, 806 F. Supp. 3d at 986; *Khoja*, 899 F.3d at 1002; *see also, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *4 (S.D. Cal. Aug. 19, 2024) (finding a "website's privacy policy" incorporated by reference where plaintiffs "reference[d the] website throughout their Complaint," including through "numerous screen shots").

**B. Exhibits 1 Through 11 Are Also Subject To Judicial Notice**

Exhibits 1 through 11 are also judicially noticeable as publicly available documents that are "not subject to reasonable dispute" and whose contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *In re PG&E*, 806 F. Supp. 3d at 984 (quoting Fed. R. Evid. 201(b)).

"In general, websites and their contents may be judicially noticed," and courts "routinely take judicial notice of terms of service." *Hirlinger v. WP Co.*, 2024 WL 2941630, at *2 (N.D. Cal. June 10, 2024) (collecting cases); *see also, e.g.*, *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *2 (N.D. Cal. Jan. 20, 2026) (Davila, J.) (noting that "courts regularly take judicial notice" of "publicly-available online privacy policies and terms"); *Libman*, 2024 WL 4314791, at *5 (taking judicial notice of "privacy disclosures . . . available on public websites"); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1084 n.8 (N.D. Cal. 2023) (taking judicial notice of Meta's "[Terms of Service], Business Tools Terms, Commercial Terms, Privacy Policy and Cookies Policy"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1068 n.3 (N.D. Cal. 2016) (taking judicial notice of privacy policies that were "publicly available on the [defendant's] website"); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (taking judicial notice of publicly available websites and collecting cases). And courts frequently take judicial notice of previous versions of webpages archived by the Wayback Machine—like Exhibits 2, 5, and 9 (the December 2023 version of the "About Meta Pixel" webpage; the January 26, 2026 Facebook sign-up page; and Meta's Business Tools Terms in effect in September and October 2025). *See, e.g.*, *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019) (Davila, J.) (taking judicial notice of a Meta privacy policy archived by the Wayback Machine), *rev'd in part on other grounds*, 87 F.4th 934 (9th Cir. 2023); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of webpages archived by the Wayback Machine); *Erickson v. Neb. Mach.*

*Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine . . . .").

The Court should do the same here. Exhibits 1 through 11 are publicly available webpages, most of which are either cited in Plaintiff's complaint or directly referenced in the documents Plaintiff cites. *Supra* at 3-8. They are not subject to reasonable dispute, and their contents can be accurately and readily determined. They are therefore appropriately subject to judicial notice. *See* Fed. R. Evid. 201(b); *see also, e.g.*, *Hirlinger*, 2024 WL 2941630, at *2; *In re Apple*, 2026 WL 146025, at *2; *In re Facebook*, 405 F. Supp. 3d at 829.

## III. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court consider the exhibits attached to the Blunschi Declaration submitted in connection with Meta's Motion to Dismiss the Class Action Complaint.

Dated: March 31, 2026

Respectfully submitted,

LATHAM & WATKINS LLP
By: /s/ *Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine Anne Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
Maria Huryn (Bar No. 353520)
*maria.huryn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*