CHRISTOPHER W. SMITH (SBN 256494)
christopher.smith@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Defendant
LEAN RX, INC.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| ANNA BUCHHOLZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 5:26-cv-00846-EJD<br><br>**DEFENDANT LEAN RX, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Edward J. Davila<br>Date: July 9, 2026<br>Time: 9:00 a.m.<br>Crtrm.: 4<br><br>Complaint Filed: January 26, 2026 |

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 9, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Edward J. Davila, in Courtroom 4, 5th Floor of the United States District Court, Northern District of California, 280 South 1st Street, San Jose, California 95113, Defendant Lean Rx, Inc. ("Defendant" or "LeanRx") will and hereby does move to dismiss the Complaint filed by Plaintiff Anna Buchholz ("Plaintiff") in this action. LeanRx's Motion to Dismiss ("Motion") is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, and all other pleadings and papers on file herein, and such argument and evidence as may be presented to the Court.

**REQUESTED RELIEF**

LeanRx has contemporaneously filed a Motion to Compel Arbitration and Stay Proceedings. In the event that Motion is not granted in full, Lean Rx requests that the Court dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for Plaintiff's failure to plausibly allege injury sufficient (a) to confer standing under Article III, (b) to satisfy the similar requirement for standing under California law, and/or (c) to satisfy the element of injury required for each of Plaintiff's claims, or, in the alternative, dismiss all claims because Plaintiff fails to state a claim for relief.

DATED: April 30, 2026

SAUL EWING LLP

By: ______________________________
CHRISTOPHER SMITH
Attorney for Defendant
LEAN RX, INC.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ....... 1
I. INTRODUCTION. ....... 1
II. BACKGROUND. ....... 2
A. LeanRx. ....... 2
B. Allegations Relating to LeanRx. ....... 2
III. STANDARD OF REVIEW. ....... 3
A. Rule 12(b)(6). ....... 3
B. Rule 9(b). ....... 4
IV. ARGUMENT. ....... 4
A. Plaintiff Fails to Plausibly Allege a Violation of ECPA—Claim 1. ....... 5
B. Plaintiff Fails to Plausibly Allege a Violation of CIPA—Claims 2 and 3. ....... 6
1. Plaintiff Lacks Standing to Bring her CIPA Claims. ....... 6
2. The Complaint Fails to State a Claim for Violation of CIPA Section 631(a). ....... 8
a. LeanRx Did Not Wiretap. ....... 9
b. LeanRx Did Not Eavesdrop. ....... 9
c. Google and Meta Did Not Eavesdrop Either. ....... 10
3. The Complaint Fails to State a Claim for Violation of CIPA Section 632. ....... 12
a. Device. ....... 12
b. Confidentiality. ....... 14
C. Plaintiff Fails to Plausibly Allege a Violation of CDAFA—Claim 4. ....... 15
1. Plaintiff Lacks Statutory Standing to Bring a CDAFA Claim. ....... 15
2. The Complaint Fails to State a Claim for Violation of CDAFA. ....... 16
D. Plaintiff Fails to Plausibly Allege a Violation of the California Constitution - Claim 5. ....... 18
1. Plaintiff Has Not Allegedly a Legally Protected Privacy Interest That LeanRx Invaded. ....... 18
2. Plaintiff Has No Reasonable Expectation of Privacy Over Website Browsing Information. ....... 20
3. Plaintiff Has Not Alleged Highly Offensive Conduct, As Opposed to Routine Commercial Activity. ....... 22
V. CONCLUSION. ....... 23

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 13

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 4

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (N.D. Cal. 2024) .......... 5, 22

*Borg-Warner Protective Servs. Corp. v. Super. Ct.*,
75 Cal. App. 4th 1203 (1999) .......... 11

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 9

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 16

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. July 12, 2023) .......... 19, 23

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 20, 21

*Doe 1 v. Google LLC*,
741 F. Supp. 3d 828 .......... 5

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 16, 18

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 13

*Dole v. United Steelworkers of Am.*,
494 U.S. 26 (1990) .......... 14

*In re Facebook Consumer Privacy Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. Sept. 9, 2019) .......... 17

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Fayer v. Vaughn*,
649 F. 3d 1061 (9th Cir. 2011) ........ 4

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........ 22, 23

*In re Google Android Consumer Privacy Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ........ 16

*In re Google Assistant Privacy Lit.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 9

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d at 193 ........ 13

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 14

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) (unpublished) ........ 9

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 20

*Hauck v. Advanced Micro Devices, Inc.*,
2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ........ 18

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 20

*Heiting v. Taro Pharmaceuticals*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 17

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 18, 22

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 22

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 11, 12

*In re Jennings*,
34 Cal. 4th 254 (2004) ........ 14

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Jones v. Peloton Interactive, Inc.*,
2024 WL 1123237 (S.D. Cal. Mar. 12, 2024) .......... 18

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) .......... 6

*Kearns v. Ford Motor Co.*,
567 F. 3d 1120 (9th Cir. 2009) .......... 4

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 5

*L.A. Cnty. Metro. Transp. Auth. v. Alameda Produce Mkt., LLC*,
52 Cal. 4th 1100 (2011) .......... 14

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 18, 22

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 6, 7, 19, 20

*McClung v. AdShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 17

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .......... 22

*Pena v. GameStop*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 6

*People v. Snook*,
16 Cal. 4th 1210 (1997) .......... 13

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 5, 6

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 20

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 14

*Ticketmaster LLC v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. May 29, 2018) .......... 17, 18

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 11

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
637 F. 3d 1047 (9th Cir. 2011) .......... 4

*Vess v. Ciba-Geigy Corp. USA*,
317 F. 3d 1097 (9th Cir. 2003) ... 4

*Westron v. Zoom Video Comm'ns*,
2023 WL 3149262 (N.D. Cal. Feb. 15, 2023) ... 18

