CHRISTOPHER W. SMITH (SBN 256494)
christopher.smith@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Defendant
LEAN RX, INC.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| ANNA BUCHHOLZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 5:26-cv-00846-EJD<br><br>**DEFENDANT LEAN RX, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Judge: Hon. Edward J. Davila<br>Date: July 9, 2026<br>Time: 9:00 a.m.<br>Crtrm.: 4<br><br>Complaint Filed: January 26, 2026 |

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 9, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Edward J. Davila, in Courtroom 4, 5th Floor of the United States District Court, Northern District of California, 280 South 1st Street, San Jose, California 95113, Defendant Lean Rx, Inc. ("Defendant" or "LeanRx") will and hereby does move to stay proceedings and compel arbitration of the Complaint filed by Plaintiff Anna Buchholz. LeanRx's Motion to Compel Arbitration and Stay Proceedings ("Motion") is brought pursuant to Federal Arbitration Act, 9 U.S.C. §§ 1-16.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, and Declaration in support thereof, and all other pleadings and papers on file herein, and such argument and evidence as may be presented to the Court.

Pursuant to The Federal Arbitration Act, 9 U.S.C. §§ 1-16, and without waiving any affirmative defenses or objections, Defendant LeanRx, Inc. ("LeanRx" or "SkinnyRx"), by counsel, hereby move to stay proceedings and compel arbitration of the Complaint filed by Plaintiff Anna Buchholz.

A brief in support of this Motion is filed herewith and incorporated by reference. As stated more fully in that brief, the transactions at the center of Plaintiff's claims were made pursuant to Terms and Conditions that contain a binding arbitration agreement that requires Plaintiff to resolve all disputes between her and the SkinnyRx, including the claims pled in the Complaint, through arbitration.

WHEREFORE, the SkinnyRx respectfully requests that the Court grant this motion; compel arbitration, and stay proceedings in this case pending completion of that arbitration.

**REQUESTED RELIEF**

LeanRx requests that the Court compel Plaintiff to arbitrate its dispute with LeanRx, and stay this proceeding with respect to LeanRx during the pendency of the arbitration proceedings.

DATED: May 1, 2026

SAUL EWING LLP

By: ______________________
CHRISTOPHER SMITH
Attorneys for Defendant
LEAN RX, INC.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# TABLES OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. BACKGROUND ........ 1

A. Plaintiff Purchased the Products at Issue Through the SkinnyRx Website subject to Terms and Conditions that Contain an Arbitration Agreement. ........ 1

B. Plaintiff Was Directed to the Terms of Service Prior to Continuing with Her Purchase ........ 3

C. Present Litigation ........ 6

II. STANDARD OF REVIEW ........ 6

III. ARGUMENT ........ 7

A. There is A Valid Arbitration Agreement Between Plaintiff and LeanRx ........ 7

1. Plaintiff Received Reasonable Notice of the Terms and Conditions........ 7

2. Plaintiff Manifested Assent by Creating Her Account and Purchasing Products Through the SkinnyRx Website........ 12

B. The Dispute at Issue Between SkinnyRx and Plaintiff Falls Within the Scope of the Arbitration Agreement. ........ 13

IV. CONCLUSION ........ 15

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aggarwal v. Coinbase, Inc.*
¸ 685 F. Supp. 3d 867 (N.D. Cal. 2023) .......... 15

*American Eagle Outfitters v. Lyle & Scott Ltd.*,
584 F.3d 575 (3d Cir. 2009) .......... 12

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 6

*AT&T Technologies, Inc. v. Comm'ns Workers*,
475 U.S. 643 (1986) .......... 13

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... *passim*

*Bitstamp Ltd. v. Ripple Labs Inc.*,
Case No. 15-cv-1503, 2015 WL 4692418 (N.D. Cal. Aug. 6, 2015) .......... 14

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 13, 15

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
647 F.3d 914 (9th Cir. 2011) .......... 14

*Checchia v. SoLo Funds, Inc.*,
771 F. Supp. 3d 594 (E.D. Pa. 2025) .......... 11, 12

*Dahdah v. Rocket Mortgage, LLC*,
166 F.4th 556 (6th Cir. Jan. 26, 2026) .......... 8, 10, 11

*Dhruva v. CuriosityStream, Inc.*,
131 F.4th 146 (4th Cir. 2025) .......... 11, 12

