**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNA BUCHHOLZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 5:26-cv-846-EJD<br><br>**OMNIBUS OPPOSITION TO META AND GOOGLE'S MOTIONS TO DISMISS**<br><br>Hearing: July 23, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 4—5th Floor<br>Judge: Hon. Edward J. Davila |

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Plaintiff Did Not Consent To Having Her Prescription Drug Purchases and Medical Intake Responses Disclosed To Meta .......... 1

B. Plaintiff Sufficiently Pleads Google and Meta's Scienter .......... 4

C. Google and Meta Violated the Electronic Communications Privacy Act .......... 7

D. Google And Meta Violated Clauses Two and Three of CIPA § 631 .......... 11

E. Google and Meta Violated CIPA § 632 .......... 18

F. Plaintiffs State a Claim for Violation of the CDAFA .......... 20

G. Plaintiff States a Claim for Invasion of Privacy .......... 23

H. ECPA, CIPA, and CDAFA Provide Fair Notice .......... 23

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 6

*B.N. v. Oregon Reprod. Med., LLC*,
2026 WL 915343 (D. Or. Apr. 3, 2026) .......... 9

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 19

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 22

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 18, 21

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 1

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 2

*Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*,
556 F.3d 1021 (9th Cir. 2009) .......... 24

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 7

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 17

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 6

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... passim

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... passim

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 10

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 7, 24

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 21

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024).......... 15

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .......... 24

*Flanagan v. Flanagan*,
41 P. 3d 575 (Cal. 2002).......... 18, 19

*Frasco v. Flo Health Inc.*,
2025 WL 1476905 (N.D. Cal. May 22, 2025).......... 14

*Frasco v. Flo Health Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024).......... 6

*Frasco v. Flo Health Inc.*,
2025 WL 2680068 (N.D. Cal. Sept. 17, 2025).......... 6, 25

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) .......... 24

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021).......... 17

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 20, 21, 22, 23

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024).......... 15

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015).......... 22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013).......... 3

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019).......... 10

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021).......... 23

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022).......... passim

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)........ 2, 25

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024)........ 18

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023)........ 17

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022)........ 15, 16

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)........ 18

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........ 7, 16

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026)........ 8

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)........ passim

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)........ 23

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)........ 1

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998)........ 1, 19

*People v. Aguilar*,
16 Cal. 4th 1023 (1997)........ 15

*People v. Manzo*,
53 Cal. 4th 880 (2012)........ 25

*People v. Nakai*,
183 Cal. App. 4th 499 (2010)........ 19

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)........ 7

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025)........ 7, 8

*Ramirez v. LasikMD USA, Inc.*,
2026 WL 194855 (S.D. Cal. Jan. 26, 2026)........ 7

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .... 19

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .... 13, 15

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .... 8, 12, 14, 25

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .... 22

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .... 18, 119

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .... 15

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .... 21

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .... 8

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .... 8, 9

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .... 17, 19

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .... 11

*Taylor v. ConverseNow Techs., Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) .... 17

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .... 17

*United States v. Earnest*,
536 F. Supp. 3d 688 (S.D. Cal. 2021) .... 24

*United States v. Heredia*,
483 F.3d 913 (9th Cir. 2007) .... 6

*United States v. Millis*,
621 F.3d 914 (9th Cir. 2010) .... 25

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .... 9

*United States v. Williams*,
553 U.S. 285 (2008) ..... 24

*W. Growers Ass'n v. City of Coachella*,
548 F. Supp. 3d 948 (C.D. Cal. 2021) ..... 24

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) ..... 22

*Wilson v. Google LLC*,
2025 WL 901941 (N.D. Cal. Mar. 25, 2025) ..... 17, 18

**STATUTES**

18 U.S.C. § 2510 ..... 7, 10

18 U.S.C. § 2511(2)(d) ..... 7

42 U.S.C. § 1320d-6 ..... 4, 8, 9

Cal. Penal Code § 502 ..... 21, 22

Cal. Penal Code § 631 ..... passim

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 892A (1979) ..... 4

S. Rep. No. 90-1097 ..... 9

## I. INTRODUCTION

"[F]ew subject areas [are] more personal and more likely to implicate privacy interests than that of one's health[.]" *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998). And yet, when patients like Plaintiff completed a medical intake questionnaire and ordered prescription weight-loss drugs on the SkinnyRX website, their answers, and the "prescription drug names" they ordered were "disclosed to Facebook and Google," along with their "first and last names, email addresses, and other digital identifiers." ECF No. 1, Complaint ("Compl.") ¶ 1. Defendants Meta Platforms, Inc. ("Meta" or "Facebook") and Google LLC ("Google," with Meta, "Defendants") move to dismiss Plaintiff's various state and federal privacy law claims, raising arguments that this Court, along with others, have largely rejected in other substantially similar cases involving the use of tracking pixels on medical websites. *See, e.g., L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) (Davila, J.); *accord* in *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302 (N.D. Cal. July 22, 2025) ("GoodRx") and *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022). The Complaint at issue here pleads the factual details this Court in *L.B.* said were needed to plausibly allege the privacy claims at issue here, and neither Google nor Meta proffer any good reason why the Court should depart from its own precedent or the well-reasoned opinions of many other courts. For these reasons, their motions to dismiss should be denied.

## II. ARGUMENT

### A. Plaintiff Did Not Consent To Having Her Prescription Drug Purchases and Medical Intake Responses Disclosed To Meta

Citing no authority, Meta claims "Plaintiff bears the burden to allege *facts* showing that she did not consent to the data transmission she challenges." Meta MTD at 7. This is false. In privacy cases like this one, "consent is 'an affirmative defense for which defendant bears the burden of proof.'" *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). So "Meta has the burden to show consent." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793.[1]

[1] In any event, Plaintiff repeatedly alleges she did not consent to Meta collecting her private health information. *See, e.g.*, Compl. ¶¶ 3, 13, 105, 148, 155, 157, 165, 169. And "[v]ery few facts, if any, are necessary to make a plaintiff's assertion that he/she did not consent 'plausible.'" *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *5, n.9 (C.D. Cal. Oct. 4, 2024).

Meta argues that, because Plaintiff is a Facebook user, and was told Meta could collect "[p]urchases and transactions you make" on "other websites you visit," she necessarily consented to Meta's collection of the names of the prescription drugs she purchased on the SkinnyRx website. ECF No. 37 ("Meta MTD") at 7. But another court recently rejected Meta's exact same consent defense in *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *3 and *9, another case where Facebook users alleged their off-site "'prescription medications' [were] … 'shared… with … Facebook." For good reason. Disclosing to Meta that you purchased a t-shirt is not the same as disclosing to Meta you purchased prescription-only tirzepatide to lose weight.

As courts in this district have repeatedly explained to Meta, "for a finding of consent, the disclosures must have given users notice of the 'specific practice' at issue." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793 (citing *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847–48 (N.D. Cal. 2014)) (emphasis added); *accord In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024). In all three cases, the courts rejected Meta's consent defense because "Meta does not contend that its Terms specifically disclosed that it would receive [the] sensitive … information" at issue. *In re Meta Pixel Tax Filing*, 724 F. Supp. 3d at 1003. So too here, Meta's terms fail to inform users of its "specific practice" of capturing the names of drugs Plaintiff ordered or the specific answers to medical survey questions that she entered.

