**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNA BUCHHOLZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 5:26-cv-00846-EJD<br><br>**OPPOSITION TO LEAN RX, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing: July 9, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 4—5th Floor<br>Judge: Hon. Edward J. Davila |

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff Never Unambiguously Manifested Her Assent To Arbitration .......... 2

1. The SkinnyRX Shipping Information Page Does Not Explicitly Advise Users They Are Agreeing To Arbitration. .......... 3

2. The "What's Your Email?" Page Does Not Solicit Agreement To Defendant's Terms & Conditions, But *Other* Legal Documents. .......... 11

3. LeanRx Cannot "Infer" Plaintiff's Assent From Her Use Of The Site .......... 16

B. LeanRx Fails To Give Reasonably Conspicuous Notice Of Its Terms Hyperlink .......... 18

III. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... passim

*Carbonell v. Seatgeek, Inc.*,
2025 WL 2643847 (D. Nev. Sept. 15, 2025) .......... 18

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... passim

*Dahdah v. Rocket Mortg., LLC*,
166 F.4th 556 (6th Cir. 2026) .......... 20

*Dhruva v. CuriosityStream, Inc.*,
131 F.4th 146 (4th Cir. 2025) .......... 10, 11

*Dilanyan v. Hugo Boss Fashions, Inc.*,
2025 WL 3549869 (C.D. Cal. Dec. 3, 2025) .......... 1, 7, 8

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) .......... 20

*Edmundson v. Klarna*,
85 F.4th 695 (2d Cir. 2023) .......... 21

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 10

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... passim

*Harris v. iHeartMedia, Inc.*,
2026 WL 194576 (N.D. Cal. Jan. 6, 2026) .......... 1, 8

*Herzog v. Superior Ct.*,
101 Cal. App. 5th 1280 (2024) .......... 13, 14, 15

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 10

*Johnson Hum. Power of N Co.*,
767 F. Supp. 3d 845 (N.D. Ill. 2025) .......... 8, 9

*Judge v. Academia, Inc.*,
2026 WL 1256876 (N.D. Cal. May 7, 2026) .......... 1, 7, 10

*Kauders v. Uber Techs., Inc.*,
159 N.E.3d 1033 (Mass. 2021) ... 2

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ... 18, 21

*Kemp v. Aroma 360, LLC*,
2026 WL 513534 (D. Md. Feb. 24, 2026) ... 10

*Krayzman v. iStockPhoto LP*,
2024 WL 4658107 (N.D. Cal. Oct. 3, 2024) ... 13, 15

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) ... 9

*Lee v. Intelius Inc.*,
737 F.3d 1254 (9th Cir. 2013) ... 12

*Long v. Provide Com., Inc.*,
245 Cal. App. 4th 855 (2016) ... 16

*Marshall v. Georgetown Mem'l Hosp.*,
112 F.4th 211 (4th Cir. 2024) ... 17

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ... 20

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ... 1, 10, 16, 17

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ... 20

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ... 20

*Ramirez v. Trusper, Inc.*,
2024 WL 4479862 (N.D. Cal. Oct. 11, 2024) ... 1, 13, 14

*Ramirez v. Trusper, Inc.*,
2025 WL 2955231 (9th Cir. Oct. 20, 2025) ... 14

*Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021) ... 20

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ... 11, 13

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ... 1, 12

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) .......... 2

*Weeks v. Interactive Life Forms, LLC*,
100 Cal. App. 5th 1077 (2024) .......... 11, 16

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) .......... 11

## I. INTRODUCTION

Defendant Lean RX, Inc. ("Defendant" or "LeanRx") argues Plaintiff Anna Buchholz ("Plaintiff") agreed to arbitration because she "clicked on 'Continue' in two different places, first after entering her address and name, and second after agreeing to the medical terms and conditions." ECF No. 51 ("MTCA") at 13. But this fails to form an agreement to arbitrate because neither page "indicate[s] to the user what action would constitute assent." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022).

On the first page, while there was a hyperlink to Defendant's Terms, it simply said: "See our… <u>Terms of Service</u>." Ninth Circuit courts have repeatedly explained that this is not enough. *Judge v. Academia, Inc.*, 2026 WL 1256876, at *4 (N.D. Cal. May 7, 2026); *Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549869 (C.D. Cal. Dec. 3, 2025); *Harris v. iHeartMedia, Inc.*, 2026 WL 194576 (N.D. Cal. Jan. 6, 2026).

On the second page, the website never referenced (let alone included a hyperlink to) the *website* "Terms & Conditions" that contained the arbitration clause. Instead, they sought a "consent and acknowledgment" to various *medical* terms which did not contain any arbitration clause. "[W]here a website specifically states that clicking means one thing, that click does not bind users to something else." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016); *accord Ramirez v. Trusper, Inc.*, 2024 WL 4479862, at *5 (N.D. Cal. Oct. 11, 2024) (Davila, J.), *aff'd*, No. 24-6434, 2025 WL 2955231 (9th Cir. Oct. 20, 2025).

