CHRISTOPHER W. SMITH (SBN 256494)
christopher.smith@saul.com
JAMES A. MORSCH (Admitted *Pro Hac Vice*)
jim.morsch@saul.com
JASON W. MCELROY (Admitted *Pro Hac Vice*)
jason.mcelroy@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Defendant
LEAN RX, INC.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| ANNA BUCHHOLZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 5:26-cv-00846-EJD<br><br>**REPLY IN SUPPORT OF DEFENDANT LEAN RX, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Judge: Hon. Edward J. Davila<br>Date: July 9, 2026<br>Time: 9:00 a.m.<br>Crtrm.: 4<br><br>Complaint Filed: January 26, 2026 |

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## TABLE OF CONTENTS

**Page**

I. Plaintiff Fails to Submit Admissible Evidence in Opposition .......... 1

II. SkinnyRx Provided Reasonably Conspicuous Notice of its Terms .......... 3

III. Plaintiff Assented to the Terms By Continuing Through the Registration Process and Making Purchases Through SkinnyRx .......... 9

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022)........................................7, 9, 11

*Bonkowski v. Walmart Inc.*,
2:25-CV-01462-DSF-PVC, 2025 WL 4688082 (C.D. Cal. June 17, 2025) ..........10

*Chabolla v. ClassPass Inc.*
129 F.4th 1147, 1156-57 (9th Cir. 2025) ........................................1, 9

*Dhruva v. CuriosityStream, Inc.*,
131 F.4th 146 (4th Cir. 2025)........................................*passim*

*Dilanyan v. Hugo Boss Fashions, Inc.*,
2025 WL 3549869 (C.D. Cal. Dec. 3, 2025) ........................................12

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025)........................................4, 9, 11

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2022)........................................2

*Harris v. iHeartMedia, Inc.*,
2026 WL 194576 (N.D. Cal. Jan. 6, 2026) ........................................12, 13

*Herzog v. Superior Court*,
101 Cal. App. 5th 1280 (Cal. App. 2024) ........................................13

*Hoston v. J. R. Watkins Co.*,
300 F.2d 869 (9th Cir. 1962)........................................3

*Johnson v. Hum. Power of N. Co.*,
767 F. Supp. 3d 845 (N.D. Ill. 2025) ........................................12

*Judge v. Academia, Inc.*,
2026 WL 1256876 (N.D. Cal. May 7, 2026) ........................................12

*Keebaugh v. Warner Bros. Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024)........................................6, 7, 9

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022)........................................2

*Krayzman v. iStockPhoto LP*,
2024 WL 4658107 (N.D. Cal. Oct. 3, 2024)........................................13

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*M.S., et al. v. Aylo Freesites, Ltd.*,
2026 WL 1493316 (E.D. Cal. May 28, 2026) ........ 6

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 7

*Penning v. Nvidia Corp.*,
2026 WL 1433313 (N.D. Cal. May 21, 2026) ........ 3, 4, 12

*Ramirez v. Trusper, Inc.*
2024 WL 4479862 (N.D. Cal. Oct. 11, 2024) ........ 13

*Sarhadi v. Pear Health Labs, Inc.*,
2025 WL 4644296 (N.D. Cal. July 11, 2025) ........ 4

*Sarhadi v. Pear Health Labs, Inc.*,
2025 WL 1350033 (N.D. Cal. April 18, 2025) ........ 9

*Singh v. Adobe Inc.*,
797 F. Supp. 3d 1038 (N.D. Cal. 2025) ........ 9

*Whelan v. AMR Corp.*,
2005 WL 8160049 (E.D.N.Y. Nov. 23, 2005) ........ 3

*Woytko v. Fabfitfun, LLC*,
2026 WL 1291912 (W.D. Wash. May 11, 2026) ........ 10, 11

