CHRISTOPHER W. SMITH (SBN 256494)
christopher.smith@saul.com
JAMES A. MORSCH (Admitted *Pro Hac Vice*)
jim.morsch@saul.com
JASON W. MCELROY (Admitted *Pro Hac Vice*)
jason.mcelroy@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Defendant LEAN RX, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| ANNA BUCHHOLZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 5:26-cv-00846-EJD<br><br>**REPLY TO DEFENDANT LEAN RX, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>*[Filed concurrently with Declaration of Christopher W. Smith.]*<br><br>Judge: Hon. Edward J. Davila<br>Date: July 9, 2026<br>Time: 9:00 a.m.<br>Crtrm.: 4<br><br>Complaint Filed: January 26, 2026 |

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# TABLE OF CONTENTS

Page

I. INTRODUCTION. ....... 1

II. PLAINTIFF LACKS ARTICLE III STANDING—ALL CLAIMS. ....... 1

III. PLAINTIFF'S CIPA CLAIMS FAIL—CLAIMS 2 AND 3. ....... 3

A. Plaintiff Fails to Allege the Interception of the "Contents" of Communications. ....... 3

B. Plaintiff Fails to Allege LeanRx Acted with the Requisite Intent. ....... 3

C. Commonplace E-Commerce Technologies are Not "Pen Registers." ....... 4

IV. PLAINTIFF'S ECPA CLAIM SHOULD BE DISMISSED—CLAIM 1. ....... 7

A. Plaintiff Fails to Allege the Interception of the "Contents" of Communications. ....... 7

B. Plaintiff's Aiding and Abetting Theory of ECPA Liability Fails. ....... 8

C. The Crime-Tort Exception to Party Consent Does Not Apply. ....... 8

V. PLAINTIFF CANNOT STATE A CLAIM UNDER CDAFA—CLAIM 4. ....... 10

A. Plaintiff Fails to Allege "Damage or Loss" Under CDAFA. ....... 10

B. Plaintiff Fails to Allege that LeanRx Accessed Her Computer "Without Permission." ....... 12

VI. PLAINTIFF FAILS TO ALLEGE AN INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION—CLAIM 5. ....... 13

VII. CONCLUSION. ....... 15

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AtPac, Inc. v. Aptitude Sols., Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) .......... 10, 12, 13

*Blaker v. NetScout Systems, Inc.*,
No. 25STCV31283 (Cal Sup. Ct. May 27, 2026) .......... 5, 6

*Blalock v. EquipmentShare.com Inc.*,
2026 WL 330067 (Cal.Super.) .......... 7

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 9

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 11

*Comm'r v. Bosch's Est.*,
387 U.S. 456 (1967) .......... 4

*Doe I v. Google, LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 9

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. 2024) .......... 12

*Esparza v. Kohl's Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 15

*Esparza v. UAG Escondido AI Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 3

*Facebook v. Power Ventures, Inc.*,
2010 WL 3291750 (N.D. Cal. 2010) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F. 3d 589 (9th Cir. 2020) .......... 2, 12, 13, 14

*Facebook, Inc. v. Power Ventures, Inc.*,
84 F. 3d 1058 (9th Cir. 2016) .......... 13

*Flannery v. Prentice*,
26 Cal. 4th 572, 28 P.3d 860 (2001) .......... 4

*In re Google Cookie Placement*,
806 F.3d 125 (3rd Cir. 2015) .......... 9

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2024) ........ 9

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 15

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 11

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-cv-08002 (C.D. Cal. Sept. 25, 2023), Dkt. No. 4 ........ 11

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 10

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ........ 15

*In re Jorge M.*,
23 Cal. 4th 866 (2000) ........ 4

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 10

*Maghoney v. Dotdash Meredith, Inc.*
*2026 WL 497402* ........ 14

*Magliocca v. United Healthcare Services, Inc.*,
2026 WL 878694 (E.D. Cal. March 20, 2026) ........ 1, 2

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 15

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ........ 7

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 10

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 9

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 1

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 3

*Rodriguez v. Ink Am. Int'l Grp, LLC*
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) ........ 6

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (Ct. App. 1975) ........ 8

*Schallert v. Orkin LLC*,
2025 WL 4332757 (Cal. Super.) ........ 6, 7

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) ........ 10

*Sussman v. Am. Broad Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 9

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 15

*Variety Media, LLC v. Super. Ct. Cnty. of L.A.*,
(Cal. App. 2d Supp. Jan 8, 2026) ........ 5

