LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine Anne Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
Maria Huryn (Bar No. 353520)
*maria.huryn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ANNA BUCHHOLZ, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,

Defendants.

Case No. 5:26-cv-00846-EJD

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**

Hearing: July 23, 2026
Time: 9:00 a.m.
Location: Courtroom 4—5th Floor
Judge: Hon. Edward J. Davila

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Plaintiff Consented To Meta's Receipt Of The Data At Issue .......... 1

B. Plaintiff Does Not Allege That Meta Acted With The Intent Required For Her Wiretap Act And CIPA Claims .......... 4

C. Plaintiff's Statutory Claims Against Meta Fail For Additional Reasons .......... 6

1. Plaintiff Cannot Save Her Wiretap Act Claim .......... 6

2. Plaintiff Cannot Save Her CIPA Section 631 Claim .......... 9

3. Plaintiff Cannot Save Her CIPA Section 632 Claim .......... 11

4. Plaintiff Cannot Save Her CDAFA Claim .......... 12

D. If Applied As Plaintiff Urges, The Statutes She Relies On Do Not Give Fair Notice .......... 14

E. Plaintiff Does Not Allege An Invasion of Privacy Claim Against Meta .......... 15

III. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Pages**

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 4

*Bailey v. United States*,
516 U.S. 137 (1995) .... 11

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .... 6, 13

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .... 14

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .... 14

*Burns v. City of Concord*,
2014 WL 3613250 (N.D. Cal. July 22, 2014) .... 15

*Calhoun v. Google LLC*,
113 F.4th 1141 (9th Cir. 2024) .... 2

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .... 13

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
146 S. Ct. 959 (2026) .... 1, 5

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .... 10, 15

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .... 3

*Doe v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .... 6, 14

*F.B.T. Prods., LLC v. Aftermath Records*,
621 F.3d 958 (9th Cir. 2010) .... 2

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .... 12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ... 11, 13

*Hammerling v. Google LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ... 3

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ... 15

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 8, 11, 12

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ... 7

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ... 8

*In re PG&E Corp. Sec. Litig.*,
806 F. Supp. 3d 962 (N.D. Cal. 2025) ... 6, 10

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) ... 7, 11, 15

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ... 9

*Konop v. Haw. Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ... 8

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ... 3, 5, 9, 10

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ... 5

*Manier v. Triple Lift Inc.*,
2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) ... 5, 13

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ... 7

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) ... 2

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ... 10, 11

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023) ........ 1, 2, 3

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 12, 13

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 3

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ........ 13

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 12

*Tovar v. City of San Jose*,
2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) ........ 6, 7, 14

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ........ 13, 15

*Turner v. Apple Inc.*,
2025 WL 1953697 (N.D. Cal. July 16, 2025) ........ 2

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 5

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 9

*Weston v. Lefiti*,
2024 WL 4579237 (9th Cir. Oct. 25, 2024) ........ 2

**STATUTES**

18 U.S.C. § 2510(4) ........ 7

18 U.S.C. § 2511(1) ........ 8

18 U.S.C. § 2511(1)(b) ........ 8

18 U.S.C. § 2511(1)(d) ........ 7

18 U.S.C. § 2511(2)(d) ........ 7

Cal. Penal Code § 631(a) ........ 9

Cal. Penal Code § 632(a) ........ 11

# I. INTRODUCTION

Plaintiff's opposition confirms that she seeks to impose massive penalties on Meta by stretching the criminal wiretapping, eavesdropping, and anti-hacking statutes she relies on beyond their breaking point. That effort should be rejected for many reasons.

As to consent, Plaintiff does not dispute that she agreed to Meta's policies, including Meta's disclosure that it could receive information about "[p]urchases and transactions you make" on other websites. Plaintiff insists this disclosure must not apply to *her* purchase information, but she provides no basis to read an unstated carve-out into that contractual language. Her consent to Meta's disclosures dooms each of her claims.

Plaintiff also fails to plausibly allege the intent required for her Wiretap Act and CIPA claims. Her opposition erroneously focuses on Meta's supposed intent to *receive data*, rather than intent to engage in the conduct actually prohibited by each statute. And even then, it incorrectly equates mere awareness with intentional wrongful conduct—contrary to California law, Ninth Circuit precedent, and the Supreme Court's recent guidance in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026).

Finally, Plaintiff distorts key statutory language and precedent to try to sidestep numerous other defects in her claims. But Plaintiff cannot avoid the fundamental flaw that requires dismissal of this lawsuit: the criminal statutes she invokes simply do not cover Meta's *receipt* of data as a result of an independent third party's choices. If the statutes stretched that far, they would fail to provide fair notice of their reach. The complaint should be dismissed with prejudice.

