COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
EMILY ABBEY (341762)
(eabbey@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANNA BUCHHOLZ, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No. 5:26-cv-00846-EJD<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: July 23, 2026<br>Time: 9:00 a.m.<br>Dept: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila<br><br>Trial Date: Not Yet Set<br>Date Action Filed: January 26, 2026 |

**TABLE OF CONTENTS**


**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff's Intent Allegations Are Insufficient ..... 1

B. The Crime-Tort Exception Does Not Save Plaintiff's Federal Wiretap Claim. ..... 4

C. Plaintiff's CIPA Section 631 Claim Fails for Multiple Independent Reasons. ..... 5

D. The Complaint Fails to Allege a "Device" or "Confidentiality" as Necessary for Her Claim Under CIPA Section 632. ..... 11

E. Plaintiff's CDAFA Claim Should Be Dismissed Because She Has Not Alleged Damage or Loss. ..... 14

F. Plaintiff's Invasion of Privacy Claim Fails Because She Alleges No Highly Offensive Conduct. ..... 15

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arguetta v. Walgreens Co.*,
760 F. Supp. 3d 1028 (E.D. Cal. 2024) .......... 9

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (2024) .......... 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Borg-Warner Protective Servs. Corp. v. Super. Ct.*,
75 Cal. App. 4th 1203 (1999) .......... 6

*Briskin v. Shopify*,
No. 21-cv-06269-PJH, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 4

*Cardenas v. McLane Food Servs., Inc.*,
796 F. Supp. 2d 1246 (C.D. Cal. 2011) .......... 11

*In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litig.*,
No. ML 11-2274 DSF, 2012 WL 1931030, . (C.D. Cal. Apr. 17, 2012) .......... 11

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. July 12, 2023) .......... 14

*Dellasala v. Samba TV, Inc.*,
No. 3:25-cv–03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 14

*Doe I v. Google*,
741 F. Supp. 3d 828 (N.D. Cal. 2022) .......... 3, 9, 11

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 8, 10

*Edgerly v. City and County of San Francisco*,
599 F.3d 946 (9th Cir. 2010) .......... 11

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 13

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 15

*Frasco v. Flo Health Inc.*,
2025 WL 1476905 (N.D. Cal. May 22, 2025). (Opp. .) .......... 3, 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 10

*Hammerling v. Google LLC*,
No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 15

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 10

*Lloyd v. Facebook, Inc.*,
No. 21-cv-10075-EMC, 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .......... 15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 15

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-cv-2394-AJB-BJW, 2026 WL 497402 (S.D. Cal.) .......... 2, 13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (2022) .......... 15

*Moss v. ResortPass, Inc.*,
No. 24CU023415C, 2025 WL 3452360 (Cal. Super. Ct. Oct. 30, 2025) .......... 12

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 5, 10

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002) .......... 4

*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 8

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 9

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 9

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 15

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 1, 2, 14

## TABLE OF AUTHORITIES
(continued)


**Page(s)**

*Sussman v. ABC, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 5

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 8, 10

**Statutes**

18 U.S.C. § 2511(d) .......... 4, 5

Cal. Civ. Code
§§ 1798.140(j)(1), (ag), (ai) .......... 6
§ 2304 .......... 6

Cal. Pen. Code
§ 502(e)(1) .......... 15
§ 631 .......... *passim*
§ 631(a) .......... 8, 10
§ 632(c) .......... 12, 13

ECPA .......... 5

Federal Wiretap Act .......... 5

*HIPAA* .......... *passim*

HIPAA, 42 U.S.C. § 1320d *et seq.* .......... 1

PHI .......... *passim*

*R.C.,* 2025 .......... 8

**Other Authorities**

45 C.F.R. § 160.103 .......... 5

How Google Analytics Works, *available at*
https://support.google.com/analytics/answer/12159447?hl=en .......... 2

HTTPS, available at https://https.cio.gov/faq/#what-does-https-do (last accessed
June, 2026) .......... 9

## I. INTRODUCTION

Plaintiff's Opposition confirms that the Court should dismiss all claims against Google. Stripped of its rhetoric, the Opposition does not point to a single allegation in the Complaint showing that Google intended to receive Plaintiff's protected health information, took any affirmative step to acquire it, or used it for any purpose. Instead, Plaintiff relies on allegations and discovery from other cases involving other defendants, other websites, and other technologies. A complaint must stand or fall on its own allegations, and this one does not come close to stating a viable claim against Google. Accordingly, the Court should dismiss Plaintiff's Complaint with prejudice.

