COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
EMILY ABBEY (341762)
(eabbey@cooley.com)
HARRIS MCLEOD (353379)
(hmcleod@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANNA BUCHHOLZ, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,

Defendants.

Case No. 5:26-cv-00846-EJD

**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Ctrm.: 4
Judge: Hon. Edward J. Davila

Trial Date: Not Yet Set
Date Action Filed: January 26, 2026

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** as soon as the matter may be heard by the Honorable Edward J. Davila of the United States District Court for the Northern District of California, at the Robert F. Peckham Federal Building, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California 95113, Defendant Google LLC will, and hereby does, move to stay proceedings and compel arbitration.

Google seeks this relief on the basis of equitable estoppel. If the Court grants defendant Lean Rx, Inc.'s motion to compel arbitration and stay proceedings, arbitration is likewise mandated as to Plaintiff's claims against Google because: (1) Plaintiff's claims against Google arise solely from her use of and purchases from LeanRx's SkinnyRx website, which is governed by LeanRx's Terms & Conditions that contain a mandatory arbitration clause; and (2) Plaintiff's claims allege substantially interdependent and concerted conduct by Google and LeanRx. Accordingly, Google respectfully requests the Court compel Plaintiff to arbitrate her claims against Google and stay proceedings pending the outcome of that arbitration. In the alternative, if the Court orders Plaintiff to arbitrate her claims against LeanRx but not as to Google, Google respectfully requests a stay of all claims against it pending the conclusion of that arbitration.

This Motion is based upon this Notice of Motion and accompanying Memorandum of Points and Authorities, the pleadings and other papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: June 16, 2026

COOLEY LLP

By: *Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorneys for Defendant
Google LLC

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..................................................................................................... 1
II. BACKGROUND ..................................................................................................... 1
III. ARGUMENT ........................................................................................................... 3
A. Equitable Estoppel Requires Arbitration of the Claims Against Google................ 3
1. Plaintiff's Claims Against Google Are Intertwined with SkinnyRx's Terms & Conditions and Privacy Policy..................................................... 4
2. Plaintiff Alleges Interdependent Conduct Between Google and LeanRx. ..................................................................................................... 7
B. The Court Must Stay All Claims Against Google Pending Arbitration. ................ 9
C. In the Alternative, the Court Should Stay Claims Against Google Pending the Resolution of Plaintiff's Arbitration with LeanRx.......................................... 10
IV. CONCLUSION ........................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkins v. Amplitude, Inc.*,
No. 3:24-cv-04913-RFL, 2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) .............................. 6, 9

*Bui v. Northrop Grumman Sys. Corp.*,
No. 3:15-cv-1397-WQH, 2019 WL 13166662 (S.D. Cal. Jan. 29, 2019)............................... 11

*Forsyth v. HP Inc.*,
No. 5:16-cv-04775-EJD, 2018 WL 732722 (N.D. Cal. Feb. 6, 2018)................................... 10

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, et al.*,
590 U.S. 432 (2020) ................................................................................................................ 4

*Goldman v. KPMG*,
173 Cal. App. 4th 209 (2009)........................................................................................ *passim*

*Gonzalez v. Nowhere Beverly Hills LLC*,
107 Cal. App. 5th 111 (2024)..................................................................................................... 4

*In re Holl*,
925 F.3d 1076 (9th Cir. 2019)..................................................................................................... 5

*Johnson v. Beyond, Inc.*,
No. 2:25-cv-03327-DJC, 2026 WL 1076039 (E.D. Cal. Apr. 21, 2026)...................... 4, 6, 7, 9

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........................................................................................ 6

*L.W.A. v. LinkedIn Corp.*,
No. 5:24-cv-08436-EJD, 2025 WL 2780788 (N.D. Cal. Sept. 30, 2025)....................... 4, 6, 11

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
635 F. Supp. 3d 883 (N.D. Cal. 2022) ................................................................................... 4, 7

*Morales v. Lexxiom, Inc.*,
No. 2:09-cv-06549-SVW, 2010 WL 11507515 (C.D. Cal. Jan. 29, 2010)............................ 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ...................................................................................................................... 10

