COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
EMILY ABBEY (341762)
(eabbey@cooley.com)
HARRIS MCLEOD (353379)
(hmcleod@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANNA BUCHHOLZ, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

LEAN RX, INC., META PLATFORMS, INC., and GOOGLE LLC,

Defendants.

Case No. 5:26-cv-00846-EJD

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Date: September 10, 2026
Time: 9:00 a.m.
Ctrm.: 4
Judge: Hon. Edward J. Davila

Trial Date: Not Yet Set
Date Action Filed: January 26, 2026

# TABLE OF CONTENTS


Page

I. INTRODUCTION ... 1
II. ARGUMENT ... 2
A. Plaintiff Agreed to LeanRx's Terms & Conditions and the Arbitration Clause Therein. ... 2
B. Plaintiff Fails to Rebut Google's Showing that Both Goldman Prongs Have Been Met. ... 2
1. Plaintiff's Claims are Directly Related to and Intertwined with the Underlying Contract. ... 3
a. Estoppel applies to statutory claims. ... 3
b. Consent is merely one issue intertwined with the contract. ... 5
c. The Privacy Policy is incorporated into the Terms & Conditions. ... 6
2. Plaintiff Fails to Rebut that Google's Alleged Conduct is Intimately Connected with the Terms & Conditions and Privacy Policy ... 7
3. Balance of the Equities Supports Arbitration ... 8
C. A Stay of Claims Pending Arbitration is Warranted ... 9
III. CONCLUSION ... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Atkins v. Amplitude, Inc.*,
No. 24-CV-04913-RFL, 2026 WL 821052 (N.D. Cal. Mar. 25, 2026) .................................. 4

*Atkins v. Amplitude, Inc.*,
No. 24-CV-04913-RFL, 2025 WL 2521732 (N.D. Cal. Sept. 2, 2025)............................... 4, 8

*Bender v. Twilio Inc.*,
No. 24-CV-04914-AMO, 2025 WL 2308484 (N.D. Cal. Aug. 11, 2025)............................... 8

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002).................................................................... 10

*Boucher v. Alliance Title Co.*,
127 Cal. App. 4th 262 (2005)........................................................................................ 3

*Bui v. Northrop Grumman Sys. Corp.*,
No. 15-CV-1397, 2019 WL 13166662 (S.D. Cal. Jan. 29, 2019)...................................... 9, 10

*Chartwell Staffing Servs. Inc. v. Atlantic Solutions Grp. Inc.*,
No. 8:19-CV-00642-JLS-JDE, 2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ............................ 5

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................... 6, 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)......................................................................................... 6

*Ford Motor Warranty Cases,*
17 Cal. 5th 1122 (2025) ........................................................................................... 3, 4

*Forsyth v. HP Inc.*,
No. 5:16-CV-04775-EJD, 2018 WL 732722 (N.D. Cal. Feb. 6, 2018) ................................ 10

*Garcia v. Pexco, LLC*,
11 Cal. App. 5th 782 (2017)........................................................................................... 3

*Goldman v. KPMG*,
173 Cal. App. 4th 209 (2009)...................................................................................*passim*

*Gonzales v. Nowhere Beverly Hills LLC*,
107 Cal. App. 5th 111 (2024)......................................................................................... 9

*Harris v. iHeartMedia, Inc.*,
No. 25-CV-06038-EKL, 2026 WL 194576 (N.D. Cal. Jan. 6, 2026) ....................................... 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017) ... 4, 5

*Johnson v. Beyond, Inc.*,
No. 2:25-CV-03327-DJC, 2026 WL 1076039 (E.D. Cal. Apr. 21, 2026) ... 4

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ... 5

*L.B. v. LinkedIn Corp.*,
No. 5:24-CV-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ... 6

*L.W.A. v. LinkedIn Corp.*,
No. 5:24-CV-08436-EJD, 2025 WL 2780788 (N.D. Cal. Sept. 30, 2025) ... 4, 5, 6