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ... 10

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ... 15

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) ... 7, 8

**Statutes**

18 U.S.C. § 2511(1) ... 5

18 U.S.C. § 2511(2)(d) ... 5

Cal. Civ. Code § 2330 ... 11

Cal. Pen. Code § 502 ... 16

Cal. Pen. Code § 502(e)(1) ... 16

Cal. Pen. Code § 632 ... 6, 12, 13, 14

Cal. Pen. Code § 632(a) ... 4, 12, 14

Cal. Pen. Code § 632(c) ... 14

Cal. Pen. Code § 638.50(b) ... 14

Cal. Penal Code § 502(b)(12) ... 17, 18

CDAFA ... *passim*

CDAFA § 502(c)(4) ... 17

CDAFA § 502(c)(8) ... 17, 18

CDAFA subsections ... 16

CIPA ... *passim*

CIPA § 631 ... 7, 11

CIPA § 637.7 ... 13

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Comprehensive Computer Data and Access and Fraud Act, Cal. Penal Code § 502 et seq. .......... 4

ECPA .......... 5, 6

Electronic Communications Privacy Act, 18 U.S.C. § 2511 et seq. .......... 4

HIPAA .......... 12, 15

Medical Information Act .......... 5

Privacy Act, Cal. Penal Code § 631(a) .......... *passim*

Wiretap Act .......... 6

**Other Authorities**

California Constitution .......... 4, 18

Device, Dictionary.Cambridge.org, https://dictionary.cambridge.org/dictionary/ .......... 13

Federal Rules of Civil Procedure Rule 9(b) .......... 1, 4

Federal Rules of Civil Procedure Rule 12(b)(6) .......... 1, 3, 4

www.skinnyrx.com .......... 1

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Lean Rx, Inc. ("Defendant" or "LeanRx") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## I. INTRODUCTION.

LeanRx owns and operates a website—www.skinnyrx.com (the "Website"). LeanRx uses the Website to sell prescription weight loss medications to customers. Plaintiff Anna Buchholz ("Plaintiff") is one of those customers. Plaintiff inputted her name, email address, and the type of medication she sought to purchase. LeanRx then sold her the medication. Plaintiff subsequently received advertisements on Facebook and other platforms that she asserts were generated as a result to that purchase. Plaintiff now sues LeanRx under wiretapping theories and other causes of action, asserting that LeanRx acted improperly.

Plaintiff asserts that LeanRx used tracking technologies on the Website that enabled the two other defendants in this case, Defendant Google, LLC ("Google"), and Defendant Meta Platforms Inc. ("Meta"), to identify drugs customers purchased from the Website. Complaint, ¶ 2. Plaintiff asserts that LeanRx conspired with Google and Meta to "intercept communications sent and received by Plaintiff" (Complaint, ¶ 3), but LeanRx did not intercept anything; Plaintiff voluntarily inputted her purchase information on the Website. LeanRx did use certain Google applications to track information its customers input onto the Website but disclosed that it was doing so; LeanRx did not eavesdrop. Nor did Lean Rx use its Google applications collect any information beyond name, email address, and type of product ordered.

Plaintiff asserts that this act of allegedly passing on customer information—routine commercial conduct—violated certain wiretapping laws and Plaintiff's constitutional right to privacy. The Complaint wholly fails to explain how LeanRx wiretapped anything or eavesdropped on anything or how exactly Plaintiff had a reasonable expectation of privacy. LeanRx is an online retailer that receives customer-input information on the Website. Plaintiff's remaining claims

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

suffer from similar flaws and should also be dismissed.[1]

## II. BACKGROUND.

### A. LeanRx.

LeanRx's business involves online commercial purchases, and it utilizes certain of Google's applications to assist with that business—Google Analytics, Google Tag Manager, and DoubleClick. Complaint, ¶ 20. LeanRx uses those products to learn how users interact with the Website, such as how many users bought a  particular item. Complaint, ¶ 54. Google Analytics collects data from the Website, and aggregates that into reports provided to LeanRx. Complaint, ¶ 54. LeanRx's contract with Google required LeanRx to disclose to its customers the use of Google Analytics, and how that program collects and processes data, which LeanRx allegedly did.

While Plaintiff suggests that sensitive health information is being collected, the Complaint asserts that LeanRx collects only the following information about customers: (1) first and last names, (2) date of birth, (3) email address, (4) shipping address, (5) IP addresses and device information, and (6) the medication the user is attempting to buy. Complaint, ¶¶ 1, 84. There are no allegations, however, that sensitive health information about Plaintiff herself was collected or transmitted to Google or Meta.

### B. Allegations Relating to LeanRx.

LeanRx owns and operates the Website. Complaint, ¶ 2. Plaintiff asserts that LeanRx connects consumers with "their team of board-certified weight loss doctors," to "create personalized weight loss plans tailored to the consumer, which will allow for the overnight delivery of prescription medications such as Ozempic, Wegovy, and Zepbound. Complaint, ¶ 16. Plaintiff asserts the process occurs as follows: (1) a customer orders product on the Website, (2) the customer fills out an intake form that relates to the customer's eligibility to receive that medication, (3) a LeanRx medical provider reviews that intake form, and (4) if the medical

[1] Both Google and Meta have filed motions to dismiss the Complaint, to be heard on July 26, 2026. *See* Dkt. 35 and 37. LeanRx incorporates many of the same arguments made by Google and Meta in this Motion.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

provider agrees, the medication is either shipped overnight to the consumer, or a video call with a doctor may be initiated. Complaint, ¶¶ 16, 29.

Plaintiff allegedly first accessed the Website in September 2025. Complaint, ¶ 11. She allegedly ordered weight loss medications—prescriptions for Semaglutide and Semaglutide Tablets—on September 10, 2025, and October 1, 2025. Complaint, ¶ 11. The Complaint does not assert that LeanRx connected Plaintiff with its purported "team of board-certified weight loss doctors". Nor does the Complaint assert that LeanRx's purported team of doctors provided Plaintiff with a "personalized weight loss plan tailored to" Plaintiff. The Complaint does not assert that Plaintiff ever had a video call with any doctor. Thus, of all the steps that Plaintiff purports customarily occur when customers visit the Website and order medications, only one step apparently occurred here—Plaintiff received her medication.

Plaintiff alleges that LeanRx, "installed various tracking technologies" on the Website, including Google Pixel. Complaint, ¶¶ 3, 33, 44. Plaintiff alleges that the LeanRx did this for the purpose of "improving its own targeted advertising efforts". Complaint, ¶ 3. Plaintiff asserts that these technologies allowed Google and Meta to obtain LeanRx's customers' "first and last names, email addresses, IP addresses, and Facebook ID numbers," and what prescription drugs they were purchasing. Complaint, ¶ 2. Plaintiff asserts that upon visiting the Website, this code installed itself on Plaintiff's internet browser. Complaint, ¶ 33.