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) .......... 9, 10

*Dorhmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) .......... 8

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) .......... 9, 11

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) (Davila, J.) .......... 8, 10, 11, 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) .......... 14

*Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005 (9th Cir. 2024) .......... 9, 10, 12

*Kemp v. Aroma 360, LLC*, Case No. 25-cv-1630, 2026 WL 513534 (D. Md. Feb. 24, 2026) .......... 13

*Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062 (C.D. Cal. 2023) .......... 13

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) .......... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .......... 6

*Nguyen v. Barnes & Noble, Inc.* , 763 F.3d 1171 (9th Cir. 2014) .......... 6, 8

*Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024) .......... 11

*Pizarro v. QuinStreet, Inc.*, Case No. 22-cv-2803, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) .......... 10, 11

*Porter v. Dollar Financial Group, Inc.*, Case No. 2:14-cv-1638, 2014 WL 4368892 (E.D. Cal. Sept. 2, 2014) .......... 14

*Selden v. AirBnB, Inc.*, 4 F.4th 148 (D.C. Cir. 2021) .......... 11

*Smith v. Spizzirri*, 601 U.S. 472 (2024) .......... 7

**Statutes**

9 U.S.C. § 2 .......... 6

9 U.S.C. § 3 .......... 6, 7

California Comprehensive Data and Access and Fraud Act (Cal. Penal Code § 502) .......... 6

Electronic Communications Privacy Act (18 U.S.C. § *et seq.*) .......... 6

Federal Arbitration Act .......... 6

Privacy Act (Cal. Penal Code §§ 631, 632) .......... 6

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**Other Authorities**

Am. Arbitration Association, Commercial Arbitration Rules and Mediation Procedures at R-7(a) (Sept. 1, 2022) *available at* https://adr.org/media/qielmf0g/2025_commercialrules_web.pdf ........................................ 15

https://skinnryx.com/ ........................................................................................................... 3

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Lean Rx, Inc. ("Defendant" or "LeanRx") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Compel Arbitration.

This action arises out of Plaintiff's use and purchase of medication through the SkinnyRx website. Plaintiff's use of and purchase of services through the SkinnyRx website, however, was subject to an arbitration agreement between her and LeanRx, Inc. ("LeanRx" or "SkinnyRx"), requiring all disputes arising from the use of SkinnyRx's services, including Plaintiff's purchases, to be resolved through arbitration. This Court, therefore, should compel Plaintiff to pursue her claims in arbitration and stay these proceedings pending resolution through such arbitration.

## I. BACKGROUND

### A. Plaintiff Purchased the Products at Issue Through the SkinnyRx Website subject to Terms and Conditions that Contain an Arbitration Agreement.

Plaintiff Anna Buchholz has used the SkinnyRx website since 2025, initially accessing the site in early September 2025, and purchasing medications from the site on September 10 and October 1, 2025. Compl. ¶ 11. Plaintiff alleges that she paid $1,047.00 for the transaction using her personal credit card and received an email order confirmation from "support&skinnyrx.com." *Id.* at ¶ 102. Plaintiff's claims arise from or relate to her use of and purchase of goods on the SkinnyRx website. *See, e.g.,* Compl. ¶¶ 2-3, 11, 13, 29, 34, 69-85. She alleges that Lean Rx and the other named Defendants invaded her privacy (and the privacy of putative classes of persons she hopes to represent) by disclosing personal information without her consent and by intercepting communications between her and Lean Rx via the website using various tracking technologies. *Id.* at 1-2.

As Plaintiff acknowledges, the *SkinnyRx.com* website has terms and conditions that are available to view on the website. Compl. ¶ 16n.1. A copy of those terms and conditions at the time of Plaintiff's Purchase are attached hereto as Exhibit A to the Declaration of Guenna Lin ("T&Cs"). *See* Declaration of Guenna Lin at ¶ 19. Usage of SkinnyRx services, such as purchasing medication through the website, is subject to the T&Cs. In order to purchase products on the website, a customer

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

must click on a series of boxes to indicate they accept or agree with the T&C's:

> By checking a box or clicking "I accept", "I agree", or similar when the option is presented to you, or by accessing or using the Services, you acknowledge that you have read, understood, and agree to be legally bound by and comply with these Terms. If you do not or cannot agree with any part of these terms, you are not allowed to use the Services.