As the court in *In re Meta Pixel Healthcare Litig.* noted, "[t]he nature of the data collection that plaintiffs agreed to is akin to the general internet browsing at issue in *Smith*; the collection of protected health information from a medical provider is a different matter entirely." 647 F. Supp. 3d at 793. As such, the court was "skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting protected health information." *Id*. at 793-94. "This is especially true because other Meta policies (such as the Business Tool Terms) expressly provide that website developers will not share data that they 'know or reasonably should know … includes health, financial or other categories of sensitive information.'" *Id*. at 794, n.9 (quoting its Business Tool Terms at 2); *accord* Meta MTD at 11 (Meta conceding the same in its present motion).

This Court reached the same conclusion in another case involving a prescription drug retailer sharing weight loss medication purchase information to LinkedIn. *L.B.*, 2025 WL 2899514,

at *6. "[J]ust because Plaintiff[] consented to [a surveillance advertising company] collecting its data from third-party websites does not give [the company] carte blanche to collect any and all data." *Id*. As several courts have noted, "consent is not an all-or-nothing proposition." *Id*. (quoting *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013)). So, "[e]ven with [the company]'s disclosures, Plaintiffs could still have a reasonable expectation of privacy in certain types of data—i.e., medical-related information." *Id.*

Attempting to distinguish *L.B.*, Meta argues that that case involved "far more extensive information" because there, Meta captured the answers to weight-loss survey questions such as the "website visitors' 'gender at birth, height, weight,'' whereas in this case "Plaintiff alleges only that Meta received… the medications they purchased." Meta MTD at 9-10. There are two problems with this line of reasoning. First, it is simply untrue. The Complaint expressly alleges that "[t]he user communication information… Facebook … intercept[ed] via Defendant LeanRx's integration of the Facebook Pixel… includ[es] medical intake information." Compl. ¶ 168. In particular, "Plaintiff's use of the Website has led to the unlawful interception of … information regarding her medical condition, history, [and] treatment." *Id*. ¶ 11. The Complaint further alleges that the Facebook Pixel *is*, in fact, present on the medical intake questionnaire pages that users complete prior to obtaining a prescription. *Id*., ¶¶ 87-97. As they continue through the survey, "both *Facebook* and Google are intercepting the answers to the prompts that users are communicating to the Website." *Id*., ¶ 91 (emphasis added). Indeed, Figure 8 of the Complaint is an exemplar screenshot showing that a survey answer that the user's "currentWeight" of "300" was intercepted and shared with Google. (Reproduced below, with yellow highlighting and blue box).

| | |
|---|---|
| Request URL | https://googleads.g.doubleclick.net/pagead/viewthroughconversion/663616217/?random=1761176031527&cv=11&fst=1761176031527&bg=ffffff&guid=ON&async=1&en=begin_checkout&gtm=45be5al1v9108197149za200zb9194271552zd9194271552xec&gcd=13l3l3R3l5l1&dma=0&tag_exp=101509157~103116026~103200004~103233427~104527907~104528501~104684208~104684211~104948813~105322302~115480710~115734859~115734861~115938466~115938469&u_w=1920&u_h=1080&url=https%3A%2F%2Fskinnyrx.com%2Fcheckout-bundle%3Fcheckout_product_id%3Dtirzepatide_tablet%26checkout_sub_product_id%3Dnull&ref=https%3A%2F%2Fskinnyrx.com%2Fresults-bundle%3Fentry_source%3Dunknown%26entrySource%3Dunknown%26dob%3D07%252F12%252F1992%26email%3Dsbogdanovich%2540bursor.com%26agree%3Dtrue%26address%3D1990%2BN%2BCalifornia%2BBlvd%26address2%3D1990%2BN%2BCalifornia%2BBlvd%26city%3DWalnut%2BCreek%26state%3DCA%26zipCode%3D94596%26firstName%3DStefan%26lastName%3DBogdanovich%26phone%3D%2528925%2529%2B300-4455%26selectedProduct%3Dtirzepatide_tablet%26currentWeight%3D300&frm=0&tiba=SkinnyRx&value=299&currency_cod |

To the extent Meta faults Plaintiff for not including screenshots of every single one of Meta's transmissions, it is again "impos[ing] a standard far beyond what Plaintiffs must satisfy at the pleading stage." *GoodRx*, *supra*, 2025 WL 2052302, at *7. "Moving Defendants are free to challenge whether a specific web page incorporated the tracking technologies that Plaintiffs allege facilitated the unlawful interception of their data at summary judgment or trial, but they cannot demand that Plaintiffs allege the details about these tools… to survive a motion to dismiss." *Id.*

Second, Meta makes a distinction without a difference. The names of prescription drugs that patients buy are as much "medical-related information," as the medical intake questionnaire answers patients provide to obtain a prescription for those drugs. And the purchase of a t-shirt is "an act of a very different character," from the purchase of prescription drug from the SkinnyRx Website. *In re Meta Healthcare Litig.*, 647 F. Supp. 3d at 793 (quoting Restatement (Second) of Torts § 892A (1979)). Federal law does not prohibit Macy's from disclosing a t-shirt purchase to third parties, but it does prohibit SkinnyRx from disclosing prescription drug medications to Meta. *See* 42 U.S.C. §§ 1320d-6(a)(3) and 1320d(6) (prohibiting companies like SkinnyRx from "disclos[ing] individually identifiable health information to another person," and defining the term to mean "any information… that… relates to… *the provision of health care to an individual* … [and] identifies… or… can be used to identify the individual.").

**B. Plaintiff Sufficiently Pleads Google and Meta's Scienter**

Both Google and Meta next argue that various claims against them fail because Plaintiff cannot plausibly allege Google or Meta's intent. ECF No. 35 ("Google MTD") at 4; Meta MTD at 10. But this Court already rejected the very same argument in *L.B.*, *supra*, 2025 WL 2899514, at *11-*12, based on allegations less robust than what Plaintiff pled here. In *L.B.*, this Court held plaintiffs plausibly pled enough facts to support the inference of intent where "LinkedIn 'knew that it intercepted users' interactions on the Website that incorporated [Insight Tag]' and that the company 'intercepted consumers['] confidential information ... in order to monetize that data for targeted advertising.'" *Id.* *11 (quoting Complaint).

Likewise here, Meta acknowledges in its own SEC filings that "substantially all of [its] revenue is generated by selling advertising space." Compl. ¶ 38; *see also id.* ¶ 17. Google's SEC

filings likewise acknowledge that it "generate[s] revenues primarily by delivery both performance and brand advertising." *Id.* ¶ 19. Both companies likewise sell advertising space by highlighting their ability to target users. "Facebook can target users so effectively because it surveils user activity … off its site." *Id.* ¶ 39. Google likewise notes that it "uses the information shared by sites and apps to… personalize content and ads." *Id.* ¶ 59. Given that such advertising accounts for the lion's share of both companies' revenues, and that such advertising is improved by their surveillance of users' activity on third-party sites through their tracking pixels, it is reasonable to infer that both companies know how their tracking pixels are being used on those third-party sites.