LeanRx also argues that Plaintiff's mere use of the website secured her unambiguous assent to arbitration simply because its "Terms & Conditions" webpage said so. MTCA at 13. But over a decade ago, the Ninth Circuit examined this exact same kind of "browsewrap" argument and rejected it. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1174 (9th Cir. 2014). Since then, the court has clarified that the relevant assent prompt needs to be on a "screen[] or message[]Plaintiffs [actually] saw" and "temporally coupled with the relevant transaction." *Godun v. JustAnswer LLC*, 135 F.4th 699, 714, n.7 (9th Cir. 2025). In other words, "it would be improper to infer that [a user] manifested her assent on screen 1 to a notice she hadn't yet seen on screen 2." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1158 (9th Cir. 2025). By squirreling away its advisement on a separate Terms &

Conditions page, and submitting zero evidence of when—if ever— Plaintiff even saw that page, LeanRx cannot show any action Plaintiff took signified her assent *unambiguously*.

For these reasons, LeanRx's motion to compel arbitration should be denied.

## II. ARGUMENT

### A. Plaintiff Never Unambiguously Manifested Her Assent To Arbitration

Since the early days of the internet, courts have stressed that the "unambiguous manifestation of assent to … terms by consumers [is] essential if electronic bargaining is to have integrity and credibility." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (Sotomayor, J.); *accord Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (quoting same language). The parties agree "California law" governs this question. MTCA at 8.

In the old days, consumers would manifest assent to terms by signing on the dotted line. But online, "[w]ithout an action comparable to the solemnity of physically signing a written contract … [courts] are concerned that such users may not be aware of the implications of their actions[.]" *Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033, 1051 (Mass. 2021). As such, "[t]o avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Berman*, 30 F.4th at 856.

Under California law, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory *only if*… the consumer takes some action, such as clicking a button or checking a box, that *unambiguously manifests his or her assent to those terms*." *Berman*, 30 F.4th at 856 (emphasis added). A consumer's action can be construed as an "unambiguous manifestation of assent *only if* the user is explicitly advised that the act … will constitute assent to the terms and conditions of an agreement." *Id*. (emphasis added).

This explicit advisement needs to be on a "screen[] or message[] Plaintiffs [actually] saw" that is "temporally coupled with the relevant transaction." *Godun*, 135 F.4th at 714, n.7. Courts are not to "infer" assent from prompts and actions scattered across multiple screens. *Chabolla*, 129 F.4th

at 1159. The standard is not a possible, or even probable, manifestation of assent. It is an "unambiguous" one. *Berman*, 30 F.4th at 856.

### 1. The SkinnyRX Shipping Information Page Does Not Explicitly Advise Users They Are Agreeing To Arbitration.

LeanRx argues Plaintiff agreed to its Terms & Conditions by clicking a purple "Continue" on the "Shipping Information" page. MTCA at 13 (reproduced below).




"[B]ut merely clicking on a button on a webpage, viewed in the abstract, does not signify a user's agreement to anything." *Berman*, 30 F.4th at 857. Unlike a "'clickwrap' agreement[], in which… users must check a box explicitly stating 'I agree' in order to proceed," here, "the text of the button itself gave no indication that it would bind plaintiff[] to a set of terms and conditions." *Id.*

at 856 and 58. In such situations, courts often "doubt[] whether most consumers know that clicking that 'some other button' constitutes agreeing to contract terms." *Id*. at 866 (Baker, J., concurring).

For this reason, "[a] user's click of a button can be construed as an unambiguous manifestation of assent *only if* the user is *explicitly advised* that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id*. at 857 (majority opinion, emphasis added). As such, in *Berman*, the Ninth Circuit held a user's click of a "Continue" button failed to establish an agreement to arbitrate, where, as here, the page never explained to users that that click meant assent. *See* 30 F.4th at 861, App'x B (prompt and button reproduced below).




"Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they did not indicate to the *user what action would constitute assent to those terms and conditions*." *Berman*, 30 F.4th at 858 (emphasis added). This was the dispositive factor that prevented the manifestation of assent from being *unambiguous*.

It is important to pause to consider how stringent the *Berman* "explicit advisement" rule is. It did not matter that the *Berman* prompt told users "I … agree to the Terms." 30 F.4th at 858. It did not matter that "the webpages here … provide[d] advisals concerning the terms and conditions in proximity to the 'continue' buttons… directly above the button." *Id*. It did not even matter that the prompt expressly warned the Terms "*includes mandatory arbitration*." *Id*. (emphasis added). "The question before us is not whether [the users] may have been aware of the mandatory arbitration provision in particular, *but rather whether they can be deemed to have manifested assent to any of the terms and conditions in the first place*." *Berman*, 30 F.4th at 858 (emphasis added). And for that, the page needed an *explicit* advisement, "such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" *Id*.

A few years later, the Ninth Circuit in *Chabolla* and *Godun* explained how much teeth this explicitly advisement rule really has. In *Chabolla*, the Ninth Circuit held "We find too much ambiguity in [the following prompt's] language to find that a user binds herself to the Terms of Use by continuing past it." 129 F.4th at 1158. *See id.* at 1175 (below).