**Statutes**

9 U.S.C. § 4 ........ 2

**Other Authorities**

Fed. R. Civ. P. 56 ........ 2

Fed. R. Evid. 801 ........ 3

Fed. R. Evid. 802 ........ 3

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Defendant LeanRx, Inc. ("Lean Rx" or "SkinnyRx") submits this Reply Brief in Support of its Motion to Compel Arbitration (Dkt. No. 51). Plaintiff Anna Buchholz argues that she never agreed to arbitrate, because she was unaware of SkinnyRx's terms of use, and did not manifest assent to those terms in any manner. But Plaintiff contradicts herself on notice by specifically citing SkinnyRx's terms in her Complaint, and she cannot now claim to know nothing of them when she was aware enough of them to utilize them in her allegations. Similarly, she cannot claim to be unaware of the manner in which she manifested her assent to SkinnyRx, as it was explicitly stated at the top of those terms she incorporated into her Complaint, and she manifested her assent to them by continuing through the registration process and purchasing medications through SkinnyRx's website—not once, but twice—prior to filing this lawsuit.

Instead of addressing the plain facts and argument set forth in SkinnyRx's Motion to Compel, Plaintiff misstates the law, claiming the Ninth Circuit has created strict parameters for notice and consent on website terms which SkinnyRx cannot meet: "[b]ut there is no bright-line test for finding that a particular design element is adequate in every circumstance. We must instead consider how those design elements appear on the page." *Chabolla v. ClassPass Inc.*¸129 F.4th 1147, 1156-57 (9th Cir. 2025). And Plaintiff also misdirects the Court, referencing consent forms that SkinnyRx has not relied upon, and claiming they make no reference to arbitration. But SkinnyRx has been clear about the notice of its terms that it is relying on, and the method in which Plaintiff assented to those terms.

SkinnyRx provided reasonably conspicuous notice of its terms, which Plaintiff concedes by her incorporation of them into her Complaint, and she assented to those terms by continuing to register for an account and making multiple purchases through SkinnyRx.com. As a result, she agreed to arbitrate any dispute with SkinnyRx, including this one.

## I. <u>Plaintiff Fails to Submit Admissible Evidence in Opposition</u>

Plaintiff notably failed to submit a declaration of her own setting forth any facts relevant to SkinnyRx's Motion to Compel Arbitration. Instead, she submits a declaration from her counsel of record purporting to provide the Court information related to one screen on SkinnyRx's sign-up

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

process, as it appeared on May 29, 2026. Decl. of S. Bogdanovich (Dkt. No. 55-1).[1] As a result, she fails to support her arguments with ***admissible*** evidence. Courts apply a summary judgment standard to the determination of whether or not the parties agreed to arbitrate. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2022). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Rule 56(c)(4) further requires that declarations "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

---

[1] The Declaration also raises questions similar to those in *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022). In *Knapke*, the plaintiff's attorney signed into the website at issue and created issues about scope of representation and agency with respect to whether the attorney had agreed to the terms of service on behalf of the client. *Id.* at 832-33. If the Court determines there is not enough evidence at this juncture to make a decision on the evidence submitted, SkinnyRx requests limited discovery into the facts at issue, including but not limited to the scope of counsel's potential agency on behalf of his client here. *Id.* at 833 ("the record does not establish when Reilly became Knapke's agent, whether as her attorney or otherwise. As discussed below, this issue might be material to determining whether Knapke is bound by Reilly's agreement to the Terms of Service. We thus remand for discovery on this issue."). In the unlikely event the Court determines there exists genuine issue of material fact as to the formation of an arbitration agreement, the appropriate next step would be to permit limited discovery and a limited evidentiary hearing on the issue of contract formation. *See* 9 U.S.C. § 4; *Knapke*, 38 F.4th at 831 ("if a court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved.") (citations and quotations omitted).