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ........ 14

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ........ 9

*In re Zynga Priv. Litig.*,
750 F. 3d 1098 (9th Cir. 2014) ........ 3, 7

**Statutes**

18 U.S.C.A. § 2511 ........ 8

Cal. Pen. Code § 638.51 ........ 4, 6, 7

Cal. Pen. Code § 638.52 ........ 6

California Computer Data Access and Fraud Act ........ 1, 10, 11, 12, 13

CIPA Section 631 ........ 3, 4, 5, 7, 8

CIPA Section 638.52 ........ 6

Computer Fraud and Abuse Act ........ 10

Electronic Communications Privacy Act ........ 1, 7, 8, 9

HIPAA ........ 8, 9

**Other Authorities**

86 Cal. Op. Att'y Gen. 198 (2003) ........ 7

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*2015 Cal. A.B. 929 Comm. Report*, 2015-2016 .......... 7

California Constitution .......... 1, 13

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## I. **INTRODUCTION.**

Plaintiff's Opposition does not cure the fundamental defects in her Complaint. Plaintiff still fails to allege any concrete privacy injury, any interception of the contents of a communication, or any facts showing that LeanRx acted with the required intent to state viable claims. Instead, Plaintiff uses her Opposition to advocate for expansive interpretations of California and Federal law that courts have repeatedly rejected. At bottom, Plaintiff's theory of liability would transform routine e-commerce technologies into *per se* statutory violations—untethered from injury, intent, or legislative purpose, and even when these technologies are amply disclosed to website visitors. Neither the California Invasion of Privacy Act ("CIPA"), the Electronic Communications Privacy Act ("ECPA"), the California Computer Data Access and Fraud Act ("CDAFA"), nor the California Constitution supports such a result. Because Plaintiff has not—***and cannot***—plausibly state any claim for relief, the Complaint should be dismissed with prejudice.

## II. **PLAINTIFF LACKS ARTICLE III STANDING—ALL CLAIMS.**

Plaintiff's Opposition (and her Complaint) fails to identify or articulate a concrete injury-in-fact sufficient to sustain her claims. Instead, Plaintiff argues it is sufficient that she alleges that "trackers unlawfully intercepted her [personally identifiable information ("PII")] and [public health information ("PHI")] and that she in fact received targeted weight-loss and hormone treatment advertisements after ordering Semaglutide." Oppo, p. 5:14-16 (citing Complaint, ¶ 11). Plaintiff's alleged injury-in-fact does not remotely resemble the "'cradle-to-the-grave profile' of sensitive, personally revealing information gathered across the internet and over a significant period of time" that is required in "internet tracking cases" to articulate an injury-in-fact sufficient to demonstrate Article III standing. *Magliocca v. United Healthcare Services, Inc.*, 2026 WL 878694, at *4 (E.D. Cal. March 20, 2026) (referencing *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025)).

"Intangible harms – such as a harm to one's privacy – may constitute injuries in fact, but they must 'bear a close relationship to traditionally recognized harms.'" *Magliocca*, 2026 WL 878694, at *3 (quoting *Wooten v. BioLife Plasma Services L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Cal. 2025)). Here, Plaintiff's Complaint alleges her injury-in-fact from LeanRx's conduct to be the "unlawful interception of private and personally identifiable information, including information regarding her medical condition, history, or treatment" (Complaint, ¶ 13) and the "disclos[ure of] her [PHI to] Google and Meta." Oppo, p. 10:27-28 (citing Complaint, ¶ 142). Similar allegations about LeanRx's collection of PII and PHI are interwoven throughout Plaintiff's Complaint, with the gravamen of each of Plaintiff's claims being the same—LeanRx's "interception" of her PII and PHI constitutes an invasion of her privacy.

Ignoring the dispositive fact that Plaintiff sought out, visited, and voluntarily input her PII and PHI on the Website, the actual, concrete harms allegedly suffered by Plaintiff do not approach the types of privacy harms district courts have found support Article III standing. In *Riganian v. LiveRamp Holdings, Inc.*, for example, the court found a concrete privacy injury where the plaintiff alleged "the tracking of individuals' activity across thousands of websites, combined with extensive offline records gathered over decades, to generate uniquely identifying profiles." 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025). This example resemble the type of concrete privacy harm that district courts require to find Article III standing.

By contrast, the only specific concrete privacy harm Plaintiff alleges in her Complaint is that her PII and PHI was voluntarily inputted by her on the Website so that "prescription medications Plaintiff ordered through the Website—namely, prescriptions for Semaglutide and Semaglutide Tablets" resulted in her "receiv[ing] advertisements relating to weight loss medications and hormone treatments." Complaint, ¶ 11. Plaintiff's specifically alleged concrete harm bears no resemblance to the type of "cradle-to-the-grave profile" that has been found to support standing. *See, e.g., In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 599 (9th Cir. 2020).