# II. ARGUMENT[1]

## A. Plaintiff Consented To Meta's Receipt Of The Data At Issue

Consent forecloses Plaintiff's claims, and Plaintiff's arguments to the contrary lack merit. Plaintiff contends that Meta bears the burden on consent, asserting that Meta cites "no authority" to the contrary. Opp. 1. But Meta cited numerous decisions holding that lack of consent is an element of Plaintiff's claims, so she bears the burden to establish it. Mot. 7. In *Rojas v. HSBC*

[1] Unless otherwise noted, internal citations are omitted and emphasis is added.

*Card Services Inc.*, 93 Cal. App. 5th 860 (2023), for example, the California Court of Appeal determined that the *plaintiff* "did not meet *her burden*" to "prove lack of consent," a "required element" for her CIPA Section 632 claim. *See id.* at 880 & n.13, 887-89; *see also, e.g.*, *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019) (same); *Turner v. Apple Inc.*, 2025 WL 1953697, at *3 (N.D. Cal. July 16, 2025) (Davila, J.) (CDAFA plaintiff must "prove lack of permission"). Plaintiff's citation to *Calhoun v. Google LLC*, 113 F.4th 1141 (9th Cir. 2024), Opp. 1, does not show otherwise. *Calhoun* merely noted that the parties there had "agree[d]" that consent was an affirmative defense—it did not purport to override precedent holding that lack of consent is an element of Plaintiff's claims. *See* 113 F.4th at 1147. But even if consent were an affirmative defense, Plaintiff does not dispute that dismissal is warranted where consent is "obvious on the face of [the] complaint" and its incorporated materials. *Weston v. Lefiti*, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024).

Plaintiff's allegations establish that she consented to Meta's receipt of the data at issue here—which allegedly revealed her purchase on the SkinnyRx website, *see* Compl. ¶¶ 1-2, 87-97, 102—through Meta's policies, which specifically disclose that Meta receives information about "[p]urchases and transactions" on third-party websites. Plaintiff does not oppose Meta's request for incorporation by reference of Meta's terms and policies. Nor does she dispute that, as a Facebook user, she agreed to Meta's Privacy Policy and Cookies Policy. *See* Opp. 1-2.

Rather, Plaintiff argues only that Meta's disclosure that it could receive purchase information was not detailed enough. *Id.* But under Plaintiff's own argument, Meta's policies establish her consent by providing notice of the "specific practice" she now challenges. *See id.* at 2. The Privacy Policy squarely discloses that Meta receives information through Pixel code, including about "[p]urchases and transactions you make off of our Products." Dkt. 37-8 at 5-6. Plaintiff acknowledges this disclosure would establish consent to Meta's receipt of data reflecting the purchase of a t-shirt, but she contends it should not apply to *her* purchase, because weight-loss medications may relate to health. Opp. 2-4. But the Privacy Policy makes no distinction between purportedly "sensitive" and non-sensitive purchases, and Plaintiff cannot read that limitation in. "A contractual term is not ambiguous just because it is broad," *F.B.T. Prods., LLC v. Aftermath*

*Records*, 621 F.3d 958, 964 (9th Cir. 2010), and a contract's plain language applies even if it may "deviate from [one's] expectations," *Hammerling v. Google LLC*, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024). *See* Mot. 9; *cf. Rojas*, 93 Cal. App. 5th at 888 ("By stating the call 'may be recorded,' the disclosure warns *all* calls may be recorded, regardless of content." (emphasis in original)). Indeed, the Ninth Circuit has already rejected the argument that Meta's disclosures cannot cover "health-related data." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018).[2]

Plaintiff's argument that federal law prohibits *LeanRx* from *disclosing* the data at issue, Opp. 4, does not change the analysis. Even if that were true, it would not preclude *Meta* from securing its users' consent to receive this data. The touchstone for that inquiry is simply whether a "reasonable person viewing [Meta's] disclosures would understand" that Meta could receive the purchase data. *Smith*, 745 F. App'x at 8-9. The answer to that question is yes.

The Privacy Policy's explicit purchase disclosure also distinguishes this case from *L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) (Davila, J.). In *L.B.*, this Court noted that transmission of a "combination of … details" related to health might fall outside a disclosure that explained only that LinkedIn might receive unspecified "data from third-party websites." *Id.* at *5-7. So *L.B.* did not analyze any terms comparable to Meta's specific purchase disclosure. Nor did any of the cases Plaintiff cites that involve Meta's policies. *See* Opp. 2. Indeed, only one of those cases, *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302 (N.D. Cal. July 22, 2025), involved alleged transmission of purchase data (among other information), and there, the court's decision turned on the third-party website's express promises *not* to share certain data. *See id.* at *3, *9. That holding is inapposite here.