## II. ARGUMENT

### A. Plaintiff's Intent Allegations Are Insufficient.

As Google argued in its motion to dismiss, all of Plaintiff's claims require plausible allegations that Google had the requisite intent to receive Plaintiff's health or medical information. Avoiding or ignoring what she actually put in her Complaint, she points to *other* cases. (Plaintiff's Omnibus Opposition to Motions to Dismiss, Dkt. 54 ("Opp.") at 5–6.) But allegations and evidence in other cases cannot save this Complaint.

Plaintiff's argument that Google knew it received health information because LeanRx has the letters "RX" in its name shows just how thin Plaintiff's allegations are. This argument fails for two reasons. *First*, Plaintiff offers nothing to support the inference that "RX" only appears in the website names of companies that sell online prescriptions or medications. The opposite is true. For example, rxglobal.com is the website of a corporate event planning company that has nothing to do with prescriptions. *Second*, even if the letters "RX" suggested that a website sold prescriptions, this still would not establish that the use of Google Analytics ("GA") necessarily results in the transmission of protected health information under HIPAA, 42 U.S.C. § 1320d *et seq.* ("PHI"). As the Ninth Circuit has held, a person's general browsing history on medical websites is "too tenuous[ly]" connected to that person's own health to support characterization of it as PHI. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (mem.) (affirming dismissal of substantially similar claims premised on interception of medical information by Facebook); *see*

*also Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal.) (holding that alleged interception of plaintiff's searches for sensitive health information on medical website failed to support standing, because there was no indication that the searches were tied to his own medical history). As *Smith* and *Maghoney* illustrate, medical websites can use analytics services, including GA, without violating a user's privacy. This is true even where a website has a health-oriented name. *See Maghoney*, 2026 WL 497402, at *5 (finding no privacy injury from transmission of health-related searches to GA on verywellhealth.com).

Importantly, the Complaint acknowledges that it is the developer LeanRx, not Google, that controls implementation of GA and programs their own website code. (*See* Compl. ¶¶ 33–34.)[1] The GA help page that Plaintiff relies on proves the point, and confirms that LeanRx's use of GA says nothing about Google's intent. (*See* Opp. at 5 (citing Compl. ¶ 54).) That page illustrates that developers must incorporate GA on a page-by-page basis, and it contrasts data that *will* be collected (e.g., language, browser type) from data that *could* be collected depending on configuration (e.g., purchases where GA is incorporated into the purchase-confirmation page).[2] In addition, in configuring GA and determining which pages to include the code in, developers are bound by the GA Terms of Service, which forbid developers from passing personally identifiable data to GA. (*See* Dkt. 35-3 at 4 (GA Terms of Service).) Nothing in the Complaint suggests that Google knew LeanRx might have configured GA in contravention of Google's Terms of Service—much less that

---

[1] Notably, even the Department of Health and Human Services ("HHS") acknowledges that analytics tools "could be used in beneficial ways" by healthcare providers. *Use of Online Tracking Techs. by HIPAA Covered Entities and Bus. Assocs.*, HHS (June 20, 2024). Rather than deeming such tools *per se* improper, HHS guidance puts the onus on healthcare providers to configure the tools to avoid passing PHI to others.

[2] How Google Analytics Works, *available at* https://support.google.com/analytics/answer/12159447?hl=en.

Google intended that it do so.[3]

Nor does the fact that Google makes money from advertising generally say anything about its intent to collect PHI in this case specifically. As discussed, even assuming Google used data collected from LeanRx for advertising, nothing in the Complaint plausibly establishes Google knew that it may have obtained *improper* data. Plaintiff relies on *Frasco v. Flo Health, Inc.*, but that case involved emails purportedly showing direct communications concerning advertising to users who were trying to conceive. No. 21-cv-757-JD, 2024 WL 4280933, at *3 (N.D. Cal. Sept. 23, 2024). Plaintiff makes no such allegations here, which in any event would be insufficient to establish an intent to assist an invasion of user privacy. *See id.*