*Olson v. World Fin. Grp. Ins. Agency, LLC*,
No. 5:24-cv-00477-EJD, 2025 WL 2243646 (N.D. Cal. Aug. 6, 2025)................................ 11

*Perry-Hudson v. Twilio, Inc.*,
No. 3:24-cv-03741-VC, 2024 WL 4933332 (N.D. Cal. Dec. 2, 2024).................................... 9

*Russell v. BMW of N. Am., LLC*,
No. 2:22-CV-03299-SPG-MAR, 2022 WL 18674435 (C.D. Cal. Oct. 14, 2022)................... 7

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020)................................................................................. 9

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ........................................................................................... 9, 10

*Wilson v. Hatch Bank*,
No. 23-cv-813-JES, 2024 WL 1355492 (S.D. Cal. Mar. 29, 2024)....................................... 5

**Statutes**

9 U.S.C. § 3 ........................................................................................................ 9, 10

18 U.S.C. § 2511(2)(d)............................................................................................ 6

**Court Rules**

Federal Rule of Civil Procedure 12(b) ........................................................................ 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Anna Buchholz accessed LeanRx's SkinnyRx website and purchased weight-loss medications. She filed this suit alleging that LeanRx, in concert with Google and Meta, conspired to extract and use her personal and medical data from that website without her consent. Defendant LeanRx moved to compel arbitration of Plaintiff's claims, asserting that, by using the SkinnyRx website to purchase medications, Plaintiff consented to SkinnyRx's Terms & Conditions and its mandatory arbitration clause. *See* Dkt. No. 51-3. Google now moves to compel arbitration of Plaintiff's claims against it under the doctrine of equitable estoppel.

Well-settled law permits non-signatory parties to compel arbitration in either of two circumstances: (1) where a signatory's claims are intimately founded in and intertwined with the underlying contract memorializing the arbitration agreement; or (2) where a signatory alleges substantially interdependent and concerted misconduct between the non-signatory and signatory defendants. Both circumstances exist here.

First, all of Plaintiff's claims against Google arise exclusively from her use of the SkinnyRx website and the data captured from that use, which intertwines her claims against Google with SkinnyRx's Terms & Conditions, Privacy Policy, and arbitration agreement. And second, by Plaintiff's own framing of her complaint, her allegations against LeanRx and Google are substantially interdependent and concerted. Accordingly, Plaintiff's claims against Google should be compelled to arbitration and must be stayed pending arbitration.

In the alternative, if the Court orders arbitration of Plaintiff's claims against LeanRx but not as to Google, Google respectfully requests that this Court stay all claims against Google pending the outcome of Plaintiff's arbitration with LeanRx. Given the interconnectivity between the claims against Google and those against LeanRx, allowing both sets of claims to separately proceed in parallel would be inefficient and risk inconsistent results.

### II. BACKGROUND[1]

Plaintiff alleges that Google offers Google Analytics to developers as a tool for analyzing

[1] Google limits its discussion to facts relevant to this motion. A more detailed discussion of

their website traffic and user interactions. *See* Compl. ¶¶ 19, 54. LeanRx is one such developer that chose to incorporate Google Analytics onto the website of its subsidiary, SkinnyRx (the "SkinnyRx website"). *Id*. ¶¶ 2–3, 33. Google Analytics collects pseudonymous data from websites it contracts with, like the SkinnyRx website, and aggregates that data into reports that provide developers, like LeanRx, greater insights into user interactions with their website. *Id*. ¶ 54 n.35; ¶ 58.

As detailed in LeanRx's motion to compel arbitration, to use SkinnyRx's website and purchase its products, users must agree to SkinnyRx's Terms & Conditions. *See* Dkt. No. 51-1, Lin Decl.[2] Ex. B, Dkt. No. 51-3, at 1 ("Your access to and use of these Services is subject to these Terms and all applicable laws and regulations."); *id*. ("By checking a box or clicking 'I accept', 'I agree', or similar when the option is presented to you, or by accessing or using these Services, you acknowledge that you have read, understood, and agree to be legally bound by and comply with these Terms. If you do not or cannot agree with any part of these terms, you are not allowed to use the Services.").