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) ... 9

*Morales v. Lexxiom, Inc.*,
No. 2:09-CV-06549-SVW, 2010 WL 11507515 (C.D. Cal. Jan. 29, 2010) ... 10

*Parodi v. Liberty Mut. Ins. Co.*,
No. 23-CV-01663-JSC, 2023 WL 4535088 (N.D. Cal. June 6, 2023) ... 10

*Perry-Hudson v. Twilio, Inc.*,
No. 3:24-CV-03741-VC, 2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) ... 8

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ... 7

*Rajagopalan v. NoteWorld, LLC*,
718 F.3d 844 (9th Cir. 2013) ... 5

*Shaw v. Regents of Univ. of Cal.*,
58 Cal. App. 4th 44 (1997) ... 6

*STM Atlantic N.V. v. Dong Yin Development Holdings Ltd.*,
No. 2:18-CV-01269-JLS-JCG, 2019 WL 2417625 (C.D. Cal. Feb. 15, 2019) ... 5

*United Flow Techs. Intermediate Holdco II, LLC v. Coholan*,
No. 3:26-CV-01845-RS, 2026 WL 1538119 (N.D. Cal. June 1, 2026) ... 6

**Statutes**

9 U.S.C. § 3 ... 9

## I. INTRODUCTION

Plaintiff alleges that Defendants acted in concert to collect, disclose, and use her personal information, taken exclusively from her use and purchase of weight-loss medications from the SkinnyRx website. As described in LeanRx's parallel motion, Plaintiff's use of the SkinnyRx website expressly bound her to LeanRx's Terms & Conditions, including its mandatory arbitration clause and incorporated Privacy Policy. Now, Google seeks to invoke equitable estoppel on the premise that Plaintiff's claims against Google are intertwined or intimately connected with the same Terms & Conditions and Privacy Policy that apply to its claims against LeanRx, which is subject to arbitration. Yet, in her defense, Plaintiff relies on a series of misinterpretations of the applicable legal standards and downplaying of the interconnectedness of her claims to the applicable Terms & Conditions.

*First*, while conceding that she alleges concerted conduct among Defendants, Plaintiff asserts equitable estoppel cannot apply because her claims are grounded in statutory duties, not contract. That is a red herring: California courts routinely apply equitable estoppel and compel arbitration of claims rooted in statute. Moreover, here, the Terms & Conditions and Privacy Policy are not only relevant—they are potentially dispositive. LeanRx's Terms & Conditions and Privacy Policy govern Plaintiff's use of the SkinnyRx website, which underlies all of her allegations. The terms also memorialize her assent to the precise data collection and use she challenges. As district courts routinely hold in nearly identical situations, Plaintiff's claims are intertwined and intimately connected with LeanRx's Terms & Conditions and Privacy Policy under *Goldman*.

*Second*, without citation to any relevant authority, Plaintiff asserts that the Terms & Conditions did not incorporate the Privacy Policy by reference because the terms did not expressly use the words "incorporated." However, California law is clear that an agreement need only clearly refer to the incorporated document, make it easily available, and gain consent thereto. Each of those is plainly satisfied here: LeanRx's Privacy Policy was referred to in bolded font, hyperlinked on the front page of SkinnyRx's Terms & Conditions, and Plaintiff manifested her assent thereto via her use of the SkinnyRx website.

*Third*, Plaintiff attempts to manufacture a new legal standard that would warrant a stay only

where an arbitration concerns identical legal claims binding all parties. But a stay does not require such perfect identity between legal actions; it requires only that the parallel proceedings share common factual or legal questions whose resolution could affect this litigation. The core factual issues that would be litigated in any LeanRx arbitration—whether the Privacy Policy disclosed the data collection at issue, whether Plaintiff consented to it, and how Google Analytics functioned on the SkinnyRx website—bear directly on Plaintiff's claims against Google. Proceeding in parallel risks inconsistent factual findings and duplicative discovery on exactly those questions. By contrast, a stay would promote judicial economy, cabin the scope of discovery, and prevent the parties from relitigating the same factual record in two simultaneous forums. Courts routinely stay proceedings in precisely these circumstances, and Plaintiff identifies no concrete prejudice that would outweigh those considerations.