Plaintiff claims LeanRx breached its duties of confidentiality and unlawfully disclosed Plaintiff's personal information. Complaint, ¶ 14. This personal information consisted of (i) device identifiers and IP addresses (Complaint, ¶ 63), (ii) a browser-fingerprint (Complaint, ¶ 64), (iii) the type of medication Plaintiff was seeking (Complaint, ¶ 69), (iv) Plaintiff's Facebook ID and certain "cookies" that Facebook uses to identify a browser and user (Complaint, ¶¶ 73, 83), and (v) Plaintiff's first and last name. *Id.*

## III. **<u>STANDARD OF REVIEW</u>**.

### A. **<u>Rule 12(b)(6).</u>**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

662, 678 (2009) (citation omitted). In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679. On a motion to dismiss, the court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F. 3d 1061, 1064 (9th Cir. 2011).

**B. <u>Rule 9(b).</u>**

Under Rule 9(b), "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. Proc. 9(b)). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F. 3d 1047, 1055 (9th Cir. 2011) (citation omitted). When a complaint includes a claim "grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the…claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1107 (9th Cir. 2003). Where a defendant moves to dismiss a complaint under Rule 9(b) "for failure to plead with particularity," it is "the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

**IV. <u>ARGUMENT</u>.**

Plaintiff asserts five claims against LeanRx. Claim one asserts a claim for violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 et seq. ("ECPA"). Claim two asserts a claim under The California Invasion of Privacy Act, Cal. Penal Code ("CIPA") § 631(a). Claim three asserts a claim under CIPA § 632(a). Claim four asserts a claim under the Comprehensive Computer Data and Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 et seq. Claim five asserts a claim for invasion of privacy under the California Constitution. These claims should be dismissed because Plaintiff lacks standing to assert them and the Complaint does not and cannot allege the requisite elements to support them.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

### A. Plaintiff Fails to Plausibly Allege a Violation of ECPA—Claim 1.

ECPA makes it unlawful to intentionally intercept an electronic communication. *See* 18 U.S.C. § 2511(1). To state an ECPA claim, Plaintiff must allege LeanRx (1) intentionally (2) intercepted (3) the contents of (4) Plaintiff's electronic communications (5) using a device. *See Doe 1 v. Google LLC*, 741 F. Supp. 3d 828, 842 (dismissing complaint against Google for failure to state a claim for violation of ECPA).

Here, LeanRx did not "intercept" any communications by Plaintiff. Instead, Plaintiff input her own information on the Website. Further, Plaintiff consented to disclose information to LeanRx. The ECPA is a one-party consent statute; only one party to the communication must consent to the alleged interception. 18 U.S.C. § 2511(2)(d); *Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *8 (N.D. Cal. Jan. 27, 2026) ("Where 'one of the parties to the communication has given prior consent to such interception,' there can be no violation of ECPA."); *see also Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021). Here, Plaintiff explicitly states that she consented to giving her information to LeanRx, for the purpose of ordering medication. Complaint, ¶¶ 11, 16, 29, 70. Indeed, she describes the "Get Started" prompt on the Website as first requiring a customer to "provide medical information as part of the intake process" before being allowed to order medication. Complaint, ¶ 69.

While the Complaint asserts that consent is not a bar to asserting a claim when the conduct is for "the purpose of committing any criminal or tortious act…" (Complaint, ¶ 28), that exception requires allegations that the interception was for a criminal or tortious purpose independent of the alleged interception itself. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (N.D. Cal. 2024). Plaintiff identifies no such criminal or tortious purpose in her Complaint. Her allegations that LeanRx violated other state laws are irrelevant those purported violations are not independent of the alleged "interception," which in actuality is simply receiving information Plaintiff typed in to the Website. Complaint, ¶ 11.

Plaintiff alleges that LeanRx violated the Confidentiality of Medical Information Act by "plac[ing] cookies as well as us[ing] the Trackers which commanded Plaintiff's and Class Members' computing devices to send identifiers and the content of communications with LeanRx

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

[] simultaneously to [Google and Meta].” Complaint, ¶¶ 150a-c. Plaintiff also alleges that LeanRx violated CDAFA by using cookies that “redirect their data and the content of their communications with LeanRx [] simultaneously to [Google and Meta].” Complaint, ¶¶ 152-153. Plaintiff also alleges that she and class members “did not authorize Defendants to acquire the content of their communications for purposes of invading Plaintiff's and class Members' privacy.” Complaint, ¶ 157. Therefore, she has not pled any unlawful purpose that is distinct from the same alleged interception.

The closest Plaintiff gets to alleging independent purpose is her assertion that LeanRx collected this information “for advertising purposes”. Complaint, ¶ 31. Such “advertising purposes” are insufficient to trigger the crime-tort exception, as allegations that a defendant acted for the purpose of “generat[ing] revenue” through advertising is not criminal or tortious. *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) (dismissing Wiretap Act claim); *see Rodriguez*, 2021 WL 2026726, at *6 n. 8 (same); *Pena v. GameStop*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (alleged interception for purpose of advertising did not trigger crime-tort exception since it was not independently actionable or illegal). Accordingly, Plaintiff's consent to transmit personal information to LeanRx by accessing the Website is a complete defense to ECPA.

**B. <u>Plaintiff Fails to Plausibly Allege a Violation of CIPA—Claims 2 and 3.</u>**

Plaintiff's Complaint fails to allege a CIPA claim because: (1) Plaintiff lacks standing to bring her CIPA claims; (2) Plaintiff fails to state a claim for violation of Section 631(a) of CIPA; and (3) Plaintiff fails to state a claim for violation of Section 632 of CIPA.

**1. <u>Plaintiff Lacks Standing to Bring her CIPA Claims.</u>**

Plaintiff lacks standing to bring her CIPA claims, and this Court thus lacks subject matter jurisdiction, because the Complaint does not establish that she suffered an injury in fact.

“To establish Article III standing, a plaintiff must show: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of (i.e., traceability), and (3) a likelihood that the injury will be redressed by a favorable decision (i.e., redressability).” *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *4 (S.D. Cal. Feb. 23, 2026) (citing

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Bare statutory violations are insufficient to establish injury in fact, but lawmakers may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate' to confer standing." *Id.* (alteration omitted) (quoting *Lujan*, 504 U.S. at 578). "By enacting CIPA, the California legislature 'codified a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'" *Id.* (alteration omitted) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 598 (9th Cir. 2020)). "But the codification of this right 'does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm[.]'" *Id.* (alteration omitted) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021)).