Decl. of G. Lin at Ex. A. The T&C's contain the following prominent notice near the top, contrasting from the text and background by appearing in a purple box:

> **MANDATORY ARBITRATION NOTICE: THESE TERMS CONTAIN A MANDATORY ARBITRATION PROVISION IN SECTION 11 THAT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND ARE EACH GIVING UP RIGHTS TO BRING CLAIMS AGAINST EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND.**

*Id.*

Section 11 of the T&Cs contains the following:

> **IMPORTANT NOTE: PLEASE READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES YOU AND SKINNYRX TO RESOLVE ALL DISPUTES BETWEEN US THROUGH BINDING INDIVIDUAL ARBITRATION AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM SKINNYRX. YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE TERMS, YOU AND SKINNYRX ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION**. . . .
>
> Informal Dispute Resolution. You agree to first attempt to resolve any dispute, claim or controversy (whether involving contract, tort, equitable, statutory, or any other legal theory) with any of us arising out of or relating to these Terms or the Services ("Dispute") informally by contacting support@skinnyrx.com with a description of the Dispute. If we cannot resolve your Dispute informally within 30 days, you and we each agree to a dispute resolution process requiring individual arbitration as set forth in this section.
>
> **AGREEMENT TO ARBITRATE**. You agree that any Disputes that you and any of us are unable to resolve informally will be settled by binding arbitration, except that each party retains the right: (i) to bring an individual action in small claims court and (ii) to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights (the action described in the foregoing clause (ii), an "IP Protection Action"). You will also have the right to litigate any other Dispute if you provide us with written notice to opt out of arbitration ("Arbitration Opt-out Notice") by email at support@skinnyrx.com or by regular mail to the address set forth in the "Contact Information" section below within thirty (30) days following the date you first accept

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

> these Terms, or if you have not registered for an account, then within thirty (30) days following the date you first use our Services. If you don't provide us with an Arbitration Opt-out Notice within the thirty (30) day period, you will be deemed to have knowingly and intentionally waived your right to litigate any Dispute except as expressly set forth in (i) and (ii) above. Unless you timely provide us with an Arbitration Opt-out Notice, you acknowledge and agree that you and we are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Further, unless you otherwise agree in writing, the arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of any class or representative proceeding. If a decision is issued stating that applicable law precludes enforcement of any limitations set forth in this Agreement to Arbitrate on the right to arbitrate claims on a class or representative basis, or as part of a consolidated proceeding, as to a given claim for relief, then that claim (and only that claim) must be severed from the arbitration and brought in the state or federal courts located in Sacramento, California. All other claims will be arbitrated.

Decl. of G. Lin, Exhibit A at §11 (hyperlinks removed, emphasis in original). The term "Services" is defined broadly to include both the website available at https://skinnryx.com and the services that LeanRx provides, including those advertised on the SkinnyRx website. *See* Decl. of G. Lin, Exhibit A at 1.

Plaintiff's claims all stem from her use of the SkinnyRx website and are thus subject to the Arbitration Agreement in the T&Cs. Compl. ¶¶ 11. Plaintiff did not opt out of the Arbitration Agreement, nor has she pleaded that she did. *See* Decl. of G. Lin at ¶ 25; Compl. at *passim*. Despite this, even after being served with a Demand for Arbitration by the undersigned on April 21, 2026, Ms. Buchholz refuses to participate in that agreed-upon alternative dispute resolution.

### B. <u>Plaintiff Was Directed to the Terms of Service Prior to Continuing with Her Purchase</u>

Before any person may continue to purchase anything through the SkinnyRx website, they are presented with the ability to review the Terms of Service. Decl. of G. Lin at ¶¶ 5-13; Compl. ¶¶ 16 n.1, 90. Upon arriving at the SkinnyRx website, an interested consumer must press a button titled "Get Started." Decl. of G. Lin at ¶ 5; Compl. ¶ 90. This button will take a consumer to a series of questions designed to gauge the consumer's interests and what products may be recommended. Decl. of G. Lin at ¶ 5; Compl. at ¶¶ 29. 70. No personally identifying information

is input until after the quiz is completed. Decl. of G. Lin at ¶ 5. Once the quiz is completed, however, a screen appears as follows:




Decl. of G. Lin at ¶¶ 5-11; Compl. ¶ 90.[1] This screen requires the consumer to input their address and name, provides a check box for consumers to opt-in and consent to text messages regarding their prescriptions, and directs the consumer to SkinnyRX's Text Msg, Privacy Policy, and Terms of Service. Decl. of G. Lin at 6-11. The Text Msg, Privacy Policy, and Terms of Service are presented in the form of a hyperlink, bold and underlined and contrasting with the all-white

[1] The screen identified in the Complaint includes separate boxes for "Address Line 2- optional," "City," "State," "Zip Code," and "Phone Number." Compl. ¶ 90.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

background behind it. Decl. of G. Lin at ¶¶ 6-11. Clicking on any one of those three takes the consumer directly to those terms referenced. Decl. of G. Lin at ¶ 10. The customer does not need to scroll the screen to see any part of this page. Decl. of G. Lin at ¶ 11.

When a consumer clicks through to the Terms of Service, there is a purple banner visible near the top notifying them that the terms include an arbitration agreement:


skinny.Rx

Home Weight Loss Contact

Questions? +1 (888) 979-9580 Sign In

# Terms and Conditions

Last updated: **April 09, 2026**

Lean Rx, Inc. ("**SkinnyRx**", "**LeanRx**", "**we**", "**our**" or "**us**") owns and operates the SkinnyRx website available at https://skinnyrx.com / (the "**Site**") and provide the services to you which are described in more detail below (together with the Site, the "**Services**"). These Terms of Service ("**Terms**") govern your use of the Services.

These Terms describe your rights and responsibilities regarding the Services. Your access to and use of the Services is subject to these Terms and all applicable laws and regulations. In using certain parts of the Services, you may be presented with additional or supplementary terms regarding the use of those specific Services, and you agree to review and be bound by such additional terms.

Please read these Terms carefully. By checking a box or clicking "I accept", "I agree", or similar when the option is presented to you, or by accessing or using the Services, you acknowledge that you have read, understood, and agree to be legally bound by and comply with these Terms. If you do not or cannot agree with any part of these terms, you are not allowed to use the Services.

**IF YOU THINK YOU MAY HAVE A MEDICAL EMERGENCY OR MENTAL HEALTH CRISIS, CALL YOUR DOCTOR OR 911 IMMEDIATELY.**

**MANDATORY ARBITRATION NOTICE:** THESE TERMS CONTAIN A MANDATORY ARBITRATION PROVISION IN SECTION 11 THAT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND WE ARE EACH GIVING UP RIGHTS TO BRING CLAIMS AGAINST EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND.

Decl. G. Lin at ¶ 22. The purple banner contrasts with the black font color of the remainder of the terms and the white background, and specifically directs consumers directly to the paragraph containing the arbitration agreement. Decl. of G. Lin at ¶¶ 22-23. Immediately above the purple box warning the consumer of the existence of an arbitration agreement, the terms explain to the consumer that "By checking a box or clicking 'I accept,' 'I agree', or similar when the option is presented to you, or by accessing or using the Services, you acknowledge that you have read, understood, and agree to be legally bound by and comply with these Terms." Decl. of G. Lin at ¶¶ 22-23. These admonitions are visible without scrolling through the terms. Decl. of G. Lin at ¶¶ 22-23. Plaintiff Anna Buchholz pressed "Continue" on the box identified above and created an

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

account with SkinnyRx on September 30, 2025. Decl. of G. Lin at ¶¶ 16-19. Plaintiff completed purchases through the SkinnyRx website on September 10, 2025, and October 1, 2025. Decl. of G. Lin at ¶ 17. *See also* Compl. at ¶ 11.

### C. <u>Present Litigation</u>

On January 26, 2026, Plaintiff filed suit against LeanRx and co-defendants Google and Meta, alleging that they violated the Electronic Communications Privacy Act (18 U.S.C. § *et seq.*) (Compl. ¶¶ 125-159); the California Invasion of Privacy Act (Cal. Penal Code §§ 631, 632) (Compl. ¶¶ 160-171, 141-150[2]); the California Comprehensive Data and Access and Fraud Act (Cal. Penal Code § 502) (Compl. ¶¶ 151-174); and "Invasion Privacy California's Constitution (Compl. ¶¶ 175-181). Plaintiff brings these claims on behalf of herself and various nationwide and statewide classes. Compl. ¶¶ 125-181.