The "RX" in the name of both Defendant Lean**RX** and its website Skinny**RX** makes it clear that the pixels would be installed on a website that sells prescription drugs. Moreover, Facebook's own marketing notes that "the pixel will log when someone takes an action on your website… [like] adding an item to their shopping cart or making a purchase." *Id.* ¶ 46. Google's marketing likewise notes that "the Google Analytics Pixel … collects information on how website users interact with a business's website, such as 'how many users bought an item.'" *Id.* ¶ 54. "Of course, in healthcare, it is medications and medical specialists that users 'add to their shopping cart.'" *Id.* ¶ 47. So by enabling their tracking pixels to be used on a website with **RX** in the name by a company with **RX** in its name, Defendants "knew that the data [they] received from LeanRx through [their tracking] Pixel[s] … contained intimate health data." *Id.* ¶¶ 18 (Facebook) and 20 (Google).

Meta and Google both argue that because they have policies which "expressly prohibit web developers from sending any 'health' or 'sensitive' information" to them, they could not have possibly known it would receive such information from the SkinnyRX website. Meta MTD at 11; *see also* Google MTD at 5. Had the implementation of Google and Meta's tracking pixels on SkinnyRX's website been an isolated occurrence, perhaps their argument would have more force. But the frequency with which Meta and Google's tracking pixels appear in privacy cases involving medical websites suggests that, in practice, these policies are rarely enforced. In *In re Meta Pixel Healthcare Litig.* alone, "Plaintiffs allege that they 'have identified at least 664 hospital systems or medical provider web properties where Facebook has received patient data via the Facebook

Pixel." 647 F. Supp. 3d at 805, n.17. The Ninth Circuit has stated "willful blindness is tantamount to knowledge." *United States v. Heredia*, 483 F.3d 913, 922 n.13 (9th Cir. 2007).

What is more, discovery in other healthcare privacy cases shows that Google and Meta did much more than simply bury their heads in the sand. In *Frasco v. Flo Health Inc*., emails showed that "Meta employees made jokes about user privacy, especially in connection with the personal information communicated by plaintiffs and the class through the Flo App." 2025 WL 2680068, at *25 (N.D. Cal. Sept. 17, 2025). In *Frasco*, the pixel was installed on a menstrual cycle app, and a "Meta employee joked, 'May the flow be with you.'" *Id.* The *Frasco* court also denied Google's motion for summary judgment on plaintiffs' CIPA and ECPA claims because there remained "[d]isputes of fact" over "whether the defendant acted consciously and deliberately with the goal of intercepting wire communications." 2024 WL 4280933, at *4 (N.D. Cal. Sept. 23, 2024). "Flo and Google employees exchanged emails about Google Ad campaigns targeting Flo users who were … trying to conceive," which showed Google *knew it was intercepting data* from the Flo app, even if it did not necessarily show Google "knew it was assisting Flo in committing a tort." *Id*. at *3.

Citing cases that predated the *Frasco* orders on summary judgment—*see Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) and *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024)—Defendants argue the Court can conclude at the pleading stage that Defendants lacked the requisite intent simply by pointing to its own self-serving policies. But this Court already rejected that proposition. "[T]he Court agrees with what is currently the majority rule… declin[ing] to hold that … Policies are entirely dispositive of its intent at the pleadings stage." *L.B.*, 2025 WL 2899514, at *13. Indeed, after *Frasco*, one wonders how often tech companies have successfully cited parchment guarantees to suffocate meritorious privacy cases as they were still in the cradle—that is, before the benefit of discovery.

For this same reason, Meta's arguments that it had no "'reason to know' that LeanRX was intercepting its own communications" or that it lacked consumers' "consent" to do so fail. Meta MTD at 15-16, 22-23. These raise factual "question[s] … [that] should be considered on a more developed record." *L.B.*, 2025 WL 2899514, at *13.

### C. Google and Meta Violated the Electronic Communications Privacy Act

***HIPAA is a well-established ECPA crime-tort predicate.*** Both Defendants next argue that Plaintiff cannot maintain an Electronic Communications Privacy Act ("ECPA") claim under 18 U.S.C. § 2510, *et seq.*[2] because the statute provides for one-party consent, and LeanRX presumably consented to the interception. Meta MTD at 13-14; Google MTD at 7-8. Yet Defendants' one-party consent defense does not apply, where, as here, "such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added). And here, Plaintiffs allege that Defendants intercepted these communications "for the purpose of committing a criminal or tortious act in violation of … HIPAA," along with various other state statutes. Compl. ¶ 142; *see also id.* ¶¶ 104-114 (explaining why Defendants' interception violates the HIPAA prohibition against disclosing private health information). Numerous courts within the Ninth Circuit have "den[ied] motion[s] to dismiss ECPA claim[s] where plaintiffs 'plausibly allege[d] that [defendant] intercepted data to violate HIPAA' using Meta [and Google's] Pixel[s]" *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) (collecting cases, holding that a healthcare website's use of both the Meta and Google tracking pixels satisfied the crime-tort exception); *accord R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (same); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) (same); *Ramirez v. LasikMD USA, Inc.*, 2026 WL 194855, at *3 (S.D. Cal. Jan. 26, 2026) (same); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (same).

***Defendant's financial motives do not insulate them from liability.*** Both Meta and Google counter that their interceptions were done "for advertising and product improvement purposes," Google MTD at 7, and "'generat[ing] revenue' through advertising," Meta MTD at 13. But as the Ninth Circuit has noted, "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d

[2] Defendants' briefing refers to 18 U.S.C. § 2510, *et seq.* as the "Wiretap Act." "In 1986 , Congress passed the Electronic Communications Privacy Act (ECPA)… the ECPA amended the federal Wiretap Act, which previously addressed only wire and oral communications, to 'address[ ] the interception of ... electronic communications.'" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002). Because this case concerns "electronic communications," Plaintiff will refer to it as ECPA, in lieu of the Wiretap Act.

1200, 1202 (9th Cir. 1999). For example, an interception "could be for both a legitimate purpose (news gathering) and also an unlawful or tortious purpose (airing private intimate conduct)." *Id*. And here, LeanRX's tortious purpose was airing Plaintiff's private prescription drug purchases to Meta and Google, in violation of HIPAA's prohibition against disclosing private health information. Compl. ¶¶ 138 and 148.

That all three Defendants profited from LeanRX's HIPAA violation does not insulate them from liability. "The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) (denying motion to dismiss ECPA claim) (quoting *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) (same). "Put simply, committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)." *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 869 (N.D. Cal. 2026) (quoting *Riganian*, 791 F. Supp. 3d at 1090-91). Indeed, "lots of crimes and torts are money-makers…. The annals of history are chock-full of villains who have a financial motivation – Madoff, Dr. Evil, and Al Capone, to name a few." *Stein*, 2025 WL 580556, at *6.