> Screen 2 explains that "[b]y signing up you agree to our Terms of Use and Privacy Policy." There is no "sign up" button, and the only button on screen 2 reads "Continue." At no point on any screen is a user advised that a particular action has "signed her up" or will "sign her up[]" …. Rather than provide explicit instruction, screen 2 asks the user "What's your name?" and includes fields for a first name and last name. It is up to the user to assume that entering a first and last name and clicking the "Continue" button amounts to "signing up."… [T]he resulting ambiguity is dispositive.

*Chabolla*, 129 F.4th at 1158.

*Godun* is perhaps even more telling. In that case, there was a "pre-checked" box that said "I agree to the <u>Terms</u>." 135 F.4th at 706.




Yet, even here, the Ninth Circuit *still* refused to find an unambiguous manifestation of assent. "The blue check-marked box … was pre-checked, so the parties only needed to click the 'Connect now' button to finish the signup process." *Godun*, 135 F.4th at 706–07. And because "[t]he advisal lacked an explanatory phrase indicating that 'By clicking connect now' or 'By connecting,' or 'By

chatting,' etc., she agreed to the terms… that is not enough to constitute an 'unambiguous manifestation of assent.'" *Id*. at 712-13.

In other words, it did not even matter that the page contained a pre-checked "I agree" box that plaintiffs left undisturbed. "Even strongly implicit advisement isn't enough—a webpage must *explain* that certain actions will be understood by the offeror to signal assent to contractual terms. And it must identify what, exactly, those actions are." *Godun*, 135 F.4th at 711 (citing cases). In other words, "the explanation of the legal significance of an action must truly be unambiguous." *Id*.

Now consider the prompt here. It is materially worse than the failed prompts of *Berman*, *Chabolla*, or *Godun*. It does not say "I understand and agree to Terms," *Berman*, 30 F.4th at 858, that "by signing up, you agree to the Terms" *Chabolla* 129 F.4th at 1158, or even that there was a pre-checked "I agree to the Terms" box, *Godun*, 135 F.4th at 707. Instead, it simply says: "See our… Terms of Service."[1]




"See" is a suggestion. It is not an explicit advisement. Maybe users will "see" the terms, but maybe they won't. "See" does not tell users they are *agreeing* to anything. Nor does it "*explain* that certain actions will be understood by the offeror to signal assent" and does not "identify what, exactly, those actions are." *Godun*, 135 F.4th at 711 (emphasis in original). So it fails to secure assent that is "truly … unambiguous." *Id*.

[1] The arbitration clause LeanRx is seeking to enforce appears in a document labeled Terms ***& Conditions***. Nevertheless, "[w]hen a consumer clicks on the 'Terms of Service' hyperlink on the 'Shipping Information' page on the SkinnyRX website, the customer will see the Terms and Conditions page." Lin Decl., ¶ 22.

Other courts have reached the exact same conclusion involving similar "See," "Review," or "View" prompts. In *Judge v. Academia, Inc.*, 2026 WL 1256876, at *4 (N.D. Cal. May 7, 2026), Judge Martínez-Olguín recently denied a motion to compel arbitration because a similar "see this site's … terms of service" prompt likewise failed to establish an unambiguous assent. (Case No. 3:25-cv-5857-AMO, ECF No. 63).




> Assuming without deciding that the advisal gave reasonably conspicuous notice of the Terms of Use, this pop-out did not "*explain* that certain actions will be understood by the offeror to signal assent to contractual terms," so Judge could not have unambiguously manifested assent… It did not include any clause explaining that a particular action would constitute agreement to the Terms of Use. Nor did it direct Judge to agree to those terms. Rather, it directed him to "[s]ee" Academia's "terms of service." Because the pop-out contained no indication that a user would agree to the Terms of Use by clicking Continue, Judge did not unambiguously manifest his consent to those terms.

*Judge*, 2026 WL 1256876, at *4 (citing *Godun* 135 F.4th at 711-13).

Likewise, in *Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549869, at *1 (C.D. Cal. Dec. 3, 2025), the court held that the following "see our Terms" prompt was insufficient.



"The small print read as follows: 'By checking this box, you agree to receive recurring automated marketing text messages … For more information about text messages, see our Terms & Conditions.'" *Id*. at *3. So "the banner did not properly explain that clicking 'Access Sale by Signing up for Texts' would indicate the user's assent to be bound by the terms." *Id*. "The paragraph informed Plaintiff only that he 'agree[d] to receive automated marketing text messages ... at the number provided' without also mentioning that he agreed to the terms. It referred Plaintiff to the Terms and Conditions separately, four sentences later, and only '[f]or more information about text messages.' Such language fails to connect the action taken to any agreement to the Terms and Conditions." *Id.* at * 4.

Again, in *Harris v. iHeartMedia, Inc.*, 2026 WL 194576, at *4 (N.D. Cal. Jan. 6, 2026), Judge Lee held that the following "review" prompts failed to establish unambiguous assent.