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Plaintiff's submission of a declaration from her counsel of record, Mr. Bogdanovich, regarding SkinnyRx's webpage and policies is inadmissible because these are topics on which he is incompetent to testify. *See Hoston v. J. R. Watkins Co.*, 300 F.2d 869, 870 (9th Cir. 1962) ("It was made by Watkins' counsel, who obviously did not have personal knowledge of most of the things that he referred to, and whose testimony would not have been admissible in evidence at the trial."); *Whelan v. AMR Corp.*, No. CV-04-1385 (CPS), 2005 WL 8160049, at *5 (E.D.N.Y. Nov. 23, 2005) ("Affidavits of counsel, which constitute almost the entirety of plaintiff's response to the defendants' summary judgment motions, where counsel has no personal knowledge of the events or conditions that gave rise to the claim, are not admissible as evidence and therefore cannot be used to meet plaintiff's burden."). Counsel's declaration is also inadmissible hearsay, to which no exception applies. *See* Fed. R. Evid. 801, 802. Moreover, even to the extent Mr. Bogdanovich's declaration were not inadmissible hearsay, and even if he were competent to testify, the declaration does not set forth any information relevant to Plaintiff's sign-up process with SkinnyRx, as the Declaration claims all screenshots were taken on May 29, 2026. Decl. of S. Bogdanovich at ¶ 3 (Dkt. 55-1). Ms. Buchholz alleges in her Complaint that her purchases were completed many months prior, in September and October 2025. Compl. ¶ 11.

And Plaintiff conspicuously does not provide any evidence stating that she did not see SkinnyRx's terms of use—nor does she submit any evidence on the matter of arbitration at all. This despite SkinnyRx's citations to Plaintiff's incorporation of its terms of use in her Complaint. *See* Compl. ¶ 16 n.1; Dkt. No. 51 at 1, 3, 7. Because Plaintiff has submitted no admissible or relevant evidence as to any fact relevant to SkinnyRx's Motion to Compel Arbitration, she has not raised a genuine issue of material fact as to the formation of an agreement to arbitrate. *Penning v. Nvidia Corp.*, No. 25-CV-09160, 2026 WL 1433313, at *7 (N.D. Cal. May 21, 2026) ("Plaintiff's failure to provide competent evidence directly rebutting NVIDIA's evidence concerning the date of his visits to the Website therefore 'fails to create a genuine issue' as to whether the 2025 Cookie Banners were presented to Plaintiff when he visited the Website.").

## II. <u>SkinnyRx Provided Reasonably Conspicuous Notice of its Terms</u>

Plaintiff does not challenge the substantive terms of service, nor does she contest that those

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

terms contain an arbitration agreement. Indeed, Plaintiff does not even make an assertion that she did not, in fact, see the terms—nor could she, as SkinnyRx's terms were ***so conspicuous*** that Plaintiff incorporates them into her Complaint. Compl. ¶ 16 n.1, 2 and 3. These references are sufficient to consider Plaintiff having actual notice of the terms of use. *Nvidia*, 2026 WL 1433313, at *7 (finding complaint allegations related to a cookie banner on a website sufficient to demonstrate actual notice of terms). But even if it weren't sufficient for actual notice, the incorporation of those terms into the Complaint is sufficient to demonstrate that Plaintiff had reasonably conspicuous notice of the terms. Plaintiff cannot specifically reference the terms in her Complaint and turn around and disclaim them when SkinnyRx seeks to enforce those terms.

In any event, Plaintiff misconstrues the applicable standard, and relies on inapposite cases with highly distinct fact patterns. SkinnyRx presented its terms of service to Plaintiff at the first occasion on which any personal information was required, placed them spatially near the button she was required to press to continue, and explicitly directed customers to "See" those terms. Decl. of G. Lin at ¶¶ 5-11 (Dkt. 51-1). Combined with the uncluttered nature of that screen, its ability to be seen on a single page, its high contrast between the background and the text, and the context of the purchase, Plaintiff had reasonable notice of the existence of those terms; her incorporation of those terms into her Complaint underscores this.

Each motion to compel arbitration must rise or fall on its own facts. *See Sarhadi v. Pear Health Labs, Inc.,* No. 24-CV-07921, 2025 WL 4644296, at *4 (N.D. Cal. July 11, 2025) (noting that arbitration inquiries are fact and context specific). While Plaintiff manipulates factually distinct scenarios to manufacture notice parameters that do not exist (Opp'n at 2-3, 16), "there is no bright-line test for finding that a particular design element is adequate in every circumstance. We must instead consider how those design elements appear on the page." *Chabolla*¸129 F.4th at, 1156-57 (9th Cir. 2025). *See also Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025) (rejecting the argument that the Court's rulings have created "a checklist for website designers" or "per se design rules").