Rather, Plaintiff's alleged concrete privacy harm resembles "a store clerk's observing shoppers," which courts find to be insufficient to establish Article III standing. *See, e.g., Magliocca*, 2026 WL 878694, at *3. Had Plaintiff visited her local pharmacy, browsed the store isles for weight loss medication, purchased that medication, and subsequently received related advertisements about that medication, there would be no concrete privacy injury to Plaintiff

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

sufficient to provide her Article III standing to sue the pharmacy. Here, however, because that same fact pattern happened on the Website, Plaintiff argues there should be standing. The Court should not embrace such an expansive interpretation of Article III standing in order to sustain Plaintiff's Complaint. The Court should dismiss Plaintiff's Complaint for lack of standing.

## III. PLAINTIFF'S CIPA CLAIMS FAIL—CLAIMS 2 AND 3.

### A. Plaintiff Fails to Allege the Interception of the "Contents" of Communications.

Plaintiff's failure to show an actionable privacy injury to support her CIPA claims is illustrative of her broader failure to demonstrate that the "contents" of any of her communications were illegally intercepted. The voluntarily provided data Plaintiff alleges that Google and Meta collected is PII and PHI related to Plaintiff's search for obesity medication. Such information does not convey the "substance, purport, or meaning" of a communication, particularly where, as here, Plaintiff does not allege what pages of the Website she visited, or what information she purportedly provided to LeanRx during her visit. *In re Zynga Priv. Litig.*, 750 F. 3d 1098, 1105-06 (9th Cir. 2014); *see also* Motion, p. 18:1-26.

### B. Plaintiff Fails to Allege LeanRx Acted with the Requisite Intent.

Plaintiff also cannot escape her failure to allege facts showing that LeanRx had the specific intent to aid third parties in the purported interception of Plaintiff's communications. Under the common law definition of "aiding and abetting," "a person may be held liable as an aider or abettor if they: (a) know[] the other's conduct constitute[s] a breach of duty and give[] substantial assistance or encouragement to the other to act or (b) give[] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of a duty to the third person." *Esparza v. UAG Escondido AI Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (analyzing Section 631(a) secondary liability clause). Where, as here, Plaintiff has not plausibly alleged that LeanRx "knew that [the third parties'] conduct constitute a breach of some duty," she cannot state a Section 631(a) aiding and abetting claim. *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024) (dismissing Section 631(a) claim for lack of intent); *Esparza*, 2024 WL 559241, at *6 (similar).

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Under Plaintiff's interpretation, ***any act*** that furthers an alleged wiretap (or even agreement with such an act) would violate CIPA, regardless of the defendant's knowledge of or intent to assist the purported wiretap. That is not the law. Really what Plaintiff argues is that there should be no intent requirement, but this would effectively impose strict liability, which is contrary to California criminal law. *See In re Jorge M.*, 23 Cal. 4th 866, 872 (2000) ("[T]he requirement…[of] some form of guilty intent, knowledge, or criminal negligence is…so fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it.") Moreover, because Section 631(a)'s direct liability prong requires "willful[]" conduct, the Court should not endorse a lesser form of *mens rea* for third-party liability (i.e., knowledge alone) than is required for direct liability under the same statute. *See Flannery v. Prentice*, 26 Cal. 4th 572, 578, 28 P.3d 860 (2001) (courts must look to "the entire substance of the statute" and "avoid any construction that would produce absurd consequence") (citation omitted)).

Here, all Plaintiff alleges that LeanRx chose to use Google and Meta technologies (*see* Complaint, ¶¶ 160-184); that is insufficient to establish that LeanRx acted with the requisite intent to aid or abet a violation of Section 631(a) by those companies. Plaintiff's Section 631(a) claim should therefore be dismissed.

**C. Commonplace E-Commerce Technologies are Not "Pen Registers."**

Plaintiff also urges this Court to ignore Section 638.51's structure and legislative history, as well as California's broader privacy legislation context, and adopt a reading of the statute that would result in absurd consequences. Oppo, pp. 14:9-15:12. This Court should instead follow the numerous California state courts analyzing California law (Motion, pp. 20:27-22:22), which have held that Section 638.51 was never intended to criminalize commonplace e-commerce technologies. When applying state law where State's highest court has not addressed the question, federal courts should give "proper regard" to the relevant ruling of other courts of the State." *Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967) ().