Plaintiff tries to avoid all of this by contending that LeanRx sent information *beyond* purchase data to Meta. Opp. 3. She argues that the complaint's sparse references to undefined

---

[2] In any event, Plaintiff overstates the sensitivity of the purchase data at issue here. It cannot reveal information about prescriptions or interactions with a medical provider, because SkinnyRx visitors place purchase orders (and LeanRx allegedly sends associated data to Meta) *before* a "clinician" assesses their case and decides whether to issue a prescription. Compl. ¶¶ 16, 29, 70-72.

"medical intake" information show that LeanRx sent Meta "the specific answers to medical survey questions that [Plaintiff] entered." *Id.* at 2-4. But the complaint does not include any allegations whatsoever to establish what "medical survey questions" LeanRx posed; what (if any) answers Plaintiff gave; or whether LeanRx sent any data reflecting any of those answers to Meta. The best Plaintiff can muster is a screenshot purportedly representing transmission of the code snippet "%26currentWeight%3D300&frm=0&tiba" to *Google*. *Id.* at 3. This line of code, buried deep in a screenshot without any supporting allegations or emphasis, Compl. Fig. 8, is not a well-pled allegation. But even if it were, it would show at most that LeanRx asked visitors for their weight and sent that data to *Google* if a visitor provided it. It certainly cannot show that LeanRx sent this data—or any other medical survey data—*about Plaintiff* to *Meta*.[3] Plaintiff simply does not allege sufficient facts to support transmission of anything more than purchase information. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (complaint must show "more than the mere possibility of misconduct" and cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement'"). Because Plaintiff consented to Meta's receipt of that data, her claims should be dismissed.

### B. Plaintiff Does Not Allege That Meta Acted With The Intent Required For Her Wiretap Act And CIPA Claims

Plaintiff's Wiretap Act and CIPA claims also fail because Plaintiff does not allege that Meta acted with the requisite intent. Plaintiff's argument to the contrary rests on the fundamental misconception that mere *awareness* that a *third party* might use a publicly available tool to send allegedly sensitive data suffices to establish Meta's intent. Opp. 4-6. But these statutes require more. They require that the defendant act "consciously and deliberately with the goal of" engaging in a specific prohibited act—*i.e.*, "intercept[ing]" a communication through "use" of a "device,"

---

[3] Plaintiff also misrepresents her complaint when she suggests that she alleged that Pixel code was "present on the medical intake questionnaire pages." Opp. 3. The paragraphs she cites to support that assertion do not even mention a health survey, *see* Compl. ¶¶ 87-97, and the complaint actually notes that Pixel code was configured to send data only "*[a]fter* [a visitor] enter[ed] medical information and finish[ed] the intake process," *see id.* ¶¶ 70-72.

"us[ing]" a "device" to "eavesdrop upon or record" a "confidential communication," or reading a communication while it is "in transit." *See United States v. Christensen*, 828 F.3d 763, 791 (9th Cir. 2015); Mot. 10. Plaintiff does not allege any facts showing that Meta engaged in those acts, much less that Meta acted "consciously and deliberately" to do so. *See infra* at 8.

Instead, Plaintiff rests her intent argument entirely on her conclusory allegation that Meta "knew that the data it *received from LeanRx* … contained intimate health data." Compl. ¶ 18; *see* Opp. 4-6. That falls short for two reasons. First, as noted, *receiving* data from a third party is not prohibited by any of the statutes Plaintiff relies on. Mot. 10-12. The distinction between intent to receive data and intent to engage in a statutorily prohibited affirmative act supports a different result than the one this Court reached in *L.B.*, where the parties effectively conceded that intent to *receive* sensitive data sufficed for liability. *See* 2025 WL 2899514, at *11-13.

Second, knowledge does not equate to intent. For instance, as the California Court of Appeal explained in *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711 (2022), a party's *awareness* that a device could record a confidential communication does not establish *intent* to record those communications. *Id.* at 727-28 (interpreting CIPA Section 632). The U.S. Supreme Court recently drew the same distinction in the copyright context, explaining that "*mere knowledge*" that a product might be used improperly "is insufficient to establish … intent" that it be used for that improper purpose. *Cox*, 146 S. Ct. at 968. Plaintiff's attempt to show intent through Meta's purported "knowledge," "willful blindness," or failure to "enforce[]" its policies against transmission of sensitive data, Opp. 5-6, thus misses the mark. *See Cox*, 146 S. Ct. at 969 ("knowledge" of and "insufficient action to prevent" third-party conduct do not establish intent).