Simply put, Plaintiff's arguments fail to override the judicially noticeable documents that establish Google did not possess the requisite intent. (*See* Google's Request for Judicial Notice ("RJN"), Dkt. 35-1; Exhibits A-C, Dkts. 35-3, 35-4, 35-5.) The GA Terms of Service and Help Pages about "HIPAA and Google Analytics" and "Health in personalized advertising" show that Google intends *not* to receive health information from GA customers and sets policies in place to prevent that. (Google's Motion to Dismiss, Dkt. 35 ("Mot.") at 5–6.) Plaintiff argues that, according to *L.B. v. LinkedIn*, a defendant's own policies do not rebut allegations of intent. (Opp. at 6.) Although in *L.B.* the Court found that *LinkedIn's* advertising policy was not dispositive, it is not the case that policies can never rebut allegations of intent, especially where other allegations are lacking. No. 5:24-cv-07374-EJD, 2025 WL 2899514, at *5 (N.D. Cal. Oct. 10, 2025); *see Doe I*, 741 F. Supp. 3d at 840 (dismissing complaint based in part on insufficient allegations of intent where Google "repeatedly told developers not to send personally identifiable information" and warned healthcare providers specifically "they must not use its source code in ways that would result in HIPAA-covered information being sent to Google."). Plaintiff's opposition identifies no allegations that Google took any steps to help or encourage LeanRx to violate any of these policies, was aware of any such violation, or failed to enforce such policies against LeanRx. *Doe I*, 741 F.

---

[3] Even if Google had been aware, mere awareness of the possibility of interception does not establish affirmative intent. *Doe I v. Google*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2022).

Supp. at 840-841. Thus, it fails to rebut the judicially noticeable policies that make Google's intent implausible.

These policies—requiring comprehensive disclosure *and* ensuring adequate consent—pose specific problems for Plaintiff's claims under CIPA and CDAFA. Both statutes require not only an intentional act, but also an intent to access the relevant data *without consent*. *See Briskin v. Shopify*, No. 21-cv-06269-PJH, 2026 WL 161441, at *4, 6 (N.D. Cal. Jan. 21, 2026) (citing *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438–39 (2002) (holding that the scienter requirement in criminal statutes applies to "the facts that bring the proscribed act within the terms of the statute")). Setting aside whether or not Google obtained any health-related data, the Complaint contains no allegations suggesting Google knew or intended to obtain it without the Plaintiff's consent. *See id.*

Therefore, because Plaintiff fails to plausibly plead that Google acted with the requisite intent, and each of Plaintiff's claims requires intent, each of her claims fails. The Court should dismiss the Complaint with prejudice.

**B. The Crime-Tort Exception Does Not Save Plaintiff's Federal Wiretap Claim.**

Plaintiff does not dispute that LeanRx gave its consent to the alleged interception by installing GA. (Opp. at 7.) Her argument that a purported HIPAA violation pulls that consent within the crime-tort exception is inconsistent with the applicable law. (Opp. at 7.)

While HIPAA violations can sometimes satisfy the crime-tort exception, Plaintiff (and many of the cases she cites) fails to grapple with the requirement that the relevant tortious act must be independent of the alleged interception. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (2024) (finding one-party consent despite allegations of interception of private medical data). Here, the alleged interception and the HIPAA violation are one and the same. Plaintiff's conclusory statement that "[t]he act of disclosure is distinct from the act of interception," Opp. at 8, finds no support in her Complaint, which, as it pertains to Google, speaks to a single act accomplished through a single product: GA. (Compl. ¶¶ 53–58.) The ECPA's text similarly does not distinguish between disclosure and interception. 18 U.S.C. § 2511(d). It plainly considers only the purpose of

the "interception," rendering the supposedly "distinct act" of disclosure irrelevant. *Id.*[4]

Plaintiff's arguments fail for two further reasons: one grounded in her own allegations and the other in HIPAA's text. First, Plaintiff's allegations about HIPAA violations concern LeanRx's conduct, and say nothing about the purpose of *Google's* acts. (Opp. at 7 (citing Compl. ¶¶ 104–114).) Second, the theory of "interception" is inconsistent with HIPAA's definition of PHI, which encompasses information "created or received by a health care provider" that relates to an individual's actual health. *See* 45 C.F.R. § 160.103. But to "intercept" a communication within the meaning of the ECPA, it must have been obtained during transmission, halting transmission to the intended recipient. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014). If Plaintiff is correct that Google "intercepted" her communications—that is, obtained them *before* receipt by the SkinnyRx website—then such communications could not have been "created or received by a healthcare provider" at the time of interception. As alleged, any such communications could not be PHI.