With respect to Plaintiff Anna Buchholz, she initially accessed SkinnyRx in September 2025 and pressed "Continue" on the initial screening questionnaire, which also hyperlinked SkinnyRx's Terms & Conditions and Privacy Policy. Lin Decl. ¶¶ 9, 10. On September 9, 2025, Plaintiff checked a box on a page asking for contact information, which stated, "I have read and agree to the consents and acknowledgements above[.]" *Id*. ¶¶ 16–17. Shortly thereafter, Plaintiff purchased weight loss medications from the SkinnyRx website on at least two occasions. *See* Compl. ¶ 11.

SkinnyRx's Terms & Conditions contain a mandatory arbitration clause. Lin Decl. Ex. B, Dkt. No. 51-3, at 1. On the first page of SkinnyRx's Terms & Conditions, the mandatory arbitration notice states: "[t]hese terms contain a mandatory arbitration provision in section 11 that requires the use of arbitration on an individual basis to resolve disputes." *Id*. Section 11 of the Terms & Conditions repeats this language and contains the full arbitration agreement. *Id*. at 6–11.

SkinnyRx's Terms & Conditions also reference and incorporate SkinnyRx's Privacy Policy.

---

Plaintiff's allegations is presented in Google's pending motion to dismiss (Dkt. No. 35).

[2] "Lin Decl." refers to the Declaration of Guerra Lin attached to Defendant Lean Rx's Motion to Compel Arbitration and Stay Proceedings.

*Id*. at 2 ("Privacy. Please review our Privacy Policy available at https://skinnyrx.com/privacy for information about how we collect and use your personal information."). The Privacy Policy informs users of what data LeanRx collects and to whom it may disclose that information. Dkt. No. 35-6, Anderson Decl. in Support of RJN, Ex. D. Specifically, SkinnyRx's Privacy Policy states that LeanRx may collect information such as names, contact information, or website usage information. *Id.* at 3 ("We may automatically collect information or inferences about you, such as through cookies and other tracking technologies, when you interact with our Website."); *id*. at 6 ("We and authorized third parties use cookies and other tracking technologies to collect information about you, your device, and how you interact with our Website and other online communications (e.g., email)."). SkinnyRx's Privacy Policy also states that LeanRx may use that information for advertising and for its service providers, among other purposes. *Id*. at 5 ("For example, we may use Personal Information we collect to personalize advertising to you . . . ."); *id*. ("We may disclose Personal Information to third parties, including . . . internet service providers, web hosting providers, data analytics providers, and companies that provide business support services[.]").

Notwithstanding the agreement to arbitrate with LeanRx, Plaintiff filed this action, alleging claims arising entirely from her use of the SkinnyRx website and the data allegedly captured from it. In this regard, Plaintiff alleges that, through SkinnyRx's integration of Google Analytics, LeanRx conspired with Google and others to intercept her personal and medical information from the SkinnyRx website, which resulted in her receiving targeted advertisements related to her weight loss medications and hormone treatments. *See* Compl. ¶¶ 2–3, 11, 13, 69.

On May 1, 2026, LeanRx moved to compel arbitration and stay proceedings under SkinnyRx's Terms & Conditions. *See* Dkt. No. 51. Google seeks the same relief and requests a stay of all claims against Google pending arbitration.[3]

## III. ARGUMENT

### A. Equitable Estoppel Requires Arbitration of the Claims Against Google.

Though Google is not a signatory to SkinnyRx's Terms & Conditions, the doctrine of

[3] On March 31, 2026, Google filed a motion to dismiss under Rule 12(b). *See* Dkt. No. 35. Compelling Plaintiff's claims to arbitration would eliminate the need for the Court to consider that motion.

equitable estoppel requires Plaintiff to arbitrate her claims against Google. The Federal Arbitration Act (FAA) permits non-signatories to an agreement containing an arbitration clause to rely on state-law equitable estoppel principles to enforce that clause. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, et al.*, 590 U.S. 432, 437–39 (2020). Under California law, non-signatories to an arbitration agreement, such as Google, can compel arbitration under two circumstances (the "*Goldman* prongs")[4]:

> (1) [W]hen a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and
>
> [¶](2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 635 F. Supp. 3d 883, 893–94 (N.D. Cal. 2022) (quoting *Goldman*, 173 Cal. App. 4th at 219–21); *see also Gonzalez v. Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111, 128 (2024) (holding that equitable estoppel applies to prevent a signatory from "suing nonsignatories for claims that are based on the same facts and are inherently inseparable from the arbitrable claims deriving from the agreement").