Accordingly, Google respectfully requests that the Court (1) compel Plaintiff to arbitrate her claims against Google and stay this case accordingly, or (2) stay Plaintiff's claims against Google pending the outcome of Plaintiff's arbitration with LeanRx.

## II. ARGUMENT

### A. Plaintiff Agreed to LeanRx's Terms & Conditions and the Arbitration Clause Therein.

Plaintiff asserts that Google's Motion fails because Plaintiff did not agree to Lean Rx, Inc.'s ("LeanRx") Terms & Conditions and Privacy Policy. Opp., Dkt. No. 68, at 4–5, 13. As described in the Motion, Google's invocation of equitable estoppel relies on this Court's interpretation of the SkinnyRx website's Terms & Conditions and Privacy Policy as argued in LeanRx's motion to compel arbitration. *See* Dkt. No. 51. Should this Court find Plaintiff and LeanRx entered into a valid, enforceable arbitration agreement compelling arbitration as to Plaintiff's claims against LeanRx, equitable estoppel compels Plaintiff to arbitration against Google as well.

### B. Plaintiff Fails to Rebut Google's Showing that Both *Goldman* Prongs Have Been Met.

Though sufficient to invoke equitable estoppel by satisfying either of the two *Goldman* prongs, Google has demonstrated both here. Plaintiff fails to meaningfully rebut this showing, attempting instead to artificially distance her claims from LeanRx's Terms & Conditions and

Privacy Policy.

### 1. Plaintiff's Claims are Directly Related to and Intertwined with the Underlying Contract.

The first *Goldman* prong evaluates whether a plaintiff's claims are "intimately founded in and intertwined with" the contract that contains the arbitration clause. *Goldman v. KPMG*, 173 Cal. App. 4th 209, 221 (2009). That test is satisfied here. Plaintiff's claims uniformly hinge upon her use of the SkinnyRx website, her expectations of privacy, and her lack of consent to the alleged data collection. The LeanRx Terms & Conditions and Privacy Policy govern all aspects of these claims and are potentially dispositive. Plaintiff does not meaningfully rebut the relationship between her claims and the Terms & Conditions and Privacy Policy; she instead makes three attempts to parry the issue.

#### a. Estoppel applies to statutory claims.

*First*, Plaintiff incorrectly contends that her claims are not intertwined with a contract because her claims rest on "independent statutory duties." Opp. at 6. But the fact that a claim has a statutory source is irrelevant. The test considers the relationship of the claims alleged to the terms of the contract containing the arbitration agreement, regardless of their source. *Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 272 (2005) ("That the claims are cast in tort rather than contract does not avoid the arbitration clause."); *see also Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 787–788 (2017) (plaintiff "cannot avoid [arbitration] … by framing his claims as merely statutory"). Plaintiff would have estoppel limited solely to claims for breach of contract. That is not the law, nor would it make sense. Estoppel in this context concerns claims against non-signatories to the contract. *Any* claim against a non-signatory must have a basis independent of the contract.

Plaintiff's cited cases do not support her cramped view of estoppel. In *Ford Motor Warranty Cases*, the court did not find—as Plaintiff suggests—that equitable estoppel can only be invoked in situations in which a claim is based in contract. 17 Cal. 5th 1122, 1133 (2025). Rather, in *Ford*, the defendant sought to compel arbitration under a sales agreement between the plaintiff and the selling car dealership, even though the dealership was not a defendant and the plaintiff's warranty claims arose solely from the manufacturer's independent statutory obligations, not from anything

in the sales agreement. *Id*. The critical variable was not that the claims were statutorily based—it was that the statutory claims in *Ford* "[did] not depend on or invoke any of the terms of the sales agreements" containing the arbitration clause. *Id*.