In *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1142 (E.D. Cal. 2025), the court held that the plaintiffs failed to allege a concrete and actual injury and therefore lacked standing. The plaintiffs alleged that "third party trackers installed by defendants intercept[ed] [plaintiffs'] email address, the user's IP address, and the fact that the user visited the website" when users input information into the website to create an account. *Id.* That interception enabled the tracker to "determine the [user's] device's state, city, zip code, and approximately latitude and longitude." *Id.* The "intercepted email address and IP address together enable[d] third parties to link users' identities across multiple websites and apps, through a process known as 'ID bridging.'" *Id.* This bridging enabled the third-party trackers to "follow users all over the internet and feed them advertisements" and use the data collected from them "for research and marketing purposes for both defendants and third parties." *Id.* (alteration and internal quotation marks omitted). The plaintiffs brought claims for, among other causes of action, violations of CIPA § 631. *See id.* at 1142-43.

Despite the above allegations, the *Wooten* court concluded that plaintiffs failed to establish a concrete injury. *See id.* at 1144. The court observed that "[c]ourts have held that there is no legally protected privacy interest in an IP address or, in many contexts, in such relatively quotidian private information as an email address." *Id.* The harms plaintiff posited, including disclosing an email address and IP address, "without more, [did] not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.*

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Wooten* also concluded that the plaintiffs did "not sufficiently allege any *actual* injury." *Id.* at 1145 (emphasis in original). "Rather, [the plaintiffs] alleged that the third-party trackers have the *capability* to use these pieces of information to engage in ID bridging, which could then result in targeted advertising and could contribute to defendants' marketing, advertising, and data analytics efforts." *Id*. Importantly, the "plaintiffs [did] not allege that [the] defendants themselves took any such actions. Nor did plaintiffs specifically allege that they were subject to any such advertising." *Id.* The plaintiffs' allegations of "retention of noninvasive information alone [were] insufficient to establish Article III standing." *Id.*

As in *Wooten*, Plaintiff fails to allege a concrete injury to a legally protected interest. Plaintiff alleges the interception of information like IP addresses and email addresses that *Wooten* specifically recognized cannot support a concrete injury. *See id.* at 1144. Plaintiff also alleges similar "relatively quotidian private information" that cannot support a concrete injury like versions of operating systems, browsers, languages, screen resolutions, URLs, and User-IDs. *Wooten*, 807 F. Supp. 3d at 1144. And interception of the information alleged in the Complaint would not be "actionable at common law" under a claim of, for example, intrusion upon seclusion, so Plaintiff cannot satisfy the concreteness requirement. *Wooten*, 807 F. Supp. 3d at 1144. Plaintiff thus lacks standing to bring her CIPA claims.

#### 2. **<u>The Complaint Fails to State a Claim for Violation of CIPA Section 631(a).</u>**

The Complaint notes that CIPA § 631(a) imposes liability under four distinct theories. Complaint, § 139. The first involves intentional wiretapping, and the second involves eavesdropping. *Id*. Plaintiff's claim against LeanRx involves the third theory—communication of "any information so obtained." Complaint, ¶ 139. Specifically, Plaintiff asserts that LeanRx (1) "aided, agreed with, and conspired with third parties, including, Defendants [Meta] and Google, to track and intercept Plaintiff's and Class Members' internet communications while accessing the Website," and (2) "intended to help those third parties learn some meaning of the content in the URLs and the content the visitor requested." Complaint, ¶¶ 165-166.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Both theories require an "underlying third-party violation" under "the first and second clauses of Section 631(a)." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024); *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (unpublished) (Plaintiff's "fourth clause claim fails because she has not established an underlying violation of section 631(a)'s first or second clause"); *In re Google Assistant Privacy Lit.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because Plaintiffs have not done so, they also have failed to plead a violation of the third clause."). As explained further below, Plaintiff has not plausibly alleged a violation under either the first or second clause.

**a. <u>LeanRx Did Not Wiretap.</u>**

The Complaint contains no allegations that LeanRx's actions involved intentional wiretapping, or an unauthorized connection by which LeanRx obtained information about Plaintiff. Plaintiff asserts that she provided information to the Website voluntarily, which first required Plaintiff to complete a "health intake quiz". Complaint, ¶¶ 11, 16, 29, 70. Plaintiff also asserts the Website disclosed that after completing such health intake information, "a licensed clinician will review your information." Complaint, ¶ 29. Plaintiff thus not only voluntarily inputted her information into the Website but knew that the information she was inputting into the Website would be communicated to other parties. Plaintiff had no reasonable expectation that LeanRx would not convey the information she input into the Website to third parties.

**b. <u>LeanRx Did Not Eavesdrop.</u>**

The second clause of CIPA § 631(a) has two parts. The first is that a party must "willfully and without the consent of all parties to the communication, or in any unauthorized manner," take a certain action. Here, for the reasons stated above, Plaintiff intentionally disclosed information to LeanRx with the expectation that it would be provided to certain individuals. This is consent, and Plaintiff nowhere asserts that LeanRx learned of Plaintiff's information was provided in an unauthorized manner. Thus, LeanRx is a "party" to Plaintiff's alleged communications with the Website, not a third-party "eavesdropper," and there can thus be no CIPA violation. *See Graham v. Noom*, 533 F. Supp. 3d 823, 831-33 (N.D. Cal. 2021) (a party to a communication can record it

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

and is not eavesdropping when it does). The second part is that a party must learn of this information (without consent, and in an unauthorized manner) while the information is in transit. Plaintiff has not asserted that LeanRx learned of Plaintiff's information at some subsequent time. Instead, Plaintiff asserts that she input her information into the Website, whereupon LeanRx learned of it. These allegations do not fit into CIPA § 631(a), which requires allegations of a defendant "reading" the "contents" of communication "while it is in transit or passing over any wire" in the State of California. *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) (no liability under CIPA where no allegations showed efforts to understand substantive meaning while in transit). Plaintiff's allegations on this second part are equally lacking. The Complaint offers rote allegations regarding this "in transit" requirement, explaining that the Google Tracking Pixels "read, or, at the very least, attempt to read the user's interactions on the website" "instantaneously and in real time." Complaint, ¶ 87. But whether Google Tracking Pixels "classified" or "organized" the information Plaintiff inputted into the Website is irrelevant and says nothing about how LeanRx "read" that information at some point after Plaintiff voluntarily disclosed it on the Website.