## II. <u>STANDARD OF REVIEW</u>

The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has construed this provision to be a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

"The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). The Court uses state law on contract formation to determine whether an agreement has been formed. *Id.* Upon a finding that the issue can be referred to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…." 9 U.S.C. § 3;

---

[2] The number of the complaint changes to 141 after paragraph 171, on page 52. This appears to be a typographical error.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*see also Smith v. Spizzirri,* 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

## III. <u>ARGUMENT</u>

### A. <u>There is A Valid Arbitration Agreement Between Plaintiff and LeanRx</u>

Plaintiff has alleged that she purchased the product at issue through the SkinnyRx website. Compl. at ¶ 11. That transaction, like any transaction through the SkinnyRx website, was subject to the T&Cs. Indeed, Plaintiff incorporates those terms and conditions into her Complaint. Compl. ¶ 16 n.1 (citing the SkinnyRx Terms and Conditions, and providing a link to them). Plaintiff was presented with a reasonable opportunity to review the Terms and Conditions, including the arbitration agreement included therein, and regardless of whether she actually reviewed those terms, she was on inquiry notice of them. Plaintiff's subsequent actions of continuing through the account registration process and actually making purchases through SkinnyRx reasonably manifested her assent to those terms. Moreover, the arbitration agreement she agreed to encompasses this entire litigation because all allegations arise from or relate to use of the LeanRx website. As a result, Plaintiff agreed to arbitrate this dispute (and not participate in a class action), and the Court should compel arbitration and enter a stay of these proceedings pending the results of that arbitration.

#### 1. Plaintiff Received Reasonable Notice of the Terms and Conditions

Where, as here, the Terms of Service contain an arbitration agreement, and continued use of the website or the services therein manifests assent, courts often refer to this as a "browsewrap" agreement. *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("At the other end of the spectrum are so-called "browsewrap" agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website.").[3] In cases involving browsewrap agreements,

[3] "Browsewrap" agreements are in contrast to "clickwrap" agreements, wherein the customer is presented with the terms and conditions and affirmatively agree to them prior to moving forward.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

courts will enforce the arbitration agreement "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound . . . ." *Nguyen*, 763 F.3d at 1177 (9th Cir. 2014).

"To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Coursera*, 737 F. Supp. 3d at 923 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023)). Parties may assent to a contract through conduct, but the party assenting must know or have reason to know "that the other party may infer from his conduct that he assents." *Id.* (quoting *Berman*, 30 F.4th at 855). "Mutual assent does not require that the offeree have actual notice of the terms of an arbitration agreement." *Dorhmann v. Intuit, Inc.,* 823 F. App'x 482, 483 (9th Cir. 2020).

"[A]n enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017), and *Nguyen*, 763 F.3d at 1173). Here, the notice of the arbitration agreement was reasonably conspicuous because the presentation of those terms was temporally and spatially related to the action Plaintiff needed to take, was uncluttered and clearly presented without distraction, used a contrasting hyperlink that took the user directly to those terms, as well as the use of the direction to "See" the terms of service before Plaintiff could move

---

*Id.* The scenario presented here is also sometimes referred to as a hybrid agreement, falling somewhere between a pure clickwrap and a pure browsewrap agreement, as the consumer is presented with the terms, and performs some action to manifest assent, but is not required to review those terms first. *See Dahdah v. Rocket Mortgage, LLC,* 166 F.4th 556, 566-569 (6th Cir. Jan. 26, 2026) (describing difference between these two common types of online agreements); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. 2024) (Davila, J.) (discussing same and referring to the hybrid as "sign in wrap").

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

forward with their purchase. Moreover, the context of the purchase reasonably put Plaintiff on notice that her account creation and purchase would be subject to the website's terms and conditions.