***The act of disclosure is distinct from the act of interception.*** Meta argues Plaintiff's allegations of a HIPAA violation "suggest, at most, that the initial 'interception' itself was unlawful; they do not show a 'separate and independent' wrongful purpose." Meta MTD at 14. Not so. HIPAA prohibits LeanRX from "disclos[ing] individually identifiable health information to another person," 42 U.S.C. § 1320d-6, and the *act of disclosing* medical information is separate and independent from the act of *interception*. As the court in *Prime Healthcare* explains, Plaintiff "does not allege that [defendant]'s interception *itself* violated HIPAA." 2025 WL 103488, at *6 (emphasis in original). Rather, Plaintiff alleges it is the "intentional *disclosure* of the collected Private Information, which constitutes a 'further impropriety' independent and separate from Prime Healthcare's *interception*." 2025 WL 103488, at *6 (emphasis in original). Here, Plaintiffs allege that "Defendants intercepted… *and unlawfully disclosed* Plaintiff's and Class Members' PII and PHI to Facebook and Google." Compl. ¶ 138 (emphasis added). "Defendant LeanRx's conduct

violated 42 U.S.C. § 1320d-6 [HIPAA]…. [because it]… *disclosed* individually identifiable health information to Defendants Facebook and Google." *Id*. ¶ 148 (emphasis added).

Indeed, in *Sussman*, the Ninth Circuit implicitly recognized the distinction between interception and disclosure, when it noted that the lawful act of "news gathering" was not the same as the "unlawful or tortious purpose [of] airing private intimate conduct." 186 F.3d at 1202. As such, this Court should follow "the weight of authority[, which holds] that an alleged violation of HIPAA can constitute an independent act for purposes of ECPA's crime-tort exception." *B.N. v. Oregon Reprod. Med., LLC*, 2026 WL 915343, at *3 (D. Or. Apr. 3, 2026) (citation omitted).

***The Facebook Pixel Intercepted Plaintiff's Communications.*** Meta next argues there was no "interception" because it did not "acqui[re] the contents of [a] communication." Meta MTD at 14-15. This argument is unsupported by any precedent, misstates the Complaint's allegations, is internally contradictory, and mixes the issues. Meta did, in fact, "acquire" the contents of a communication. Meta concedes it was in "alleged *receipt* of information." Meta MTD at 15. The words receive and acquire are synonymous. Merriam-Webster defines "receive" to mean "to come into possession of: **Acquire**." *See, e.g.*, Merriam-Webster Online Dictionary, *Receive*, Def. 1., https://www.merriam-webster.com/dictionary/receive.

Meta further argues there was no interception because what Meta received was "a separate message." Meta MTD at 15 (quoting Compl. at ¶ 43). This argument is foreclosed by *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 608 (9th Cir. 2020) ("*Facebook Tracking*") In *Facebook Tracking*, the Ninth Circuit held that the "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under … Electronic Communications Privacy Act." *Id*. "[A]dopt[ing] the … Seventh Circuit['s] understanding," the court held that "because the copies were sent contemporaneously … the defendant had intercepted the communications." *Id*. (*citing United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010)). It noted that "the Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *Id*. (citing S. Rep. No. 90-1097).

***The Google and Meta's Tracking Pixels are "Devices" under 18 U.S.C. § 2510(5) and CIPA § 632.*** Finally, Meta argues its pixel is not a "device" under the ECPA and CIPA §632. Meta MTD at 16-17, 20-21. Google relatedly argues its trackers are not a device under CIPA § 632. Google MTD at 13-15. Not so. Other courts interpreting the ECPA have held that such tracking "Pixel[s] transmit[] 'electronic communications' through the use of 'devices.' And plaintiffs' internet communications on their healthcare providers' websites appear to fall squarely within the statutory definitions." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 796; *accord Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (agreeing with other courts that "hold that servers or software qualify as 'devices' under the ECPA" and holding "that the Pixel software is a device under section 632(a).").

Defendants' only argument to the contrary relies on a pair of decisions—including one from this Court—interpreting the term "electronic tracking device" under *a different statute*, CIPA § 637.7. But this Court already distinguished those very same Section 637.7 cases as "ha[ving] no bearing on the issue" of whether tracking pixels are a device under CIPA Section 632. *L.B.*, 2025 WL 2899514, at *17; *accord Doe v. Meta*, 690 F. Supp. 3d at 1080 (same).

As this Court highlighted, Section 637.7(d) defines "'‘electronic tracking device' [to] mean[] any device attached to a vehicle or other movable thing.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 192 (N.D. Cal. 2019) (quoting provision). Given that "'vehicle' precedes (and thus modifies) 'other moveable thing,'" in the section 637.7(d) definition, this Court reasoned that "'other moveable things' refers to things like boats, planes, or other comparable motorized machines." *Id.* at 195. Yet neither the ECPA nor CIPA § 632(a) have such textual limitations. Rather, the ECPA defines "'electronic, mechanical, or other device'[to] mean[] any device or apparatus which can be used to intercept a wire, oral, or electronic communication," 18 U.S.C. § 2510(5), and CIPA § 632(a) simply refers to "electronic amplifying or recording device."

As another court summarized, "section 637.7(d)'s text explicitly restricts its definition of 'electronic *tracking* device' (emphasis added) to… one that can be 'attached to a vehicle or other movable thing' which evinces the statute's emphasis on proscribing physical tracking devices." *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 957-58 (E.D. Cal. 2025). But the ECPA and

"Section 632(a)… lacks any language suggesting that an 'electronic … device' must be physical in nature. Relying on the more specific text of section 637.7(d) to inform [these other sections and statutes] is misguided, given section 637.7(d)'s explicit focus on tangible devices." *Id*. at 958.

As such, this Court should find that the Defendants' "Pixel[s]… fall squarely within the statutory definition[]… [of] 'device'" under "18 U.S.C. §[] 2510 (5)," *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 796, and CIPA § 632(a), *L.B.*, 2025 WL 2899514, at *17.

**D. Google And Meta Violated Clauses Two and Three of CIPA § 631**

***Google and Meta "read "attempt[] to read, or learn" Plaintiff's communications.*** Google and Meta next argue they are not liable for violating CIPA § 631(a), because in their view, they did not "read, attempt[] to read, or learn the contents or meaning of any… communication while the same is in transit." *See* Google MTD at 8-9; Meta MTD at 17. Not so. As this Court noted, "alleg[ations] that [a plaintiff] received any targeted advertising after interacting with the challenged websites… would strengthen the inference that [defendant] learned about Plaintiff[] from reading [her] communications." 2025 WL 2899514, at *16. And here, Plaintiff Buchholz alleges that "after ordering prescriptions… [she] received digital advertisements related to the prescriptions she previously ordered on Defendant's Website. For example, after ordering prescriptions for Semaglutide, Plaintiff received advertisements relating to weight loss medications and hormone treatments." Compl. ¶ 11. Moreover, her counsel, in compiling screenshots for the complaint, found that "[w]ithin minutes after selecting their weight-loss drugs from SkinnyRx, and before any purchase is completed, users can begin receiving targeted advertisements for other weight loss drugs when using other online platforms like Facebook or Instagram, from other personal devices, like their smartphone." *Id*. ¶ 103; Figs. 21-23 (next page).