As the court explained, "[a] website must use clear language to indicate what action will bind the user to the terms." *Harris*, 2026 WL 194576, at *4. And the language above did not. "Both notices simply instructed the user to 'review' the terms of service. They did not indicate that the user was assenting to the terms of service by continuing." *Id.*

Finally, in *Johnson Hum. Power of N Co.*, 767 F. Supp. 3d 845, 849 (N.D. Ill. 2025), the court held that the following "View" prompt also failed to secure a user's unambiguous assent.




"The problem for Defendant is that nothing on its advertisement indicates that *by clicking the button a consumer is agreeing to abide by the terms*." *Id*. at 850 (emphasis added). "Instead… it says 'View Terms & Privacy.' But that does not indicate that the consumer will be bound by those terms." *Id*. at 851. "Merely writing 'View' is an insufficient prompt when there is no additional statement explaining the importance of the hyperlinked information to the consumer." *Id*. at 853. "Here, the onus was on Defendant to make clear that a consumer was assenting to the terms by clicking the button; but it did not." *Id*. at 852.

Like the failed prompts in *Judge*, *Dilanyan*, *Harris*, and *Johnson*, here, the prompt simply told users they could "see [Defendant's]… Terms" without ever notifying them they would be deemed to agree to such terms by clicking the "Continue" button. This is not enough. As *Johnson* summarized: "The phrasing of the disclosure is particularly important given that Defendant has complete control over the language of its own website and could have written the disclosure in any way." 767 F. Supp. 3d at 851–52.

The cases LeanRx cites in its brief are all distinguishable, no longer good law, or both. In *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1074 (C.D. Cal. 2023), Judge Michael Fitzgerald held that a "mismatch in language between 'Continue' [button] and [prompt] 'By signing up or signing in, you are agreeing to DoNotPay's Terms and Conditions'[was not enough to] invalidate[] … assent." However, two years later, sitting by designation in the *Chabolla* case, Judge Fitzgerald changed his mind. In *Chabolla*, Judge Fitzgerald was part of the same majority opinion that held that the very same Continue/signing up mismatch did, in fact, defeat assent. Needless to say, the Ninth Circuit's opinion in *Chabolla* is controlling and supersedes the prior *Lee* opinion.

In *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 929 (N.D. Cal. 2024), on the other hand, the prompt was much better. "Immediately below the 'Sign Up' button was a statement reading, 'By creating an account, I accept Coursera's Terms of Service.'" *Id.* at 924. And while there was a minor mismatch between the create account prompt and the Sign Up button, the prompt specified that *some certain action—i.e.* "creating an account," constituted a user's "accept[ance] [to the] terms." *Id.* Here, however, LeanRx's website does not "'*explain* that [*any*] certain actions will be understood by the offeror to signal assent' … Rather, it directed him to '[s]ee' [the] 'terms of service.'" *Judge*, 2026 WL 1256876, at *4 (citing *Godun* 135 F.4th at 711). Were *Lee* still good law, it would be distinguishable for the same reason.

In *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 150 (4th Cir. 2025), a divided panel of Fourth Circuit judges found the prompt "[b]y subscribing to Curiosity Stream, you agree that you've read our Terms of Use," was sufficient to show assent because the terms a user "agree[s] that you've read," said "YOUR AFFIRMATIVE ACT OF USING AND/OR REGISTERING WITH THE SITES SIGNIFIES THAT YOU AGREE TO THESE TERMS OF USE." Dissenting, former Chief Judge Wilkinson criticized the majority for "inferring assent under the fuzziest of circumstances" under "a murky totality of the circumstances test." *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 157 (4th Cir. 2025). But this Court is not bound by the Fourth Circuit. It is bound by the Ninth. And the Ninth Circuit holds that "it would be improper to infer that [a user] manifested her assent" across multiple different screens in a "'multi-page enrollment process.'" *Chabolla*, 129 F.4th at 1158-59.[2] In any event, *Dhruva* is also distinguishable. In *Dhruva*, the prompt at least warned the user they were *agreeing* to something (*i.e.*, *having read* the terms that contained the clearer advisal). Here, in contrast, LeanRx's "see" prompt did not tell users they were agreeing to anything.[3]

---

[2] LeanRx's citation to *Kemp v. Aroma 360, LLC*, 2026 WL 513534, at *6 (D. Md. Feb. 24, 2026), a Fourth Circuit district court opinion that relied on *Dhruva*, is inapt for the same reason.

[3] While unnecessary to resolve this motion, the Ninth Circuit's view is better reasoned than the Fourth Circuit's view for at least three reasons. First, it comports with the applicable burdens of proof. "Under California law and generally applicable principles of contract law, the burden is on … the party seeking arbitration to show … that there was mutual assent to the contractual agreement to arbitrate." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023). As such, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Nguyen*, 763 F.3d at 1179. The *Dhruva* majority's "approach wrongly places the burden of avoiding

**2. The "What's Your Email?" Page Does Not Solicit Agreement To Defendant's Terms & Conditions, But *Other* Legal Documents.**

The next "What's Your Email?" page LeanRx relies on, however, fails for the opposite reason. While the page contains an explicit advisement, it refers to a *different set of terms*: a (1) "Side Effects Acknowledgement precaution," (2) "Telehealth consent," (3) "GLP-1 Medication Information" and (4) "Medication adjustment acknowledgement." *See* ECF No. 51-1 (Lin. Decl.,) at ¶ 15. But LeanRx does not claim any of these various medical documents contain an arbitration clause. Rather, its motion to compel arbitration is based on a clause located in an entirely separate *Terms & Conditions* page. Lin Decl., ¶ 22

---

confusion on consumers instead of on the companies that are best positioned to prevent it. It would be easy for a sophisticated corporate party … to simply ask its customers if they 'agree to the Terms of Use.' It is much harder for millions of unsophisticated consumers to sift through ambiguous phrases and dense legalese to discern whether they are agreeing to a contract." *Dhruva*, 131 F.4th at 157 (Wilkinson, J., dissenting).