Two recent cases applying California law demonstrate the fallacy of Plaintiff's arguments. In *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146 (4th Cir. 2025), the Fourth Circuit addressed the

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Plaintiff's concerns head-on, and rejected each of them with respect to that website. In *Dhruva*, the terms of use were in orange against a black background, were close to the button that had to be pressed (although the credit card disclosure and information appeared in between it and the button), and "[n]othing about the website design or layout obscure[d] the conspicuous location of the Terms of Use hyperlink." *Id.* at 152. The Fourth Circuit shot down arguments quite similar to the ones Plaintiff makes here, that a reader of this would not know he or she was signing up for a contract or would be subject to additional terms, noting that the context of the transaction would have put a reasonably prudent internet user on notice that conditions attached to the purchase. *Id.* There, the Court conveniently included a screen shot of the webpage at issue:




*Id.* at 150.

SkinnyRx's "shipping information" page provides an even less cluttered page with a starker contrast than the one in *Dhruva*—white background to grey text, with very little other than the

contact information and the disclaimer about text messages, privacy policy, and terms of service. Decl. of G. Lin (Dkt. 51-1) at ¶ 9. Just like in *Dhruva,* Ms. Buchholz "did not need to 'scroll[ ] down' or 'go exploring' to find out there were terms of use in the first place." *Dhruva*, 131 F.4th at 153. *See also* Compl. ¶ 16 n.1 (citing to SkinnyRx's terms of service). And the appearance of those terms at this juncture of the process, where the customer is required to affirmatively input contact information for their purchase, would have placed a reasonably prudent internet user on notice that those terms were associated with the services Plaintiff was seeking. *Dhruva*, 131 F.4th at 152. Despite Plaintiff's contention that SkinnyRx's website is more like a single-time purchase (Opp'n at 18), she not only should have expected an ongoing relationship related to medical prescriptions, she in fact had one: she ordered medications multiple times from SkinnyRx! Compl. ¶ 11. *See also M.S., et al. v. Aylo Freesites, Ltd.*, No. 2:25-cv-1139, 2026 WL 1493316, at *4 (E.D. Cal. May 28, 2026) ("The entire process in question is designed to create an ongoing relationship through the user's registration for an account.").

In *Keebaugh v. Warner Bros. Entertainment Inc.,* 100 F.4th 1005 (9th Cir. 2024), the Ninth Circuit also helpfully included screen shots of the webpages providing notice of the terms of use:







SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Id*. at 1010-11. The screens there were significantly more cluttered than SkinnyRx's screen, utilizing flashy and eye-catching pictures, dark backgrounds with little contrast, and smaller font size. Yet the Ninth Circuit found the context of the transaction was sufficient, and that combined with that context, the placement of the terms of service on that screen full of dragons and the iron throne of Westeros provided reasonable notice to users of the terms of service. *Id*. at 1020-22.

Plaintiff relies heavily on *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171 (9th Cir. 2014), and *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022). But the website in *Nguyen* was not similar to the SkinnyRx page. Indeed, the specific holding of *Nguyen* is inapplicable here: "we therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—***without more***—is insufficient to give rise to constructive notice." *Id*. at 1178-79 (emphasis added). SkinnyRx's webpage has more. The website at issue in *Nguyen* had nothing more than a hyperlink to the terms of use—and while it was on each webpage, some of which were in proximity to buttons the user had to press and some not—there was no indication anywhere for the consumer to review those terms. *Id*. at 1174. And the Ninth Circuit did not address the context of the transaction at all in *Nguyen*. *Compare Id*. at 1177-79 *with Keebaugh,* 100 F.4th at 1013-20.