In fact, California's Second Appellate District recently entered an order to show cause as to "why the relief sought in a writ petition seeking to overturn the same overly expansive

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

interpretation of Section 638.51 that Plaintiff advances here "should not be granted." Order to Show Cause, *Variety Media, LLC v. Super. Ct. Cnty. of L.A.*, No. 25STCV01865 (Cal. App. 2d Supp. Jan 8, 2026).[1] Most recently, California's Superior Court, Los Angeles County, entered an order granting demurrer where the court considered whether CIPA "sections 638.50 and 638.51 do not expressly limit their definitions to telephone lines." Order Re: Defendants' Motion Demurrer to Complaint, *Blaker v. NetScout Systems, Inc.*, No. 25STCV31283 (Cal Sup. Ct. May 27, 2026).[2] In resolving whether CIPA's "broad definitions encompass the software as alleged", the Court reasoned:

> "The use of "telephone line" in the Code section explicitly narrows the scope of the definition of "pen register" or "trap and trace device" in the context of the statute. Reading it as a whole, the full statutory scheme appears to demonstrate that the Legislature only intended these provisions to apply to telephonic communications and not to internet websites. If the [c]ourt were to align itself with [p]laintiff's interpretation, the differing sections of the same statutory scheme would be in conflict. Lastly, the internet was in widespread use when these provisions were enacted in 2015. If the Legislature had intended for section 638.51 to apply to commercial websites, it would have so stated either in the statute itself or in the surrounding materials. (*Wilcox v. Birtwhistle,* 21 Cal. 4th 973, 983 (1999)) ['Something more than legislative silence, however, is necessary to justify an interpretation consistent with the statutory scheme and legislative history.'].) Furthermore, as stated above, a trap and trace device is one that captures an "originating number" "dialing" and "routing," all of which concern telephone use

---

[1] A copy of Variety Media, LLC's writ petition and the California Second Appellate District's Order are attached as Exhibits A and B, respectively to the Declaration of Christopher W. Smith In Support of Defendant Lean Rx, Inc.'s Reply to Motion to Dismiss Buchholz Complaint.

[2] A copy of the Court's Order is attached as Exhibit C to the Declaration of Christopher W. Smith In Support of Defendant Lean Rx, Inc.'s Reply to Motion to Dismiss Buchholz Complaint.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

only. It is only the later-itemized, and more general, items in the statutory list—'addressing or signaling information'—that *might* refer to website tracking. (*See California Farm Bureau Fed'n v. California Wildlife Conservation Bd.,* 143 Cal. App. 4th 173, 189 (2006)) ['Ejusdem generis (literally, 'of the same kind') means that where general words follow specific words, or specific words follow general words in a statutory enumeration, the general words are construed to embrace only things similar in nature to those enumerated by the specific words.'].) The later-itemized items must be read in light of the statute's more specific words, which plainly direct the statute to things similar to an 'originating number' or 'dialing' information—i.e., incoming telephone calls. Thus, applying the ordinary rules of statutory construction and considering both the structural context of Penal Code section 638.51 and the legislative history, the [c]ourt concludes that this statute applies to telephonic communications and not to software on a commercial website."

*Id.*, pp. 6-7.

As other California courts have concluded, "CIPA's structure and history indicate that its pen register provisions were aimed at telephonic-style surveillance, not the routine operation of commercial websites or analytical software." *Rodriguez v. Ink Am. Int'l Grp, LLC, No. 25STCV15350,* 2025 WL 4034985, at *3 (Cal. Super. Dec. 10, 2025). For example, under CIPA section 638.52, for a peace officer to use a pen register they must obtain an order from a magistrate that "shall specify" the identity of the person "whose name is listed [on] the ***telephone line***" and the "physical location of the ***telephone line***" to which the pen register or trap and trace device is to be attached. Cal. Pen. Code § 638.52(d)(1)-(3) (emphasis added). Reading Section 638.52 alongside Section 638.51, "it appears overwhelmingly likely that the Legislature had in mind devices attached to a telephone line when it referred to [pen registers and] 'trap and trace' devices[.]" *Schallert v. Orkin LLC*, 2025 WL 4332757, at *4 (Cal. Super.).