At any rate, Plaintiff's argument fails on its own terms, because Plaintiff does not present any plausible reasons why Meta would have known that LeanRx was sending allegedly sensitive data. Plaintiff points out that Meta generally expects to use data for advertising, *see* Opp. 4-5, but Meta also maintains policies prohibiting developers from sending sensitive data and requiring them to secure user consent, *see* Mot. 4-5, 11; Dkt. 37-10. While those policies need not be dispositive on their own, they undercut any notion that Meta expected to receive health data (or any data sent without consent) from LeanRx. *See Manier v. Triple Lift Inc.*, 2026 WL 1295546, at

*3 (C.D. Cal. Apr. 15, 2026) (dismissing CIPA claim where the defendant's "internal policies reflect an intent against deliberately collecting data without consent"); *Briskin v. Shopify Inc.*, 2026 WL 161441, at *4-5 (N.D. Cal. Jan. 21, 2026) (similar). Plaintiff also fixates on the fact that SkinnyRx and LeanRx include "Rx" in their names. Opp. 5. But she herself recognizes that "[h]ealth care organizations" may lawfully use Pixel code. Compl. ¶¶ 107, 112; *cf. Doe v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal. 2024) ("There is nothing inherently unlawful about … offering [] source code to health care providers[.]").

Finally, Plaintiff gestures at allegations from other lawsuits. *See* Opp. 5-6. But Plaintiff cannot "defeat a motion to dismiss by asserting arguments based on facts that were not properly alleged" in her complaint. *In re PG&E Corp. Sec. Litig.*, 806 F. Supp. 3d 962, 993 (N.D. Cal. 2025) (Davila, J.). And her reference to an apparent joke from an unspecified Meta employee related to a completely separate app from well before the relevant time period in this case, Opp. 6, does nothing to show that Meta knew of transmission of allegedly sensitive data from LeanRx, much less that Meta purposefully engaged in the specific criminal acts that Plaintiff's claims require—intercepting, using a device to record, or reading SkinnyRx visitors' communications with LeanRx while those communications were in transit.

### C. Plaintiff's Statutory Claims Against Meta Fail For Additional Reasons

#### 1. Plaintiff Cannot Save Her Wiretap Act Claim

***LeanRx's consent.*** Plaintiff does not dispute that LeanRx consented to send data to Meta. Instead, she invokes the Wiretap Act's crime-tort exception to try to avoid that consent, relying entirely on her assertion that LeanRx acted with the purpose of violating HIPAA.[4] Opp. 7-9.

---

[4] The complaint gestured to various other sources of law to provide the "criminal or tortious" purpose required for the exception, *see* Compl. Count I ¶¶ 142-53, but Plaintiff's opposition defends only a theory based on LeanRx's purported HIPAA violation, *see* Opp. 7-9. By failing to address Meta's challenges to the other crime-tort theories she raised, *see* Mot. 14, Plaintiff has "conceded those arguments" and cannot rely on them to avoid dismissal. *Tovar v. City of San Jose*, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) (Davila, J.).

There is a critical problem with this theory: it addresses only LeanRx's purpose, not Meta's. But Plaintiff rests her Wiretap Act claim against Meta on the premise that *Meta* "intercepted" her communications.[5] *See id.* And the crime-tort exception turns on the alleged *interceptor's* purpose for the interception. *See* 18 U.S.C. § 2511(2)(d) (exception applies to a communication "*intercepted* for the purpose of … "); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("The *recording party* must … have the independent criminal or tortious purpose at the time the recording was made."); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.3 (N.D. Cal. Mar. 18, 2014) (exception depends on "*the interceptor's*" purpose). Therefore, to support a Wiretap Act claim based on interception by Meta, Plaintiff must allege that *Meta* acted with a wrongful purpose.

But Plaintiff's crime-tort argument is focused only on LeanRx's purported purpose to disclose health data in violation of HIPAA. *See* Opp. 7-9. That argument does not apply to Meta, as Plaintiff does not even allege that Meta disclosed any data to any party. As to *Meta's* purpose for its supposed "interception," Plaintiff alleges only that Meta sought to improve its advertising business. *See* Compl. ¶¶ 17-18, 38-50. As this Court recently confirmed, there is nothing criminal or tortious about that conduct. *See J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *3-4 (N.D. Cal. May 27, 2026) (Davila, J.); Mot. 13-14. Plaintiff thus cannot rely on the crime-tort exception to save her Wiretap Act claim.

***No intentional "interception."*** Plaintiff also fails to allege that Meta "intercepted" her communications under the Wiretap Act. The statute defines interception as the "acquisition of the contents of [a] … communication through the use of [a] … device." 18 U.S.C. § 2510(4). But the

---

[5] Plaintiff no longer defends her allegation that Meta violated a separate Wiretap Act provision that depends on interception by LeanRx. Compl. Count I ¶ 141; 18 U.S.C. § 2511(1)(d). As Meta explained, Plaintiff cannot rely on that provision because she does not plausibly allege that Meta had any "reason to know" that LeanRx unlawfully intercepted its own communications with SkinnyRx visitors. *See* Mot. 15-16. By failing to address this argument, Plaintiff has conceded it. *See Tovar*, 2021 WL 6126931, at *2.

complaint is clear that it was *LeanRx*, not Meta, that "use[d]" Pixel code. *See* Mot. 14-15. Plaintiff alleges, for example, that it was LeanRx that "chose" to use the code and "programmed" it to send data of LeanRx's choice to Meta. *See id.*; Compl. ¶¶ 2, 33-34, 44, 83.