In sum, Plaintiff has not alleged an independent crime or actionable tort outside of the interception itself, and therefore the one-party consent rule is still in place. Therefore, because LeanRx, a party to the communication, consented to the alleged interception, the Federal Wiretap Act claim fails. (*See* Compl. ¶¶ 163–165 (alleging that LeanRx "agreed with" Google to collect website data).)

### C. Plaintiff's CIPA Section 631 Claim Fails for Multiple Independent Reasons.

***Party to the Communication.*** To state a claim under Clause Two of CIPA section 631, Plaintiff must allege that Google was not a party to the communications with LeanRx. To do so,

---

[4] Plaintiffs incorrectly argue that the Ninth Circuit implicitly adopted this distinction between the defendant's interception and another party's disclosure in *Sussman v. ABC, Inc.*, 186 F.3d 1200 (9th Cir. 1999). The relevant portion of the opinion instead stands for the proposition that a defendant cannot point to a conceivable lawful purpose (news gathering) to excuse its unlawful purpose (airing private intimate conduct). *Id.* at 1202. The court rejected focus on whether the *interception* was unlawful rather than whether the *purpose* was. *Id.*

she urges the Court to reject *Graham v. Noom, Inc*., which held that service providers are functional extensions of websites absent allegations of independent data use. 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021). Instead, Plaintiff asks the Court to follow *Javier v. Assurance IQ, LLC*, which held that service providers can be considered eavesdroppers—even if they do nothing more than process data on a website's behalf—if the mere capacity to misuse data exists. 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). While both standards have their flaws, *Noom* is more faithful to California law.

*Noom* is consistent with the principle that ordinary agency principles are incorporated into California statutes. *See Borg-Warner Protective Servs. Corp. v. Super. Ct.,* 75 Cal. App. 4th 1203, 1207–08 (1999). California law entitles agents to act on the principal's behalf on any matter within the scope of delegated authority, notwithstanding the possibility that an agent might have the *capacity* to engage in independent conduct. *See* Cal. Civ. Code § 2304 ("An agent may be authorized to do any acts which his principal might do . . . ."). Plaintiff ignores this authority, along with Google's arguments that the CCPA expressly incorporates agency principles and permits services providers acting within the principal's contractual limits to remain undisclosed because the legislation does not deem them a "third party." *See* Cal. Civ. Code §§ 1798.140(j)(1), (ag), (ai). In short, Plaintiff's reading of CIPA conflicts with controlling case law and statutory authority.

The appropriate framework considers whether (1) the defendant was acting as an agent of the intended recipient of the communication; and (2) the defendant is alleged to have exceeded the scope of its delegated authority with respect to any of the enumerated bases of liability in section 631.[5] Here, Plaintiff cannot plausibly deny that Google acted as a service provider for LeanRx.

---

[5] Courts that have adopted the "capacity" test criticize *Noom* to the extent it requires allegations of actual, independent use of data, which they determine renders the prohibition on data use in Clause Three of section 631 superfluous. Not only is this criticism unfounded—Clause Three requires not just use, but use of data *wrongfully acquired*—it also fails to account for the agency principles incorporated in CIPA. Properly construed, a service provider could be liable for any act that violates section 631's provision if it exceeded the scope of delegated authority, whether or not the defendant

Plaintiff admits that Google markets its service as a way for developers to understand website traffic, and that LeanRx affirmatively implemented the product in its webpages. (Compl. ¶¶ 33–35, 54.) For all of Plaintiff's talk about advertising, the very first page of the Complaint indicates that LeanRx "install[ed] [GA] on its Website for the purpose for [*sic*] improving *its own* targeted advertising efforts[.]" (*Id.* ¶ 3.) Plaintiff does not plausibly allege that Google acted in any way inconsistent with any authorization provided by LeanRx. Showing only that Google acted within the scope of authority conferred by the communication's lawful recipient, Plaintiff fails to plead a plausible claim for an unlawful "interception" under CIPA section 631.