While satisfying just one of the *Goldman* prongs is sufficient, both circumstances exist here. *See Johnson v. Beyond, Inc.*, No. 2:25-cv-03327-DJC, 2026 WL 1076039, at *6 (E.D. Cal. Apr. 21, 2026) ("[t]he court need not address the second prong" because "prong one of the *Goldman* test is satisfied"); *L.W.A. v. LinkedIn Corp*., No. 5:24-cv-08436-EJD, 2025 WL 2780788, at *4 (N.D. Cal. Sept. 30, 2025) (Davila, J.) (holding that first *Goldman* prong is sufficient to grant motion to compel arbitration).

### 1. Plaintiff's Claims Against Google Are Intertwined with SkinnyRx's Terms & Conditions and Privacy Policy.

As for the first *Goldman* prong, Plaintiff's claims against Google are "intimately founded in and intertwined with" the underlying SkinnyRx Terms & Conditions, and incorporated Privacy Policy. *Goldman*, 173 Cal. App. 4th at 221.

First, as detailed in LeanRx's motion to compel arbitration, Plaintiff's use of SkinnyRx and

[4] *See Goldman v. KPMG*, 173 Cal. App. 4th 209, 219–21 (2009).

purchase of LeanRx medications on its website bound her to SkinnyRx's Terms & Conditions, which contained a valid and enforceable arbitration clause. *See* Dkt. No. 51 at 2, 7–13; Lin Decl. Ex. B, Dkt. No. 51-3 at 1. Plaintiff was given reasonable opportunity to review the arbitration agreement and manifested her assent to those terms through her use of the SkinnyRx website, her account registration, and her purchase of medications from SkinnyRx. *See* Dkt. No. 51 at 7–13. Therefore, Plaintiff is bound by SkinnyRx's Terms & Conditions and its arbitration clause.

As alleged, Plaintiff's claims against Google arise exclusively from her use of the SkinnyRx website to which SkinnyRx's Terms & Conditions and Privacy Policy apply. *See, e.g.*, Compl. ¶¶ 2–3, 11, 13, 29–35, 69–85. The crux of Plaintiff's Complaint is that Google and LeanRx conspired to intercept and collect her personal and medical information from the SkinnyRx website for their own advertising and marketing purposes. *See e.g., id.* ¶ 2 ("Defendant installed various tracking technologies on the Website to permit Facebook and Google to intercept, in real time, which specific prescription drugs Website visitors were purchasing on the Website."); ¶ 3 ("Defendant LeanRx aided, employed, agreed with, and/or conspired with Defendants Facebook and Google and other third-party vendors to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information"). Plaintiff raises no claims untethered to her use of the SkinnyRx website. Thus, Plaintiff's claims against Google are inseparable from SkinnyRx's Terms & Conditions and arbitration clause.

Second, Plaintiff's claims against Google and its purported collection and interception of her personal and medical data directly challenge and put at issue SkinnyRx's Privacy Policy. *See e.g.,* Compl. ¶ 2–3, 11, 13, 29–35, 69–85.[5] Specifically, each of Plaintiff's claims require her to plead—and prove— she did not consent to Google and LeanRx's alleged interception of her data.

---

[5] Plaintiff assented to SkinnyRx's Privacy Policy, as it is expressly incorporated by reference in the Terms & Conditions. *See* Lin Decl. Ex. B, Dkt. No. 51-3 at 2 ("Privacy. Please review our Privacy Policy available at https://skinnyrx.com/privacy for information about how we collect and use your personal information."); *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (holding that privacy policy is incorporated by reference into the terms of service where "reference [is] called to the attention of the other party and he [] consent[s] thereto, and the terms of the incorporated document [are] known or easily available to the contracting parties."); *Wilson v. Hatch Bank,* No. 23-cv-813-JES, 2024 WL 1355492, at *8–9 (S.D. Cal. Mar. 29, 2024) (holding that privacy policy was incorporated by reference where terms of service made clear reference to privacy policy and contained a hyperlink to the privacy policy).