This case is materially different. Unlike the warranty and fraud claims in *Ford*, Plaintiff's statutory privacy claims here do not exist in a vacuum separate from the underlying agreement. All of Plaintiff's allegations concern her conduct on the SkinnyRx website, which the LeanRx Terms & Conditions and Privacy Policy govern. *See* Mot. at 5–6; *see, e.g.*, Compl. ¶¶ 2–3, 11, 13, 29–35, 69–85. And whether she manifested consent to the alleged collection, disclosure, and use of her data necessitates analysis of the Terms & Conditions and Privacy Policy, which memorialize her consent. *See* Mot. at 5–6; *see, e.g.,* Compl. ¶¶ 13, 148, 157. Post-*Ford* decisions have reached the same conclusion. *See Johnson v. Beyond*, *Inc*., No. 2:25-CV-03327-DJC, 2026 WL 1076039, at *5–6 (E.D. Cal. Apr. 21, 2026) (finding equitable estoppel applies because "the gravamen of Plaintiff's case is that [Defendants] allegedly misused her personal customer data, but the scope of this potential data use is extensively discussed in the Privacy Policy, which Plaintiff consented to"); *Atkins v. Amplitude, Inc.*, No. 24-CV-04913-RFL, 2025 WL 2521732, at *2 (N.D. Cal. Sept. 2, 2025) (finding equitable estoppel applies because defendant's privacy policy "expressly discusses the manner by which [defendant] may provide or disclose Personal Information to third-parties"); *see also Atkins v. Amplitude, Inc*., No. 24-CV-04913-RFL, 2026 WL 821052, at *1–2 (N.D. Cal. Mar. 25, 2026) (rejecting interlocutory appeal of motion to compel arbitration and distinguishing plaintiff's reliance on *Ford*).[1] This Court, too, has compelled arbitration of statutory privacy claims on these grounds. *L.W.A. v. LinkedIn Corp.*, No. 5:24-CV-08436-EJD, 2025 WL 2780788, at *5 (N.D. Cal. Sept. 30, 2025) (Davila, J.) (finding equitable estoppel applies because "the court would need to examine whether Plaintiff consented to her data being shared to [the advertising technology provider] in her agreement with [the website]").

*In re Henson* is likewise distinguishable, and Plaintiff's reliance on it suffers from the same

[1] Plaintiff's attempts to distinguish these cases fall flat, as they relate solely to contract formation issues—a threshold question that does not undermine the equitable estoppel analysis itself. *See* Opp. at 11. Indeed, Plaintiff's reliance on formation issues is an implicit concession that, should the Court find a valid, enforceable arbitration agreement, these cases favor a finding of equitable estoppel.

fundamental misreading as in *Ford*. 869 F.3d 1052 (9th Cir. 2017). The court did not summarily dismiss defendant's equitable estoppel claim because the claims were based on independent tort duties, as Plaintiff suggests. Instead, the court rejected the equitable estoppel claim because it found the underlying customer services agreement with the non-party was not sufficiently related to its separate privacy claims against the defendant. *Id*. at 1060–61; *see STM Atlantic N.V. v. Dong Yin Development Holdings Ltd*., No. 2:18-CV-01269-JLS-JCG, 2019 WL 2417625, at *3–6 (C.D. Cal. Feb. 15, 2019) (describing *In re Henson* as denying equitable estoppel claim on basis that claims did not rely on the underlying agreement); *Chartwell Staffing Servs. Inc. v. Atlantic Solutions Grp. Inc*., No. 8:19-CV-00642-JLS-JDE, 2020 WL 620294, at *4–7 (C.D. Cal. Jan. 9, 2020) (same).[2] Here, by contrast, the Terms & Conditions and Privacy Policy do not merely provide the occasion for Plaintiff's dealings with LeanRx—they define the scope of what data collection and disclosure LeanRx and its partners were authorized to conduct, and Plaintiff's consent under those documents is a live issue at the core of each statutory claim. The first *Goldman* prong is satisfied.