On the relevant point—LeanRx's actions—the Complaint's allegations expressly contradict any inference that LeanRx reads her communications in transit. To start, she characterizes the transmissions as occurring between LeanRx and Google, not between Plaintiff and LeanRx. Complaint, ¶ 88. Further, the allegations make clear that to the extent any reading occurs, it is done after the data reaches Google. Specifically, Plaintiff alleges that "[o]nce Google intercepts website communications, it has the capability to use such information for its own purposes" and that Google "collect[s] visitor information from thousands of websites and then analyz[es] that information[.]". Complaint, ¶¶ 59-60. This concession comports with common sense. How could Google "stitch together multiple interactions from multiple webpages" simultaneously in real time? That could not have occurred; rather, the "analysis" occurred afterwards, not during the transmission itself.

**c. <u>Google and Meta Did Not Eavesdrop Either.</u>**

Judge Chhabria recently evaluated similar allegations concerning the Meta Pixel and, on

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

this basis, concluded that any "reading" of data "indisputably takes place after the communication has already traveled from the website visitor to the website operator." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025). Because "the only commonsense meaning of transit, at least in the context of this statute, is the transit from the person sending the communication to its intended recipient," the plaintiff failed to allege any reading while in transit. *Id*.; *see also*, *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing section 631 claim with prejudice where "there is no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received"); *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025) (dismissing CIPA claim because "Plaintiffs have not shown that [the defendant] attempted to understand . . . the contents of Plaintiffs' communications . . . while [they] were in transit"). Accordingly, the Court should dismiss this claim for same reasons.

Though Plaintiff alleges, in a generic manner, that Google "has the capability to use website communications to: (i) improve its own products and services; (ii) develop new . . . products and services; and (iii) analyze website visitor's communications" (Complaint, ¶ 62), capability is not enough. While some courts hold that allegations of a vendor's mere "capacity" to use data for its own benefit suffices at the pleading stage, these cases err by failing to consider ordinary agency principles implicit in every California statute. *See Borg-Warner Protective Servs. Corp. v. Super. Ct.*, 75 Cal. App. 4th 1203, 1207–08 (1999). As background, the "capacity" standard arose as a response to defendants' post-*Graham* argument that they must be treated as mere service providers absent allegations of independent data use. *See, e.g., Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Courts noted that requiring a use showing would render the Section 631(a)'s third clause—forbidding use of improperly obtained data—superfluous, thus, capacity or "capability" allegations are all that is needed. *Id*. This interpretive problem, however, dissolves under an agency framework: when a vendor acts within the scope of its contractually delegated authority, its conduct is legally the website's own—and a party cannot eavesdrop on its own communications. *See* Cal. Civ. Code § 2330. A service provider like Google exceeds its delegated authority—and may violate CIPA's third clause—only where it acts in ways

that were not authorized by the website owner. For example, by making unauthorized connections or improperly reading communications in transit, thus violating clauses one or two without using any data at all. Under this framework, the interpretive problem that drove *Javier*—that reading a use requirement into the second prong would add requirements not present in the statute and "swallow the third prong in the process"—becomes illusory. *Javier*, 649 F. Supp. 3d at 900.

**3. <u>The Complaint Fails to State a Claim for Violation of CIPA Section 632.</u>**

Plaintiff's third claim is that LeanRx violated CIPA § 632(a), which is another eavesdropping statute. Here, Plaintiff does not assert that LeanRx eavesdropped, but that LeanRx assisted the other defendants with eavesdropping. Complaint, ¶ 143. Neither LeanRx nor the other Defendants eavesdropped, for the reasons articulated above in the analysis of Plaintiff's second claim.

Plaintiff claims that she had an expectation of privacy based on HIPAA. Complaint, ¶ 143. While Plaintiff asserts that Plaintiff did not reasonably expect that anyone other than LeanRx would receive this information (Complaint, ¶ 146), that allegation is contradicted by Plaintiff's assertion that her information would be reviewed by "a licensed clinician" and that she might, after submitting her information, "have a video call with a doctor." Complaint, ¶ 29. Plaintiff thus acknowledges she expected some people other than LeanRx would review her order for weight loss medication.

Nor does Plaintiff demonstrate that parties like Google meet the requirements of CIPA § 632(a). Plaintiff must show, among other things, that Google intentionally recorded a "confidential" communication by means of an "amplifying or recording device." *See* Cal. Pen. Code § 632. Plaintiff has not satisfied these elements. Google Analytics—a piece of software code—is not a "device" within the meaning of Section 632. Further, Plaintiff fails to adequately allege that Google "intentionally" recorded a "confidential" communication.

**a. <u>Device.</u>**

Plaintiff's Section 632 claim fails because she does not allege that Google used an "electronic amplifying or recording device" to allegedly eavesdrop on her communications. Cal.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Pen. Code § 632. The Complaint alleges that "Trackers are [] 'electronic amplifying or recording device[s].'" Complaint, ¶ 144. But software—which is what Google's technology is and how it is described throughout the Complaint— is not a "device" under CIPA.

Courts have repeatedly endorsed this rule. For example, in *In re Google Location History Litigation*, this Court held that Google Chrome is not a "device" under CIPA § 637.7 because it is software, not physical "equipment." 428 F. Supp. 3d 185, 193–194 (N.D. Cal. 2019); see also *A.S. v. SelectQuote Ins. Servs*., 2024 WL 3881850, at *11 (S.D. Cal. Aug. 19, 2024) (dismissing § 632 claim based on recording by software); *Doe v. Microsoft Corp*., 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) ("Because software does not constitute a 'device' under the CIPA, Plaintiff's § 632 claim against Microsoft is deficient."). That ruling relied on *Moreno v. S.F. Bay Area Rapid Transit District*, which concluded that a mobile application was not a "device" because the term refers to a physical object, within the meaning of section 637.7. The *Moreno* court similarly observed that a device is a "thing," "a piece of mechanical or electronic equipment." 2017 WL 6387764, at *5–6 (N.D. Cal. Dec. 14, 2017); *see also Doe v. Microsoft Corp*., 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (finding software not a "device" under CIPA). The rationale of these decisions applies here, given Plaintiff's allegation that LeanRx "integrate[s] various third-party scripts [including Google's] into the code of [its] website[.]" Complaint, ¶ 30.