"In considering the question of reasonable conspicuousness, precedent and basic principles of contract law instruct that we consider the perspective of a reasonably prudent" consumer. *Meyer*, 868 F.3d at 77. *See also Berman*, 30 F.4th at 856 ("a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent internet user would have seen it."); *Domer v. Menard, Inc.*, 116 F.4th 686, 695 (7th Cir. 2024) ("We examine notice from the perspective of a reasonable online shopper—that is, a person who is neither an expert nor a novice with technology."). In *Meyer,* the Second Circuit relied on the fact that the terms of service were provided at the same time of customer enrollment, "thereby connecting the contractual terms to the services to which they apply." 868 F.3d at 78. As a result, the Second Circuit found that "a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account." *Id.* Similarly here, the terms of service are presented at the first instance in which a customer inserts his or her name and address, and both this context and the terms themselves indicate to the user that those specific terms of service are connected to the use of the services. Decl. of G. Lin at ¶¶ 5-11.

In *Domer*, the Seventh Circuit found notice reasonably conspicuous on a checkout page that presented the terms of service where the page was "well-spaced[,]" with "ample white space; nearly all the text and images on the screen are pertinent to the checkout process; and the page is organized into just a few neat boxes and columns." *Domer*, 116 F.4th at 696. The Ninth Circuit similarly looks to a lack of clutter. *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024) ("Unlike the notices at issue in *Berman*, the sign-in screen here lacks clutter and uses [c]ustomary design elements denoting the existence of a hyperlink.") (quotations and citations omitted). The page on which the terms are presented here is even less cluttered and more conspicuous than the one in *Domer*, as there is no purchase information on the SkinnyRx page, solely the information that is required to be input, the button to be pressed, and disclosures related to three company policies that require no scrolling to see. *Compare Domer*, 116 F.4th at 696-97 *with* Decl. of G. Lin at ¶ 9. *See also Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023)

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

("when terms are linked on an uncluttered interface and temporally and spatially coupled with the mechanism for manifesting assent, and the user does not need to scroll beyond what is immediately visible to find the terms, we have concluded, as a matter of law, that the interface provided reasonably conspicuous notice of the existence of contractual terms.") (quotations and citations omitted).

"While it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent." *Berman*, 30 F.4th at 857. Here, the terms were set apart, contrasted, and presented in the standard style of a hyperlink. Decl. of G. Lin at ¶ 9; Compl. ¶ 90. *See Pizarro v. QuinStreet, Inc.*, Case No. 22-cv-2803, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) ("the instant hyperlink, although the same color as the rest of the textual notice, is underlined and adequately contrasted with the white background, such that a user would not 'be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks.'") (quoting *Berman*, 30 F.4th at 857). *See also Dahdah,* 166 F.4th at 577-78 (finding similarly laid out page to have provided conspicuous notice).

The "shipping page" also had an express directive to review the terms, with a sentence at the bottom directing the user to "See Text Msg, Privacy Policy, and Terms of Service." Decl. of G. Lin at ¶ 9, Compl. ¶ 90. This direction underscores the clarity of the disclosure, which is not cluttered by other materials or language that could distract the user, and was provided immediately below the button which the Plaintiff had to press to continue to make her account and assent to those terms. *See Domer*, 116 F.4th at 698 ("The disclosure begins with the bolded "Please note", drawing the customer's attention. It is placed alone below the "Billing & Credit Card Information," where a customer is likely to see it. That Menards chose to place the hyperlinks below instead of within the disclosure does not increase the likelihood that a customer would overlook them.").

The context also matters. "The transactional context 'is key to determining the expectations of a typical consumer.'" *Coursera,* 737 F. Supp. 3d at 925 (quoting *Sellers v. JustAnswer, LLC,* 73 Cal. App. 5th 444, 481 (Cal. Ct. App. 2021)). *See also Keebaugh,* 100 F.4th at 1020 (9th Cir. 2024) ("users would understand that their use of an app that allows for in-app purchases would be governed by some terms of use."). Here, Ms. Buchholz not only clicked on the continue button, but was also

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

required to create an account with LeanRx in order to proceed with her order, one which she reasonably should have expected to contain some terms and conditions. Decl. of G. Lin at ¶¶ 5-18; Compl. at ¶¶ 11, 90, 97-99. *See Dahdah,* 166 F.4th at 578-79 ("Dahdah may have visited LowerMyBills.com 'to get the calculated results' of refinancing options, but it is also true that LowerMyBills.com matches users with one or more lenders so that the lenders can contact users *in the future* . . . . Reasonable mortgagors would thus expect a further relationship."); *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 153 (4th Cir. 2025) ("But signing up for a monthly subscription service is clearly the sort of forward-looking relationship that require[s] some terms and conditions, and the hyperlinked terms of use here were sufficient to provide reasonable notice of what those terms were.") (quotations and citations omitted).