**Figure 21**




**Figure 22**




**Figure 23**




What is more, the Complaint devotes fifteen paragraphs discussing how Google and Meta "Synthesiz[e] and Organiz[e] Data Collected From Multiple Webpages." Compl. Section G, ¶¶ 87-102. "The Facebook and Google Tracking Pixels do not simply record users' interactions on particular websites." *Id.* ¶ 87. Rather, each pixel "*classifies* that interaction as certain type of event, and *organizes* that communication with prior communications the user had on different webpages. In so doing, these codes are actively learning the communication and are attempting to profile the website user." *Id. Riganian*, 791 F. Supp. 3d at 1092 is on all fours on this point. There, Judge Tigar held that "alleg[ations] that [defendant] 'uses 'event listeners' to detect specific types of contents,[']" and "'connects all these identifying points of data into a single, non-anonymous 'identity profile''" was sufficient to "set forth a specific factual theory as to how [defendant] incorporates—and thus reads—the intercepted content 'in real time[.]'" *Id.*

Nor are Plaintiff's allegations here conclusory. Section G of the Complaint includes screenshots showing that Meta and Google pixel transmissions "build on top of each other, allowing Facebook and Google to stitch together multiple interactions from multiple webpages to obtain a more complete picture of the user's interaction." *Id.* ¶ 88. The section walks through an intake process where users enter information across several pages. *See id.*, Figs. 10-13, 17. "As this is occurring, both Facebook and Google are intercepting the answers to the prompts that users are

communicating to the Website." *Id.* ¶ 91. Then, at the final stage of the purchase process, "[o]nce a user selects the particular drug … both Facebook and Google tracking pixels instantaneously not only collect the fact that particular drug was selected, but also *match* that drug selection with the personally identifiable information that was previously collected from the user during sign up." *Id.* ¶ 99 (emphasis in original). *See* Fig. 18 (below).




Figure 18 shows Google receiving a single transmission that combines "firstName=Stefan," (from a sign-up page) with "selectedProduct=tirzepatide_tablet" (from a checkout page). Compl. ¶ 100. "In other words, Google was not merely recording the user's session and replaying it; rather, Google was intercepting multiple pieces of information captured at different points in time and synthesizing it in real time to, in Google's own words, '*use[] [it] to match* your customers" and "[*i*]*mprove[] [the] measurement* of online conversions.'" *Id*. Figure 18 also shows "Google has read, or attempted to read, the communication and summarized and organized the data into what it believed was important." *Id.* ¶ 101.

Google's only response is "that 'Google Tracking Pixels' are not Google." Google MTD at 9. But this is a distinction that the California Supreme Court expressly refused to draw. *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985). *Ribas* "read section 631 as prohibiting far more than illicit wiretapping," but also the "simultaneous dissemination [of data] to an unannounced second auditor, whether that auditor be a person *or mechanical device*." 38 Cal. 3d at 360–61 (emphasis added).

Meta relatedly argues there is no actionable CIPA § 631(a) claim because "Meta at most receives a *separate*, *different message*." Meta MTD at 18. *Ribas* rejected this argument too. 38 Cal.

3d at 360–61 ("section 631 [] prohibit[s]," "*simultaneous dissemination* to an *unannounced second auditor*."). As did the Ninth Circuit. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608 ("Facebook is not exempt from liability as a matter of law under …CIPA" for "the unauthorized duplication and forwarding of unknowing users' information.").

***Google and Meta attempted to read or learn Plaintiff's communications in real-time***. Relying on *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025), Google argues that any "reading" of data "indisputably takes place after the communication has already traveled from the website visitor to the website operator." But that is question of fact that Judge Chabbria decided at summary judgment, after technical discovery showed "that event data is transmitted to Meta about 0.2 seconds after the visitor's action is transmitted to the website." *Id*. No such discovery has taken place here. As Judge Tigar noted, "whether communications are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work—a question [Google's cited cases] decided only after a full evidentiary record at summary judgment." 791 F. Supp. 3d at 1092.

Indeed, the very same tracking pixel can be configured in different ways on different websites, leading to different results at summary judgment. *Compare Frasco*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) (denying Meta's motion for summary judgment on the issue of "whether Meta's interception occurred while the communications were 'in transit.'") *with Eating Recovery*, 806 F. Supp. 3d at 1117 (granting Meta's motion for summary judgment on the same issue). As such, Defendants' arguments raise a "factual dispute [] better left for summary judgment." *Riganian*, 791 F. Supp. 3d at 1092 (denying motion to dismiss). Plaintiff here alleges that these transmissions occurred "contemporaneously," "instantaneously," and "in real time." Compl. ¶¶ 43, 52, 87, 99-100. Given that the technology here involves web browsers that send thousands of bits of data in tenths of a second, there is nothing implausible about those allegations.

Meta also incorrectly asserts that Plaintiffs need to "allege that [it] 'read' or 'learn[ed]' the contents of her communications with the SkinnyRx website 'during their transmission.'" Meta MTD at 17-18. But the statute also covers "attempts to read." CIPA § 631(a). This phrase must hold some meaning independent from the words "read[]" or "learn." This is because, in interpreting

California criminal statutes, "[w]e … generally avoid a reading that renders any part of a statute superfluous." *People v. Aguilar*, 16 Cal. 4th 1023, 1030 (1997). Recognizing this, a number of courts have held that "merely intercepting the communication while it's being made is enough, as long as the interception happens simultaneously or near-simultaneously." *Eating Recovery*, 806 F. Supp. 3d at 1116 (citing *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 860 (C.D. Cal. 2024) and *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)).

***Framing the "contents of communication" too narrowly would legalize the very same wiretapping CIPA was originally enacted to stop.*** In holding that Meta did not read or learn data while it was in transit, the *Eating Recovery* court framed the "communication" as a single, discrete "visitor's action" on a website. 806 F. Supp. 3d at 1117. While that it is certainly one way to frame the relevant "communication," it is not the only way, and far from the best way. In *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022), the Ninth Circuit framed the relevant communication as Plaintiff's act of "filling out [his] insurance questionnaire online." The Ninth Circuit held that "Section 631(a) applies to Internet communications," and found that Plaintiffs stated a claim where Defendant allegedly intercepted what Plaintiff "answered [to] a *series of questions* about his demographic information and medical history." *Id*. (emphasis added). That online questionnaire, however, spanned several webpages, *see* Case No. 3:20-cv-02860-CRB, ECF No. 1, ¶¶ 32-39 (N.D. Cal. Apr. 24, 2020), and took Plaintiff "3 minutes and 35 seconds" to complete, *id*. at ¶ 32. While the Ninth Circuit did not address the "in transit" language directly, it "emphasized that all CIPA provisions are to be interpreted in light of the *broad* privacy-protecting statutory purposes of CIPA" *Javier*, 2022 WL 1744107, at *2 (citing *Ribas*, 38 Cal. 3d at 358-59 and *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 199 (2021)) (emphasis added).