Second, the *Dhruva* also rests on the assumption that "a reasonably prudent internet user *would have known* that the hyperlinked terms of use here applied" given that they were signing up for a video streaming service. 131 F.4th at 152 (emphasis added). But California appellate courts have said such claims are "pure speculation," as "'there is very little empirical evidence regarding 'what the average internet user perceives to be the meaning of the phrase 'terms of use.''" *Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1087 (2024) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 475 (2021)); *accord Dhruva*, 131 F.4th at 156 (Wilkinson, J., dissenting) ("it is far from obvious that consumers invariably expect 'continuing relationships' to come with pages of legal terms. Many continuing relationships unfold informally and rely on implied terms. It is pure speculation to assume that CuriosityStream's customers expected anything different.") So, when evaluating "whether there is an *unambiguous* manifestation of assent," the Ninth Circuit "does not look to the context of the transaction but relies on the explicit advisement of what actions will be taken to signify assent." *Godun*, 135 F.4th at 713 (emphasis in original).

Third, the Ninth Circuit's approach promotes "basic honesty and candor with regard to consumers," instead of "[r]elying on a multi-step process dependent on some combination of links, scrolls, and semi-scrutable language." *Dhruva*, 131 F.4th at 158 (Wilkinson, J., dissenting). And telling users they "*agree [they] have read*" the terms is simply not an honest way to tell them they agree. The Ninth Circuit has "decline[d] to enforce agreements where the terms are available only if users … complete a multiple-step process of clicking non-obvious links." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (collecting cases). In fact, it has referred to it as a "hide-the-ball exercise." *Id*.




Worse still, Lean RX does not submit a copy of what any of those various medical documents say. *See generally*, Lin Decl. Nor does it tell us whether the Consent & Acknowledgement language here is a link, and if so, what Plaintiff would have seen if she clicked it. *See id.* When Plaintiff's counsel last visited the website on May 21, 2026 and clicked the "Consent & Acknowledgement" hyperlink on this page, a pop-up appeared which listed out those 4 separate medical terms. Declaration of Stefan Bogdanovich ("Bogdanovich Decl."), ¶ 3. ***However, none of those terms discussed arbitration at all.*** *Id.*, Ex. 1. Nor do any of these documents reference—let alone link to—the Website Terms & Conditions page LeanRx does rely on. *See id.*[4]

"[W]here a website specifically states that clicking means one thing, that click does not bind users to something else." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016) (*citing Lee v. Intelius Inc.,* 737 F.3d 1254 (9th Cir. 2013)). "The parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.' If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent[.]"

[4] To that end, the Lin Declaration attaches an Exhibit A a "Patient Consent" form which, although it purports to show Plaintiff's acknowledgment, see ECF No. 51-2, is a document **Plaintiff never saw**. LeanRx's declarant notes that this "form **is not sent to the customer, but is instead maintained as an internal Company record**," and is "system generate[d]," and adds a copy of the website terms to it. Lin Decl., ¶¶ 19-20 (emphasis added). Plaintiff fails to see what relevance this form has to this dispute, given that LeanRx does not, and cannot, argue this automatically generated form shows assent.

*Herzog v. Superior Ct.*, 101 Cal. App. 5th 1280, 1293 (2024) (quoting *Sellers*, 73 Cal. App. 5th at 460).

Here, the box Plaintiff checked said she had "read and agree[d] to the consents and acknowledgments above." Lin Decl., ¶ 15. But none of those consents and acknowledgements above contained the arbitration clause LeanRx is now seeking to enforce. Bogdanovich Decl., Ex. 1. Rather, the arbitration clause was located in a separate website *Terms & Conditions* page, Lin Decl., ¶ 22, which Plaintiff was never explicitly advised she would be agreeing to. As such, the parties did not "agree[] 'upon the same thing in the same sense." *Herzog*, 101 Cal. App. 5th at 1293.

On this point, *Krayzman v. iStockPhoto LP*, 2024 WL 4658107, at *1 (N.D. Cal. Oct. 3, 2024) is on all fours. The court denied a motion to compel arbitration based on "the binding arbitration clause in iStock's *License Agreement*." *Id*. (emphasis added). Yet "when Krayzman subscribed to iStock, he clicked a button that said 'I agree' with the statement 'By joining iStock, you accept our *Privacy Policy* and *Terms of Use*.'" *Id*. (emphasis added). "A reasonable consumer would believe they are consenting to only the Privacy Policy and Terms of Use agreement when clicking the 'I agree' button, not the License Agreement." *Id*.