In *Berman*, the webpage utilized a significantly more cluttered design, with multiple colors, little contrast, and "tiny gray font . . . so small that it is barely legible to the naked eye." 30 F.4th at 856-57. The Ninth Circuit included a screenshot, and a simple comparison puts the lie to Plaintiff's reliance on *Berman*:

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100






SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Berman*, 30 F.4th at 859-60; Decl. of G. Lin at ¶ 9 (Dkt. No. 51-1). The text on SkinnyRx's page is clearly visible and legible, and contrasts highly with the surrounding all-white background. The page at issue in *Berman,* on the other hand, uses darker colors with little contrast, and the majority of the text on the page is impossible to read without magnification.

Plaintiff cleverly employs color and font size differentials in her opposition, but clever wordplay and brief design do not substitute for analysis of the notice at issue. SkinnyRx's notice is more conspicuous than, and more similar to, those in *Dhruva* and *Keebaugh*. The "shipping information" page is uncluttered, had an obvious hyperlink to the terms of use, and the terms themselves included obvious and clear language at the top of the terms document stating the actions needed for assent and divulging the existence of the arbitration agreement. *See Singh v. Adobe Inc.,* 797 F. Supp. 3d 1038 (N.D. Cal. 2025) (rejecting Plaintiff's reliance on *Berman*, *Chabolla*, and *Godun* as factually distinct)*; Sarhadi v. Pear Health Labs, Inc.,* No. 24-cv-2921, 2025 WL 1350033, at *5-7 (N.D. Cal. April 18, 2025) (rejecting reliance on same cases, and finding reasonably conspicuous notice based on multiple factors). Plaintiff had reasonably conspicuous notice of SkinnyRx's terms of service. The motion to compel arbitration should be granted.

**III. <u>Plaintiff Assented to the Terms By Continuing Through the Registration Process and Making Purchases Through SkinnyRx</u>**

Had Plaintiff actually reviewed the terms of service, she would have seen at the very top of those terms the means by which SkinnyRx required her to assent to them: by clicking on the buttons to create her account and making a purchase through the SkinnyRx website (*i.e.*, using the SkinnyRx services). Decl. of G. Lin at ¶ 22, Exs. A & B (Dkt. No. 51-1). When she did that, Plaintiff explicitly assented to those terms. SkinnyRx expressly told Plaintiff that, "by checking a box or clicking 'I accept,' 'I agree,' or similar language when the option is presented to you, you . . . agree to be legally bound by and comply with these Terms." That language does not leave room for Plaintiff's argument that somehow her assent to arbitration cannot be reasonably inferred from her act of proceeding with a purchase on the website. (Opp'n at 16.)

This provision on SkinnyRx's website is remarkably similar to the situation the Fourth Circuit was presented in *Dhruva,* where the manner of assent was located at the top of the terms of

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

use. *Dhruva,* 131 F.4th at 154. There, the Fourth Circuit rejected the very same argument Plaintiff makes here that the "shipping information" page did not provide notice about how Plaintiff could manifest assent: "it was not the payment page (where the 'you agree you've read' language was located) that provided notice about how one could manifest assent. It was the terms of use page . . . ." *Id.* The Fourth Circuit found that this not only provided sufficient notice of the manner of assent, but the terms of use set forth multiple ways in which the user could manifest assent, only one of which the Court needed to find assent. *Id.* at 150, 153 ("A person who read the terms of use would have seen—in all caps and in the second full paragraph on the first page—language identifying actions that would 'signif[y] that you agree to these terms of use' and that should be avoided 'if you do not agree.'").

SkinnyRx's sign-up process was similar: on the first page in which the consumer was required to input any information, a clear reference to "See" the terms was included on an uncluttered page with high contrast. Decl. of G. Lin at ¶¶ 6-11 (Dkt. No. 51-1). When a user clicked through, that user would see the very actions required to manifest assent. *Id.* at ¶ 22. And just like in *Dhruva*, because Plaintiff was on notice of the terms of use, she "cannot claim ignorance about what actions those terms said would manifest assent." *Dhruva*, 131 F.4th at 154.