Section 638.51's legislative history likewise supports a narrower interpretation. The Committee Report notes that a "pen register" is a tool that "allows law enforcement officers to

record all outgoing numbers from a particular telephone line."[3] *See also* 86 Cal. Op. Att'y Gen. 198 (2003) ("A 'pen register' records the numbers dialed out from a particular telephone line"). The "legislative history reveals to purpose of the bill," which for Section 638.51 was "to prevent the use of pen registers and trap and trace devices ***on telephones***." *Blalock v. EquipmentShare.com Inc.*, 2026 WL 330067, at *1-2 (Cal.Super.) (emphasis added). As one court recently concluded, "[s]urely, if the Legislature intended its definition of a [pen register or] 'trap and trace' device to broadly regulate tracking software by websites, there would be at least some discussion of that issue in the legislative history. There is none." *Schallert*, 2025 WL 4332757, at *5.

Instead of adopting Plaintiff's expansive interpretation, this Court should interpret Section 638.51 consistent with the Legislature's intent and in harmony with California State courts so that this Court does not criminalize commonplace e-commerce technologies. On this additional basis, the Court should dismiss Plaintiff's CIPA claim.

## IV. <u>PLAINTIFF'S ECPA CLAIM SHOULD BE DISMISSED—CLAIM 1</u>.

Plaintiff's Opposition also cannot salvage her ECPA claim because (i) Plaintiff fails to allege that any "content" of communications were intercepted, (ii) Plaintiff's aiding and abetting theory of liability is not permitted under the ECPA, and (iii) Plaintiff has not pled facts showing ECPA's crime-tort exception is applicable.

### A. Plaintiff Fails to Allege the Interception of the "Contents" of Communications.

To state a claim under the ECPA, Plaintiff "must plausibly allege that [Defendant] divulged the 'content' of a communication." *In re Zynga*, 750 F. 3d at 1109. As described above,[4] Plaintiff's allegations do not show that the substantive message of any communication Plaintiff allegedly had with the Website was transmitted to a third party. Complaint, ¶¶ 29-36. Courts hold that basic website browsing activity is record, not content, information. *See, e.g., In re Zynga*, 750

---

[3] California Senate Comm. on Pub. Safety, *2015 Cal. A.B. 929 Comm. Report*, 2015-2016 Reg. Sess. at 10 (June 15, 2015).

[4] *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("analysis for a CIPA [§ 631(a) claim] is the same as that under the [ECPA].").



SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

F. 3d at 1109 (dismissing an ECPA claim for failure to plausibly allege that defendants divulged the "contents" of a communication). Despite this, Plaintiff falls back on allegations in the Complaint about what Google and Meta supposedly do in various hypothetical scenarios. Complaint, ¶¶ 37-68. These activities of a "hypothetical" visitor do not establish "what information" Plaintiff allegedly provided to LeanRx, via Plaintiff's browsing activity, which then LeanRx allegedly "disclosed" to a third party. *Cousin*, 681 F. Supp. 3d at 1123-24 (S.D. Cal. 2023).

**B. Plaintiff's Aiding and Abetting Theory of ECPA Liability Fails.**

Plaintiff argues LeanRx is liable under ECPA because it "aided, employed, agreed with, and/or conspired with" Google and Meta "to intercept communications sent and received by Plaintiff…". Oppo, p. 11:17-19 (quoting Complaint, ¶ 3). To start, Plaintiff's suggestion that LeanRx, rather than third parties, purportedly intercepted Plaintiff's communications dooms both her ECPA and CIPA Section 631(a) claims, as LeanRx is unquestionably a party to and intended recipient of Plaintiff's communications with the Website. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (Ct. App. 1975) (a party to a communication can record it under CIPA Section 631); 18 U.S.C.A. § 2511(2)(d) (party exception under ECPA). Likewise, in order for LeanRx's alleged "disclosure" or "use" to violate ECPA, the information disclosed must have been first "obtained through [an] interception" in violation of ECPA. 18 U.S.C.A. § 2511(1)(c)-(d). Again, as the intended recipient of Plaintiff's alleged communications, any information Plaintiff sent to LeanRx that LeanRx allegedly subsequently disclosed cannot be "intercepted" in violation of ECPA.

**C. The Crime-Tort Exception to Party Consent Does Not Apply.**

In her Opposition, Plaintiff argues that the crime-tort exception applies to defeat ECPA's one-party consent provision. Oppo, pp. 2:3-3:13. Plaintiff's argument relies on allegations that LeanRx's conduct violated HIPAA's Privacy Rule and California's CIMA. *Id.* (citing Complaint, ¶¶ 104-114, 142). Neither HIPAA nor CIMA apply here to support Plaintiff's argument because Plaintiff fails to sufficiently allege any facts in its Complaint indicating that LeanRx's conduct violated either statute.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

To invoke the crime-tort exception, Plaintiff must show that LeanRx: (i) ***intended*** to commit and (ii) ***independent*** crime or tort (iii) ***at the time*** of the alleged interception. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022) (emphasis added). Plaintiff has not (and cannot) establish that LeanRx intercepted her purported communications with the intent to commit an independent crime or tort.