Plaintiff does not dispute that. Instead, she asserts that Meta's *receipt* of data equates to intentional "interception" because "receipt" and "acquisition" have similar meanings. Opp. 9. But the Wiretap Act is limited to "acquisition … *through the use of [a] … device*," 18 U.S.C. § 2510(4)—a requirement Plaintiff ignores. And it was LeanRx, not Meta, that "use[d]" Pixel code—the purported device—to send the data at issue here.

The problems with Plaintiff's "interception" theory do not end there. Plaintiff does not address her failure to include any non-conclusory allegations that Meta "acquired" her communications "*during transmission*" from Plaintiff to LeanRx, as required. *See Konop v. Haw. Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); Mot. 15; *infra* at 9. Nor can she avoid her allegations that Meta received "a separate message" from her communications with LeanRx, in the form of "event data," *see* Compl. ¶¶ 43, 51, 83, so Meta never "acquired" her actual communications. *See* Mot. 15. Plaintiff invokes *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), Opp. 9, but that case held only that duplication and transmission of data does not "exempt a defendant from liability *under the party exception*" to the statute, which is not relevant here. 956 F.3d at 608. The court expressly declined to "opine" on the "other requisite elements of the statute[]." *Id.* And it did not consider the separate "event data" at issue here. *See id.* at 607-08.

***No "device."*** The Wiretap Act is expressly limited to interception using a "device or apparatus," 18 U.S.C. § 2511(1); *id.* § 2510(4)-(5), signifying a tangible object. And just like CIPA Section 637.7's reference to a "device attached to a … movable thing," *see In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 192-93 (N.D. Cal. 2019) (Davila, J.) (interpreting "device" to exclude software), the Wiretap Act uses the term "device" in phrases that require something tangible, like "affix[ing]" a device to a wire or "sen[ding]" it "through the mail," 18 U.S.C. § 2511(1)(b)(i), (iii). Plaintiff has no response to these provisions. And Plaintiff cites cases that rely on *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), while ignoring the fact that

*Carrier IQ* did not even consider the question whether computer code constitutes a "device." *See* Opp. 10-11; Mot. 16-17. This too forecloses her Wiretap Act claim.

### 2. Plaintiff Cannot Save Her CIPA Section 631 Claim

***No willful reading or learning "in transit."*** Plaintiff's opposition identifies no allegations showing that Meta *read or learned* her communications *while* they were *in transit*, as Section 631 requires. *See* Mot. 17-18. She goes to great lengths to rehash allegations that Meta conducted some analysis of the data LeanRx sent, Opp. 11-13, but as to *when* that analysis occurred, Plaintiff can point only to her assertions that Meta processes data "contemporaneously," "instantaneously," or "in real time," *id.* at 14. Those allegations merely "restate the pleading requirement of real time interception" and are thus "too conclusory to survive." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). As this Court recognized in dismissing a Section 631 claim for this very reason, a complaint that fails to plead "specific facts" about "when" a defendant tries to understand a communication cannot stand. *See L.B.*, 2025 WL 2899514, at *16.

Recognizing this problem, Plaintiff tries to manufacture a new "in transit" theory in her opposition. Opp. 15-17. She contends that allegations that Meta tried to learn the meaning of a communication at some point "in the middle of an ongoing website visit" suffice to support her claim. *Id.* at 17. That theory is not supported by any authority, and it is incompatible with the statute. Plaintiff hinges her argument on *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022). But *Javier* never even mentioned Section 631's "in transit" requirement—it focused entirely on the unrelated question whether retroactive consent defeats liability. *Id.* at *1.

Section 631's text also defeats Plaintiff's theory. Plaintiff suggests that the statute's "pluralistic" reference to "contents" supports equating the term "communication" with an entire website visit. *See* Opp. 15-16. But Section 631 applies to an attempt to understand the "contents … of any … *communication* while *the same* is in transit." Cal. Penal Code § 631(a). The relevant term—"communication"—is singular, not plural. That confirms that the "in transit" analysis should proceed communication by communication, requiring an attempt to understand each separate communication during its transmission—not simply at some point during an ongoing website visit, after the individual communications that make up that visit have been "placed in

electronic storage." *See L.B.*, 2025 WL 2899514, at *16.