Plaintiff argues that *Noom* is factually distinguishable because, unlike the vendor in that case, Google "intercepted and used her personal information for its own advertising services." (Opp. at 15.) But this "independent use" allegation rests on nothing more than two items: a generic statement from Google's Privacy Policy that Google "uses the information shared by sites and apps to . . . personalize content and ads you see on Google," and a general assertion that Google's business model involves "collecting visitor information from thousands of websites and then analyzing that information in order to deliver targeted advertising." (Compl. ¶¶ 47–52.) Neither allegation says anything about what Google actually did with *this* Plaintiff's data from *this* website. In *Cody v. Ring LLC*, allegations of use based on public reporting that an analytics provider "exploited" data for targeted advertising said "nothing about [the defendant website] or about [the provider] using [that website's] data to create targeted advertising" and were dismissed as "conclusory." 718 F. Supp. 3d 993, 1002–03 n.3 (N.D. Cal. 2024). The same deficiency is fatal here.

***Reading While in Transit.*** Plaintiff argues that her allegations of "contemporaneous," "instantaneous," and "real-time" interception are sufficient to satisfy the "in transit" requirement and that the question is too fact-intensive to resolve at the pleading stage, pointing to *Frasco v. Flo Health Inc.*, 2025 WL 1476905 (N.D. Cal. May 22, 2025). (Opp. at 17–18.) But Plaintiff's own

---

used any information. For instance, an agent with authority to make one connection to a telephone or telegraph wire could be liable for making a second, unauthorized connection.

Complaint forecloses this argument.

Section 631(a) Clause Two requires that the defendant "read[], or attempt[] to read, or to learn the contents or meaning of any . . . communication while the same is in transit" within California. This means a plaintiff must allege not merely obtaining a communication while it passed over a wire in this state, but that the defendant undertook "some effort at understanding the substantive meaning of the communications while they were in transit." *R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) ("Plaintiffs do not plausibly allege Google views or reads the information while it is in transit; instead, they allege information is sent to Google for processing and later, once GA receives, views, reads, and processes the data, it aggregates and organizes it.")

Beyond quoting the statute, the Complaint provides a single allegation on this crucial element, claiming Google receives information "through websites that employ Google's services," and "[t]hat information is then analyzed by Google before being provided to any entity that was a party to the conversation (like Defendant LeanRx)." (Compl. ¶ 57–58 (emphasis added).) This allegation is insufficient for three reasons. *First*, Plaintiff offers no allegation to suggest that whatever "analysis" occurs entails an effort to understand "the substantive meaning of the communications." *See R.C.,* 2025 WL 948060, at *7; *see also Doe v. Eating Recovery Center LLC,* 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025) (filtering processes that sort data upon receipt did not constitute "reading"); *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 WL 1135088, at *5–6 (N.D. Cal. Apr. 17, 2025) (holding analysis of inputs "after they have been transmitted to the server and reassembled has no bearing on whether Defendants read the communications while they were in transit"). *Second,* the allegations say nothing about where the analysis occurs. The in-transit requirement under CIPA is not just temporal; it is also physical. Any reading must occur while the communication is passing over a wire *within California*. Cal. Pen. Code § 631(a). *Third*, Plaintiff's assertion of analysis before the message reaches LeanRx is contradicted by Plaintiff's other allegations. Plaintiff acknowledges that GA is available as code that developers like LeanRx must incorporate into "the code of its Website." (Compl. ¶¶ 30, 33.) Because the GA code is allegedly within the SkinnyRx website, communications must necessarily reach the website before

the GA code can work. This much should be obvious: Google cannot "track" activity on a website before that activity even occurs on that website, but Plaintiff baselessly contends that it can. And simply repeating that Google does so in "real time" is not enough. *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (using the word "intercept" "repeatedly is simply not enough" to make it plausible that interception occurred in transit).

Plaintiff's screenshot, Opp. at 13, does not aid her, but instead proves Google's point. According to the allegations, it reflects information "synthesized" by the "Google tracking pixel." (Compl. ¶ 100.) Whether tracking technology that LeanRx incorporated into its website may have "synthesized" information says nothing about whether *Google* ever "read" the contents of any communication.[6] In addition, the screenshot refutes the notion that the contents could be read in transit: it reveals the SkinnyRx website was using the HTTPS standard that encrypts all contents and renders it impossible to be read in transit.[7]

Lacking allegations, Plaintiff resorts to hollow policy arguments. She claims that reading CIPA literally would immunize wiretapping. Insisting that Google's reading is akin to slicing an

---

[6] Plaintiff claims the California Supreme Court rejected a distinction between a tool and its manufacturer in *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985). Not so. What Plaintiff quotes concerned section 631's application to recording by a party to the communication. *See id.* This does not supplant the need for the defendant to read the contents of a communication, as the opinion made clear in the preceding paragraph. *Id.* at 360. CIPA's text makes clear that liability runs only to *persons* who read contents in transit, not pieces of code on third-party websites that "synthesize" data that may never be read by Google. *See* Cal. Pen. Code § 631.