*See e.g.,* 18 U.S.C. § 2511(2)(d); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 869 (N.D. Cal. 2026) ("Where 'one of the parties to the communication has given prior consent to such interception,' there can be no violation of ECPA."). This implicates SkinnyRx's Terms of Service and Privacy Policy, which memorialize her consent to the precise collection and use of data that she now challenges. *See e.g.,* Dkt. No. 35-6, Ex. D to Anderson Decl., at 3 ("We may automatically collect information or inferences about you, such as through cookies and other tracking technologies, when you interact with our Website."); *id.* at 5 ("For example, we may use Personal Information we collect to personalize advertising to you . . . ."); *id.* at 6 ("We and authorized third parties use cookies and other tracking technologies to collect information about you, your device, and how you interact with our Website and other online communications (e.g., email).").

In short, Plaintiff's claims "directly relate to the potential customer data uses and collection activities described in the Terms & Conditions and Privacy Policy[,]" which warrants applying equitable estoppel. *See Johnson*, 2026 WL 1076039, at *5–6 (holding that equitable estoppel applies because "the gravamen of Plaintiff's case is that [Defendants] allegedly misused her personal customer data, but the scope of this potential data use is extensively discussed in the Privacy Policy, which Plaintiff consented to"); *Atkins v. Amplitude, Inc.*, No. 3:24-cv-04913-RFL, 2025 WL 2521732, at *2 (N.D. Cal. Sept. 2, 2025) (holding that equitable estoppel applies because defendant's privacy policy "expressly discusses the manner by which [defendant] may provide or disclose Personal Information to third-parties"); *L.W.A.*, 2025 WL 2780788, at *5 (holding that equitable estoppel applies because "the court would need to examine whether Plaintiff consented to her data being shared to [the advertising technology provider] in her agreement with [the website]").

All of Plaintiff's claims against Google arise from conduct governed by SkinnyRx's Terms & Conditions and arbitration agreement, and principally concern the sufficiency of the disclosures in SkinnyRx's Privacy Policy. Thus, the first *Goldman* prong is met, and Plaintiff must arbitrate her claims against Google.

**2. Plaintiff Alleges Interdependent Conduct Between Google and LeanRx.**

Satisfying the first *Goldman* prong is alone sufficient for the Court to compel arbitration. *See Johnson*, 2026 WL 1076039, at *6*; Russell v. BMW of N. Am., LLC*, No. 2:22-CV-03299-SPG-MAR, 2022 WL 18674435, at *5 (C.D. Cal. Oct. 14, 2022). Nonetheless, Plaintiff's claims also meet the second *Goldman* prong, which compels arbitration where allegations of interdependent and concerted misconduct between the signatory and non-signatory are "founded in or intimately connected with the obligations of the underlying agreement." *Goldman*, 173 Cal. App. 4th at 219. Plaintiff's Complaint is replete with allegations that Google and LeanRx jointly engaged in "substantially interdependent and concerted misconduct" through the collection and use of Plaintiff's data. *See Martinez-Gonzalez*, 635 F. Supp. 3d at 893–94 (internal quotation omitted); *see also Goldman*, 173 Cal. App. 4th at 219. And that alleged misconduct is "intimately connected with the obligations of the underlying agreement"—here, SkinnyRx's Terms & Conditions and its incorporated Privacy Policy. *Goldman*, 173 Cal. App. 4th at 219.

Plaintiff alleges Google conspired with LeanRx to intercept, collect, and use Plaintiff's personal and medical information without Plaintiff's consent. *See* Compl. ¶ 3. As Plaintiff herself describes, her claims against Google and LeanRx are intrinsically inseparable. *See id.* ¶ 88 ("In other words, each transmission between the Website and Facebook and Google are not distinct and independent events. Instead, they build on top of each other, allowing Facebook and Google to stitch together multiple interactions from multiple webpages to obtain a more complete picture of the user's interaction."); *id.* ¶ 165 ("At all relevant times, Defendant LeanRx aided, agreed with, and conspired with third parties, including, Defendants Facebook and Google, to track and intercept Plaintiff's and Class Members' internet communications while accessing the Website."). The interreliance underlying Plaintiff's allegations is straightforward—without Google Analytics, LeanRx allegedly has no means to harvest and aggregate user data; and without LeanRx, Google allegedly has no platform from which to extract it. Accordingly, as alleged, all of the conduct allegedly committed by Google is substantially interdependent and concerted with the conduct allegedly committed by LeanRx.