**b. Consent is merely one issue intertwined with the contract.**

*Second*, Plaintiff seeks to dismiss the Terms & Conditions and Privacy Policy by deeming them only relevant to an affirmative defense of consent. The argument is unavailing.

Regardless of who bears the burden of proof at trial, consent is an element of Plaintiff's claims that requires consideration of the applicable terms and Privacy Policy. This Court recently held as much in *L.W.A.*, 2025 WL 2780788, at *5. There, the Court noted that "lack of consent" was "one element Plaintiff will have to prove to succeed on any of its claims . . . ." *Id.* As Google does here, the Defendant there argued that the third-party website's privacy policy disclosed the challenged conduct, and that consent had been obtained. *Id.* This Court concluded that the plaintiff's claims were "intimately founded in and intertwined with her agreement" with the third party because "the Court must ultimately interpret the disclosures in [the policies] to decide [the

[2] Plaintiff's citations to *Kramer* and *Rajagopalan* fare no better. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1130–33 (9th Cir. 2013) (finding purchase agreement unrelated to false advertising claim which rested on defendant's marketing materials and express written warranties); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (finding debt-settlement contract with non-party unrelated to separate RICO allegations against payment processor under Washington state law). Neither case involves allegations arising from conduct governed by and dependent on the relevant agreements and their terms, as here.

plaintiff's] claims." *Id.* As *L.W.A.* shows, the intertwined nature of consent and the relevant policies is alone sufficient to find estoppel.

Here, however, the Terms & Conditions and Privacy Policy are relevant to other aspects of her claims. For example, both Plaintiff's claim under the California Invasion of Privacy Act ("CIPA") section 632 and her constitutional invasion of privacy claim require her to demonstrate that she had a reasonable expectation of privacy in her communications with the SkinnyRx website. *See L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *18–19 (N.D. Cal. Oct. 10, 2025) (analyzing plaintiffs' expectation of privacy in connection with CIPA section 632 and invasion of privacy claims) (Davila, J.). The Terms and Privacy Policy undoubtedly bear on Plaintiff's expectation of privacy. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020) (holding that affirmative promises in privacy disclosures created a reasonable expectation of privacy); *United Flow Techs. Intermediate Holdco II, LLC v. Coholan*, No. 3:26-CV-01845-RS, 2026 WL 1538119, at *1 (N.D. Cal. June 1, 2026) (holding that disclosure of data collection in privacy policy rendered expectation of privacy unreasonable). While the issue of consent is alone sufficient, the Terms & Conditions and Privacy Policy are more intimately intertwined with the inquiry here than Plaintiff will admit.

**c. The Privacy Policy is incorporated into the Terms & Conditions.**

*Finally*, Plaintiff attempts to avoid the Privacy Policy altogether by arguing it is not incorporated into the Terms. It appears Plaintiff believes incorporation is only successful when the magic word "incorporate" is used. She is again incorrect.

No such explicit language is required under California law. A "contract need not recite that it incorporates another document, so long as it guides the reader to the incorporated document." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997). This is not the demanding standard Plaintiff suggests. "Indeed, California case law makes it quite easy to incorporate a document by reference." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019). "What's needed is simply that the reference to the document be unequivocal, that the document be called to the attention of the contracting parties, and that the terms of the document be easily available to the contracting parties." *Id.* All three conditions are met here.

LeanRx's Privacy Policy is bolded, referenced, and linked on the first page of LeanRx's Terms & Conditions: "**Privacy.** Please review our Privacy Policy available at https://skinnyrx.com/privacy for information about how we collect and use your personal information." Dkt. No. 51-3 at 2. Courts have found similar language sufficient to incorporate by reference. *In re Facebook*, 402 F. Supp. 3d at 791 (finding document referencing and linking Data Use Policy sufficient to incorporate by reference); *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1268–69 (9th Cir. 2017) (finding arbitration clause was incorporated into agreement stating: "any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company intranet"). Plaintiff's sole authority on this point misleadingly addresses a categorically different question—whether a party assented to an agreement at all—not whether a document was incorporated by reference into an agreement. *See Harris v. iHeartMedia, Inc.*, No. 25-CV-06038-EKL, 2026 WL 194576, at *4 (N.D. Cal. Jan. 6, 2026) (finding terms of service failed to indicate user's assent). Thus, LeanRx's Privacy Policy is incorporated by reference into the Terms & Conditions and governs the parties' conduct here.