This reasoning is also consistent with canons of statutory construction and CIPA's legislative history. First, when interpreting California law, courts look to the "actual words of the statute" and "giv[e] them a plain and commonsense meaning." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193 (quoting *Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*, 14 Cal. 4th 627, 633 (1997)). "If there is no ambiguity in the language, [courts] presume the Legislature meant what it said, and the plain meaning of the statute governs." *People v. Snook*, 16 Cal. 4th 1210, 1215 (1997). The plain meaning of "device" refers to a tangible object or machine—something which Google Analytics is not, regardless of the number of times Plaintiff used the word "tracker" in her Complaint. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 193; *see also* Device, Dictionary.Cambridge.org, https://dictionary.cambridge.org/dictionary/

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

English/device (last visited April 29, 2026) (defining "device" as "an object or machine that has been invented for a particular purpose" or "a machine, for example a phone or computer, that can be used to connect to the internet").

Further, statutes must be construed in light of the entire statutory scheme, not in isolation. *L.A. Cnty. Metro. Transp. Auth. v. Alameda Produce Mkt., LLC*, 52 Cal. 4th 1100, 1106–07 (2011). In 2015, the California Legislature enacted a different CIPA provision, section 638.51, to encompass a "device or process." Cal. Pen. Code § 638.50(b) (defining a pen register and trap and trace device as a "device or process"). Courts applying this provision have held that software qualifies as a "process," rather than a "device." *See, e.g., Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024) (same). That the Legislature added "process" to the definitions behind section 638.51 but declined to do so when it amended section 632 a year later (*see* 2016 Cal A.B. 1671) shows it did not intend for section 632 to apply to software. See *In re Jennings*, 34 Cal. 4th 254, 273 (2004) (omission of a provision from a similar statute is significant evidence of different legislative intent).

Further still, the Legislature's intent is further clarified by "the traditional canon of construction, noscitur a sociis," which "dictates that 'words grouped in a list should be given related meaning.'" *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (citations omitted). Section 632 prohibits recording of communications "carried on . . . by means of a telegraph, telephone, or other device, except a radio[.]" Cal. Pen. Code § 632(a). The list that precedes device describes only physical things, further confirming that the Legislature intended the term "device" to refer only to physical equipment.

**b. <u>Confidentiality.</u>**

Lastly, Plaintiff does not plausibly allege that her online communications with LeanRx were "confidential" within the meaning of the statute. Section 632 states that a communication is not "confidential" if it is carried on "in any circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Pen. Code § 632(c). Further underscoring this point, any entity known to the parties to be

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

overhearing the conversation is specifically excluded from the definition of "persons" subject to liability under the statute—whether or not that individual obtained consent. *See id*. § 632(b).

Plaintiff's allegations do not meet the specific standard of "confidentiality" because she could reasonably expect her communications to be overheard or recorded. Specifically, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632." *Swarts*, 689 F. Supp. 3d at 746–47 (quoting *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)) (collecting cases). Indeed, there is a "presumption' that such communications do not give rise to the requisite expectation." *Id*. at 747 (quoting *Revitch v. New Moosejaw, Inc.*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019)). Plaintiff does not rebut that presumption. Instead, she generally points to an image purporting HIPAA compliance at the bottom of the Website. Complaint, ¶ 104. Even assuming Plaintiff scrolled to the bottom of the Website and saw this image, vaguely referring to HIPAA does not show an expectation that health-related communications will never be overheard or recorded. HIPAA exists precisely because health-related communications are often recorded and shared with a variety of third parties involved in the provision of healthcare and related services.

While HIPAA violations may give rise to a host of causes of action, a healthcare provider' disclosure of health information to a third-party (against that third-party's instructions) does not turn that third-party into an "eavesdropper" under CIPA.

**C. <u>Plaintiff Fails to Plausibly Allege a Violation of CDAFA—Claim 4.</u>**

Plaintiff's Complaint fails to allege a CDAFA claim because: (1) Plaintiff has not included any allegations to demonstrate damage or loss to establish statutory standing under the CDAFA; (2) Plaintiff has not made allegations to establish that LeanRx acted to circumvent technological barriers, as required by the CDAFA.

**1. <u>Plaintiff Lacks Statutory Standing to Bring a CDAFA Claim.</u>**

Plaintiff also offers no allegations making a "showing of economic harm or loss" as is required for standing to assert a CDAFA claim. *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). Indeed, only an individual who has "suffer[ed] damage or loss by reason of a violation" of the statute may bring a civil action "for compensatory damages and injunctive

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

relief or other equitable relief." Cal. Pen. Code § 502(e)(1). Courts have held that the loss of the right to control or protect data or loss of value of personal data is not the type of loss protected by the CDAFA. *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (finding unpersuasive the argument that "the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of data, as discussed above, is 'damage or loss' within the meaning of the CDAFA"); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023) (dismissing CDAFA claim for use of Meta Pixel because *Cottle* precluded plaintiffs' argument that their "protected information is diminished in value" and plaintiffs provided "no support" for their alternative "argument that an 'inability' to use their computer devices to communicate with their healthcare providers in the future is a cognizable form of loss or damage actionable under the CDAFA"). Plaintiff thus lacks statutory standing to bring her CDAFA claim, and the Court should dismiss the claim for this reason as well.

**2. <u>The Complaint Fails to State a Claim for Violation of CDAFA.</u>**

CDAFA prohibits "knowingly accessing, and without permission, using any data, computer, computer systems, or computer network" in certain prohibited ways. Cal. Pen. Code § 502. Plaintiff fails to state a claim under any of the CDAFA subsections she invokes for two reasons. First, to have standing under CDAFA as a private plaintiff, the complaint must plausibly allege "damage or loss" "by reason of" conduct that violates CDAFA. Cal. Penal Code § 502(e)(1). The Complaint fails to allege this crucial element. Second, Plaintiff has failed to allege all of the necessary elements of the multiple CDAFA subsections she invokes.