Because the terms of service were presented in an uncluttered manner consistent with the expectations of a reasonable internet user, and considering the context of the transaction Plaintiff was entering into, the notice of the terms of service, and in particular the bolding and use of large caps to identify the arbitration agreement within them, were reasonably conspicuous. *See Coursera,* 737 F. Supp. 3d at 926-29 (finding reasonably conspicuous notice in similar circumstances); *Pizarro,* 2022 WL 3357838, at * 3 ("the general design of the webpage, which is comprised of only two data fields, is relatively uncluttered and has a muted, and essentially uniform, color scheme."); *see also Edmundsen,* 85 F.4th at 707 (relying on the "totality of the circumstances" to find reasonably conspicuous notice in similar presentation). As a result, Plaintiff had reasonably conspicuous notice of the terms of service and the arbitration agreement. *See Patrick v. Running Warehouse, LLC,* 93 F.4th 468, 477 (9th Cir. 2024) (finding notice reasonably conspicuous where the notice was "on an uncluttered page and [was] not hidden or obscured[,] . . . [was] clear and legible" and contrasted with the surrounding background). *See also Dahdah,* 166 F.4th at 577-580 (discussing similar notice in detail and finding it gave reasonably conspicuous notice); *Selden v. AirBnB, Inc.,* 4 F.4th 148, 156-57 (D.C. Cir. 2021) (finding reasonably conspicuous notice where the "screen used a simple design[,]" directly beneath the sign up buttons it had a statement related to the terms of service and other policies, and where the terms and policies were in a font color contrasting to the background); *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 611 (E.D. Pa.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

2025) (relying on *Keebaugh*, 100 F.4th at 1011, 1020, to find similarly linked terms of service to be reasonably conspicuous).

**2. Plaintiff Manifested Assent by Creating Her Account and Purchasing Products Through the SkinnyRx Website**

"A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. *See also American Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 582 (3d Cir. 2009) ("In assessing intent, the object of the inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior."). "In other words, 'the notice must explicitly notify the user of the legal significance of the action she must take to enter into a contractual agreement,' e.g., checking a box, pressing 'continue,' or creating an account." *Checchia*, 771 F. Supp. 3d at 612 (quoting *Berman*, 30 F.4th at 858). "But that does not mean the button must be labeled 'I accept' or 'I agree.' . . . a clear and conspicuous notice that a click . . . will be taken as assent can do the trick." *Dhruva*, 131 F.4th at 155 (quotations and citations omitted).

The third paragraph of the terms of service, which is visible on a computer screen after clicking the hyperlink without scrolling to see the remainder of the terms, states clearly the ways in which a user may express their assent to the terms:

> Please read these Terms carefully. By checking a box or clicking "I accept", "I agree", or similar when the option is presented to you, or by accessing or using the Services, you acknowledge that you have read, understood, and agree to be legally bound by and comply with these Terms. If you do not or cannot agree with any part of these terms, you are not allowed to use the Services.

Decl. of G. Lin at ¶ 22, Exs. A & B. Regardless of whether Ms. Buchholz actually read these terms, a reasonable person who did read them would have seen this language, "acknowledg[ing] that you have read, understood, and agree to be legally bound by" those terms, and the specific actions that would demonstrate acceptance. *Dhruva*, 131 F.4th at 153 ("A person who read the terms of use would have seen. . . language identifying actions that would 'signif[y] that you agree to these terms of use' and that should be avoided 'if you do not agree.'"). Thus, by creating her account and

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

ordering through the SkinnyRx website, Ms. Buchholz performed all of the actions that could manifest assent: she clicked on "Continue" in two different places, first after entering her address and name, and second after agreeing to the medical terms and conditions; and she both accessed and used the services by purchasing products through the SkinnyRx website. *See* Decl. of G. Lin at ¶¶ 5-18; Compl. at ¶ 11. Ms. Buchholz had notice of the terms, and manifested her assent to those terms by using the services. *See Coursera,* 737 F. Supp. 3d at 929-30 (finding assent where manifesting action was made clear and the plaintiff performed that action); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1075 (C.D. Cal. 2023) (collecting cases in support of same); *Kemp v. Aroma 360, LLC*, Case No. 25-cv-1630, 2026 WL 513534, at *6 (D. Md. Feb. 24, 2026) ("the Court finds that Kemp manifested her assent through her purchase of the candle. The Terms of Service hyperlink was clearly conveyed among other hyperlinks relating to the purchase of the product, as discussed above. Just as a reasonable customer purchasing a candle from Aroma 360's website assents to the company's return and cancellation policies by proceeding with a purchase, Kemp assented (and manifested such assent) to the Terms of Service by clicking the "Continue to shipping" button and purchasing the candle.").