The *Javier* court's broader framing of "communication" finds support in the pluralistic text of Section 631(a). Clause two of Section 631(a) asks whether a defendant tries to read or learn the "*contents* [plural]… of *any* … *communication*" while it is "in transit." Communication, in turn, is defined as "[t]he interchange of *messages* [plural] by speech, writing, gestures, or conduct." *Communication*, Black's Law Dictionary, def. 1(a) (12th Ed. 2024) (emphasis added); *see also id.*, at def. 2 ("The *messages* [plural] or *ideas* [plural] so expressed or exchanged."). So, when a person

communicates with a website online, this encompasses all the "messages or ideas so expressed and exchanged," while a person is interacting with the site. And as noted, the text of the statute covers "*any*… communication," CIPA § 631(a), not simply the most narrowly defined communication.

Consider the conduct that motivated CIPA's enactment in 1967: "the increasing use of wiretapping to eavesdrop on private phone conversations." *Eating Recovery,* 806 F. Supp. 3d at 1114. In that context, a communication is generally not understood as a single, sound wave emitted from a person's vocal cord, but anything and everything that is communicated during an "ongoing telephone conversation." *Konop*, 302 F.3d at 877. If the phone call lasts 10 minutes, the entire 10-minute call qualifies as a "communication," and third-party violates the statute, if at any point during the call, a third-party tries to read or learn some of what was said. The same is true online. If a user visits a website for "3 minutes and 35 seconds, " *Javier*, Case No. 3:20-cv-02860-CRB, ECF No. 1, ¶ 32 (N.D. Cal. Apr. 24, 2020), and "answer[s] a series of questions about his demographic information and medical history," *Javier*, 2022 WL 1744107, at *1, then that entire process is the relevant Section 631(a) communication. And taken together, this communication would "divulge a user's personal *interests* [plural], *queries* [plural], and *habits* [plural]." *In re Facebook*, 956 F.3d at 605 (emphasis added). Exactly the same is true here. When users visit the SkinnyRX Website, they do not stay on a single webpage. Rather, they "complete the health intake quiz," "obtain prescriptions for prescription-only obesity medications," and order them. Compl. ¶ 29; *accord id.*, ¶ 11. That entire process is the relevant "communication" and Defendants violate section 631(a) if, at any point, during that relevant session, they "read[], or attempt[] to read, or to learn the contents or meaning … of any … communication while the same is in transit."

Worse still, were we to interpose the *Eating Recovery* court's narrow framing of a "communication" to CIPA's original wiretapping context and slice the "contents" of a phone call into thousands of discrete sound waves, it would legalize the very same conduct the law was meant to stop. When a human taps into someone's phone conversation, it is physically impossible for him to mentally process what is being said during the time a communication "is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). Even back in 1967, phone communications traveling across copper wires

moved at near the speed of light. No human being "reads, attempts to read, or learns" that fast. CIPA § 631(a). We listen at the speed of sound and even the most quick-witted among us can only process text or sound in tenths of a second. By the time we realize what was said, the light-speed message would have already reached its intended destination. Neither the text of Section 631(a) nor plain meaning of "communication" compels such an absurd result. As such, the Court should follow *Javier* and hold that intercepting the "contents …of any… communication" in the middle of an ongoing website visit is enough to satisfy the in-transit requirement.

***Google is a third-party eavesdropper.*** Lastly, relying on *Graham v. Noom*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021), Google argues that because it provides "advertising" services for LeanRX, it was "a 'party' to Plaintiff's alleged communications with SkinnyRx." Google MTD at 10-11. But this fails as both a matter of law and as a matter of fact.

As a matter of law, the majority of courts in District, including this one, "follow a different line of cases," *L.B.*, 2025 WL 2899514, at *14, led by *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). This line of cases finds that "*Graham* incorrectly interpreted the statute," *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1183 (N.D. Cal. 2024), and "reject[] [its] interpretation of Section 631 because it adds requirements about the 'intentions and usage of the prospective third party' that are not present in Section 631's second clause, and it would make the third clause (penalizing 'use') superfluous." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002 (N.D. Cal. 2024); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 745 (N.D. Cal. 2023); *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *4 (N.D. Cal. Aug. 11, 2025).

Second, even if *Graham* were correct, it is factually distinguishable. In *Graham*, the court found that a software-vendor acted as merely a "tool" and not as a "third-party" because it only allowed the website to "record and analyze its own data," and there were "no allegations ... that [the vendor] intercepted and used the data itself." 533 F. Supp. 3d at 832. Here, in contrast, Plaintiff alleges that "Google intercepted and used her personal information for its own advertising services." *Wilson v. Google LLC*, 2025 WL 901941, at *5 (N.D. Cal. Mar. 25, 2025) (distinguishing *Graham*). Here, as there, "Google continued to receive, analyze, and use [Plaintiff's] information for its *own purposes*, including marketing and data analytics." Compl. ¶ 20

(emphasis added). Indeed, Google's own Privacy and Terms say it "uses the information shared by sites and apps to… personalize content and ads you see on Google." *Id.* at ¶ 59. A number of courts, including this one, have distinguished *Graham* on identical grounds. *L.B.*, 2025 WL 2899514, at *15; *Wilson*, 2025 WL 901941, at *5; *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (distinguish *Graham* because vendor was alleged to "received this sensitive data and read and used it for its own marketing services."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944, n.8 (N.D. Cal. 2023) (because "Oracle combines and sells information in its Data Marketplace, it appears that Defendant's products cannot be properly analogized to the tools in [*Graham v.*] *Noom.*"). For this same reason, Defendants' motion to dismiss Plaintiff's Section 631(a) clause three claims (which cover Defendants' "use") likewise fails.

**E. Google and Meta Violated CIPA § 632**

Defendants both argue that Plaintiff's CIPA Section 632 claims fail for two reasons. First, Defendants argue that their respective tracking pixels are not "electronic amplifying or recording device[s]" under CIPA. Google MTD at 13-15; Meta MTD at 20-21. They are mistaken. *See* Section II.C, *supra*.

Second, Meta and Google argue that Plaintiff's CIPA Section 632 claim fails because she does not allege that the intercepted communications were "confidential communication[s]" within the statutory definition of CIPA Section 632. *See* Google MTD at 15-16 ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632") (citation omitted); Meta MTD at 19-20 (similar). Defendants are wrong. At the outset, there is no presumption that internet-based communications are not confidential. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (same). A communication is confidential under Section 632 if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P. 3d 575, 582 (Cal. 2002). The proper inquiry "is whether 'any party to the communication desires it to be confined to the parties thereto.'" *Brown*, 685 F. Supp. 3d at 938 (citing CIPA § 632(c)).