What is more, here, even if the Consent & Acknowledgments hyperlink did take users to the "Terms & Conditions" or linked to the Terms & Conditions page—it did not, *see* Bogdanovich Decl., Ex. 1—it would still fail to establish an unambiguous manifestation of assent under this Court's decision in *Ramirez v. Trusper, Inc*., 2024 WL 4479862, at *5 (N.D. Cal. Oct. 11, 2024) (Davila, J.), *aff'd*, No. 24-6434, 2025 WL 2955231 (9th Cir. Oct. 20, 2025), as well as *Herzog* and *Krayzman*.

In *Ramirez*, this Court denied a motion to compel arbitration based on a somewhat similar "Telehealth Consent" clickwrap, that, if clicked, led to another document containing a second "terms page" hyperlink. 2024 WL 4479862, at *2 (images reproduced on the next page)







The court held that it "need not resolve whether the appearance of '<u>Telehealth Consent</u>' provides sufficient notice … because it does not, in fact, lead the internet user to the Participation Agreement. Instead, …they are taken to another pop-up window [,] [and]… [a]t the bottom at that pop-up window, there is another sentence that says, 'For Musely's full Telehealth Terms and Conditions please visit the <u>terms page</u> or click on the link provided below. By consenting to Telehealth you are agreeing to our full terms and conditions." 2024 WL 4479862, at *5. "Courts commonly rejected agreements such as this, where a multi-step process is required for a website visitor to view the agreement at issue." *Id*. at *6 (collecting cases). The Ninth Circuit affirmed, holding that "[a] reasonable user would expect [that the pop-up window's reference to] terms and conditions to involve the same subject matter" as the Telehealth Consent they originally agreed to. 2025 WL 2955231, at *1 (9th Cir. Oct. 20, 2025) (citing *Herzog*, 101 Cal. App.5th at 1304).

Similarly, in *Herzog*, the California Court of Appeal held a medical app user did not unambiguously manifest assent to an arbitration provision in a defendant's hyperlinked terms where the user checked an I agree to the terms box on the following screen. *Id*. at 1289 (reproduced on the next page).




*Herzog* held that the checkbox could not establish unambiguous assent to any one set of terms, because the document that hyperlinked to the green Terms of Use next to checkbox discussed an arbitration provision, whereas the text block immediately above the I agree box discussed the processing of users' "sensitive health information." *Id*. at 1304. "[T]he 'Legal' screen assigned two possible meanings to the act of clicking the checkbox—one narrow and explicit, the other broad and implicit. It therefore created ambiguity with respect to whether users who clicked on the checkbox next to 'I agree to Terms of Use' were agreeing to have their personal information collected, used and shared 'consistently with' the Terms of Use and stored and processed by Dexcom and/or its affiliate in the United States, or whether they were consenting to be bound by all of the terms in the hyperlinked webpage, including the requirement of binding arbitration in the event of a legal dispute arising from injuries allegedly caused by Dexcom's products." *Id*.

So too, in *Krayzman*, the Court refused to compel arbitration even though "License Agreement [was] listed on the sidebar" of the "Privacy Policy [and] the Terms of Use … pages." 2024 WL 4658107, at *1. Even with a link to a third set of terms, "[a] reasonable consumer would believe they are consenting to *only* the Privacy Policy and Terms of Use agreement when clicking the 'I agree' button" for those first two sets of terms. *Id.*

### 3. LeanRx Cannot "Infer" Plaintiff's Assent From Her Use Of The Site

Unable to show that Plaintiff's click of any button unambiguously manifested assent, LeanRx pivots to arguing that she manifested assent by "both access[ing] and us[ing] the services … through the SkinnyRX website." MTCA at 13. However, LeanRx fails to point to any explicit advisement Plaintiff actually saw telling her so.

The closest LeanRx comes is noting "[t]he third paragraph of the terms of service… states clearly [that] … 'by accessing or using the Services, you … agree to be bound by and comply with these Terms.'" MTCA at 12.

The problem for LeanRx, however, is that it submits zero evidence that Plaintiff actually visited the Terms of Service page, let alone when, if ever, this occurred. For an advisal to create unambiguous assent, it needs to be part of the same "screen[] or message[] Plaintiffs [actually] saw" and "temporally coupled with the relevant transaction." *Godun*, 135 F.4th at 714, n.7. However, by squirreling away the advisal on an entirely separate Terms page, LeanRx failed to do so.

The Ninth Circuit rejected LeanRx's argument in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1174 (9th Cir. 2014). In *Nguyen*, an online bookstore argued a consumer assented to its Terms because the Terms themselves said: "By visiting any area in the Barnes & Noble.com Site, ... a User is deemed to have accepted the Terms of Use." *Id*. *Nguyen* called this a "pure—form browsewrap agreement, [where] 'the website will contain a notice that—by merely using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service.'" *Id*. at 1176 (citations omitted). So, "in keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers," *Nguyen* refused to enforce the book store's terms. *Id*. at 1178-79.