And it is not just the Fourth Circuit that has found similar terms to be effective: the Central District of California did in *Bonkowski*, and the Western District of Washington did just last month in *WOYTKO*. *See Bonkowski v. Walmart Inc.*, No. 2:25-CV-01462-DSF-PVC, 2025 WL 4688082, at *3 (C.D. Cal. June 17, 2025) ("The Court finds that the Walmart checkout process provided reasonably conspicuous notice of the Terms because (1) the hyperlink was positioned directly above (or below) the Place Order button so that a reasonable customer would not complete an order without seeing it; (2) the phrase "Terms of Use" was underlined so as to make clear to the average internet user that the Terms were hyperlinked; and (3) the Terms included language in capitalized font at the top of the document alerting customers of the mandatory arbitration agreement, including the class waiver."); and *Woytko v. Fabfitfun, LLC*, No. C25-2616JLR, 2026 WL 1291912, at *5 (W.D. Wash. May 11, 2026) ("Here, there is no dispute that Ms. Woytko clicked a button after being presented with hyperlinks to the Terms of Use and Sale and the Membership Terms."). In *Woytko*, the Court

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

specifically addressed the visible language of the terms of service after clicking through, and found that language regarding how assent was shown, combined with the actual clicking of the specific button at issue, manifested assent. *See Woytko*, 2026 WL 1291912, at *2 and *5.

Plaintiff's reliance on *Berman* fails here too, because there was no evidence of any notice to the user in *Berman* that any action would be an agreement to those terms. *Berman*, 30 F.4th at 858. Instead, the website there relied only on a statement that read, "I understand and agree to the terms and conditions," and "did not indicate to the user what action would constitute assent to those terms and conditions." *Berman*, 30 F.4th at 858. The terms here are more similar to those found to reasonably notify the user of the method of assent in *Dhruva*, where that information was found in the hyperlinked document. *Dhruva*, 131 F.4th at 154. Here, SkinnyRx affirmatively informs users of the actions that would manifest assent. Decl. of G. Lin at ¶ 22, Exs. A & B (Dkt. No. 51-1).

Instead of addressing this straightforward fact head-on, Plaintiff reinterprets recent Ninth Circuit cases in an attempt to manufacture new law. Plaintiff claims that "the relevant assent prompt needs to be on a 'screen[] or message[] Plaintiffs [actually] saw' and 'temporally coupled with the relevant transaction.'" Opp'n at 1, 2, 16 (citing *Godun v. JustAnswer LLC*, 135 F.4th 699, 714 n.7 (9th Cir. 2025)). But the Ninth Circuit made no such ruling. Instead, footnote 7 "[actually]"[2] notes only the simple fact that the Court ruled the plaintiff there was not on notice of the contractual terms through any page. *Godun,* 135 F.4th at 714 n.7. The Court's true ruling found that the primary reference to the terms there was "outside the main frame of the screen" and within a black border that "creates the visual impression of being 'tucked away' or not important to the transaction." *Id.* at 713. While the page in *Godun* was "generally uncluttered, the placement of the advisal on the black border create[d] an impression of visual discontinuity." *Id.* Not only does Plaintiff misstate

---

[2] Plaintiff's insertion of the adverb "actually" into this quote materially alters the import of the quote as well. The full text of the quote is: "None of the screens or messages Plaintiff saw after signing up put them on inquiry notice of contractual terms, either. As the district court noted, these messages were not temporally coupled with the relevant transaction (signing up for the trial), and none was obviously contractual." *Godun*, 1353 F.4th at 714 n.7.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Godun*'s holding, but the visual discontinuity the Ninth Circuit relied on there is not present here.

And Plaintiff's arguments about use of the website and telehealth consent forms are a red herring. Opp'n at 1, 12-13, 16. Initially, Plaintiff's statement of the law, that the Ninth Circuit has found use-only provisions on websites to be de facto unenforceable, is simply wrong. *Dhruva,* 131 F.4th at 154 ("This argument fails. For one thing, some courts have held that affirmative use *can* manifest assent.") (citing *Nguyen*, 763 F.3d at 1177 ("[W]here the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing [use-only] agreement."). *See also Nvidia,* 2026 WL 1433313, at *7 (finding cookie banner's use requirement enforceable). But more to the point, SkinnyRx's arguments are that Plaintiff manifested assent by clicking continue on the "shipping information" page and continuing to create an account, and then used SkinnyRx's services by creating an account and making multiple purchases through the SkinnyRx website. Plaintiff cannot, and does not, contest that SkinnyRx's primary service is the sale of weight loss medications, or that Plaintiff made multiple purchases of those weight loss medications through SkinnyRx. Compl. ¶ 11, 16. Plaintiff similarly makes irrelevant arguments about telehealth consent documents, which SkinnyRx has not argued serve as the basis for its motion to compel arbitration. *Compare* Opp'n at 11-12 with Motion to Compel at 12-13.