Plaintiff premises her crime-tort exception theory on the argument that LeanRx's use of Google and Meta technologies violated HIPAA and CIMA. *See* Oppo, pp. 2:3-3:13. However, Plaintiff has not (and cannot) show that LeanRx's purpose for using Google and Meta technologies was to violate HIPAA and/or CIMA. "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the ***purpose*** for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original). A plaintiff must allege that either the "***primary motivation*** or a ***determining factor*** in [the defendant's] actions [was] to injure plaintiffs tortiously." *Brown v. Google LLC,* 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (citation omitted) (emphasis added). At most, Plaintiff alleges that LeanRx used Google and Meta technologies with the intent to generate revenue through advertising, but as courts in California have held, "the crime-tort exception to the [ECPA] is inapplicable where the defendant's primary motivation was to make money, not injure plaintiffs tortiously." *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) (citation omitted); *see also In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2024) ("[T]he tort or crime exception cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'"); *Doe I v. Google, LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (similar).

Finally, Plaintiff cannot show that LeanRx "intercepted the communication for purposes of a tortious or criminal act that is ***independent*** of the intentional act of recording." *In re Google Cookie Placement*, 806 F.3d 125, 145 (3rd Cir. 2015) (citation omitted) (emphasis added). Stated different, the "criminal or tortious purpose must be separate and independent from the act of the recording [i.e., the act of interception]." *Planned Parenthood*, 51 F.4th at 1136, Here, the alleged

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

interception and purported crime are the same—the alleged recording of Plaintiff's browsing activity in order to sell her LeanRx's products. Thus, the crime-tort exception is not applicable. *See Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (crime-tort exception is not triggered when "the tortious conduct is the alleged wiretapping itself" (citation omitted)); *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057-58 (N.D. Cal. 2025) (similar).

## V. <u>PLAINTIFF CANNOT STATE A CLAIM UNDER CDAFA—CLAIM 4</u>.

### A. Plaintiff Fails to Allege "Damage or Loss" Under CDAFA.

Plaintiff's Opposition confirms Plaintiff's failure to identify her necessary "damage or loss" to establish Plaintiff's statutory standing under CDAFA. That CDAFA does not require a specific minimum dollar threshold, as Plaintiff argues, does not obviate the clear statutory requirement to plead "damage or loss." Plaintiff's Complaint fails to include such allegations. *See* Motion, p. 16:21-17:19. Similarly, Plaintiff's argument that LeanRx was "unjustly enriched" and that Google and Meta's technologies caused her device to expend resources do not rescue her CDAFA claim from dismissal.

Plaintiff argues that she suffered alleged "damage or loss" when LeanRx's use of Google and Meta technologies caused her device to expend resources through "depletion of battery and computer resources". Oppo, p. 12:1-6. Her theory is deficient because, as the court in *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1067 (N.D. Cal. 2012) explained, to establish damages in this context, "the consumer must establish that the [d]efendant intended to impair the recipient's service." 844 F. Supp. 2d 1040, 1067 (N.D. Cal. 2012) (analyzing damages under Computer Fraud and Abuse Act ("CFAA")). And damage "does not occur simply by 'any use or consumption of a device's limited resources,' but rather 'damage' must arise from an impairment of performance…[that] exceeds the device's finite capacity so as to result in a slowdown, if not an outright 'shutdown,' of service." *Id.* (citation omitted). Likewise, "loss" was intended to cover "the traditional computer 'hacker' scenario—where the hacker deletes information, infects computers, or crashes networks." *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1183-84 (E.D. Cal. 2010) (analyzing CFAA). That reasoning applies with equal force here. *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014) (describing CDAFA as an anti-

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

hacking statute analogous to CFAA). Plaintiff's Complaint fails to allege how Google and Meta technologies' code impairs her device or that LeanRx implemented it with the intent to do so.