Plaintiff's analogy to phone calls demonstrates her misunderstanding. *See* Opp. 16. She contends that learning the content of a portion of a phone call "at any point" before the end of the call qualifies as learning it "in transit." *Id.* But that cannot be right, because Section 631 contemplates *real-time* comprehension of a communication as it goes from the speaker to the intended recipient. Imagine a teenager on a lengthy call with an airline representative, who texts her mother what the representative is telling her. On Plaintiff's view, because the mother learns the content of a portion of that call before it ends, she has learned it "in transit"—even though the mother was not listening in real time. That conduct is not remotely akin to the wiretapping Section 631 was intended to penalize. And Plaintiff's position is only more problematic in the context of a website visit, where people often leave browsing sessions open for hours or even days.

In any event, Plaintiff does not "explicitly allege this … theory in [her] complaint[]." *L.B.*, 2025 WL 2899514, at *16. Instead, the complaint presents the communications at issue as clicks to buy weight-loss medications. *See, e.g.*, Compl. ¶¶ 72, 102, Count II ¶ 166. Plaintiff cannot use her opposition to try to amend her complaint to recharacterize the relevant "communication" as an entire browsing session. *See L.B.*, 2025 WL 2899514, at *16; *In re PG&E*, 806 F. Supp. 3d at 993.

Plaintiff also makes a last-ditch argument based on Section 631's reference to "attempts" to read in transit. Opp. 14-15. She suggests that simply "intercepting [a] communication" to read it later qualifies as attempting to read it in transit. *Id.* But that interpretation would give the terms "read" and "learn" no meaning, effectively replacing them with "intercept," a verb Section 631 does not use. To preserve Section 631's focus on attempts to understand substantive meaning, a defendant must take some action to try to *understand* a communication while it is in transit—*i.e.*, the defendant must do "something more than just intercept the communication" to be liable. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025); *see id.* at 1117-19.

***Not "the same" communication.*** Plaintiff's allegations that LeanRx sent Meta a "separate message," *see* Compl. ¶¶ 43, 51, 83; *supra* at 8, establish that Meta never read "the same" communication that Plaintiff sent LeanRx. That defeats her Section 631 claim. Plaintiff's citation to *Ribas v. Clark*, 38 Cal. 3d 355 (1985), Opp. 13-14, only proves Meta's point. *Ribas* explained

that CIPA does not reach the "secondhand repetition of the contents of a conversation." 38 Cal. 3d at 360-61. But that is all that Plaintiff alleges. Because transmission of a "separate message" *about* a conversation is nothing more than "secondhand repetition" of that conversation, it cannot support liability. *See id.* Although Plaintiff again tries to avoid this outcome by pointing to *In re Facebook Internet Tracking*, Opp. 14, the holding she relies on is expressly limited to the "party exception," which is not at issue here. *See* 956 F.3d at 608; *supra* at 8.

### 3. Plaintiff Cannot Save Her CIPA Section 632 Claim

***No intentional "use" of a device to record.*** Section 632 applies to a "person who … *uses* [a] … device to eavesdrop upon or record" a "confidential communication." Cal. Penal Code § 632(a). It does not penalize making code generally available for third parties to use; nor does it penalize *receiving* data because of a third party's use of a device. *See* Mot. 18-19. It applies only to a party that itself affirmatively *uses*—that is, "active[ly] employ[s]"—a recording device. *Bailey v. United States*, 516 U.S. 137, 143 (1995) (interpreting "use" in criminal statute).

Plaintiff's allegations make abundantly clear that it is LeanRx, not Meta, that *used* Pixel code. *See* Mot. 15, 18-19; *supra* at 8. Plaintiff argues that Meta should nevertheless be liable because it "encourages" developers to "incorporate" the code. Opp. 20. But that argument rests, at very best, on a derivative liability theory that Plaintiff did not plead and that Section 632 does not permit, as this Court recently recognized. *See Spring Fertility*, 2026 WL 1483490, at *5-6. And it makes good sense why a criminal statute like Section 632 would penalize only the device "user"—the "user" is the only entity that can ensure that its use of the device is lawful. Reading Section 632 beyond its plain terms to punish Meta for the conduct of an independent third-party device "user" like LeanRx would raise serious constitutional concerns.[6] *Infra* at 14-15.