[7] As noted by the agency charged with setting standards for federal IT resources, "HTTPS encrypts nearly all information sent between a client and a web service," except for an IP address and the domain or subdomain of the website. *See* CIO Council, The HTTPS-Only Standard - Introduction to HTTPS, available at https://https.cio.gov/faq/#what-does-https-do (last accessed June, 2026). The court may take judicial notice of these facts. *Arguetta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking notice of facts on federal agency website).

ongoing phone call into thousands of fragments, Opp. at 16, she claims CIPA would be eviscerated unless courts reconstrue "communication" to cover the entirety of a user's browsing session on a website. Setting aside the lack of support for her argument in any cited case, her understanding of "communication" is impossible to square with the statutory text. Section 631 concerns efforts to read a "communication *while the same is in transit."* Cal. Pen. Code § 631(a). By its terms, liability can only attach if a defendant makes efforts to read what is *then* on the wire. This could occur if a defendant reads any one of thousands of conversation fragments while they are in transit. But if the conversation fragment has reached its intended recipient, is no longer in transit, and *then* reaches the defendant, the defendant has not "intercepted" that conversation fragment "in transit" merely because *other* fragments may later pass over the wire before the conversation concludes.

Plaintiff's reliance on summary judgment cases does not change the analysis. (Opp. at 14.) Whether discovery could reveal evidence to create a fact dispute does not excuse a lack of plausible pleading. Indeed, it was the "potentially enormous expense of discovery" that led the Supreme Court to insist that the pleadings first state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007); *Torres*, 2025 WL 1135088, at *5–6 (dismissing CIPA claim for failure to satisfy "in transit" requirement). Plaintiff does not make this initial showing.

At bottom, Plaintiff's arguments amount to a plea for the Court to broaden CIPA's scope, because the "in transit" requirement may make website tracking cases more difficult. The Court should decline. It has long been observed that the law in this context is "ill-suited" for the internet age*, Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 874 (9th Cir. 2002), and the speed of online communications makes application of wiretapping statutes "undoubtedly limited." *NovelPoster,* 140 F. Supp. 3d at 951. CIPA, a criminal statute, should not be overextended. *See Eating Recovery Center*, 806 F. Supp. 3d at 1112 (rule of lenity applies to CIPA). To the extent Plaintiff believes CIPA is insufficiently protective, she should address her concerns to the Legislature.

***Clause Three Claim.*** A Clause Three claim fails absent a viable Clause Two claim (i.e., a claim alleging efforts to read a communication in transit). *See In re Google Assistant Privacy Litig.,* 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). Plaintiff fails to plausibly allege a Clause Two violation,

so her Clause Three claim fails.[8] Even if a Clause Two claim were viable, Plaintiff does not allege any facts plausibly showing how Google used her data obtained from LeanRx, nor does she allege that she received targeted advertising from Google based on that data. In fact, the only screenshots of ads included in the Complaint are on ***Meta's*** platform, Instagram. (Compl. ¶ 103.) Allegations that data "can be used" to monetize advertising, without more, are speculative and insufficient to state a claim. *See Doe I,* 741 F. Supp. 3d at 839.

### D. The Complaint Fails to Allege a "Device" or "Confidentiality" as Necessary for Her Claim Under CIPA Section 632.

Plaintiff's arguments in opposition do not save her claim under CIPA section 632. She has not rebutted Google's arguments that GA does not qualify as a "device" under section 632, and her allegations about what information was allegedly shared with Google fall short of the statutory threshold for confidentiality.