This interdependency is further underscored by the sheer quantity of repeated references attributing misconduct to Google and LeanRx jointly:

- "Defendant LeanRx aided, employed, agreed with, and/or conspired with Defendants Facebook and Google and other third-party vendors to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information." *Id.* ¶ 3.
- "Defendant LeanRx assisted these interceptions by Facebook, Google, and other third parties without Plaintiff's knowledge, consent, or express written authorization." *Id.* ¶ 13.
- "Defendants Facebook and Google then use the information of Website visitors that is collected by the Trackers, including that of Plaintiff and Class Members, to identify Plaintiff and Class Members, serve targeted advertisements, and unjustly enrich themselves through this improperly collected information." *Id.* ¶ 35.
- "Defendant LeanRx shares information with Google that amounts to personally identifiable information via its collection of device identifiers and IP addresses." *Id.* ¶ 63.
- "Defendant LeanRx uses and causes the disclosure of data sufficient for third parties, like Defendant Google, to create a browser-fingerprint identifier with each re-directed communication described herein, including health intake forms and patient communications concerning doctor appointments and prescription medications." *Id.* ¶ 68.
- "Through Defendants' Facebook Pixel and Google Analytics, among other third-party trackers, Defendant LeanRx assisted Defendants Facebook and Google and others with intercepting the identities and online activity of Defendant LeanRx's users, including information related to the type of medication patients were seeking and for which they booked appointments." *Id.* ¶ 69.
- "Defendant LeanRx's integration of the Google Analytics Pixel, among other third-party technologies, allows Google and others to create a browser-fingerprint identifier with each re-directed communication described herein, including information on the medications a user purchases" *Id.* ¶ 85.

It is indisputable that Plaintiff pleads interdependent and concerted conduct between Google and LeanRx. And, as discussed above, this interdependent conduct is intimately connected with the underlying agreement at hand: SkinnyRx's Terms & Conditions and incorporated Privacy Policy. *See supra* Section III.A.1. Because Plaintiff's privacy claims against Google are "intimately connected with the obligations [LeanRx] imposed on itself in the Privacy Policy related to obtaining consent and the scope of any disclosure of data[,]" compelling arbitration based upon equitable estoppel is warranted. *See Perry-Hudson v. Twilio, Inc.*, No. 3:24-cv-03741-VC, 2024 WL 4933332, at *3 (N.D. Cal. Dec. 2, 2024) (holding that allegations the website "disclosed users' personal health information" to a third-party constituted "interdependent and concerted misconduct"); *Atkins*, 2025 WL 2521732, at *3 (holding that allegations concerning an agreement between an app and third-party "to intercept and collect Plaintiffs' sensitive data" constituted "interdependent and concerted misconduct").

The linchpin of equitable estoppel is fairness. *Goldman*, 173 Cal. App. 4th at 220. Where Plaintiff agreed to an arbitration clause in connection with her use of and purchases from the SkinnyRx website, and sues Google based on conduct *solely* arising from such use, she should not be able to repudiate the effect of her arbitration agreement governing that use. Accordingly, while either *Goldman* prong independently provides a sufficient basis to compel arbitration, both are satisfied here and the Court should enforce the arbitration agreement as it pertains to Plaintiff's claims against Google. *See Johnson*, 2026 WL 1076039, at *5–6 (granting motion to compel arbitration and staying proceedings); *Perry-Hudson*, 2024 WL 4933332, at *3 (same); *Atkins*, 2025 WL 2521732, at *3 (same); *cf. Shivkov v. Artex Risk Sols., Inc.,* 974 F.3d 1051, 1069–1071 (9th Cir. 2020) (granting motion to compel arbitration under similar Arizona law).

**B. The Court Must Stay All Claims Against Google Pending Arbitration.**

Where, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA requires the district court to compel arbitration and stay federal proceedings. 9 U.S.C. § 3 (providing for a stay of federal court proceedings pending the resolution of arbitration); *see Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA

compels the court to stay the proceeding."). Because all of Plaintiff's claims fall within the scope of the arbitration agreement, a stay is required pending arbitration proceedings.