In sum, Plaintiff's claims are intimately founded in and intertwined with the LeanRx Terms and Privacy Policy. The first *Goldman* prong is satisfied, and arbitration may be compelled on this basis alone.

#### 2. Plaintiff Fails to Rebut that Google's Alleged Conduct is Intimately Connected with the Terms & Conditions and Privacy Policy.

The second, and alternative, *Goldman* prong evaluates whether the plaintiff "alleg[es] substantially interdependent and concerted misconduct [between] the nonsignatory and [another] signatory" that is "founded in or intimately connected with the obligations of the underlying agreement." *Goldman*, 173 Cal. App. 4th at 219. Plaintiff does not dispute that she alleges interdependent conduct between the Defendants (nor can she) but instead insists that this purportedly concerted misconduct is not "founded in any obligation of the Terms." Opp. at 9. Once again, Plaintiff cites no authority for her position—and for good reason. The second prong asks whether the conduct itself is *connected* with the underlying agreements, not whether any

"obligation" in said agreement is "impose[d] on Defendants." *See id.*

As detailed above, Plaintiff's claims all concern the allegedly undisclosed collection of her personal data—conduct directly governed by LeanRx's Terms & Conditions and Privacy Policy. And because Plaintiff concedes that LeanRx's and Google's alleged conduct are intrinsically intertwined, her claims against Google implicate those same documents with equal force. District courts addressing analogous facts have consistently held likewise. *See Bender v. Twilio Inc.*, No. 24-CV-04914-AMO, 2025 WL 2308484, at *7 (N.D. Cal. Aug. 11, 2025) (finding equitable estoppel applies because "authorization is an essential element of his claims, which directly implicate the third-party data-sharing provisions of the Privacy Policy . . . the Calm Terms of Service and Privacy Policy become essential to his claims"); *Perry-Hudson v. Twilio, Inc.*, No. 3:24-CV-03741-VC, 2024 WL 4933332, at *3 (N.D. Cal. Dec. 2, 2024) (holding allegations the website "disclose[d] users' personal health information" to a third-party constituted "interdependent and concerted misconduct"); *Atkins*, 2025 WL 2521732, at *3 (holding allegations concerning an agreement between an app and third-party "to intercept and collect Plaintiffs' sensitive data" constituted "interdependent and concerted misconduct").[3]

The satisfaction of either *Goldman* prong is sufficient for the court to apply equitable estoppel. Here, both are met, and the Court should compel arbitration of Plaintiff's claims against Google.

**3. Balance of the Equities Supports Arbitration.**

Despite Plaintiff's attempts to downplay Google's inseparability from the claims and Terms & Conditions at issue, fairness further compels arbitration here. This case presents precisely the inequity equitable estoppel exists to prevent: Plaintiff accepted LeanRx's Terms & Conditions, including its arbitration clause, to access the SkinnyRx website and purchase medications—and now seeks to hold Google liable for conduct arising from that very use while disavowing the arbitration obligation she undertook. "Equitable estoppel prevents such attempts to artfully plead around an inconvenient arbitration agreement." *Bender*, 2025 WL 2308484, at *7. And that Plaintiff

[3] Plaintiff again fails to make any meaningful critique of *Perry-Hudson* and *Atkins*, instead resorting to strawman attacks on the threshold formation question not raised in this Motion. *See* Opp. at 11.

has sued both the signatory and non-signatory is irrelevant. *See Gonzales v. Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111, 129 (2024) (applying equitable estoppel where signatory is named defendant and noting "it is unfair for a signatory to an employment agreement to avoid arbitration by suing nonsignatories for claims that are based on the same facts and are inherently inseparable from arbitrable claims deriving from the agreement"). Plaintiff cannot have it both ways, invoking the benefits of her relationship with LeanRx to pursue claims against Google while simultaneously disavowing the arbitration obligation that relationship carries. The equities compel arbitration.