Plaintiff does not allege a cognizable "damage or loss" that gives her standing to recover damages under the statute. Cal. Penal Code § 502(e)(1). Allegations of an invasion of statutory rights are not sufficient, nor are allegations of mere loss of control or diminution in value of personal data. *Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064, 1081–82 (N.D. Cal. 2023), motion to certify appeal denied, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (affirming rejection of CDAFA claim based on "loss of the right to control their own data, the loss of the value of their data"); *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236 , at *6 (N.D. Cal. Mar. 26, 2013) (CDAFA claim requires "damage or loss, beyond the mere invasion of statutory

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

rights."); *Heiting v. Taro Pharmaceuticals*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) ("[T]he Court agrees with the majority of courts to consider the issue, and finds that the CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website."). This is precisely the type of harm alleged. Complaint, ¶¶ 151–154 (alleging loss due to diminution in value of protected health information and loss of privacy and control over communications with healthcare providers).

Plaintiff also alleges that Defendants used Plaintiff's data for advertising and profit from it, but this does not state a claim under CDAFA either. Complaint, ¶¶ 167-170. Merely alleging that Defendants have profited from Plaintiff's data does not equate to Plaintiff having "lost money or property" as a result of conduct violating CDAFA for the purpose of statutory standing. *See McClung v. AdShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) ("The Court continues to be skeptical of the plaintiffs' theory that California's statutory standing requirement for these claims can be satisfied simply by alleging that the defendant was unjustly enriched by the misappropriation of personal information."); *In re Facebook Consumer Privacy Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. Sept. 9, 2019) ("[A]lthough it's true that each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information, when not disclosed, has independent economic value to an individual user."). Plaintiff makes no allegations that bridges the gap.

Plaintiff broadly invokes every subsection of CDAFA, however, she fails to allege facts supporting each of their elements. As to CDAFA § 502(c)(4), Plaintiff alleges no facts showing that LeanRx "add[ed], alter[ed], damage[d], delete[d], or destroy[ed]" any data or computer program. Complaint, ¶ 166; *Ticketmaster LLC v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. May 29, 2018) (dismissing section 502(c)(4) claim where allegation "merely track[ed] the language of the statute itself, without providing facts"). And, as to CDAFA § 502(c)(8), Plaintiff's conclusory allegations do nothing more than mirror the statutory definition, which prohibits introduction of a "computer contaminant," *Compare* Complaint, ¶ 165 with Cal. Penal Code § 502(b)(12); *see Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *18

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

(N.D. Cal. Apr. 4, 2019) (rejecting "conclusory, element-mirroring allegation"); *Ticketmaster*, 315 F. Supp. 3d at 1175. Plaintiff does not explain how Google Analytics "self-propagate[s]," (Complaint, ¶ 165), especially given her allegations that LeanRx chose to use it on the Website. Complaint, ¶¶ 33-34. Nor does Plaintiff present any allegations that plausibly establish that Google Analytics is comparable to the "viruses," "worms," and "other malware" that section 502(c)(8) is designed to address. *See* Cal. Penal Code § 502(b)(12); *Meta Platforms, Inc.*, 690 F. Supp. 3d at 1083. Plaintiff's CDAFA claim should be dismissed.

### D. <u>Plaintiff Fails to Plausibly Allege a Violation of the California Constitution - Claim 5.</u>

Plaintiff has not come anywhere close to meeting the "high bar" for an invasion of privacy claim. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). To state a claim for invasion of privacy, a plaintiff must allege (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) highly offensive conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994). Plaintiff's allegations do not support these elements, requiring dismissal.

#### 1. <u>Plaintiff Has Not Allegedly a Legally Protected Privacy Interest That LeanRx Invaded.</u>

Plaintiff's invasion of privacy claim is premised on sweeping, general allegations untethered to any assertion that her own medical or health information was actually shared with Google. But "[a] privacy interest needs to be pled with particularity" and "[i]t is not enough to say that a defendant had the ability to invade someone's privacy; a plaintiff needs to demonstrate that a defendant invaded their interests[.]" *Westron v. Zoom Video Comm'ns*, 2023 WL 3149262, at *2 (N.D. Cal. Feb. 15, 2023) (emphasis added). Where a plaintiff "makes vague allegations that [her communications] could include private information and that users 'often' share sensitive information," this is insufficient to allege a legally protected privacy interest. *Jones v. Peloton Interactive, Inc.*, 2024 WL 1123237, at *7 (S.D. Cal. Mar. 12, 2024) (citations omitted). Bare allegations that personal or sensitive medical data was shared do not necessarily mean that a

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

plaintiff has pleaded a legally protected privacy interest if the plaintiff otherwise fails to include sufficient factual support. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123–24 (S.D. Cal. July 12, 2023) ("Plaintiffs' overarching theory of their case, underlying all claims, is that Defendant collected patients' personal and sensitive medical information on Sharp's website and that this information was then improperly shared with Meta without patients' consent. However, Plaintiffs fail to factually explain their personal participation in any of this."); *see also Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) (plaintiff lacked a legally protectable privacy interest for standing purposes where plaintiff alleged only searches of health-related terms on the defendant's website).

Plaintiff's allegations about her own use of the Website are not sufficient to state an invasion of privacy claim because she does not allege facts supporting an invasion of her legally protected privacy interest. Plaintiff broadly alleges that Defendants have intercepted unspecified "private and personally identifiable information, including information regarding her medical condition, history, or treatment," and that Google "intercepted information about the prescription medications Plaintiff ordered through the Website[.]" Complaint, ¶ 11. But she does not allege that any particular medical diagnosis or medical history information she shared with LeanRx was transmitted to Google, or what "information" about the prescription medications she ordered was allegedly shared. At most, she alleges that Google Analytics received (1) shipping and contact information related to the checkout process, and (2) that an individual began or went through the checkout process. Complaint, ¶¶ 90-102. But she fails to allege that actual health information was transmitted, because it is not until after the checkout process has been completed that a prescription is issued. Complaint, ¶ 16 ("[O]nce a 'SkinnyRx licensed medical provider' has reviewed consumers' 'intake form[s] after checkout to confirm [their] eligibility,' the prescribed medication is shipped overnight directly to consumers."). Plaintiff does not allege that Google received this post-checkout information about her, that is, information showing that she was, in fact, prescribed Semaglutide. Without allegations that her sensitive health information has been disclosed, Plaintiff's allegation that she has a legally protected privacy interest fails.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**2. Plaintiff Has No Reasonable Expectation of Privacy Over Website Browsing Information.**