**B. <u>The Dispute at Issue Between SkinnyRx and Plaintiff Falls Within the Scope of the Arbitration Agreement.</u>**

Once a court determines that an arbitration agreement exists, it must next determine whether the dispute at issue is encompassed by that agreement. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Comm'ns Workers*, 475 U.S. 643, 650 (1986) (internal quotation marks and citations omitted).

Here, all of Plaintiff's claims against SkinnyRx arise from her use of its website: the information she provided on it and the product she ultimately purchased through it.. *See* Compl. at *passim*. That use was subject to the T&Cs, which contain the Arbitration Agreement. That Arbitration Agreement states: "You agree that ***any Disputes*** that you and any of us are unable to resolve informally ***will be settled by binding arbitration***." Decl. of G. Lin, Ex. A at § 11 (emphasis

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

added). The T&Cs reiterate the breadth of the Arbitration Agreement, stating that it "REQUIRES YOU AND SKINNYRX TO RESOLVE ***ALL DISPUTES*** BETWEEN US ***THROUGH*** BINDING INDIVIDUAL ***ARBITRATION***." *Id.* (emphasis added). "Dispute" is further defined as "any dispute, claim or controversy (whether involving contract, tort, equitable, statutory, or any other legal theory) with any of us arising out of or relating to these Terms or Services . . . ." *Id.* The phrase "arising out of or relating to," as is used in the arbitration agreement here, warrants broad construction. *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("We agreed with the Second Circuit that when parties intend to include a broad arbitration provision, they provide for arbitration "arising out of or relating to" the agreement."). *See also Porter v. Dollar Financial Group, Inc.*, Case No. 2:14-cv-1638, 2014 WL 4368892, *2 (E.D. Cal. Sept. 2, 2014) (applying broad construction to arbitration agreement with same language).

All of Plaintiff's claims arise from or relate to her activity and purchases made on the SkinnyRx website—indeed, the Complaint is littered with references to and screenshots of SkinnyRx's website and services. *See, e.g.,* Compl. ¶¶ 69-93. Plaintiff's claims are expressly based upon her visits to and purchases on the website. Compl. ¶¶ 11, 69-93, 97-102.

In fact, the Arbitration Agreement is so broad that even the question of arbitrability should be determined through arbitration. "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019). "[A]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 68 (internal quotation marks and citations omitted). The Arbitration Agreement's statement that "***any*** Dispute" will be resolved by arbitration includes a dispute as to whether a claim is arbitrable—this broad language alone is sufficient to encompass the arbitrability of disputes. *See Bitstamp Ltd. v. Ripple Labs Inc.*, Case No. 15-cv-1503, 2015 WL 4692418, *5 (N.D. Cal. Aug. 6, 2015).

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

But here, the arbitration agreement also incorporates the Commercial Arbitration Rules of the American Arbitration Association. Decl. of G. Lin at Exhibit A, § 11. Rule R-7(a) of these rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim . . . ." *See* Am. Arbitration Association, Commercial Arbitration Rules and Mediation Procedures at R-7(a) (Sept. 1, 2022) *available at* https://adr.org/media/qielmf0g/2025_commercialrules_web.pdf. "[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). *See also Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 879 (N.D. Cal. 2023) (finding incorporation of AAA rules "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability).

The Arbitration Agreement covers all disputes between Plaintiff and the TeleRx Defendants, including the arbitrability of these disputes. Consequently, this lawsuit falls within the scope of the Arbitration Agreement.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should compel arbitration pursuant to the binding Arbitration Agreement in the T&Cs and stay proceedings pending the arbitration, and grant the Defendant such other and further relief as just and proper.

DATED: May 1, 2026 SAUL EWING LLP

By: ______________________
CHRISTOPHER SMITH
Attorneys for Defendant
LEAN RX, INC.