Here, Plaintiff clearly and repeatedly alleged that she reasonably expected her communications with the SkinnyRx website to remain confidential. *See* Compl. ¶¶ 11, 13-14, 105, 178 ("By failing to receive the requisite consent, Defendant LeanRx breached its duties of confidentiality and unlawfully disclosed Plaintiff's personally-identifiable information ("PII") and protected health information ("PHI")"). Additionally, courts have routinely recognized communications to be "confidential" under CIPA § 632 when shown to be sensitive under applicable laws, regulations, or industry norms. *See, e.g., In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (finding communications concerned PHI were confidential); *Smith v. Google LLC*, 735 F. Supp. 3d at 1199–1200 ("[T]he cases Google relies on involved internet chats and emails, not sensitive financial information submitted to a tax preparation website. … Google intercepted communications that were confidential under Section 632."). Nowhere is this more apparent than in the context of medical information. *See GoodRx*, 2025 WL 2052302, at *14 ("Plaintiffs' interactions with the GoodRx platform – by seeking discounts on specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms – constitute confidential communications.") (collecting cases); *see also Norman-Bloodsaw*, 135 F.3d at 1269 ("One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up."). Here, Plaintiff clearly alleges that information at hand is medical information. *See* Compl. ¶¶ 13-15, 29, 47, 68-86, 109. Individuals have a reasonable expectation that companies will not disclose their PHI. *See GoodRx*, 2025 WL 2052302, at *14.

With the exception of *L.B.*, where this Court "decline[d] to decide this issue in the pleadings stage[,]" 2025 WL 2899514, at *18, Defendants' cited authorities are inapplicable, as none of Defendants' cases concern the interception of medical information. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 770 (2002) (concerning recorded telephone conversations unrelated to medical services); *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (finding no expectation of privacy in chat rooms in a criminal case); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (concerning inquiries about items of clothing on a retail website); *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (involving text messages); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d at 737 (concerning chat conversation on a

retail website). As this Court has already decided, "[w]hile internet-based communications are generally not 'confidential' for purposes of Section 632, '[c]ommunications made in the context of a patient–medical provider relationship are readily distinguishable from online communications in general.'" *L.B.*, 2025 WL 2899514, at *18 (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799).

Meta further argues that Plaintiff's CIPA Section 632 claim fails because Plaintiff does not allege eavesdropping or recording by Meta. Meta MTD at 19. For the reasons set forth in Sections II.C, D, *supra*, Meta is mistaken.

Meta also argues that Plaintiff does not plausibly allege that Meta "used" a device in violation of the statute. Meta MTD at 18-19. In so arguing, Meta seeks to use a third-party website operator as a straw man to defeat liability for its surreptitious collection of Plaintiff's PII and healthcare data. *First,* there is no question that Meta "used" the Facebook Pixel to intercept and collect Plaintiff's PII and healthcare data from SkinnyRx.com, incorporate the information into its targeted advertising services, and create consumer profiles. Compl. ¶¶ 18, 38-43, 45-46, 48-50. *Second*, there is no "affirmative" or first party installation requirement in the statute. In *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023), the court found that a third-party data broker that provided SDK software to third-party developers violated CIPA even though the SDK was implemented by third-party developers. *Id.* at 1050 ("[T]he Court rejects the contention that a private company's surreptitiously embedded software [. . .] cannot constitute a 'pen register.'").

Defendant developed the Facebook Pixel for third-party website operators to incorporate into their websites for data collection for advertising purposes. Defendant encourages third-party website operators to incorporate the Facebook Pixel into their websites. Compl. ¶ 39-43, 45-46, 48-49. It is directly beneficial to Meta to have its pixel used as widely as possible because it means Meta can harvest more data and advertise through a broader array of applications. *Id.* Therefore, Meta cannot use website operator as a straw man to escape liability under CIPA Section 632.

**F. Plaintiffs State a Claim for Violation of the CDAFA**

CDAFA creates liability where a person: "(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, . .

."; "(3) Knowingly and without permission uses or causes to be used computer services[]"; "(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs…"; "(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network[]"; or "(8) Knowingly introduces any computer contaminant into any computer, computer system, or computer network." Cal. Penal Code § 502(c)(2)–(4), (6)–(8). Here, Defendants violated CDAFA by knowingly accessing Plaintiff's device without her permission via the Facebook Pixel and Google Trackers, which transmitted Plaintiff's PII and PHI to Defendants. Compl. ¶¶ 2-3, 11, 13, 15. Defendants then knowingly used the intercepted data unjustly to enrich themselves at Plaintiff's expense. *Id.* ¶¶ 18, 20, 50-52, 59-62.

Defendants argue Plaintiff fails to allege "damage or loss" as required by Cal. Penal Code § 502(e)(1). *See* Meta MTD at 21 ("Plaintiff does not allege that Pixel code caused any damage to her devices or data."); Google MTD at 16 ("Plaintiff does not allege a cognizable 'damage or loss' that gives her standing to recover damages under the statute."). Defendants are wrong. "Defendants Facebook and Google then use the information of Website visitors that is collected by the Trackers, including that of Plaintiff and Class Members, to identify Plaintiff and Class Members, serve targeted advertisements, and unjustly enrich themselves through this improperly collected information." Compl. ¶ 35. Judge Lin, in *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025), denied a motion to dismiss a CDAFA claim, finding that "Plaintiffs are damaged by not having received a share of the allegedly unjust profits generated from their data. . . [the defendant's] alleged unjust profit from the use of Plaintiffs' private personal information, which holds at least some financial value to [the defendant], plausibly constitutes a 'damage or loss' within the meaning of CDAFA." *Accord Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945 (S.D. Cal. 2024); *Brown v. Google LLC*, 685 F. Supp. 3d at 940; *Greenley*, 684 F. Supp. 3d at 1047–49 (sustaining CDAFA claim based on collection of geolocation data). The same result should follow here.

Further, as Courts have already explained to both Google and Meta, "Courts recognize depletion of battery and computing resources as acceptable forms of damage or loss for the purposes

of a CDAFA claim." *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) (citing *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1199 (N.D. Cal. 2019)). Plaintiff alleges Defendants' "Trackers usurp the normal operation of Plaintiff's and California Subclass' computing devices because they supplant Plaintiff's and California Subclass' choices in how those devices and *their resources are used*." Compl. ¶ 165 (emphasis added).

Meta further argues that Plaintiff's CDAFA claim fails because Plaintiff did not allege that Meta (1) knew it lacked permission; (2) engaged in the specific conduct prohibited by CDAFA; and (3) circumvented a technical barrier to Plaintiff's device. Meta MTD at 22-23. Meta is mistaken.

First, Plaintiff did not consent to Meta's interception and receipt of her data. *See* Section II.A, *supra*. Further, as explained in Section II.B *supra*, Meta's argument that did not know it lacked consent fails.

Second, Plaintiff has sufficiently pled that, through the Facebook Pixel, Meta accessed Plaintiff's device, accessed her sensitive PII and PHI, and profited from that accessed data through the sale of targeted advertising. *See* Compl. ¶¶ 2-3, 11, 13, 15, 18, 20, 50-52, 59-62. At this stage in the litigation, this suffices. This case is analogous to *Greenley*, 684 F. Supp. 3d at 1047–49, wherein the court found that an SDK developer that embedded its SDK into third-party applications and used it to extract user geolocation data violated the CDAFA.