Since then, the California Court of Appeal has repeatedly refused to enforce browsewraps, where, as here, the terms themselves said "[i]n consideration for access to and/or use of the site… you agree to be bound by the terms." *Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1082 (2024); *accord Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 860 (2016) ("**By using any one of our Sites, you … expressly agree to be legally bound by these Terms and Conditions.**") (emphasis in original).

Most recently, in *Chabolla*, the Ninth Circuit summarized that "Courts consistently decline to enforce browsewraps," and provided a doctrinal framework for why. 129 F.4th at 1154. In such pure browsewrap agreements, assent is always ambiguous because it requires courts to "improper[ly] []infer that [a user] manifested her assent on screen 1 to a notice she hadn't yet seen on screen 2." *Chabolla*, 129 F.4th at 1158.

Indeed, the Ninth Circuit in *Chabolla* refused to make such an inference even where plaintiff *actually did see* the advisal. As noted in *Chabolla*, the court held that the prompt on Screen 2 was ineffective because it said "[b]y signing up you agree to our Terms," even though "[t]here is no 'sign up' button," on Screen 2. Yet, "screen 1[] [contained the] option to 'Sign up with Facebook.'" *Id*. at 1158. The court nevertheless refused the invitation to stitch "all three screens together," to manufacture assent. *Id*. at 1159.

Here, the problem is even worse than *Chabolla* because there is no evidence Plaintiff ever even visited LeanRx's terms page and saw the advisal. In *Chabolla*, in contrast, it was undisputed the consumer clicked past Screens 1 through 3. If the advisal the consumer actually saw in *Chabolla* was not enough to show assent was unambiguous, then there is no way the advisal here—*which LeanRx cannot show Plaintiff ever saw*—can show assent was unambiguous.

Worse still, there is a second, independent problem with LeanRx's advisal on the terms page: it presumes assent *before it is given*. LeanRx's says "access[ing] and us[ing] the services … through the SkinnyRX website," is assent. MTCA at 13. But as *Nguyen* and other courts have observed, "visiting the website—[is] something that the user *has already done* …." 763 F.3d at 1176 (citation omitted). As another court noted, this creates an ambiguity: "an unequivocal statement that … [plaintiff] *already* was subject to [certain terms] … might give the opposite impression [than what defendant may have intended], conveying not that she was being asked to agree to [the terms] but instead that the matter was out of her hands and already resolved." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 221 (4th Cir. 2024). And if a user believes the matter was out of her hands and already resolved, then her *continued* use of the site *could* reflect assent, but it *could also* reflect indifference or resignation.

Indeed, it is for this same reason that Ninth Circuit in *Godun* likewise held that a "pre-checked box" stating "I agree to the Terms" was not enough to form a contract. 135 F.4th at 711. Leaving the box undisturbed could reflect assent, but it could also reflect indifference or resignation. This is not enough. The standard is not a possible, or even probable, manifestation of assent. It is an "unambiguous" one. *Berman*, 30 F.4th at 856.

**B. LeanRx Fails To Give Reasonably Conspicuous Notice Of Its Terms Hyperlink**

Because Plaintiff "had no means of manifesting her assent to [LeanRx] terms… further discussion on the conspicuousness of the notices …would be non-dispositive." *Chabolla*, 129 F.4th at 1158. That said, plaintiff will briefly address the conspicuousness of LeanRx's notices as a separate, independent ground for denying Defendant's motion to compel arbitration.

LeanRx argues that the "context of the purchase reasonably put Plaintiff on notice … [she] would be subject to the website's terms and condition." MTCA at 9.[5] Not so. While it is true that LeanRx made Plaintiff "create an account," Lin Decl., ¶ 3, it does not claim it provided any notice of its hyperlinked Terms & Conditions while she was creating the account. Instead, the only time defendant provided a hyperlink to its Terms & Conditions were on the Shipping Information page, where users were asked to input their address so LeanRx could "deliver medication right to your door." *See id.*, ¶ 9. As such, this is more akin to a situation where "a user simply purchases goods…[where] there is less reason for her to expect a continued relationship beyond the purchase." *Chabolla*, 129 F.4th at 1155.

Second, LeanRx has done virtually nothing to make its terms *conspicuous*. Instead, "[t]he text containing the hyperlink is the lightest and smallest on the … page." *Carbonell v. Seatgeek, Inc.*, 2025 WL 2643847, at *4 (D. Nev. Sept. 15, 2025). The Page speaks for itself. *See* next page.

[5] "The context of the transaction is relevant at step one of the inquiry-notice online contract formation test [conspicuousness], not step two." *Godun*, 35 F.4th at 713. That said, it is still "a non-dispositive factor" for conspicuousness. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024). The focus is still on website owners. "Because 'online providers have complete control over the design of their websites,' 'the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.'" *Berman*, 30 F.4th at 857 (citing cases).




The *Berman* court's observation is equally apt here: "The text disclosing the existence of the terms and conditions on these websites is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements… The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." 30 F.4th at 856-57.