Finally, Plaintiff relies on a series of factually distinct cases with little application here. Two of these cases, *Dilanyan v. Hugo Boss Fashions, Inc.*, 2025 WL 3549869 (C.D. Cal. Dec. 3, 2025), and *Johnson v. Hum. Power of N. Co.*, 767 F. Supp. 3d 845 (N.D. Ill. 2025), dealt with advertisements that the plaintiff clicked on which purportedly bound them to the terms. Plaintiff here signed up for an account and an ongoing relationship to purchase prescription weight-loss medications, and did not click an ad for access to sales-priced goods. In *Judge v. Academia, Inc.*, No. 25-cv-5857, 2026 WL 1256876 (N.D. Cal. May 7, 2026), the terms of service were not hyperlinked, there was no evidence that the "click" was temporally linked to presentation of the terms, and the assent was limited to "use [of] your information." *Id.* at *3-4. And in *Harris v. iHeartMedia, Inc.*, No. 25-cv-6038, 2026 WL 194576 (N.D. Cal. Jan. 6, 2026), the Court found that the assent was connected to a "Sign Up" button that the consumer did not click—the consumer

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

instead signed up through Google, an option that was set apart on the page from the other information and that did not include the same advisory language. *Id*. at *3-4.

Plaintiff's citations to *Krayzman v. iStockPhoto LP*, No. 24-CV-03086, 2024 WL 4658107 (N.D. Cal. Oct. 3, 2024), and *Herzog v. Superior Court*, 101 Cal. App. 5th 1280 (Cal. App. 2024) serve her no better. In *Krayzman*, the arbitration agreement was located in a licensing agreement, not the terms of use, and the consumer had only agreed to the terms of use. *Krayzman*, 2024 WL 4658107, at *1. And *Herzog* found the language at issue ambiguous because it could apply either to sharing of personal information shared with the website or to the terms of use. *Herzog*, 101 Cal. App. 5th at 113-14. Similarly inapposite, Plaintiff's reliance on *Ramirez v. Trusper, Inc.*¸ No. 5:24-cv-2012, 2024 WL 4479862 (N.D. Cal. Oct. 11, 2024), fails to support her arguments because the page there required consumers to navigate their way through multiple links located on different screens in order to find the relevant terms and conditions. *Ramirez* included a statement that the consumer agreed to a telehealth consent form with a link that created a pop-up window to that telehealth consent form; on the bottom of that pop-up form there was another link to the terms and conditions, all of which a consumer needed to click before seeing the terms at issue. *Ramirez*, 2024 WL 4479862, at *5. In contrast to this multi-step process, SkinnyRx provided a link directly to its terms, and at the top of those terms included the express requirements for manifesting assent and a warning that the terms included an arbitration provision, with a direct citation to the paragraph in which the arbitration provision could be found. Decl. of G. Lin at Ex. A. Plaintiff performed those actions, and thereby manifested her assent to the terms.

## CONCLUSION

SkinnyRx's webpage provided reasonable notice of both the terms and the manner of assent. Plaintiff does not contest that she visited the SkinnyRx website and made purchases through it. Indeed, her nearly 60-page complaint goes into great detail about SkinnyRx's website, going so far as to incorporate by reference the very terms of service whereby she consented to arbitration of her claims. A valid and enforceable arbitration agreement was formed between her and SkinnyRx. The Court should grant the motion to compel.

DATED: June 12, 2026

SAUL EWING LLP

By: ______________________
CHRISTOPHER SMITH
JAMES A. MORSCH
JASON W. MCELROY
Attorneys for Defendant
LEAN RX, INC.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100