Plaintiff's Opposition entirely ignores LeanRx's cited authority on the issue—*Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023)—which found that CDAFA's damage or loss contemplates some damage to the computer system, network, program, or data itself. Oppo, *passim*. The plaintiff in *Heiting* alleged that the defendants "code that embeds content from [a third-party] website" "intercepts the inquiries that consumers believe are being sent directly to [defendants] and diverts them to [the third party]." *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-08002 (C.D. Cal. Sept. 25, 2023), Dkt. No. 4 (*"Heiting* Compl.") ¶ 9. These allegations are materially similar to Plaintiff's allegations here that LeanRx used code that allowed Google and Meta "to track, record, and intercept Plaintiff's" communications. Complaint, ¶ 105. Further, the alleged types of data collected are nearly identical across the cases. *Compare* Complaint, ¶¶ 1, 63 (alleging collection of "unique device identifiers," "IP addresses," "email addresses"); with *Heiting* Complaint, ¶ 11 (alleging collection of "unique device identifiers," "IP addresses," "links clicked," "page views," "time spent").

Additionally, Plaintiff's theory is premised on LeanRx's purported "unjust profits" (*id.*), not on any "damage or loss" incurred by Plaintiff, as required under CDAFA. The phrase "unjust profits" is not in CDAFA. Moreover, unjust profits and damages are two distinct legal remedies under common law. *See* Motion, p. 25:8-19 (citing *McClung v. AdShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. 2024) and *In re Facebook Consumer Privacy Litig*., 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019)). That a seller allegedly makes large profits by selling a consumer its products does not mean the consumer has been damaged by purchasing those products.

Even if unjust profits were the statutory equivalent to "damage or loss" under CDAFA (***it's not***), Plaintiff still has not alleged facts showing that LeanRx unjustly profited from Plaintiff's browsing information. For example, Plaintiff does not allege that LeanRx sold that information to a third party or did anything other than earn a profit on the products it sold her. Plaintiff's absence of such allegations is in stark contrast to other similarly situated plaintiffs who made specific factual allegations that their browsing histories carried financial value. *See, e.g., Brown v. Google*

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (alleging that Google paid "users $3.00 a day for their browsing history"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589, 600 (9th Cir. 2020) (alleging study that "values users' browsing histories at $52 per year"). Plaintiff's Complaint includes no comparable allegations regarding LeanRx's alleged enrichment.

Plaintiff also has not pled facts indicating how any purported enrichment LeanRx obtained via its use of Google and Meta technologies was "unjust," particularly given that the use of such technologies is contemplated and permitted under the CCPA and expressly disclosed to website users in the website's Terms and Conditions  Like the plaintiff in *Doe v. Tenet Helalthcare Corp.*, who similarly alleged that the defendant used Google and Meta's technologies, Plaintiff here "cannot base [her] CDAFA damages on a theory that [she] lost a benefit to sell that data [herself]." 789 F. Supp. 3d 814, 825-26 (E.D. Cal. 2025); *see also Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. 2024) (rejecting damages based on the value of personal data intercepting using "tracking pixels" under CDAFA). Plaintiff's CDAFA claim should be dismissed with prejudice.

**B. Plaintiff Fails to Allege that LeanRx Accessed Her Computer "Without Permission."**

Plaintiff's CDAFA claim also should be dismissed because the allegations in the Complaint do not show that LeanRx accessed her computer "without permission." In her Opposition, Plaintiff incorrectly equates CDAFA's "without permission" element with the requirement to obtain affirmative opt-in consent (Oppo, p. 12:20-27), which is unsupported by the case law. Rather, as consistent with CDAFA's focus on hacking, to access "without permission" requires that LeanRx "gain[ed] access to [Plaintiff's] computer, computer network, or website ***to which access was restricted through technological means***[.]" *Facebook v. Power Ventures, Inc.*, 2010 WL 3291750, at *6, *11 (N.D. Cal. 2010)) (emphasis added).

Plaintiff does not identify any technological means that LeanRx circumvented or hacked to access her browser. On the contrary, Plaintiff affirmatively visited the Website, causing her browser to request and receive the Website's code. Complaint, ¶ 11. This is precisely the circumstances contemplated by this Court in *AtPac*: "a person cannot access a computer 'without

authorization' if the gatekeeper has given them permission to use it." 730 F. Supp. 2d at 1180. Plaintiff's allegation that LeanRx used this information for advertising purposes does not change the analysis. "[T]he plainest and common-sense understanding of the definition of the term 'exceeds authorized access'"—particularly in light of its use in a criminal statute that should be interpreted narrowly—"is one that simply examines whether the accessor was entitled to access the information for any purpose." *Id.* at 1181 (emphasis added). Plaintiff cannot plausibly argue that LeanRx categorically lacked permission to send code to her browser when she requested the Website's code. And, unlike in *Facebook, Inc. v. Power Ventures, Inc.*, 84 F. 3d 1058, 1067 (9th Cir. 2016), Plaintiff does not allege that "such permission [was] revoked explicitly." *Id.* (plaintiff sent a cease-and-desist letter to defendant to stop accessing).