***No "confidential communication."*** Plaintiff's opposition also confirms she cannot show a "confidential" communication under Section 632. To meet this requirement, a plaintiff must have had an "objectively reasonable expectation that the conversation [was] not being … recorded"—

---

[6] *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) (cited at Opp. 20), is inapposite because the court did not consider which entity "used" the relevant device. *Id.* at 1050-51.

not even by "the recipient[] of the communications." *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746-47 (N.D. Cal. 2023). Plaintiff ignores that standard, arguing that the data at issue here is categorically "confidential" because it may reflect her health. Opp. 19. But, as the California Supreme Court has recognized, Section 632's confidentiality inquiry does not turn on the subject matter of a communication. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 775-76 (2002). It depends on expectations about *recording*. And here, SkinnyRx visitors *must* have expected the data at issue—their contact information and the name of the medication that they bought, Compl. ¶¶ 1-2, 87-102—to be recorded, at least by LeanRx, in order to fill their orders. After all, any reasonable person understands that purchase data must be recorded so that they can receive what they bought.

***No "recording."*** Plaintiff's allegations that LeanRx sent Meta a "separate message" from the ones she exchanged with LeanRx, *see* Compl. ¶¶ 43, 51, 83; *supra* at 8, 10-11, defeat her Section 632 claim. The statute applies only to direct "recording" of a communication, and receiving a "separate message" *about* a conversation does not constitute recording. *See* Mot. 19. Plaintiff cannot rely on *In re Facebook Internet Tracking* to avoid this result because that decision focused on a distinct issue under separate statutes. *See* 956 F.3d at 608; *supra* at 8, 11.

***No "device."*** Plaintiff again fails to engage with Meta's argument that computer code does not constitute a "device" under Section 632. *See* Opp. 10-11, 18. She ignores the statute's reference to a communication carried on "by means of a telegraph, telephone, *or other device*," which demonstrates that the legislature intended "device" to mean a physical object like a telephone—not computer code. *See* Mot. 20-21. Nor does Plaintiff respond to Meta's argument distinguishing the cases she cites that mistakenly rely on *Carrier IQ*. *See* Mot. 17, 20-21; *supra* at 8-9.

### 4. Plaintiff Cannot Save Her CDAFA Claim

***No "damage or loss."*** Plaintiff cannot satisfy CDAFA's "damage or loss" requirement. Opp. 21-22. First, Meta's purported profit does not equate to "damage or loss" to Plaintiff—and certainly not damage to her data or device, as CDAFA requires. *See* Mot. 21-22; *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025). The one on-point authority Plaintiff

cites[7] to support this theory—*Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)—errs by equating a plaintiff's purported "stake" in a defendant's profits with "damage or loss" to that plaintiff. *See id.* at *3. Second, Plaintiff points to her allegation that Pixel code somehow "supplant[s]" her choices about how her device resources are used. Opp. 21-22; Compl. Count IV ¶ 165. But this bare assertion does not establish "damage" to her device, because it includes no facts to explain how the code could conceivably harm it.

***No allegations that Meta knew it lacked permission.*** Plaintiff does not dispute that Meta cannot be liable under any of the CDAFA subsections she raises if it acted "under the reasonable but mistaken belief that [it] had permission." *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026); Mot. 22. She simply reiterates her position that she did not consent to the alleged data transmission. Opp. 22. But even if that were true, her allegations do not show that Meta would have *known* that she did not consent. Meta's policies disclose its receipt of data, Dkt. 37-8 at 5-6; the SkinnyRx website includes further disclosures, Dkt. 37-11 at 9, Dkt. 37-12 at 3-4; and Meta requires developers to secure permission before sending data, Dkt. 37-10 at 1-2. Meta thus had at least a "reasonable … belief" that SkinnyRx visitors consented to Meta's receipt of data, defeating Plaintiff's CDAFA claim. *See* Mot. 22-23; *Tsering*, 2026 WL 89320, at *4; *Briskin*, 2026 WL 161441, at *6 (dismissing CDAFA claim where defendant's "policies required [third parties] to obtain consent"); *Manier*, 2026 WL 1295546, at *3-4 (similar).

***No affirmative wrongful act.*** Plaintiff does not meaningfully address her failure to allege that *Meta* (as opposed to LeanRx) ever took any affirmative act prohibited by CDAFA. *See* Mot. 23-24; Opp. 22. If anyone "accessed" Plaintiff's device or data, "used" her "computer services," or "introduced" a contaminant to her device, it was LeanRx, not Meta. *See supra* at 8, 11. Meta cannot be liable for LeanRx's conduct. *See Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863

---

[7] Plaintiff's other authorities, Opp. 21, do not consider a profits-based theory of harm. *Greenley* does not even mention the "damage or loss" requirement. *See* 684 F. Supp. 3d at 1047-49. The others involve allegations of data loss, but Plaintiff does not otherwise defend any such theory, and the "weight of authority" has rejected it. *See, e.g.*, *Shah*, 768 F. Supp. 3d at 1048; Mot. 22.

(N.D. Cal. 2011) (dismissing CDAFA claim based on third-party conduct because CDAFA does not extend to entities that "took no active role" in challenged conduct).