***Device.*** Plaintiff offers no substantive rebuttal to the argument Google raised that, under statutory construction principle *noscitur a sociis*, CIPA section 632 cannot be read to include GA within the statutory scope of "devices." Although federal courts have held that a "device" can include software, the California Supreme Court has not spoken definitively. Without guidance from the California Supreme Court, federal courts may look to California state court decisions, which hold significant persuasive value on questions of California law. *See, e.g.*, *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 955 n.13 (9th Cir. 2010) (finding interpretation of law by unpublished state case persuasive); *Cardenas v. McLane Food Servs., Inc.*, 796 F. Supp. 2d 1246, 1252 (C.D. Cal. 2011) (noting the "persuasiveness of California state court decisions for interpretations of California state laws" and finding "later-issued California cases more convincing" than federal district court cases); *In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litig.*, No. ML 11-2274 DSF (PLAx), 2012 WL 1931030, at *1

---

[8] This fact underscores the incoherence of the "capacity" test for vendor liability. If *actual* use of data is not unlawful absent an unlawful interception, then it makes no sense to deem an otherwise authorized interception unlawful because of the mere *possibility* of downstream use.

n.1. (C.D. Cal. Apr. 17, 2012) ("On matters of state law, state court decisions will almost always be more significant than federal district court opinions."). Since the *L.B. v. LinkedIn* decision, at least one California Superior Court has interpreted CIPA as Google does: "Plaintiff should not be allowed to obliterate the distinction between a software code and a device by simply mischaracterizing, calling a software code a device. After all, words have meaning." *Moss v. ResortPass, Inc.*, No. 24CU023415C, 2025 WL 3452360 (Cal. Super. Ct. Oct. 30, 2025) (dismissing CIPA section 632 claim with prejudice because software is not a "device."). *Moss* observed that "[t]rying to apply these criminal statutes, originally enacted long before the internet activities described in the FAC were invented, is nothing more than attempting to force a square peg into a round hole." *Id.* at *2. Because CIPA is ambiguous and imposes criminal penalties, *Moss* applied the rule of lenity as a basis in part to exclude software code from the definition of "device." *Id.* at *1. While state trial court decisions are not binding, the interpretation of a California law by a California state court on a question of California law merits serious consideration.

***Confidential Communication.*** Plaintiff fails to rebut the presumption that Internet-based communications are not "confidential" within the meaning of section 632. Plaintiff claims that she "repeatedly" alleges that she "reasonably expected her communications with the SkinnyRx website to remain confidential." (Opp. at 26.) She overstates the portions of the Complaint that she cites. The one that comes the closest is Paragraph 178, which merely recites the element that "Plaintiffs and the California Subclass members had a reasonable expectation that their communications, identity, health information, and other data would remain confidential and that LeanRx would not install wiretaps on the website." This conclusory statement falls short, however, because "confidentiality" under section 632 considers the circumstances surrounding the communication. Cal. Pen. Code § 632(c). That class members may have subjectively believed LeanRx would not use cookies says nothing about those surrounding circumstances, such as whether the LeanRx website made affirmative promises not to share information.

The other cited paragraphs say nothing about Plaintiff's expectation of privacy in her communications with the SkinnyRx website. (*See* Compl. ¶¶ 11 (alleging when and why Plaintiff accessed the SkinnyRx website and that her use of the website led to the interception of

"information regarding her medical history, condition, or treatment," and that she received ads for similar products after ordering medication from the SkinnyRx website); 13–14 (alleging that LeanRx assisted Meta and Google with intercepting Plaintiff's confidential communications without authorization or consent and that LeanRx breached its duty of confidentiality by disclosing Plaintiff's PHI and personally identifiable information without her consent); 105 (alleging that Plaintiff is *entitled* to privacy in her PHI and confidential communications, and that LeanRx deprived her privacy rights, but not alleging that she had an expectation of privacy).)

Plaintiff argues that communications have been found to be "confidential" under section 632 in the medical context. (Opp. at 19.) True enough, but that does not mean that all medical information fits the statutory meaning of "confidentiality" in section 632. This is particularly so because not all medical information is sensitive. *Maghoney*, 2026 WL 497402, at *5 (dismissing claims that health-related searches were intercepted for lack of injury). Further, the California Supreme Court rejects efforts to evaluate confidentiality by reference to the contents of the communication. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 774–76 (2002). This comports with the statutory scheme, which considers the circumstances surrounding the communication, not its contents. Cal. Pen. Code § 632(c). Common experience also supports this reading: individuals can and often do disclose medical information in a variety of contexts, whether to raise money for treatment, raise awareness of obscure diseases, or to find a support network.