**C. In the Alternative, the Court Should Stay Claims Against Google Pending the Resolution of Plaintiff's Arbitration with LeanRx.**

If the Court compels Plaintiff to arbitrate her claims against LeanRx but not as to Google, the Court should stay all claims against Google pending the conclusion of Plaintiff's arbitration against LeanRx. Federal courts have broad discretion to stay litigation among non-arbitrating parties pending arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983) (holding that the district court has "discretion" to "stay litigation among the non-arbitrating parties pending the outcome of the arbitration"). In exercising that discretion, courts may consider factors such as judicial economy and efficiency, and the risk of inconsistent results. *See Forsyth v. HP Inc.*, No. 5:16-cv-04775-EJD, 2018 WL 732722, at *7–8 (N.D. Cal. Feb. 6, 2018) (Davila, J.) (holding that the court may stay non-arbitrable claims pending arbitration for the sake of economy and efficiency); *Morales v. Lexxiom, Inc.*, No. 2:09-cv-06549-SVW, 2010 WL 11507515, at *11–14 (C.D. Cal. Jan. 29, 2010) (considering risk of inconsistent factual findings to support stay pending arbitration). Those factors militate in favor of a stay here.

First, a stay would further judicial economy and efficiency because the core of Plaintiff's allegations concern interdependent actions between Google and LeanRx that purportedly invaded Plaintiff's privacy rights. A stay will avoid duplicating substantial discovery specific to LeanRx, which would proceed nonetheless in arbitration against LeanRx, leading to the same discovery occurring in both fora, without clear coordination of scope or timelines. *See Forsyth*, 2018 WL 732722 at *7–8.

Second, there is a substantial risk of inconsistent results if claims against Google and LeanRx separately proceed in parallel. As discussed, the claims against Google require resolution of matters inextricably bound in issues involving LeanRx and its Terms & Conditions and Privacy Policy. *See supra* Section III.A.1. These include: (1) whether, and how, LeanRx disclosed to Plaintiff the use of Google Analytics in its Terms & Conditions and Privacy Policy (*see* Compl. ¶¶ 3, 36, 86, 105, 121, 146–148, 150–151, 155, 157, 165, 169); (2) whether, and to what extent,

Google Analytics extracted and utilized user data from SkinnyRx (*id.* ¶¶ 53–68, 84–85, 87–88, 91, 96–103); and (3) whether LeanRx and Google worked together to intercept and analyze Plaintiff's personal information (*id.* ¶¶ 2–3, 11, 13, 15, 33–35, 63, 68–69, 72–103, 109, 165). Any arbitration with LeanRx will necessarily have to confront these same issues, and their resolution will impact—if not completely resolve—Plaintiff's claims against Google. *L.W.A.*, 2025 WL 2780788, *4-5 (staying action where equitable estoppel applies); *Olson v. World Fin. Grp. Ins. Agency, LLC*, No. 5:24-cv-00477-EJD, 2025 WL 2243646, at *1 (N.D. Cal. Aug. 6, 2025) (Davila, J.) ("Engaging in fulsome discovery while GFI's motion to compel arbitration is pending could undermine the potential efficiencies of arbitration and lead to inconsistent results."); *Bui v. Northrop Grumman Sys. Corp.*, No. 3:15-cv-1397-WQH, 2019 WL 13166662, at *2 (S.D. Cal. Jan. 29, 2019) (staying action pending arbitration due to risk of inconsistent rulings where the same issues had to be decided in the arbitration and litigation).

To avoid unnecessary expenditure of judicial and party resources and the risk of inconsistent rulings, Google requests that, if Plaintiff's claims against Google are not compelled to arbitration, the Court stay all claims against Google pending the resolution of any arbitration it may order as to LeanRx.

## IV. CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court compel Plaintiff's claims against Google to arbitration and stay these proceedings. Alternatively, if the Court orders arbitration of Plaintiff's claims against LeanRx but not Google, Google respectfully requests that this Court stay all claims against Google pending the outcome of Plaintiff's arbitration with LeanRx.

Dated: June 16, 2026

COOLEY LLP

By: *Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorneys for Defendant
Google LLC