### C. A Stay of Claims Pending Arbitration is Warranted.

Plaintiff concedes that, should Google's Motion be granted, a stay of this action is mandated. Opp. at 11; *see* 9 U.S.C. § 3. But should the Court compel Plaintiff to arbitrate her claims against LeanRx but not those against Google, the Court should nonetheless stay the case pending resolution of Plaintiff's arbitration with LeanRx to promote judicial economy and avoid inconsistent results.

Plaintiff argues that a stay is not warranted because any arbitration against LeanRx would be adjudicated under different legal standards and would not have any legally binding effect on Defendants in this action. Opp. at 12. But—as underscored by Plaintiff's failure to cite any relevant authority—a purported lack of preclusive effect is immaterial. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (finding a stay "does not require that the issues in such [separate] proceedings are necessarily controlling of the action before the court"). The core factual questions—including whether the Privacy Policy disclosed the alleged data tracking, whether consent was obtained, and how Google Analytics functioned on SkinnyRx's website—would be resolved in the LeanRx arbitration, and they would bear directly on the claims against Google in this action.

Courts routinely stay claims pending arbitration in these circumstances, because the factual and legal determinations that cross-cut similar claims against defendants create a significant likelihood of inconsistent results. *See Bui v. Northrop Grumman Sys. Corp.*, No. 15-CV-1397, 2019 WL 13166662, at *2 (S.D. Cal. Jan. 29, 2019) (staying a representative claim pending arbitration of individual claims because the claims all turned on whether plaintiff was an "aggrieved

employee"); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002) ("the similarity of the issues of law and fact in this case to those that will be considered during arbitration, as well as the potential for inconsistent findings absent a stay, persuade the Court that a stay is warranted"); *Morales v. Lexxiom, Inc.*, No. 2:09-CV-06549-SVW, 2010 WL 11507515, at *11–14 (C.D. Cal. Jan. 29, 2010) (considering risk of inconsistent factual findings to support stay pending arbitration).

Plaintiff's speculative assertion of prejudice from delay fares no better. Plaintiff identifies no specific prejudice she would endure from awaiting the results of an arbitration with LeanRx. By contrast, the cost of inefficient, or potentially unnecessary, proceedings to the Court and the parties is concrete. A stay could narrow issues ultimately presented to this Court, cabin the scope of discovery required, and prevent Defendants from having to respond to duplicative discovery requests as third parties in the LeanRx arbitration and first parties in this action. Accordingly, the Court should grant a stay pending arbitration for considerations of judicial and counsel economy and the desirability of avoiding potentially inconsistent findings. *See Forsyth v. HP Inc.*, No. 5:16-CV-04775-EJD, 2018 WL 732722, at *7–8 (N.D. Cal. Feb. 6, 2018) (Davila, J.) (holding hardship from litigating parallel actions outweighs potential delay from stay of claims); *Parodi v. Liberty Mut. Ins. Co.*, No. 23-CV-01663-JSC, 2023 WL 4535088, at *3 (N.D. Cal. June 6, 2023) ("But delay on its own is insufficient to show prejudice.").[4] Regardless of the outcome of this Motion, a stay of claims is warranted.

## III. CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court compel Plaintiff's claims against Google to arbitration and stay these proceedings. Alternatively, if the Court orders arbitration of Plaintiff's claims against LeanRx but not Google, Google respectfully requests that this Court stay all claims against Google pending the outcome of Plaintiff's arbitration with LeanRx.

[4] Tellingly, Plaintiff failed to distinguish from either *Morales* or *Forsyth*, as cited in the Motion.

Dated: July 14, 2026

COOLEY LLP

By: *Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorneys for Defendant
Google LLC