Plaintiff's invasion of privacy claim also fails because she does not allege a reasonable expectation of privacy under the circumstances. To analyze the reasonable expectation of privacy in cases challenging data collection practices, courts consider factors including "the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Courts have recognized that not all of the information transmitted over the internet or records of internet activity are subject to a reasonable expectation of privacy. Generally speaking, "consumers do not have a reasonable expectation of privacy over their activity" on public commercial websites, because we "understand that what we do on the Internet is not completely private." *Id*. at *2 (internal quotations omitted); *see D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10-11 (S.D. Cal. Oct. 24, 2023) (stating "accepted community norms around conversations [on] . . . (a commercial website for selling merchandise) point away from a reasonable expectation of privacy"); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) ("URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities" are not the types of information in which plaintiffs could have "a reasonable expectation of privacy."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (no reasonable expectation of privacy in IP addresses); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (no reasonable expectation of privacy for basic contact information such as phone number and email).

Again, the allegation that LeanRx receives some unspecified "information about the prescription medications Plaintiff ordered," without more, does not show that she had a reasonable expectation of privacy over that information. Complaint, ¶ 11. Information "about the prescription medications that Plaintiff ordered" could include simply that Plaintiff clicked on an article about the medication, clicked on, or viewed the product page, or searched for it on the website. Such website interactions do not come with a reasonable expectation of privacy. *Saeedy*, 2023 WL

8828852, at *4. And Plaintiff does not allege that Google intercepted a communication that she was ultimately prescribed Semaglutide after going through the checkout process, because none of her allegations about how the Website works extend past that point. *See* Complaint, ¶¶ 16, 25-34, 90-102. Moreover, given the Website's focus is on weight loss drugs and reference to connecting her with doctors to prescribe those drugs, Plaintiff had no a reasonable expectation that her interest in that type of information or those products would not be shared.

To the extent that Plaintiff's allegation is that Google Analytics enables Google to collect information like device identifiers; IP addresses; URLs; the user's date of birth, name, and shipping address; and medication the user is attempting to buy (as opposed to medication they were actually prescribed), this does not support a reasonable expectation of privacy. Complaint, ¶¶ 63, 72, 84. Moreover, a reasonable expectation of privacy is lacking where "Plaintiffs do not allege that Defendant set out an expectation that it would not collect" the challenged data. *D'Angelo*, 2023 WL 7006793, at *17. Plaintiff's allegations show the opposite, that is, that Google discloses the exact data collection practices at issue, including that data may be used for advertising purposes.

Google uses the information shared by sites and apps to deliver [] services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on [] partners' sites and apps." Complaint, ¶ 59, n. 38 (citing Google's Privacy and Terms). Even more information is disclosed at the link at footnote 38: "Many websites and apps use Google services to improve their content and keep it free. When they integrate our services, these sites and apps share information with Google. For example, when you visit a website that uses advertising services like AdSense, including analytics tools like Google Analytics . . . your web browser automatically sends certain information to Google. This includes the URL of the page you're visiting and your IP address." Thus, Google's disclosure of the challenged data collection and subsequent use for advertising as pleaded in the Complaint further diminishes Plaintiff's reasonable expectation of privacy.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**3. Plaintiff Has Not Alleged Highly Offensive Conduct, As Opposed to Routine Commercial Activity.**

"Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. To count as "highly offensive," an intrusion must constitute an "egregious breach of the social norms underlying the privacy right." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill*, 7 Cal. 4th at 26, 37). This high standard requires more than mere "disclosure of personal information," even if sensitive information like social security numbers was allegedly disclosed. *Low*, 900 F. Supp. 2d at 1025. Indeed, merely alleging that "private medical information" was disclosed is not enough on its own to survive a motion to dismiss. *Ojeda v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022) (disclosure of Covid vaccination status was not highly offensive without additional factual allegations about the circumstances of the disclosure); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (dismissing privacy claims with insufficient allegations about what specific medical information was disclosed).

Courts consistently recognize that "routine commercial behavior" is not highly offensive or the purpose of an invasion of privacy claim. *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011). For example, in *Fogelstrom*, the plaintiff alleged non-consented collection of personal information, which was then used to generate a mailing list for defendants to use to send marketing materials. *Id*. The *Fogelstrom* court found that this was not "an egregious breach of social norms underlying the privacy right"; rather, it was "routine commercial behavior." *Id*. Similarly, in *Yunker v. Pandora Media, Inc.*, the court found allegations that defendant "Pandora obtained the plaintiff's PII and provided that information to advertising libraries for marketing purposes" to be "similar to the allegations in . . . *Fogelstrom*." 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013).

Plaintiff fails to allege what specific medical information of hers was disclosed to the Website that constituted an "egregious breach" of social norms, as opposed to non-highly-offensive "routine medical searches and inquiries," or internet browsing and device activity. See

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100

*Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1067*; In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (holding that the disclosure to third parties of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy sufficient to prove a serious invasion of a privacy interest). The conduct alleged here is the same "routine commercial behavior" that the *Fogelstrom* and *Yunker* courts did not consider to be highly offensive. Like in *Fogelstrom*, Plaintiff's allegations concern LeanRx's collection of personal information, allegedly without consent, which was then used by the defendant to target advertisements. Complaint, ¶¶ 34, 60, 61, 84, 103. Therefore, the same finding of non-offensiveness is dictated here.

Finally, when assessing highly offensive conduct courts consider the "intruder's motives and objectives," among other factors. *Cousin*, 681 F. Supp. 3d at 1126. Plaintiffs allegations do not come close to plausibly alleging that LeanRx received much less intercepted, sensitive health information. LeanRx's alleged conduct is therefore not highly offensive on the face of the pleadings. Accordingly, Plaintiff's invasion of privacy claim fails on all three elements and must be dismissed.

## V. **<u>CONCLUSION</u>.**

For the foregoing reasons, LeanRx respectfully requests that the Court dismiss Plaintiff's claims in their entirety, with prejudice.

DATED: April 30, 2026

SAUL EWING LLP

By: ______________________________
CHRISTOPHER SMITH
Attorneys for Defendant
LEAN RX, INC.