Third, numerous courts in the Ninth Circuit have rejected Defendant's argument that the "without permission" language of § 502(c)(3) and (7) requires allegations that Defendant circumvented technical or code-based barriers to access Plaintiff's device, including *Greenley*. 684 F. Supp. 3d at 1049 ("The plain meaning of 'without permission' does not require the circumvention of computer barriers. Code hidden in embedded software may plausibly use or take computer data 'without permission.'"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1098–101 (N.D. Cal. 2015). Here, the Facebook Pixel transmitted Plaintiff's PII and PHI to Defendant without her knowledge or consent. Compl. ¶¶ 2-3, 11, 13, 15; *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1075 (N.D. Cal. 2021) (same). !

### G. Plaintiff States a Claim for Invasion of Privacy

Google argues that Plaintiff has not alleged the three elements of a claim for invasion of privacy, namely: "(1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) highly offensive conduct by [Google] that amounts to a serious invasion of the protected privacy interest." Google MTD at 17. Google is wrong.

"Our nation recognizes the importance of privacy in general and health information in particular: the safekeeping of this sensitive information is enshrined under state and federal law." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 783. This Court has already dealt squarely with these issues in a factually analogous case, *L.B. v. LinkedIn*. There is no reason for the Court to decide this case differently. In *L.B.*, Plaintiffs alleged that LinkedIn received PII and private health information—including a health survey—from ReflexMD, "an online healthcare operator that offers Semaglutide prescriptions." 2025 WL 2899514, at *6. Plaintiffs were "providing personal information in search of medical services. This could at least support a reasonable expectation that this information will be kept confidential." *Id*. at 18 ("[T]he Court finds Plaintiffs have sufficiently pled a protected privacy interest and reasonable expectation of privacy."). As to the highly offensive element, in a case involving the sharing of "medically-related data," this Court also found "this issue is also inappropriate to resolve at the pleadings stage" because it is an issue of fact. *Id.,* at *20.; *accord Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021). The Ninth Circuit held that this determination "requires a holistic consideration of factors" and raises "an issue that cannot be resolved at the pleading stage." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Here, Defendants' conduct in secretly intercepting and collecting Plaintiff's and Class Members' PII and healthcare information is an egregious breach of social norms and is highly offensive to a reasonable person. *See* Compl. ¶¶ 13-15, 29, 47, 68-86, 109.

### H. ECPA, CIPA, and CDAFA Provide Fair Notice

Meta's argument regarding "fair notice" is constructed on a false premise, namely that: That Meta is liable under ECPA, CIPA, and CDAFA for merely "receiving allegedly sensitive data." Meta MTD at 25. On the contrary, Defendant owns and licenses the Facebook Pixel to

developers *knowing* that, once that pixel is integrated on third-party medical websites, it will receive sensitive data such as Plaintiff's and Class Members' PII and PHI, which it then affirmatively uses to improve its targeted advertising services and to create consumer profiles. Compl. ¶¶ 15, 17-18, 38-43, 48-50.

In any event, ECPA, CIPA, and the CDAFA are not unconstitutionally vague. "A statute is unconstitutionally vague if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *W. Growers Ass'n v. City of Coachella*, 548 F. Supp. 3d 948, 957 (C.D. Cal. 2021) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Here, ECPA, CIPA, and the CDAFA do not meet this high standard. All three statutes have been faithfully applied in numerous instances, including regarding technology similar to the Facebook Pixel. *See, e.g., L.B.*, *supra*, 2025 WL 2899514 at *14-*18 (applying CIPA under similar facts); *Greenley*, 684 F. Supp. 3d at 1047-51 (same for CDAFA); *Tenet, supra*, 789 F. Supp. at 849 (same for ECPA).In each case, the vast majority of courts have applied the statutes in a consistent manner.

The case law Meta cites to support its position is largely inapposite. *See F.C.C. v. Fox Television Stations, Inc*., 567 U.S. 239 (2012) (involving a change in regulatory enforcement against broadcasters without prior notice); *Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009) (challenge to Montana campaign finance regulations, imposing reporting and disclosure requirements on in-kind campaign contributions or expenditures as applied to church's services); *but see Eating Recovery*, 806 F. Supp. 3d 1109.

Further, because the statutes do not threaten the First Amendment, they are examined on an as-applied basis. *United States v. Earnest*, 536 F. Supp. 3d 688, 725 (S.D. Cal. 2021). Given that numerous other similar software trackers have been found by courts to violate ECPA, CIPA and the CDAFA, Meta, if acting reasonably, would know its conduct regarding the Facebook Pixel was at risk. As such, Meta's argument, that it "was not on 'fair notice' that receiving data sent by a third party fell within the statutes' reach[,]" fails. Meta MTD at 25. The "rule of lenity applies when two reasonable interpretations of the same provision stand in relative equipoise, not every time there are two or more reasonable interpretations of a penal statute." *Fregosa v. Mashable, Inc.*, 2025 WL

2886399, at *9 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied,* 2026 WL 183857 (N.D. Cal. Jan. 23, 2026) (internal quotations omitted). Meta's cited case concurs. *See United States v. Millis*, 621 F.3d 914, 917 (9th Cir. 2010) ("The rule of lenity applies only where after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute.") (internal quotations omitted). In the absence of any "grievous ambiguity" in the statute's express language, a defendant may not invoke the rule of lenity. *Riganian*, 791 F.Supp. 3d at 1094.

"[N]or does [the] rule [of lenity] require that the act be given the 'narrowest meaning.' It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislative body]." *People v. Manzo*, 53 Cal. 4th 880, 889–90 (2012). "The Legislature … declares that advances in science and technology have led to the development of new devices … the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." CIPA § 630; accord *Facebook Tracking*, 956 F.3d at 608 (discussing ECPA legislative history).

Meta's gripe is not that the law is so vague or unclear it does not know what it means. Its gripe is that the case law interpreting it has mostly been unfavorable to its surveillance business. In the last few years, Meta has heard a largely consistent message from courts and juries: Be more explicit in how you are surveilling people and obtain their actual consent, or stop collecting their sensitive health and financial data. *In re Meta Pixel Healthcare*, 647 F. Supp. 3d 778, *In re Meta Pixel Tax Filing*, 724 F. Supp. 3d 987, *GoodRx*, 2025 WL 2052302, *Frasco*, 2025 WL 2680068. Rather than change its ways, Meta has made a business decision to use its trillion-dollar war chest to double down and hope the courts eventually grow sick and tired of dealing with enterprising lawyers bringing "[yet] another pixel case." *GoodRx*, 2025 WL 2052302, *1 (citation omitted). Whether that bet pays off is anybody's guess. *See Eating Recovery*, 806 F. Supp. 3d 1109. But many disenfranchised Americans have grown weary of government always stepping in to bail out big businesses for the risks they knowingly undertake. The moral hazards are too great and the basic human dignity of having one's health information remain private is too precious.

For the foregoing reasons, Defendants' motions to dismiss should be denied.

Dated: May 15, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Stefan Bogdanovich*

L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiff and the Putative Class*