Just as in *Berman*, here, everything else on the page uses brighter colors, larger fonts, and bolding. "The Shipping Information" is in a bolded purple font above 5 times the size of the light grey "Term of Service" hyperlink. The Address and First and Last Name form fields are likewise orders of magnitude larger than the terms, as is the big, purple Continue button. Even the "Text me when my prescription is approved & shipped!" clickwrap is in a more distinctive black, bold font that is twice the size of the linked terms. Worse still, the tiny grey terms are placed far below the Continue button, separated by the text clickwrap—making them an afterthought.

The test is not whether the terms are visible; the test is whether they are *conspicuous*. Merriam-Webster defines conspicuous as "attracting attention; striking." https://www.merriam-webster.com/dictionary/conspicuous. In other words, "a webpage must take steps 'to capture the user's attention.'" *Berman*, 30 F.4th at 857. If everything else on the page uses brighter colors, larger fonts, and more distinctive bolding, then it cannot be said that lightest and smallest grey terms do anything to "capture the user's attention." *Id.* After all, "[w]ebsite users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be *prominently displayed*." *Id.* (emphasis added).

As the Ninth Circuit recently noted, there is no "checklist for website designers," or "per se design rules." *Godun*, 135 F.4th at 710. Instead, "[a] hefty dose of common sense goes a long way." *Id.* There are several ways to be conspicuous. Flamingos and Lamborghinis often use bright contrasting colors. Dinosaurs and Hummers rely on their large size. LeanRx used none of these.

In most of the cases LeanRx cites, the courts relied on one of these two characteristics (large size or contrasting color) to find the terms to be reasonably conspicuous. In *Oberstein v. Live Nation Ent., Inc.*, the court said that "*crucially*, the 'Terms of Use' hyperlink is conspicuously distinguished from the surrounding text in **bright blue font**, making its presence readily apparent." 60 F.4th 505, 516 (9th Cir. 2023) (emphasis added). Again, in *Patrick v. Running Warehouse, LLC*, "the hyperlinked phrase 'terms of use' is **colored bright green**—contrast[ing] against the surrounding … and adjacent black text." 93 F.4th 468, 477 (9th Cir. 2024) (emphasis added). In *Dahdah v. Rocket Mortg., LLC*, the court noted that the website "did not hide the critical hyperlink using the same font color as the other text," but rather "highlighted its Terms of Use with a hyperlinked '**bright blue font**' that contrasted sharply." 166 F.4th 556, 578 (6th Cir. 2026) (emphasis added). The same was true in *Domer v. Menard, Inc.*,"[t]he hyperlinks to the Terms of Order are offset … in a **bright, green color**, which …contrasts with the black text." 116 F.4th 686, 697 (7th Cir. 2024) (emphasis added). Again, in *Selden v. Airbnb, Inc.*, "**red text** in the warning indicated [hyperlinks to] the legal policies, which were set off from the surrounding black text." 4 F.4th 148, 157 (D.C. Cir. 2021) (emphasis added). As it was in *Meyer v. Uber Techs., Inc.*, where the court held terms were conspicuous because they were in "**blue**" color that "contrasts" with the surrounding "dark print." 868 F.3d 66, 78 (2d Cir.

2017) (emphasis added). In *Edmundson v. Klarna*, the hyperlinked "payment terms" were in a **dark black font** that contrasted from the light grey text in the rest of the sentence. 85 F.4th 695, 711 (2d Cir. 2023). And in *Keebaugh v. Warner Bros. Ent. Inc.*, the website set apart its terms using "distinct interactable boxes" which were twice as large as the rest of the text. 100 F.4th 1005, 1011 (9th Cir. 2024).

Additionally, in all these cases, the notices were placed either immediately above or below, or otherwise in very close proximity to the relevant button intended to manifest assent. *See generally*, *supra*.

LeanRx's small and light grey terms, however, share the same traits as those where the Ninth Circuit has held that terms were not conspicuous. Like *Berman*, the terms are "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements." 30 F.4th at 856. And the terms were "simply underscore[d]" which was not enough "to ensure that it is sufficiently 'set apart' from the surrounding text." *Id*. at 857; *see id.* at 859, App'x A (below).




The same was true in *Godun*, where the court reviewed several screens where "the advisal text is the same [grey] color as other text on the page," was "not… located directly above or below

the action button and is displayed in relatively small text." 135 F.4th at 712. The text's mere underlining alone was not enough to save it in light of these defects. *See id.* at 704-05.







Like the notices in *Godun*, here, the notice is also not "located directly above or below the action button." *Id*. at 712. Instead, it is separated from the Continue button with a separate a "text" click box which, like *Godun*, "creates an impression of visual discontinuity" or "being 'tucked' away' or not important to the transaction." *Id*. at 713. As such, LeanRx's terms are not reasonably conspicuous.

## III. CONCLUSION

For these reasons, the Court should deny LeanRx's motion to Compel Arbitration.

Dated: May 29, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Stefan Bogdanovich*

Stefan Bogdanovich (State Bar No. 324525)
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com
sbogdanovich@bursor.com

*Attorneys for Plaintiff and the Putative Class*