Plaintiff fails to state the core elements of a CDAFA claim, and her claim should therefore be dismissed with prejudice.

## VI. PLAINTIFF FAILS TO ALLEGE AN INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION—CLAIM 5.

LeanRx detailed in its Motion that Plaintiff's California Constitution invasion of privacy claim should be dismissed because (i) there was no affirmative intrusion, (ii) Plaintiff did not have a reasonable expectation of privacy over her nonsensitive browsing activity, and (iii) LeanRx's use of Google and Meta technologies was not highly offensive. In her Opposition, Plaintiff disputes each of the three points raised in LeanRx's Motion, but her counterarguments are unavailing.

There is no question that Plaintiff visited LeanRx's Website and caused her browser to request the Website's code and to receive Google and Meta's technologies—as is commonplace across the internet. Complaint, ¶ 11. Plaintiff's voluntary interaction with the Website defeats her invasion of privacy claim. And, contrary to Plaintiff's contention that LeanRx surreptitiously utilized Google and Meta technologies without her knowledge (Oppo, p. 12:17-18), LeanRx collects information about visitors' activity on the website consistent with the CCPA and subject to clear disclosures in the website's Terms and Conditions. This is therefore unlike *Factbook Internet Tracking* (Oppo, pp. 13:26-14:3), which involved allegations that the defendant was tracking users browsing activities on third-party websites surreptitiously even after they logged

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

out of the account—conduct not disclosed in the defendant's privacy policy. 956 F.3d at 610.

As described above, Plaintiff does not have a reasonable expectation of privacy over her non-sensitive and non-personally identifying browser activities. Merely visiting a healthcare provider's website does not, by itself, implicate privacy interests. *Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) (dismissing intrusion of privacy claim where plaintiff merely alleged visiting the website, without specifying her usage or any unauthorized disclosure of healthcare information); *Cousin*, 681 F. Supp. 3d at 1123 (similar); *Maghoney v. Dotdash Meredith, Inc. (S.D. Cal., Feb. 23, 2026, No. 24-CV-2394-AJB-BJW) 2026 WL 497402*, at *5 (similar).

Plaintiff's vague allegations about visiting the Website to "order weight loss medications" are a world apart from those at issue in *Facebook Internet Tracking, In re Meta Healthcare Litigation ("Meta Healthcare"),* and *In re Google RTB Consumer Privacy Litigation ("Google RTB")*. In *Facebook Internet Tracking*, the defendant allegedly collected PII about plaintiffs from across the internet to create a "cradle-to-grave profile" that "could include user's employment history and political and religious affiliations." 956 F. 3d at 599. In *Meta Healthcare*, the plaintiffs alleged that Meta technology was used on healthcare provider patient portals such that confidential health communications between patients and their providers were intercepted. 647 F. Supp. 3d 778, 784 (N.D. Cal. 2022). And in *Google RTB*, the plaintiffs alleged that defendant collected and sold PII, including "specific content of account holders' internet communications and highly detailed personal profile information about peoples' interests, race, religion, sexual orientation, and health status"—in contravention of its privacy policy. 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022). There are simply no comparable allegations here.

LeanRx's alleged recording of Plaintiff's "specific prescription drugs Website visitors [including Plaintiff] were purchasing on the Website" does not approach the type of "egregious" or "highly offensive" conduct required to state an invasion of privacy claim and is akin to type of information routinely gathered by a pharmacy to better serve its customers. Plaintiff fails to city any authority finding that the recording of internet users' "healthcare information" (Oppo, p. 14:2) would amount to an egregious breach of social norms.

Finally, Plaintiff's argument that the question of whether the "highly offensive element" cannot be resolved at the pleadings stage (Oppo, p. 13:22-27), is also without merit. To the contrary, courts routinely dismiss invasion of privacy claims at this stage when the alleged conduct is not objectively "highly offensive." *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021) (dismissing a claim for invasion of privacy because the conduct was not "highly offensive"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) (similar); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. 2024) (similar); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024) (similar); *Esparza v. Kohl's Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024) (similar). The Court should do the same here and dismiss Plaintiff's claim for invasion of privacy.

## VII. CONCLUSION.

For the foregoing reasons, LeanRx respectfully requests that the Court grant LeanRx's Motion to Dismiss in its entirety and with prejudice.

DATED: June 12, 2026

SAUL EWING LLP

By: [signature]

CHRISTOPHER SMITH
JAMES A. MORSCH
JASON W. MCELROY
Attorneys for Defendant LEAN RX, INC.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100