***Pleading deficiencies.*** Plaintiff does not respond to Meta's argument that she failed to state a claim under subsections 502(c)(4), (6), and (8). *See* Opp. 20-22; Mot. 23-24. Any claim based on these provisions thus fails. *See Tovar v. City of San Jose*, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) (Davila, J.).

***No circumvention of a technical barrier.*** Finally, Plaintiff ignores the language of subsections 502(c)(3) and (7), which require a defendant's initial "access" or "use" of a device to be "without permission." As Judge Tigar explained in *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024), that language requires a defendant to overcome a technical barrier to a device. *See id.* at *5; Mot. 23. Plaintiffs' cases, Opp. 22, are not persuasive because they do not engage with the statutory text. And one of them actually concludes that circumventing a technical barrier *is required* for CDAFA liability. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1074-75 & n.7 (N.D. Cal. 2021) (rejecting the argument that "there is no circumvention requirement").

### D. If Applied As Plaintiff Urges, The Statutes She Relies On Do Not Give Fair Notice

Plaintiff's opposition confirms that the only conduct by Meta that she challenges is the fact that Meta "owns and licenses" Pixel code and allegedly benefits from receiving data when third parties use that code. Opp. 23-24. But there is "nothing inherently unlawful about … offering … source code" to developers. *Doe v. Google*, 741 F. Supp. 3d at 841. And Plaintiff does not argue otherwise. In fact, she recognizes that Pixel technology has lawful uses. Compl. ¶¶ 107, 112; *see* Opp. 2, 4. Instead, Plaintiff's claims against Meta turn on the way that *LeanRx* chose to *implement* the code—to allegedly send sensitive data to Meta in spite of Meta's policies prohibiting that transmission.

But if the Wiretap Act, CIPA, and CDAFA penalized Meta's receipt of data as a result of LeanRx's alleged misuse of the code, they would not provide fair notice of their reach. Plaintiff has no response to Meta's argument that a statute that imposes liability based on a third party's choices is unconstitutionally vague. *See* Mot. 25. And Plaintiff misrepresents the state of the law.

She asserts that "the vast majority of courts have applied the statutes in a consistent manner," Opp. 24, but the reality is that "[c]ourts are issuing conflicting rulings" with minimal appellate guidance. *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1112; *see also id.* at 1116 (noting that courts have "been all over the map" on CIPA Section 631); *Spring Fertility*, 2026 WL 1483490, at *6 n.5 (noting "tension" among courts on CIPA Section 632). Given the mismatch between the statutes Plaintiff relies on and the conduct she challenges, constitutional avoidance and lenity principles require dismissal of Plaintiff's statutory claims. *See* Mot. 25.

**E. Plaintiff Does Not Allege An Invasion of Privacy Claim Against Meta**

Finally, Plaintiff states no invasion of privacy claim against Meta. As Meta noted, Plaintiff alleges her invasion of privacy claim (Count V) only against LeanRx. *See* Mot. 6 n.4. Plaintiff does not argue otherwise in her opposition, and the complaint alleges only that "by using [Pixel technology] . . . *Defendant LeanRx* . . . invaded Plaintiff's . . . privacy rights." Compl. Count V ¶ 177; *see also id.* Count V ¶¶ 178-79 (allegations about LeanRx). Count V does not include any corresponding allegations about Meta. So any invasion of privacy claim against Meta must be dismissed for failure to provide fair notice that it was pled against Meta in the first place. *See Burns v. City of Concord*, 2014 WL 3613250, at *2-3 (N.D. Cal. July 22, 2014) (dismissing for failure to "clearly specify" which claims were brought "against which Defendants").

Even if Plaintiff had asserted this claim against Meta, it would fail. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (elements of the claim). Plaintiff's consent invalidates any expectation of privacy in the data at issue. *Supra* at 1-4. And Plaintiff also fails to allege any intentional intrusion *by Meta* (as opposed to LeanRx), *supra* at 4-6, let alone a "highly offensive" one. *Hernandez*, 47 Cal. 4th at 293. It was LeanRx, not Meta, that chose to program Pixel code to transmit allegedly sensitive data; Meta contractually *prohibited* developers like LeanRx from sending such information; and Plaintiff does not plausibly allege that Meta had any reason to know that LeanRx was sending data without consent. *Supra* at 5-6, 8; *see Tsering*, 2026 WL 89320, at *7 (dismissing invasion of privacy claim against Meta).

## III. CONCLUSION

Meta respectfully requests dismissal of the complaint with prejudice.

Dated: June 15, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Melanie M. Blunschi*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine Anne Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
Maria Huryn (Bar No. 353520)
*maria.huryn@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
Ruth Hirsch (*pro hac vice*)
*ruth.hirsch@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*