Plaintiff points to nothing, other than the fact that her alleged communications concerned medical matters, to support confidentiality under section 632. And she altogether ignores the statutory carve-out, where "parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id.* Similarly, she offers no disagreement with Google's point that HIPAA exists precisely because medical communications are recorded and disseminated. Dkt. 35, Mot. at 15. Whether Plaintiff may have other remedies available to her from access to supposed medical information, her claims as currently alleged fail to state a claim under CIPA and should be dismissed.

### E. Plaintiff's CDAFA Claim Should Be Dismissed Because She Has Not Alleged Damage or Loss.

To support CDAFA standing, Plaintiff argues that Google's use of data collected from SkinnyRx constitutes "unjust profits" that qualify as "damage or loss" under the CDAFA. Opp. at 25–26. She is wrong.

Plaintiff cites *Smith v. Rack Room Shoes, Inc.* to support her argument, but that case does not address CDAFA's "damage or loss" requirement. *See* No. 24-cv-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025). Instead, *Rack Room Shoes* relied on *In re Facebook Inc. Tracking Litigation*, which concerned Article III standing. 956 F.3d 589, 600 (9th Cir. 2020). Indeed, *In re Facebook Inc. Tracking Litigation* was explicit that its disgorgement-based standing existed "even where an individual has not suffered a corresponding loss." *Id.* at 559. Other courts considering the issue have required plaintiffs to allege that they intended to profit from their data and the defendant's collection of that data diminished its value. *See, e.g.*, *Dellasala v. Samba TV, Inc.*, No. 3:25-cv–03470-JSC, 2026 WL 1138358, at *8 (N.D. Cal. Apr. 21, 2026). Plaintiff should be held to the same standard here, and her CDAFA claim should be dismissed for failure to plead that she intended to profit from her health data.

Next, Plaintiff tries to transform a vague allegation about trackers self-propagating and "usurp[ing] the normal operation of Plaintiff's and the California subclass's computing devices" into a more specific allegation that LeanRx's use of GA depletes her battery and computing resources, as a form of damage under CDAFA. (Opp. at 22.) Even if depletion of battery or computing resources were a recognized form of harm under CDAFA, Plaintiff has not alleged sufficient facts about how GA's operation on the SkinnyRx website did either of those things so as to allege a cognizable harm or loss. This is particularly true because the installation of cookies—even on healthcare websites—is not unlawful. *See Smith*, 745 F. App'x at 9; *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1125–26 (S.D. Cal. July 12, 2023) (holding that collection or browsing information on healthcare website was not highly offensive). If, as Plaintiff alleges, LeanRx caused GA cookies to be installed on Plaintiff's browser the moment she visited the website, Compl. ¶¶ 33–34, then the harm occurred *before* any access to health-related data. Such

"damage or loss" could not be "by reason of a violation." Cal. Pen. Code § 502(e)(1).

### F. Plaintiff's Invasion of Privacy Claim Fails Because She Alleges No Highly Offensive Conduct.

Plaintiff's opposition is heavy on generic citations but includes little explaining how her allegations give rise to a plausible invasion of privacy claim, especially considering the "high bar" set for these claims. *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). The cases Plaintiff cites for the "highly offensive" element involve the disclosure of actual medical or health information, including patient portal logins and physician communication. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 783 (2022). And in *L.B*, the complaint was more specific about what health information may have been transmitted via intake forms. 2025 WL 2899514, at *7. Neither case helps here, where the Complaint lacks any allegations about the Plaintiff's specific transmitted medical, prescription, or diagnosis information.

Without such allegations, commercial browsing and product-view activity on a consumer health-adjacent website is "routine commercial behavior," not the sort of disclosure courts characterize as "highly offensive." *Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at 9 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024); *see also Fogelstrom v. Lamps Plus, Inc.,* 195 Cal. App. 4th 986, 992 (2011). Courts have repeatedly dismissed invasion of privacy complaints at the pleading stage for failing to allege a highly offensive intrusion with sufficient particularity. *See Lloyd v. Facebook, Inc.*, No. 21-cv-10075-EMC, 2022 WL 4913347, at 10 (N.D. Cal. Oct. 3, 2022); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025); *Hammerling,* 2022 WL 17365255, at *9. Plaintiff's claims should be dismissed for the same reasons.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Google.

Dated: June 15, 2026

COOLEY LLP

By: */s/ Joshua D. Anderson*
Joshua D. Anderson

Attorneys for Defendant
Google LLC